UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| KALSHIEX, LLC, <br><br> Plaintiff <br><br> v. <br><br> KIRK D. HENDRICK, et al., <br><br> Defendants | Case No.: 2:25-cv-00575-APG-BNW <br><br> **Order Denying Defendants' Motion to Dismiss** <br><br> [ECF No. 50] |

Plaintiff KalshiEX, LLC (Kalshi) sues to enjoin the Nevada Gaming Commission (NGC), the Nevada Gaming Control Board (NGCB), their members in their official capacities, and Nevada Attorney General (NVAG) Aaron Ford in his official capacity from pursuing civil or criminal enforcement against Kalshi for offering event contracts in Nevada. ECF No. 1. Kalshi contends that its contracts are currently legal under federal law and that Nevada law is preempted due to the Commodity Futures Trading Commission's (CFTC) exclusive jurisdiction. I previously granted Kalshi's motion for a preliminary injunction. ECF Nos. 43; 45.

The defendants move to dismiss Kalshi's complaint on a variety of grounds. I set forth the background facts in my earlier order granting Kalshi's motion for a preliminary injunction, so I do not repeat them here. ECF No. 45 at 1-3.

**I. ANALYSIS**

    **A. Eleventh Amendment Immunity**

NGC and NGCB argue that they are political subdivisions of the State of Nevada with Eleventh Amendment immunity, which the State has not waived. They contend they have not waived their Eleventh Amendment immunity because they have notified the court and Kalshi from the outset that they intended to raise this defense by alluding to it in their notice of

appearance, mentioning it in their response to Kalshi's motion for preliminary injunction, and previewing the argument during the preliminary injunction hearing. Finally, the NGC and NGCB contend that the defendants' motion for injunctive relief did not waive their Eleventh Amendment immunity because they sought only to restore the status quo before Kalshi started violating Nevada gaming laws, they filed no complaint or counterclaim against Kalshi, and they were operating on shortened deadlines in the early stages of this case.

Kalshi responds that the NGC and NGCB waived Eleventh Amendment immunity when they sought injunctive relief in this court. Kalshi argues that NGC and NGCB did not merely defend against Kalshi's motion but instead invoked this court's jurisdiction by requesting affirmative relief in their favor. Alternatively, Kalshi asserts that it will amend to drop these entity defendants because it need only proceed against the individual defendants to obtain the relief it seeks.

The Eleventh Amendment grants a State immunity from suit in federal court by citizens of other States and by its own citizens. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 616 (2002). But a State can waive its Eleventh Amendment immunity from suit in federal court. *Id.* at 618. "The test employed to determine whether a state has waived immunity is a stringent one." *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) (quotation omitted). The State's consent to suit must be "unequivocally expressed." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984).

"Although the waiver must be unambiguous," it need not be "an express written waiver." *Hill v. Blind Indus. & Servs. of Md.*, 179 F.3d 754, 758 (9th Cir.), *opinion amended on denial of reh'g*, 201 F.3d 1186 (9th Cir. 1999). Rather, a State may waive its Eleventh Amendment immunity through "conduct that is incompatible with an intent to preserve that immunity."

2

*Aholelei*, 488 F.3d at 1147 (quotation omitted).  Thus, a State "generally waives its immunity when it voluntarily invokes federal jurisdiction or makes a clear declaration that it intends to submit itself to federal jurisdiction." *Id.* (simplified).  For example, a State waives its Eleventh Amendment immunity by removing a state court case to federal court, filing a proof of claim in a federal bankruptcy proceeding, or litigating the case in federal court through a summary judgment hearing without raising the defense. *See Lapides*, 535 U.S. at 619 (removal); *Gardner v. New Jersey*, 329 U.S. 565, 573-74 (1947) (filing a proof of claim in bankruptcy court); *In re Bliemeister*, 296 F.3d 858, 862 (9th Cir. 2002) (litigating through summary judgment).

