1  DENNIS L. KENNEDY
   Nevada Bar No. 1462
2  PAUL C. WILLIAMS
   Nevada Bar No. 12524
3  **BAILEY❖KENNEDY**
   8984 Spanish Ridge Avenue
4  Las Vegas, Nevada 89148-1302
   Telephone: 702.562.8820
5  Facsimile: 702.562.8821
   DKennedy@BaileyKennedy.com
6  PWilliams@BaileyKennedy.com

7  NEAL KUMAR KATYAL
   (Admitted *pro hac vice*)
8  JOSHUA B. STERLING                    GRANT R. MAINLAND
   (Admitted *pro hac vice*)             (Admitted *pro hac vice*)
9  WILLIAM E. HAVEMANN                   NOLA B. HELLER
   (Admitted *pro hac vice)*             (Admitted *pro hac vice*)
10 **MILBANK LLP**                       **MILBANK LLP**
   1850 K Street, Suite 1100             55 Hudson Yards
11 Washington, D.C. 20006                New York, NY 10001
   Telephone: 202.835.7500               Telephone: 212.530.5000
12 Facsimile: 202.263.7586               Facsimile: 212.530.5219

13 *Attorneys for Plaintiff KalshiEX, LLC*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| KALSHIEX, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> KIRK D. HENDRICK, in his official capacity as Chairman of the Nevada Gaming Control Board, et al., <br><br> Defendants, <br><br> vs. <br><br> NEVADA RESORT ASSOCIATION, <br><br> Intervenor-Defendant. | Case No. 2:25-cv-00575-APG-BNW <br><br> **PLAINTIFF'S EMERGENCY MOTION TO STAY DISCOVERY** <br><br> **EMERGENCY RELIEF REQUESTED (AUGUST 22, 2025)** <br><br> ORAL ARGUMENT REQUESTED |

Pursuant to LR 7-4 and the inherent authority of the Court, Plaintiff KalshiEX LLC ("Kalshi"), by and through undersigned counsel, respectfully requests that the Court stay discovery pending resolution of Kalshi's motion for summary judgment, which Kalshi files concurrently with this motion. ECF No. 86.

Pursuant to LR 7-4, Kalshi seeks to have its Motion to Stay Discovery heard on an emergency basis. If the Motion is heard in the ordinary course, Kalshi will be forced to engage in costly discovery in a case involving preempted state laws. Pursuant to LR 7-4(a), the declaration of William E. Havemann, counsel for Kalshi, is attached hereto.

Kalshi proposes the following briefing schedule:

**Response** — August 8, 2025

**Reply** — August 15, 2025

**Hearing** — August 22, 2025, or as soon thereafter as the Court's schedule permits.

This Motion to Stay is made and based on the papers and pleadings on file, the following Memorandum of Points and Authorities, and any oral argument as may be heard by this Court.

DATED this 1st day of August, 2025.

**BAILEY❖KENNEDY**

By: /s/ Paul C. Williams
    DENNIS L. KENNEDY
    PAUL C. WILLIAMS

MILBANK LLP
NEAL KUMAR KATYAL (Admitted *pro hac vice*)
JOSHUA B. STERLING (Admitted *pro hac vice*)
WILLIAM E. HAVEMANN (Admitted *pro hac vice*)
GRANT R. MAINLAND (Admitted *pro hac vice*)
NOLA B. HELLER (Admitted *pro hac vice*)
*Attorneys for Plaintiff KalshiEX, LLC*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In April 2025, Chief Judge Gordon granted Kalshi a preliminary injunction in this case on the ground that the "plain and unambiguous language" of the Commodity Exchange Act ("CEA") "reflects congressional intent to occupy the field of regulating CFTC-designated exchanges and the transactions conducted on those exchanges." *KalshiEX, LLC v. Hendrick* ("*Hendrick I*"), No. 2:25-cv-00575, ECF No. 45 at 12 (D. Nev. Apr. 9, 2025). Kalshi now moves for summary judgment on the same preemption grounds. This legal question is dispositive of the parties' dispute, and Kalshi has a strong prospect of success given that Chief Judge Gordon has already concluded that state laws are likely preempted. Resolution of the motion for summary judgment does not require further factual development given that preemption presents a question of law, and there is no reason to subject Kalshi to burdensome discovery while Chief Judge Gordon considers whether the case can be resolved with no discovery at all. Because good cause exists to stay discovery, the Court should grant this motion.