"However, a state does not waive Eleventh Amendment immunity merely by defending in federal court." *Demshki v. Monteith*, 255 F.3d 986, 989 (9th Cir. 2001).  For example, the Ninth Circuit has held that a State did not waive immunity when it asserted the defense in its answer but also subsequently filed a third-party complaint because the "filing of the third-party complaint for indemnification or contribution can best be viewed as an appropriate defense strategy, that is, as a contingent claim asserted against third parties." *Aholelei*, 488 F.3d at 1148. Thus, filing the third-party complaint after having already asserted the defense was not "incompatible with an intent to preserve" Eleventh Amendment immunity. *Id.*

It is clear that merely acting defensively in federal court litigation is insufficient to waive Eleventh Amendment immunity, so the State's participation in the expedited briefing and injunction hearing do not support waiver.  The NGC and NGCB asserted the defense early in the litigation, including during the TRO hearing. *See* ECF Nos. 33 (defense counsel's notice of appearance stating that counsel was appearing to respond to the TRO motion and addressing whether this court "has jurisdiction over" the NGC and NGCB); 46 at 60-61 (defense counsel

advising the court and Kalshi that the defendants intended to file a motion to dismiss to invoke, among other defenses, Eleventh Amendment immunity).

However, the NGC and NGCB did not act solely in defense. They also requested affirmative relief by filing their own motion for a restraining order against Kalshi. ECF No. 35. Neither the Supreme Court nor the Ninth Circuit have addressed whether a State waives its immunity when it both asserts that immunity and seeks its own temporary injunctive relief in response to a motion filed by the plaintiff who hauled the State involuntarily into federal court. Although there is no controlling authority directly on point, the Supreme Court's analysis in *Lapides* provides the answer.

In *Lapides*, the Supreme Court addressed whether a state waives its Eleventh Amendment immunity by removing a case to federal court. 535 U.S. at 618-19. There, the Court noted that "[i]t would seem anomalous or inconsistent for a State both (1) to invoke federal jurisdiction, thereby contending that the 'Judicial power of the United States' extends to the case at hand, and (2) to claim Eleventh Amendment immunity, thereby denying that the 'Judicial power of the United States' extends to the case at hand." *Id.* at 619. The Court stated that "a Constitution that permitted States to follow their litigation interests by freely asserting both claims in the same case could generate seriously unfair results. Thus, it is not surprising that more than a century ago this Court indicated that a State's voluntary appearance in federal court amounted to a waiver of its Eleventh Amendment immunity." *Id.*

The NGC and NGCB's simultaneous invocation of the Eleventh Amendment defense and a request for this court to exercise its power to enjoin Kalshi raises the same inconsistency and unfairness concerns that animated *Lapides*. Regardless of the expedited proceedings at the beginning of this case, nothing required the NGC and NGCB to move for injunctive relief in

their own favor.[1] They could have simply opposed Kalshi's motion and retained a defensive posture. By voluntarily invoking this court's power, the NGC and NGCB clearly indicated that they waived their Eleventh Amendment immunity. *See Consejo de Salud de la Comunidad de la Playa de Ponce, Inc. v. Gonzalez-Feliciano*, 695 F.3d 83, 104 (1st Cir. 2012) (stating that a State waives its sovereign immunity through litigation conduct "when it voluntarily entreats a federal court to adjudicate its rights"). The fact that these defendants also indicated that they intended to assert an immunity defense does not make their waiver equivocal because the "relevant 'clarity' here must focus on the litigation act the State takes that creates the waiver. And that act—[moving for affirmative injunctive relief in their favor]—is clear." *Lapides*, 535 U.S. at 620. I therefore deny NGC and NGCB's motion to dismiss based on Eleventh Amendment immunity.[2]

**B. Failure to Name the State of Nevada**

The defendants argue that under Nevada Revised Statutes (NRS) § 41.031(2), Kalshi was required to name the State of Nevada as a defendant on relation of the NGCB and NGC to invoke the State's waiver of sovereign immunity. They assert that I must dismiss the complaint

---

[1] The defendants' motion did not, for example, move for injunctive relief only in favor of the individual defendants. *See* ECF No. 35 at 2 (defining all defendants collectively as the "State Defendants"); *id.* at 22-24 (arguing that the "State Defendants" were moving for and entitled to injunctive relief against Kalshi).