## II. FACTUAL BACKGROUND

Derivative contracts are financial instruments that traders use to mitigate risk. *See KalshiEX LLC v. CFTC*, No. CV 23-3257, 2024 WL 4164694, at *1-2 (D.D.C. Sept. 12, 2024). Event contracts are a type of derivative contract—they identify a future event with several possible outcomes, a payment schedule for the outcomes, and an expiration date. *Id*. at *2. Event contracts are typically traded on an exchange, and their value is determined by market forces. *Id*. This means that the price of an event contract fluctuates from the time of its creation to its expiration according to the changing likelihood of the event's occurrence, creating a sensitive financial instrument that tracks real-world market perceptions. *Id*. The ultimate value of an event contract is determined at its expiration date—most commonly, the event's occurrence or a set date upon which the contract terminates. *Id*.

In 2020, the CFTC unanimously certified Kalshi as a designated contract market ("DCM") that offers event contracts, affirming that its platform complied with the CEA's extensive regulatory requirements. *See KalshiEX*, 2024 WL 4164694, at *4. Once the CFTC designated Kalshi as a contract market, the CFTC gained "exclusive jurisdiction" over futures contracts and swaps, including event contracts, listed and traded on Kalshi's platform. 7 U.S.C. § 2(a)(1)(A). Kalshi in

turn became subject to the CFTC's comprehensive regulatory framework, as set out in the CEA and CFTC regulations. Thus, since November 2020, Kalshi has been comprehensively regulated as a DCM under federal law alongside entities like the Chicago Mercantile Exchange and the Intercontinental Exchange. ECF No. 1 ¶ 42.

Kalshi offers many kinds of event contracts related to an array of substantive areas like climate, technology, health, popular culture, and economics. *Id.* ¶¶ 43-44. As relevant here, Kalshi also offers contracts on election outcomes, and (following a competitor) Kalshi began offering contracts on the outcomes of certain sports events in January 2025.

Notwithstanding the CFTC's exclusive jurisdiction, on March 4, 2025, the Nevada Gaming Control Board sent a cease-and-desist letter to Kalshi claiming that its "event-based contracts in Nevada on sporting events and on election outcomes" were unlawful under Nevada law. ECF No. 1-2 at 2. The letter demanded that Kalshi "immediately cease and desist from offering any event-based contracts in Nevada." *Id.* at 3. After efforts to reach an accommodation failed, Kalshi filed a complaint challenging Nevada's intrusion into the CFTC's "exclusive" authority to regulate derivatives listed and trading on exchanges overseen by the CFTC. ECF No. 1 ¶ 3 (citing 7 U.S.C. § 2(a)(1)(A)). In its complaint, Kalshi asserted a single claim against two Nevada agencies, their principals, and the Nevada Attorney General (collectively, "Defendants"), arguing that the state's threatened attempts to enforce state law against Kalshi are preempted. *Id.* ¶¶ 1, 64-70. Kalshi asked the Court to enjoin Defendants from taking enforcement action against Kalshi and to enter a declaratory judgment that Nevada law is preempted as applied to regulating Kalshi's event contracts. Kalshi also sought a preliminary injunction on the same ground.

On April 8, 2025, Chief Judge Gordon granted Kalshi's motion for a preliminary injunction, prohibiting Defendants from enforcing state gambling laws to regulate Kalshi's event contracts. *Hendrick I*, ECF No. 45 at 17. Chief Judge Gordon found that the CEA's "plain and unambiguous language" preempts the "field of regulating CFTC-designated exchanges and the transactions conducted on those exchanges." *Id.* at 12. Even if it were necessary to move beyond "the CEA's plain and unambiguous language, legislative history supports the conclusion that Congress intended to occupy the field and preempt state law from applying to CFTC-designated exchanges." *Id.* He

1 noted that, under the CEA, states objecting to Kalshi's event contracts "must take that up with the
2 CFTC and Congress" rather than seeking to subject Kalshi to preempted state law. *Id.* at 16.