[2] Whether the NGC and NGCB have Eleventh Amendment immunity has little to no practical significance in this case. Even if the NGC and NGCB were entitled to Eleventh Amendment immunity, that would not end Kalshi's suit because, as discussed below, the individual defendants do not have Eleventh Amendment or state law immunity, so the case would proceed regardless. And as I noted in my preliminary injunction order, NGC and NGCB cannot act except through their employees, so an injunction against their officials in their official capacities is, in effect, the same as an injunction against the entities. *See* ECF No. 45 at 5 ("I reserve ruling on whether the Eleventh Amendment bars Kalshi from proceeding against the Board and Commission, but the net effect for purposes of Kalshi's injunction motion is the same, as the Board and Commission can operate only through their employees or members.").

5

because Kalshi's failure to name the State deprives this court of subject matter jurisdiction and makes the case void ab initio, so Kalshi's complaint cannot be saved by amendment.

Kalshi responds that NRS § 41.031 waives sovereign immunity for state tort actions in state court. Kalshi argues that because the State of Nevada does not waive its Eleventh Amendment immunity, it would be a futile formalistic procedure for it to name the State only for the State to invoke its Eleventh Amendment immunity and be dismissed. Kalshi also contends that the statute allows a plaintiff to sue the State or one of its political subdivisions, and it is only when the suit is against the State that the action must be brought in the name of the State on relation of the particular department, commission, or board. Kalshi asserts that because it sued a state board and commission, and not the State itself, it need not name the State. Finally, Kalshi contends that the defendants are incorrect to argue that even if Kalshi must name the State, its suit is void ab initio because courts have allowed plaintiffs to amend their complaints to comply with NRS § 41.031(2).

"By statute, the State of Nevada has waived its sovereign immunity from civil liability in limited circumstances." *Craig v. Donnelly*, 439 P.3d 413, 415 (Nev. App. 2019). Under NRS § 41.031(1), the State of Nevada waives its immunity, and the immunity of its political subdivisions, "from liability and action and . . . consents to have its liability determined in accordance with the same rules of law as are applied to civil actions against natural persons and corporations," with some exceptions, including "subsection 3." Subsection 3 provides that Nevada does not waive its Eleventh Amendment immunity. Subsection 2 states that "[a]n action may be brought under this section against the State of Nevada or any political subdivision of the State," and "[i]n any action against the State of Nevada, the action must be brought in the name

of the State of Nevada on relation of the particular department, commission, board or other agency of the State whose actions are the basis for the suit."

The defendants' argument that Kalshi's suit must be dismissed for failure to name the State fails for the same reason as the Eleventh Amendment immunity argument fails. By invoking this court's authority in requesting injunctive relief in their favor, the defendants waived their argument that the State was not properly named to invoke the State's waiver of sovereign immunity. Allowing the defendants to insist on the naming convention after having invoked this court's judicial power raises the same "anomalous or inconsistent" conduct that the *Lapides* court addressed. 535 U.S. at 619. Indeed, it is highly unlikely that had I granted the defendants' motion for injunctive relief, they would have insisted on the formalistic naming convention. The "general legal principle requiring waiver" when a State voluntarily invokes judicial authority "ought to apply" to prevent states from "achiev[ing] unfair tactical advantages." *Id.* at 620-21. I therefore deny the defendants' motion to dismiss on this basis.