3       As to the other requirements for injunctive relief, Chief Judge Gordon found that Kalshi
4 demonstrated "[a] credible threat of imminent prosecution for a state violation that conflicts with
5 federal law[,]" which "establish[ed] a likelihood of irreparable harm." *Id.* at 15. Kalshi is additionally
6 "facing substantial monetary expenditures, reputational damage, or civil and criminal prosecution
7 based on the defendants' demands that the defendants likely cannot make because they are
8 preempted." *Id.* Defendants, by contrast, faced little cognizable harm given their lack of interest in
9 enforcing preempted state laws. *Id.*

10       Defendants did not appeal the order granting a preliminary injunction. Instead, on April 23,
11 2024, they moved to dismiss Kalshi's complaint on a variety of grounds. ECF No. 50. After allowing
12 the Nevada Resort Association ("NRA") to intervene as a Defendant, ECF No. 70, the Court denied
13 Defendants' motion to dismiss. ECF No. 72.

14       On July 2, 2025, the parties filed their discovery plan. In that filing, Kalshi stated its position
15 that no discovery is required for the Court to resolve the present dispute, while Defendants sought
16 discovery. ECF No. 79. The Court adopted Defendants' proposed discovery plan but noted that
17 Kalshi "can file the appropriate motion to stay discovery so as to afford the Court well-developed
18 arguments in support of its request." *Id.* Kalshi now files this motion to stay discovery, filed
19 contemporaneously with its motion for summary judgment.

20       **III.    ARGUMENT**

21       The Court should stay discovery because Kalshi's preemption claim presents purely legal
22 questions that require no further factual development, and good cause exists for a stay. There are
23 compelling reasons not to subject Kalshi to the burdens of discovery while Chief Judge Gordon
24 decides whether the case can be resolved with no discovery at all. Chief Judge Gordon already
25 concluded that Kalshi "is subject to the CFTC's exclusive jurisdiction and state law is field
26 preempted." *Hendrick I*, ECF No. 45 at 13. Kalshi therefore has an exceptionally strong prospect of
27 success on summary judgment. Subjecting Kalshi to discovery during Chief Judge Gordon's
28 consideration of the summary judgment motion would be burdensome, inefficient, and unnecessary.

Under Rule 26(c), the Court "'may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense,'" including by staying discovery. *Schrader v. Wynn Las Vegas, LLC*, No. 2:19-cv-02159-JCM-BNW, 2021 WL 4810324, at *2 (D. Nev. Oct. 14, 2021); *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988). When considering a motion to stay discovery pending resolution of a dispositive motion, the Court asks whether "(1) the dispositive motion can be decided without further discovery; and (2) good cause exists to stay discovery." *Schrader*, 2021 WL 4810324, at *4 (citing *Alaska Cargo Transport, Inc. v. Alaska R.R. Corp.*, 5 F.3d 378, 383 (9th Cir. 1993)). In assessing those requirements, the Court is guided by the premise that the Federal Rules of Civil Procedure "should be construed and administered to secure the just, speedy, and inexpensive determination of every action." *Best Odds Corp. v. iBus Media Ltd.*, No. 2:13-cv-2008-RCJ-VCF, 2014 WL 12988551, at *2 (D. Nev. May 15, 2014) (quoting Fed. R. Civ. P. 1). Kalshi meets the requirements for a stay.

### A. Plaintiff's Motion For Summary Judgment Can Be Decided Without Further Factual Development.

It is well established that preemption presents a legal question that does not require factual development. *Atay v. County of Maui*, 842 F.3d 688, 698 (9th Cir. 2016); *see also Pac. Gas & Elec. Co. v. State Energy Res. Conserv. & Dev. Comm'n*, 461 U.S. 190, 201 (1983). Nor is factfinding needed for Kalshi to establish the other requirements for injunctive relief. Thus, for the reasons explained below and in Kalshi's contemporaneously filed motion for summary judgment, the Court can grant Kalshi summary judgment without further factual development.