However, to avoid doubt, I grant Kalshi leave to amend the complaint to name the State of Nevada on relation of the NGC and NGCB if it chooses to do so. I reject the defendants' argument that failing to name the State makes Kalshi's suit void ab initio. The only case the defendants cite for this proposition has nothing to do with NRS § 41.031. *See Washoe Med. Ctr. v. Second Jud. Dist. Ct. of State of Nev. ex rel. Cnty. of Washoe*, 148 P.3d 790, 794 (Nev. 2006) (en banc) (holding that "a medical malpractice complaint filed without a supporting medical expert affidavit is void ab initio, meaning it is of no force and effect" because "a complaint that does not comply with NRS 41A.071 is void ab initio"). Further, regardless of whether the NGC and NGCB should be dismissed under NRS § 41.031, as discussed below, this case would proceed against the individual defendants, so it is not void ab initio as to them. *See E.E.O.C. v.*

*Peabody W. Coal Co.*, 610 F.3d 1070, 1085 (9th Cir. 2010) ("A claim to which sovereign immunity is not a defense may be entertained even if another claim in the suit is dismissed because of sovereign immunity."); *Craig*, 439 P.3d at 415-17 (concluding that the district court properly dismissed state law torts because the plaintiff failed to comply with NRS § 41.031's naming convention, but that the district court erred in dismissing the plaintiff's claims under 42 U.S.C. § 1983). Even if I dismissed the entity defendants, Kalshi could simply file a new suit, name NGC and NGCB through the naming convention, and then move to consolidate the actions. The parties should confer on whether the defendants are going to pursue this argument further, such as on appeal, or whether they can save themselves time and resources by agreeing on a resolution of this issue with respect to NGC and NGCB going forward.

### C. Service of Process

The defendants argue that Kalshi has not properly served them because it did not serve the NVAG. They contend that their counsel accepted service of the complaint on behalf of the defendants, but not on the NVAG's behalf.

Kalshi responds that they need not serve the NVAG because it is required to do so only when the suit is against the State of Nevada, and Kalshi contends its suit is not against the State. Kalshi also argues that even if it was required to serve the NVAG in other circumstances, it need not do so here because the NVAG's office accepted service on behalf of defendants, including NVAG Ford. Alternatively, Kalshi argues that if it must again serve the NVAG, it will do so.

I deny this portion of the defendants' motion because defense counsel accepted service for every defendant, including NVAG Ford. ECF No. 39. That acceptance did not indicate any qualifications or limitations on the acceptance of service. *Id.* Accordingly, all defendants have been served, so I deny the defendants' motion to dismiss on this basis.

8

### D. State Law Immunity

The defendants argue that the individual defendants are immune under Nevada Revised Statutes (NRS) § 41.032(1) because Kalshi sues them for acts done in execution of a statute or regulation. They also invoke discretionary act immunity under NRS § 41.032(2). Kalshi responds that a State cannot immunize state officers acting in their official capacities from violating the Supremacy Clause.

In *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court created an exception to the Eleventh Amendment "by asserting that a suit challenging the constitutionality of a state official's action in enforcing state law is not one against the State." *Green v. Mansour*, 474 U.S. 64, 68 (1985). Under *Ex parte Young*, "the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law." *Id.* A "State has no power to impart to [a State official] any immunity from responsibility to the supreme authority of the United States." *Fla. Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 684-85 (1982) (quoting *Ex parte Young*, 209 U.S. at 160).

The Eleventh Amendment does not apply to the individual defendants sued in their official capacities for prospective injunctive relief seeking to preclude them from taking actions that Kalshi alleges are forbidden by the Supremacy Clause of the U.S. Constitution.[3] The individual defendants acknowledge as much but contend that they are entitled to state law immunities. But the State of Nevada cannot immunize the individual defendants from being sued under *Ex parte Young* for violating the Supremacy Clause. So I deny their motion to dismiss on this basis.

---

[3] Kalshi does not seek retrospective monetary relief.

### E. Failure to State a Claim

The defendants argue that the complaint fails to allege facts showing how the individual defendants took actions that violate the Supremacy Clause. They contend that the complaint merely identifies them as parties but contains no facts showing their involvement in the alleged unconstitutional conduct.