#### *1. Preemption is a question of law.*

As the Supreme Court and Ninth Circuit have repeatedly held, "the issue of whether a federal law 'occupies the field' and thereby preempts state law is 'purely legal.'" *Hawaii Newspaper Agency v. Bronster*, 103 F.3d 742, 746 (9th Cir. 1996); *see In re Bard IVC Filters Prod. Liab. Litig.*, 969 F.3d 1067, 1073 (9th Cir. 2020) ("the preemption issue here presents a purely legal question"); *Atay*, 842 F.3d at 698 ("preemption is predominantly a legal question"); *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 761 (9th Cir. 2014) ("Preemption is almost always a legal question"); *Sayles Hydro Assocs. v. Maughan*, 985 F.2d 451, 454 (9th Cir. 1993) (field preemption is "purely

legal"); *Pac. Gas & Elec.*, 461 U.S. at 201 (the "question of preemption is predominantly legal"). That is why appellate courts review preemption decisions "de novo." *Hawaii Newspaper*, 103 F.3d at 748. It is also why preemption is "for a judge to decide, not a jury." *Merck Sharp & Dohme Corp. v. Albrecht*, 587 U.S. 299, 303 (2019).

The preemption issues in this case are no exception. They turn on pure questions of law—the scope of the CEA's exclusive jurisdiction, whether that jurisdiction preempts state regulation of trading on DCMs, and whether application of Nevada's gambling laws would conflict with the CEA. These are all, at bottom, questions of statutory interpretation—quintessential questions of law. *Smith v. Anastasia Inc.*, No. 14-cv-1685, 2014 WL 12577598, at *2 (S.D. Cal. Sept. 15, 2014) ("Determining the scope of a preemption clause is a matter of statutory interpretation"); *see also* ECF No. 46 at 69 (counsel for Defendants agreeing that she viewed the case "as primarily a legal question" presenting "an issue of statutory interpretation").

For that reason, the Ninth Circuit has repeatedly rejected arguments that additional factfinding is necessary to resolve preemption claims. On appeal from a holding of preemption, the Ninth Circuit rejected a party's contention that the district court erred in cutting off discovery, explaining that "preemption is predominantly a legal question, resolution of which would not be aided greatly by development of a more complete factual record," and that the issues "can be resolved without further development of background facts." *Atay*, 842 F.3d at 698. In another appeal addressing whether a preemption claim was ripe, the Ninth Circuit found it could decide the claim "without further factual development." *Hawaii Newspaper*, 103 F.3d at 746; *see also Pac. Gas & Elec.*, 461 U.S. at 201 (resolution of preemption issue need not await factual development).

Preemption cases therefore regularly proceed to summary judgment without discovery. To take one example from the Ninth Circuit, in *ConocoPhillips Alaska, Inc. v. Alaska Oil and Gas Conservation Commission*, 660 F. Supp. 3d 822, 829 (D. Alaska 2023), the court addressed whether federal law preempted a state agency from releasing certain information regarding the plaintiff's oil drilling operations. Relying on an affidavit of harm, the plaintiff sought summary judgment on preemption grounds before any discovery occurred. The court granted summary judgment and denied the defendant's request for a Rule 56(d) continuance to conduct discovery. *Id*. at 840. Similarly, in

1  *Robert Ito Farm, Inc. v. County of Maui*, 111 F. Supp. 3d 1088, 1098 (D. Haw. 2015), the court
2  addressed a county's imposition of standards for genetically engineered organisms that conflicted
3  with federal law. The court entered summary judgment for the plaintiffs notwithstanding the
4  defendants' request for discovery, reasoning that discovery regarding the plaintiffs' operations and
5  the environmental impacts associated with plaintiffs' practices had "no bearing on whether the
6  Ordinance is preempted." *Id*. at 1098–99. The Ninth Circuit affirmed that decision in *Atay*. *See* 842
7  F.3d at 698. In *R.J. Reynolds Tobacco Co. v. McKenna*, 445 F. Supp. 2d 1252, 1254–59 (W.D. Wash.
8  2006), the court likewise granted summary judgment on preemption grounds without discovery. And
9  courts routinely proceed to summary judgment without discovery where the parties recognize that
10 preemption presents "questions of law and do[es] not require additional discovery." *Segal v.*
11 *Lefebvre*, No. 13-cv-1511, 2013 WL 12130553, at *2 (D. Nev. Nov. 14, 2013).