Kalshi responds that because it seeks injunctive relief against enforcement of unconstitutional acts, it properly named the officials who would be responsible for implementing that injunctive relief in their official capacities. Kalshi contends that it adequately alleges each individual defendant's role with the NGC, the NGCB, and the NVAG's office, and how they are thus responsible for implementing the requested injunctive relief. Kalshi notes that some of the individual defendants signed the NGCB's cease and desist letter sent to Kalshi. And Kalshi argues that it does not seek damages, so it need not allege facts showing personal participation of each defendant like it would have to do if it were pursuing relief under 42 U.S.C. § 1983.

In considering a motion to dismiss, I take all well-pleaded allegations of material fact as true and construe the allegations in a light most favorable to the non-moving party. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017). However, I do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017) (quotation omitted). A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555.

"An official-capacity suit for injunctive relief is properly brought against persons who would be responsible for implementing any injunctive relief." *R. W. v. Columbia Basin Coll.*, 77

10

F.4th 1214, 1223 (9th Cir. 2023) (quotation omitted).  Under *Ex parte Young*, the state official sought to be enjoined must have "some connection with enforcement of" the challenged action. 209 U.S. at 157.  "[T]hat connection must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012) (quotation omitted).  But the connection "does not need to be primary authority to enforce the challenged law, nor does the attorney general need to have the full power to redress a plaintiff's injury in order to have some connection with the challenged law." *Matsumoto v. Labrador*, 122 F.4th 787, 803 (9th Cir. 2024) (simplified).  Rather, "individuals who, as officers of the state, are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action." *Ex parte Young*, 209 U.S. at 155-56.

      Kalshi has plausibly alleged that the NGCB is the Nevada state agency that "enforces state laws and regulations governing gaming," and that the NGC is the Nevada state agency that "has final authority on all licensing matters, retaining the power to approve, restrict, limit, condition, deny, revoke, or suspend any gaming license." ECF No. 1 at 5-6.  Nevada law grants the Board and Commission powers to regulate gaming in Nevada, including investigating suspected criminal violations, issuing subpoenas, initiating proceedings to enforce Nevada laws, and collecting civil penalties. Nev. Rev. Stat. §§ 463.140, 463.141, 463.142; *see also* Nev. Rev. Stat. § 463.143 (authorizing the NGC to "exercise any proper power and authority necessary to perform the duties assigned to it by the Legislature, and [it] is not limited by any enumeration of

11

powers in this chapter"). The individual members of the NGC and NGCB thus would have the requisite power to implement injunctive relief preventing the Board and Commission from enforcing Nevada's gaming laws against Kalshi. Indeed, the NGCB sent Kalshi a cease-and-desist letter, signed by the NGCB's chairman. ECF No. 1-2.[4] Thus, the NGC and NGCB members are proper defendants regardless of whether they personally participated in a constitutional violation, as would be otherwise be required for a claim for damages under 42 U.S.C. § 1983. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under section 1983 arises only upon a showing of personal participation by the defendant.").

It is a closer question with respect to NVAG Ford, but he is a proper defendant as well. Nevada law allows the Commission and Board to "recommend that the Attorney General prosecute any public offense committed in violation of any provision of" certain chapters of Nevada's gaming laws. NRS § 463.141. That statutory provision is in addition to the NVAG's general authority to enforce state law and supervise district attorneys. *See* NRS § 228.120 (granting the NVAG supervisory authority over district attorneys in the State and power to take over prosecutions for State law violations); *id.* at § 228.170 (authorizing the NVAG to initiate suit "to protect and secure the interest of the State").