12        The Court should follow the same approach here. The broad discovery Defendants seek—
13 ranging from Kalshi's statements on the nature of its event contracts, its marketing and advertising,
14 and its consumer protection efforts—has "no bearing" on whether the CEA preempts Nevada
15 gambling laws, which can be resolved as a matter of law. *Robert Ito Farm,* 111 F. Supp. 3d at 1098.

16        In the Discovery Plan & Scheduling Order (ECF No. 79 at 4), Defendants and the NRA cited
17 two cases for the proposition that preemption can turn on questions of fact. But neither case justifies
18 discovery here. One 60-year-old case, *Colorado Anti-Discrimination Commission v. Continental Air*
19 *Lines, Inc.*, 372 U.S. 714 (1963), was not a preemption case at all. It instead presented the question
20 whether applying a state anti-discrimination law would "impose an undue burden" on interstate
21 commerce in violation of the Dormant Commerce Clause. *Id.* at 717. Whether a state law unduly
22 burdens interstate commerce under the Dormant Commerce Clause turns critically on underlying
23 "facts"—such as whether a "law imposes 'substantial burdens' on interstate commerce," whether the
24 law advances "competing benefits," and how the two sides should be "weighed" against each other.
25 *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 383 (2023); *see also Conservation Force, Inc.*
26 *v. Manning*, 301 F.3d 985, 999 (9th Cir. 2002) (Dormant Commerce Clause question "turns on
27 questions of fact not appropriate for resolution by this court"). This case, by contrast, presents no
28 such factual inquiries regarding burdens on interstate commerce or offsetting benefits.

Defendants' other case, *Chowdhury v. Northwest Airlines Corp.*, 238 F. Supp. 2d 1153 (N.D. Cal. 2002), is similarly inapposite. It involved a civil rights claim brought under state law by a passenger prohibited from boarding his plane shortly after September 11, 2001. The court denied the defendant's motion to dismiss the complaint on preemption grounds, concluding that there were factual issues concerning whether applying "California's anti-discrimination laws" in that particular context "treads on [the] field" of airline security. *Id*. at 1156. The factual question in that case was whether applying state law would or would not amount to a regulation of airline security, which was the field Congress had preempted. Here, by contrast, there is no question that allowing Defendants to prohibit Kalshi's event contracts would amount to a regulation of trading on DCMs. The only question is whether Congress preempted that field—a pure legal question.

In denying Defendants' motion to dismiss, Chief Judge Gordon noted that Defendants may seek to develop additional preemption arguments related to "other federal laws, canons against implied repeal ... and various subsections of the CEA." *KalshiEX, LLC v. Hendrick* ("*Hendrick II*"), No. 2:25-cv-00575, ECF No. 72 at 13 (D. Nev. June 3, 2025). Each of these inquiries presents a question of statutory interpretation, a "question of law." *United States v. Stephens*, 237 F.3d 1031, 1033 (9th Cir. 2001). Defendants do not need discovery to pursue any such arguments.

### *2.     Kalshi has established its entitlement to injunctive relief.*

Discovery is likewise unnecessary to establish the other requirements for injunctive relief. The existing record shows that Kalshi will suffer irreparable harm absent an injunction. And the balance of harms and public interest likewise clearly warrant injunctive relief.

*First*, where a plaintiff establishes the likelihood of success on the merits, it "almost always" shows irreparable harm, and "the merged third and fourth factors [tip] decisively in [its] favor." *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023). If Kalshi succeeds in proving preemption here, it will plainly suffer irreparable harm if it is not also granted injunctive relief. In a suit against state officials under *Ex Parte Young*, 209 U.S. 123 (1908), an injunction is the only way to effectuate a judgment that Defendants are preempted from enforcing their laws. *See id.* at 159 (noting that the remedy in such a case is "[a]n injunction to prevent [the defendant] from doing that which he has no legal right

1 to do"). Kalshi is aware of no case brought to prevent imminent enforcement of a state law where a
2 plaintiff proved preemption but was nonetheless denied an injunction.