Further, the NGCB's letter to Kalshi stated that based on the Board's review of Kalshi's contracts, "and in consultation with the Gaming Division of the Nevada Office of the Attorney General, Kalshi is hereby notified that offering event-based contracts is unlawful in Nevada,

---

[4] I can consider the letter without converting the defendants' motion to dismiss into one for summary judgment because it is attached to the complaint. *See Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) ("When reviewing a motion to dismiss, we consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." (quotation omitted)). Moreover, Kalshi describes and sometimes directly quotes the letter in the complaint. ECF No. 1 at 13-14.

unless and until approved as licensed gaming by the Nevada Gaming Commission." ECF No. 1-2 at 2.  That letter advised Kalshi that its conduct may be considered criminal under Nevada law and NGC regulations and that NGCB, "as well as all state and local law enforcement and regulatory agencies in Nevada expressly reserve all rights to pursue criminal and civil actions based on Kalshi's past and future conduct within the state." *Id.* at 3.  The letter also stated that if Kalshi had any questions, it could contact a senior deputy attorney general at an email address at the NVAG's office. *Id.*  Thus, Kalshi has plausibly alleged that NVAG Ford has more than a tenuous connection to enforcing Nevada gaming laws and regulations against Kalshi.

### F. Preemption

The defendants argue that Kalshi fails to state a claim because the Commodity Exchange Act (CEA) does not preempt Nevada's gaming laws under either field or conflict preemption. Kalshi responds that because I have already found that Kalshi was likely to prevail on its arguments that the CEA preempts Nevada gaming laws, it has met the lower standard of having plausibly alleged preemption.

By granting Kalshi's motion for preliminary injunction, I found that Kalshi has demonstrated a likelihood of success on the merits of its claim that the CEA preempts Nevada gaming laws with respect to Kalshi's conduct as a CFTC-designated contract maker. ECF No. 45 at 13.  Kalshi thus has plausibly alleged preemption.  As discussed at the preliminary injunction hearing, I would benefit from further briefing on the preemption issue before I make a final decision on the merits.  In their motion to dismiss, the defendants state that they "anticipate briefing" preemption issues "including, but not limited to, wagering excise tax and other federal laws, canons against implied repeal, federalism, and various subsections of the CEA more extensively in upcoming motions." ECF No. 50 at 10 n.6.  I thus deny the motion to dismiss,

13

without prejudice to the defendants (and intervenor Nevada Resort Association) from raising these and other arguments related to preemption in future briefing.

### G. Tenth Amendment

The defendants argue that Kalshi's construction of the CEA violates the Tenth Amendment because that amendment protects the State's police powers. They assert that Nevada has regulated gaming since the 1930s, before Congress enacted the CEA, so absent express statutory language specifically preempting the traditional state police power of regulating gaming, Nevada's gaming laws are not preempted. And they assert that Congress cannot commandeer the states.

Kalshi responds that the Tenth Amendment does not apply because Congress lawfully legislated under the interstate commerce clause in enacting the CEA. Kalshi contends that Congress has the power to preempt state law, including on the topic of sports gaming. Finally, Kalshi argues that there is no commandeering here because nothing requires Nevada to enact or administer the CEA or a regulatory program under the CEA. Rather, preemption merely prohibits Nevada from subjecting Kalshi to Nevada's gaming laws.

The Tenth Amendment to the U.S. Constitution provides that "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. "The Supreme Court has read this Amendment as a 'tautology': 'If a power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States.'" *Gila River Indian Cmty. v. United States*, 729 F.3d 1139, 1153 (9th Cir. 2013), *as amended* (July 9, 2013) (quoting *New York v. United States*, 505 U.S. 144, 156-57 (1992)).

The Tenth Amendment also contains an "anti-commandeering principle." *United States v. King Cnty., Washington*, 122 F.4th 740, 758 (9th Cir. 2024). "The anti-commandeering doctrine prohibits the federal government from compelling the States to implement, by legislation or executive action, federal regulatory programs." *Id.* (simplified).

The defendants have not argued or presented authority that Congress did not act within its powers under the interstate and foreign commerce clause in passing the CEA. ECF No. 56 at 12 (the defendants' reply brief stating that "the authority pursuant to which the CEA was enacted by Congress is not presently at issue in this Motion"). Additionally, the anti-commandeering doctrine does not apply because CEA preemption would not compel the State to implement a federal regulatory program. Rather, it would preclude the State from enforcing its own regulatory system against Kalshi. I therefore deny the defendants' motion to dismiss on this basis.