3      *Second*, even if more were needed, the record establishes nonmonetary harms that are not
4 subject to genuine dispute. As Chief Judge Gordon explained at the preliminary-injunction stage,
5 "[a] credible threat of imminent prosecution for a state violation that conflicts with federal law can
6 establish a likelihood of irreparable harm." *Hendrick*, ECF No. 45 at 15 (citing *Morales v. Trans
7 World Airlines, Inc.*, 504 U.S. 374, 381 (1992)); *see also Valle del Sol Inc. v. Whiting*, 732 F.3d 1006,
8 1029 (9th Cir. 2013). The same reasoning applies on the merits. Absent an injunction, Kalshi would
9 face a "Hobson's choice," as it would be required either to refuse to comply with Defendants'
10 unconstitutional demands and face criminal liability, or comply and incur "reputational harm as well
11 as the potential existential threat of the CFTC taking action against it for violating the CFTC's Core
12 Principles if Kalshi disrupts contracts or geographically limits who can enter contracts on what is
13 supposed to be a national exchange." *Hendrick*, ECF No. 45 at 15-16 ("[r]equiring Kalshi to stop"
14 offering event contracts "altogether and lose goodwill or damage its reputation" or "face civil and
15 criminal liability in Nevada" establishes "a likelihood of irreparable harm"). Kalshi would thus be
16 faced with the same impossible position that justified preliminary relief—suffering either the
17 irrevocable harm of criminal liability or the harm of cutting off Nevada users' access to their trades,
18 jeopardizing its federal designation by violating its impartial-access requirements, and inviting
19 copycat enforcement in other states. *See* ECF No. 18-1 (Decl. of Xavier Sottile) ¶¶ 29-37, 50. The
20 resulting harm to Kalshi's "goodwill" alone justifies an injunction. *Herb Reed Enters., LLC v. Fla.
21 Entm't Mgmt.*, Inc., 736 F.3d 1239, 1250 (9th Cir. 2013). No facts adduced via discovery could call
22 into question these harms.

23      *Third*, though not necessary to prevail given that Kalshi will incur irreparable nonmonetary
24 harms absent an injunction, Kalshi has also shown irreparable harm in the form of monetary injury
25 for which a damages award is legally unavailable. The record establishes that Kalshi would incur
26 costs to implement geolocation and cut off its contracts in Nevada. *See* ECF No. 18-1 ¶ 21 ("a
27 partnership with a geolocation service provider would cost Kalshi up to tens of millions of dollars
28 annually"); *Hendrick*, ECF No. 45 at 15 ("Kalshi presents credible evidence that even if it could

1  implement geofencing at great expense, it could not do so immediately."). That is enough to show
2  irreparable harm, because *Ex Parte Young* would bar Kalshi from recouping these costs in damages.
3  *See Idaho v. Coeur d'Alene Tribe*, 794 F.3d 1039, 1046 (9th Cir. 2015) (finding irreparable harm
4  where "sovereign immunity likely would bar [the plaintiff] from recovering monetary damages").
5  While "[e]conomic harm is not normally considered irreparable," the Ninth Circuit has squarely held
6  that "such harm is irreparable" where a plaintiff "will not be able to recover monetary damages."
7  *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018) (citation omitted); *Grand River Enters. Six
8  Nations, Ltd. v. Knudsen*, No. 23-35494, 2024 WL 2992503, at *2 (9th Cir. June 14, 2024) (monetary
9  harm "*is* irreparable when the plaintiff cannot sue the defendant to recover money damages").

10  Given the unavailability of damages, the quantum of Kalshi's harm does not bear on whether
11  the harm is irreparable. "The analysis focuses on irreparability, 'irrespective of the magnitude of the
12  injury.'" *Azar*, 911 F.3d at 581 (quoting *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 725 (9th Cir.
13  1999)). An injury of only a few dollars can amount to irreparable harm if the injury cannot be
14  redressed through damages. *Id.* at 572. Thus, while Defendants might attempt to dispute the quantum
15  of Kalshi's harm in discovery, Defendants could not reasonably dispute that Kalshi does not currently
16  geolocate users or that doing so would cost money that Kalshi could not recoup even if it were to
17  prevail.