**H. Judicial Estoppel**

The defendants contend that Kalshi should be judicially estopped from arguing that its sports event-based contracts are not gaming because of arguments Kalshi made before the Court of Appeals for the D.C. Circuit. Specifically, the defendants argue that Kalshi admitted that an event contract involves "gaming" if the contract is contingent on a game or game-related event. The defendants also assert that Kalshi admitted before the D.C. Circuit that the legislative history shows that Congress did not want sports betting on derivatives markets. The defendants assert that if, as Kalshi admitted to the D.C. Circuit, Congress did not want sports betting on derivatives markets, then Congress did not intend to preempt state laws regulating gaming. The defendants also note that Kalshi describes its event-based contracts as sports betting.

Kalshi responds that I already rejected this argument when ruling on Kalshi's motion for a preliminary injunction, and I should do so again. Kalshi argues that the fact that it sometimes refers to its event contracts as bets is of little import because companies and others refer to investments in financial markets as bets, but that does not subject those companies or financial markets to state gaming laws.

I deny the defendants' motion on this basis, without prejudice to the defendants raising these issues in future briefing on the merits. For now, it suffices to say that Kalshi has plausibly alleged the CEA preempts Nevada gaming laws for the reasons outlined in my preliminary injunction order.

**I. Decision of the U.S. District Court for the District of Columbia**

The defendants assert that Kalshi's reliance on the decision from the U.S. District Court for the District of Columbia (D.D.C.) in *KalshiEX LLC v. Commodity Futures Trading Commission*,[5] is misplaced because that decision is persuasive authority only. Additionally, they argue that the D.D.C. court was not evaluating whether the CEA preempted state law because that case involved litigation between Kalshi and the CFTC. And they assert that I should not rely on anything the CFTC said in its briefs regarding the Supremacy Clause because, under *Loper Bright Enterprises v. Raimondo*,[6] I should not defer to the CFTC's interpretation of the statute. Finally, they contend that I should not follow the D.D.C.'s narrow definition of what constitutes "gaming" because Nevada has a long history of defining gaming to include not only an underlying game but wagering on the outcome of those games.

---

[5] No. CV 23-3257 (JMC), 2024 WL 4164694, at *1 (D.D.C. Sept. 12, 2024)
[6] 603 U.S. 369 (2024).

Kalshi responds that it does not argue that the D.D.C.'s decision is binding, but it is persuasive authority. Kalshi also argues that it does not matter how Nevada or any other state defines gaming because the issue is whether the CEA preempts state regulation of event contracts listed on a CFTC-designated contract market like Kalshi, which, Kalshi contends, it does.

The defendants' arguments regarding the D.D.C.'s decision do not support dismissal. Regardless of how that court would define "gaming," the D.D.C. court was not directly addressing whether the CEA preempts state gaming laws.[7] Rather, it was a suit between Kalshi and the CFTC over whether the CFTC could prohibit Kalshi from offering election-based event contracts. *KalshiEX LLC*, 2024 WL 4164694, at *1. And, as the defendants correctly note, it is persuasive authority only. I cited to the CFTC's statement in a brief filed in that case regarding preemption for its persuasiveness, not as controlling authority. ECF No. 45 at 12. Even if the D.D.C.'s decision and the CFTC's statement in its brief did not exist, Kalshi has plausibly stated its claim, so I deny the motion to dismiss on this basis.

## II. CONCLUSION

I THEREFORE ORDER that the defendants' motion to dismiss **(ECF No. 50) is DENIED**.

DATED this 3rd day of June, 2025.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE

---

[7] In its analysis of how to interpret the CEA on the question of whether the CFTC could prohibit Kalshi from offering election contracts, the D.D.C. court stated that "the CEA specifically preempts the application of state law over derivative markets." *KalshiEX LLC*, 2024 WL 4164694, at *12. But it was not directly addressing preemption in that decision.