18  At the preliminary injunction hearing, counsel for Defendants indicated that if Kalshi "wishes
19  to seek monetary damages against the State, the State has waived sovereign immunity in State Court
20  under certain circumstances," and suggested that this case involved one such circumstance. ECF No.
21  46 at 61-62. But in their motion to dismiss, Defendants reversed course, arguing that Individual
22  Defendants "are entitled to official act immunity and discretionary act immunity" and that Agency
23  Defendants "have Eleventh Amendment immunity" in state court. ECF No. 50 at 6-9; *see also* NRS
24  § 41.031(3) (the "State of Nevada does not waive its immunity from suit conferred by Amendment
25  XI of the Constitution of the United States."); NRS § 41.032(1) ("no action may be brought . . .
26  against . . . an officer or employee of the State or any of its agencies or political subdivisions which
27  is . . . [b]ased upon an act or omission of an officer, employee or immune contractor, exercising due
28  care, in the execution of a statute or regulation, whether or not such statute or regulation is valid, if

the statute or regulation has not been declared invalid by a court of competent jurisdiction"). Thus, Defendants now agree that Kalshi could not seek damages against them in a state court proceeding. In addition, a damages cap would limit damages in any such proceeding to a maximum of $200,000. *See* NRS § 41.035(1). Courts have found harm irreparable in comparable cases, even where there is some highly doubtful prospect of recouping damages in a different state-court proceeding. *See Coeur d'Alene*, 794 F.3d at 1046 (finding irreparable harm where immunity "likely" would bar damages); *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1251 (10th Cir. 2001) (finding irreparable harm where relief "might not be available to the tribe because of the state's sovereign immunity").

*Finally*, no further discovery is needed to show that the balance of harms and public interest warrant a permanent injunction. It "is always in the public interest to prevent the violation of a party's constitutional rights." *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 731 (9th Cir. 2022) (quotation omitted). And Defendants face no harm from an injunction preventing them from enforcing state laws that federal law does not entitle them to enforce in any event. *See Arizona v. United States*, 567 U.S. 387, 401 (2012); *Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 202 (3d Cir. 2024) ("[T]he government has no interest in enforcing unconstitutional laws."). The balance of harms and public interest could not possibly favor Defendants if Kalshi proves preemption.[1]

### B.    Good Cause Exists To Stay Discovery Pending Consideration Of Kalshi's Motion For Summary Judgment.

This Court evaluates whether good cause exists to stay discovery using the so-called "preliminary peek" test, which asks "whether (1) the pending motion is potentially dispositive, (2) the potentially dispositive motion can be decided without additional discovery, and (3) after the court takes a 'preliminary peek' at the merits of the potentially dispositive motion, it is 'convinced' that" the moving party is entitled to judgment as a matter of law. *Schrader*, 2021 WL 4810324, at *3

---

[1] To the extent the Court concludes that Defendants are entitled to discovery from Kalshi, including regarding the balance of harms or the public interest, Kalshi reserves its right to seek discovery from Defendants on those same topics.

(quoting *Kor Media Grp. LLC v. Green*, 294 F.R.D. 579, 581 (D. Nev. 2013)). This inquiry does not prejudge the outcome of the dispositive motion, but rather is meant to "evaluate the propriety of an order staying or limiting discovery with the goal of accomplishing the objectives of Rule 1." *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 603 (D. Nev. 2011). All three elements are met here.

*First*, Kalshi's pending motion for summary judgment is dispositive. Kalshi has asserted a single claim that Nevada law is preempted as applied to regulating event contracts on federally regulated DCMs like Kalshi. If Kalshi prevails on summary judgment, the case will end.

*Second*, as discussed above, the Court can decide Kalshi's motion for summary judgment without further factual development. Kalshi's preemption claim presents a pure legal question, and Kalshi has already established that it will suffer irreparable harm absent an injunction. Discovery is accordingly unnecessary to resolve this case.

*Third*, Kalshi has shown that it is entitled to summary judgment. Chief Judge Gordon's grant of a preliminary injunction required him to conclude that Kalshi was likely to succeed on the merits of its preemption claim. *Hendrick I*, ECF No. 45 at 14. That determination should be conclusive for purposes of staying discovery.

Chief Judge Gordon concluded that the CEA "reflects congressional intent to occupy the field of regulating CFTC-designated exchanges and the transactions conducted on those exchanges." *Id.* at 12. Because Kalshi is a DCM that offers event contracts, Kalshi "is subject to the CFTC's exclusive jurisdiction and state law is field preempted." *Id.* at 13. Defendants' contention that various states have attempted to regulate contracts on Kalshi "merely highlights the problem of allowing the States to regulate a national exchange." *Id.* at 14. Different states impose different requirements as to permissible contracts, age requirements, liquidity standards, geographical boundaries, and much more. These standards differ not only from one another, but from the uniform requirements imposed on DCMs by the CFTC, and they would result in subjecting Kalshi to a patchwork of contradictory requirements. "Preventing the difficulties that would create is the reason Congress granted the CFTC exclusive jurisdiction over CFTC-designated exchanges." *Id*. As Chief Judge Gordon explained, Kalshi's event contracts are legal under federal law, and the proper venue for Defendants'

"object[ions] to Kalshi offering sports and election event contracts [is] with the CFTC and Congress." *Id*. at 16.

To the extent this Court has any doubts about whether a stay is warranted, Kalshi's contemporaneously filed motion for summary judgment explains in detail why Kalshi is entitled to judgment. At the very least, the strength of Kalshi's arguments on the merits and Chief Judge Gordon's prior grant of a preliminary injunction should entitle Kalshi to a stay of discovery during the short period needed to resolve Kalshi's motion for summary judgment. It would be a waste of party and judicial resources to press ahead with discovery while Chief Judge Gordon is deciding whether the case can end with no discovery at all. If Chief Judge Gordon grants summary judgment, the case will end. And if he denies summary judgment, then the parties can engage in any appropriate discovery with the benefit of guidance regarding any factual issues that could bear on resolution of this case.

## IV.    CONCLUSION

For the foregoing reasons, Kalshi respectfully requests that the Court stay discovery in this case during the pendency of its motion for summary judgment

DATED this 1st day of August, 2025.

**BAILEY✣KENNEDY**

By: /s/ Paul C. Williams
    DENNIS L. KENNEDY
    PAUL C. WILLIAMS

MILBANK LLP
NEAL KUMAR KATYAL (Admitted *pro hac vice*)
JOSHUA B. STERLING (Admitted *pro hac vice*)
WILLIAM E. HAVEMANN (Admitted *pro hac vice*)
GRANT R. MAINLAND (Admitted *pro hac vice*
NOLA B. HELLER (Admitted *pro hac vice*)
*Attorneys for Plaintiff KalshiEX, LLC*

# CERTIFICATE OF SERVICE

I certify that I am an employee of BAILEY✤KENNEDY and that on the 1st day of August, 2025, service of the foregoing was made by mandatory electronic service through the United States District Court's electronic filing system and/or by depositing a true and correct copy in the U.S. Mail, first class postage prepaid, and addressed to the following at their last known address:

| | |
|---|---|
| JESSICA E. WHELAN<br>SABRENA K. CLINTON<br>DEVIN A. OLIVER<br>**STATE OF NEVADA**<br>**OFFICE OF THE ATTORNEY GENERAL**<br>1 State of Nevada Way, Suite 100<br>Las Vegas, NV 89119 | Email:  jwhelan@ag.nv.gov<br>sclinton@ag.nv.gov<br>doliver@ag.nv.gov<br><br>*Attorneys for Defendants* |
| ADAM HOSMER-HENNER<br>A.G. BURNETT<br>JANE SUSSKIND<br>KATRINA WEIL<br>CASSIN BROWN<br>**McDONALD CARANO LLP**<br>100 West Liberty Street, 10th Floor<br>Reno, NV 89501 | Email:<br>ahosmerhenner@mcdonaldcarrano.com<br>agburnett@mcdonaldcarano.com<br>jsusskind@mcdonaldcarano.com<br>kweil@mcdonaldcarano.com<br>cbrown@mcdonaldcarano.com<br><br>*Attorneys for Intervenor*<br>*Nevada Resort Association* |

    /s/ Sharon Murnane
Employee of BAILEY✤KENNEDY