1   DENNIS L. KENNEDY
    Nevada Bar No. 1462
2   PAUL C. WILLIAMS
    Nevada Bar No. 12524
3   **BAILEY❖KENNEDY**
    8984 Spanish Ridge Avenue
4   Las Vegas, Nevada 89148-1302
    Telephone: 702.562.8820
5   Facsimile: 702.562.8821
    DKennedy@BaileyKennedy.com
6   PWilliams@BaileyKennedy.com

7   NEAL KUMAR KATYAL                    GRANT R. MAINLAND
    (Admitted *pro hac vice*)           (Admitted *pro hac vice*)
8   JOSHUA B. STERLING                   NOLA B. HELLER
    (Admitted *pro hac vice*)           (Admitted *pro hac vice*)
9   WILLIAM E. HAVEMANN                  ANDREW L. PORTER
    (Admitted *pro hac vice*)           (*pro hac vice* application forthcoming)
10  **MILBANK LLP**                     **MILBANK LLP**
    1850 K Street, Suite 1100           55 Hudson Yards
11  Washington, D.C. 20006              New York, NY 10001
    Telephone: 202.835.7500             Telephone: 212.530.5000
12  Facsimile: 202.263.7586             Facsimile: 212.530.5219

13  *Attorneys for Plaintiff KalshiEX, LLC*

14

15                  UNITED STATES DISTRICT COURT
                         DISTRICT OF NEVADA
16

17  KALSHIEX, LLC,                          Case No.  2:25-cv-00575-APG-BNW

18              Plaintiff,

19      vs.

20  KIRK D. HENDRICK, in his official capacity as    **PLAINTIFF'S REPLY IN SUPPORT OF**
    Chairman of the Nevada Gaming Control Board,      **EMERGENCY MOTION TO STAY**
21  et al.,                                           **DISCOVERY**

22              Defendants,

23      vs.

24  NEVADA RESORT ASSOCIATION,                  ORAL ARGUMENT SCHEDULED
                                                    AUGUST 22, 2025
25          Intervenor-Defendant.                      3:30 PM PT

26

27

28

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

**INTRODUCTION**

Kalshi's moving brief established that there is good cause for a discovery stay because the only facts relevant to the preemption analysis—whether the challenged event contracts are traded or executed on a DCM[1]—are indisputable. Chief Judge Gordon already determined that Kalshi is a DCM, that the relevant state laws are likely preempted, and accordingly preliminarily enjoined enforcement of those laws. ECF 45 at 3. Defendants concede that the event contracts trade on Kalshi's exchange; indeed, the NGCB's cease-and-desist letter demands that Kalshi take them down. ECF 1-1 at 2 (ordering that Kalshi cease "offering any event-based contracts in Nevada"). Because the CFTC has "exclusive jurisdiction" over event contracts traded on a DCM, as Chief Judge Gordon has already ruled (ECF 45 at 12), no additional facts are necessary for the Court to determine that the cease-and-desist letter is preempted by federal law and, therefore, should be permanently enjoined.

The oppositions filed by Defendants[2] labor to create the impression that much more is at issue. They claim to need discovery into such matters as the "nature" of the event contracts; the financial and economic consequences associated with them; Kalshi's self-certifications pursuant to the CEA; the potential costs of implementing "geofencing"; Kalshi's marketing and consumer protection efforts; Kalshi's communications with the CFTC; the manner in which federal law and Nevada law conflict; and so on. Not only are these issues utterly irrelevant to the dispositive factual question whether Kalshi's contracts trade on a CFTC-designated exchange, but they also belie Defendants' assertion that the discovery they seek is narrow. That assertion cannot be taken seriously now that Defendants have made clear that they want to pry into virtually every aspect of Kalshi's business.

Defendants' gambit is objectionable in the extreme. The NGCB first issued an unlawful cease-and-desist letter, forcing Kalshi to seek protection from the Court or face potential criminal exposure and severe business disruption and reputational harm. Now that Kalshi has received that protection, at least temporarily, Defendants propose to use the civil discovery process to undertake the very regulatory inquiry that the Court has already enjoined as preempted. And perhaps worst of

---

[1] Capitalized terms not otherwise defined have the meaning given in the Emergency Motion to Stay Discovery (ECF 87).

[2] For simplicity, Kalshi uses the term "Defendants" herein to include both the named Defendants ("State Defendants") and Intervenor-Defendant Nevada Resort Association ("NRA").

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

1  all, NRA—a trade association representing entities that perceive Kalshi to be a competitor—has
2  piggybacked on the regulators' unconstitutional exercise of power they do not have, advocating for
3  discovery even broader than that proposed by the regulators themselves.

4  For all Defendants' effort to gin up factual complexity where there is none, the Court should
5  stay focused on a single question:  whether there are any factual issues on which the preemption
6  analysis turns other than the undisputed fact that the challenged event contracts trade on a DCM.  As
7  explained below, there are no such issues.  With summary judgment briefing due to be complete in
8  short order, and a ruling likely to follow promptly in light of the Court's well-reasoned analysis on
9  the preliminary injunction motion, this case calls out for a stay to ensure the "just, speedy, and
10  inexpensive determination" of the dispute.  Fed. R. Civ. P. 1.

## ARGUMENT

### I.    The Preemption Question Can Be Resolved On Purely Legal Grounds.

13  This Action presents two purely legal questions.  First, does the CEA's grant of exclusive
14  jurisdiction to the CFTC over swaps traded or executed on a DCM preempt state regulation of that
15  activity (*i.e.*, is it field preempted)?  Second, does the cease-and-desist letter conflict with the CFTC's
16  exercise of that jurisdiction (*i.e.*, is it conflict preempted)?  *See* ECF 87 (the "Moving Brief") at 7.
17  These are legal questions of statutory interpretation that do not require any fact discovery and are ripe
18  for resolution through Kalshi's pending summary judgment motion (ECF 86).

19  Defendants acknowledge that the preemption issue here is, in the words of Nevada's counsel,
20  "largely a legal issue" and "an issue of statutory interpretation."  Preliminary Injunction Hearing Tr.,
21  ECF 46 at 69.  Nor do Defendants contest that preemption questions are commonly resolved without
22  discovery.  Instead, Defendants inaccurately portray Kalshi as arguing that discovery can never be
23  available in preemption cases (ECF 89 at 8; ECF 90 at 5), but that is not what Kalshi contends.  Rather,
24  the issue is that ***in this case*** and ***with these facts*** no discovery is warranted.  ECF 89 at 7-9.  It is
25  objectively indisputable, and the Court has already found, that Kalshi is a DCM.[3]  ECF 45 at 1, 8.  It

---

[3] State Defendants purport to "dispute" whether Kalshi is actually a DCM.  ECF 89 at 11.  But a DCM is nothing more than an entity that has been "designated" as such by the CFTC.  *See* 7 U.S.C. § 7(a).  It is an objective fact that the CFTC has so designated Kalshi.  ECF 45 at 1.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

1    is also undisputed that Kalshi offers event contracts on its DCM—precisely the conduct that Nevada

2    seeks to bar.  ECF 1-1 at 2.  And the Court has already held that the CFTC has "exclusive jurisdiction"

3    over event contracts offered on a DCM.  7 U.S.C. § 2(a)(1)(A).

4            Defendants, and especially NRA, nevertheless purport to require broad discovery into, among

5    other things, the "nature" of the event contracts Kalshi offers, Kalshi's registration with the CFTC,

6    the regulatory requirements imposed by the CFTC, and the manner in which the CFTC has exercised

7    its regulatory authority over Kalshi.  ECF 89 at 10-13; ECF 90 at 8-13.  Rather than demonstrate the

8    existence of factual issues relevant to the preemption question, these topics illustrate why Congress

9    preempted the field (ECF 45 at 12), and underscore the harm that would befall Kalshi if forced to

10   respond to regulators that lack jurisdiction over it—and ostensible competitors, too.

11           **A.    The Existence And Scope Of Field Preemption Are Legal Questions.**

12           The CEA creates uniform regulations for offering and trading derivatives.  As Chief Judge

13   Gordon recognized, the "plain and unambiguous language" of the CEA "reflects congressional intent

14   to occupy the field of regulating CFTC-designated exchanges and the transactions conducted on those

15   exchanges."  ECF 45 at 12; *see also* 7 U.S.C. § 2(a)(1)(A); *FTC v. Ken Roberts Co.*, 276 F.3d 583,

16   588 (D.C. Cir. 2001) (CEA was intended to "avoid unnecessary, overlapping and duplicative

17   regulation"); *Am. Agric. Movement, Inc. v. Bd. of Trade of Chi.*, 977 F.2d 1147, 1156 (7th Cir. 1992)

18   (recognizing Congressional intent to create "a uniform set of regulations");  H.R. Conf. Rep. No. 93-

19   1383 at 35 (1974) (intent of CEA was to "preempt the field insofar as futures regulation is

20   concerned").

21           Confirming the existence of that field preemption, and evaluating its scope, is a purely legal

22   exercise.  *Haw. Newspaper Agency v. Bronster*, 103 F.3d 742, 746 (9th Cir. 1996) ("whether a federal

23   law 'occupies the field' and thereby preempts state law is 'purely legal'"); *see also Hillsborough*

24   *Cnty. v. Automated Med. Labs.*, *Inc.*, 471 U.S. 707, 714 (1985) ("The question whether the regulation

25   of an entire field has been reserved by the Federal Government is, essentially, a question of

26   ascertaining the intent underlying the federal scheme."); *Atay v. County of Maui*, 842 F.3d 688, 698

27   (9th Cir. 2016); *Pac. Gas & Elec. Co. v. State Energy Res. Conserv. & Dev. Comm'n*, 461 U.S. 190,

28   201 (1983).  The discovery Defendants seek not only has no bearing on that legal question, but, if

BAILEY✦KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

1   allowed to proceed, would also undermine Congress's goal of establishing a sole regulator applying

2   a uniform set of regulations. Congress gave the CFTC alone the power to regulate DCMs and the

3   trading and execution of derivatives transaction on them. 7 U.S.C. §§ 7, 7a-2(c), 8.[4] Yet Defendants

4   demand discovery into the full universe of Kalshi's offerings—all of which are made on a DCM—to

5   determine if they were properly listed. *See* ECF 90 at 8 ("Kalshi has not even disclosed the precise

6   event contracts it offers. Without those facts, it would be impossible for the Court to determine

7   whether Kalshi's offerings fall within the definition of event contracts over which the CFTC has

8   exclusive jurisdiction."). But neither civil discovery, nor this action more generally, are the

9   appropriate vehicle to challenge a listing on a DCM. That sort of challenge would need to take the

10  form of a suit against the CFTC under the Administrative Procedure Act (a challenge that could not

11  be made in this case, to which the CFTC is not a party). In any event, the meaning of "swap" under

12  the CEA, and whether Kalshi's contracts are swaps (they are), are purely legal questions requiring no

13  discovery. 7 U.S.C. §§ 1a(47)(A)(ii), 7a-2(c)(5)(C)(i).

14      For similar reasons, Kalshi's compliance with the CFTC's requirements, and the CFTC's

15  decisions about how and whether to exercise its authority (to set aside otherwise CEA-compliant

16  contracts on "public interest" grounds), are **questions for the CFTC**, not this Court. The CFTC

17  agrees. In litigation involving the CFTC's authority to regulate Kalshi's political-event contracts, the

18  CFTC explained that, "due to federal preemption, event contracts **never** violate state law when they

19  are traded on a DCM." CFTC Br. at 27, *KalshiEX LLC v. CFTC*, No. 24-5205, 2024 WL 4512583,

20  (D.C. Cir. Oct. 16, 2024) at *27 (emphasis added). The CFTC's view contrasts with Defendants'

21  flawed reliance on *Southwest Key Programs, Inc. v. City of Escondido*, 2017 WL 1094001, at * 9

22  (S.D. Cal. Mar. 24, 2017) (cited in ECF 89 at 10), in which the court found "significant[]" that "the

23  federal government declined to assert federal jurisdiction" and "[a]s a result," the court had

24  "reservations" about the litigant's preemption arguments. Here, no such federal disavowal exists,

---

[4] Other features of the CEA underscore the CFTC's exclusive jurisdiction. For example, Section 2's savings clause preserves states' and other regulatory authorities' jurisdiction "[e]xcept as hereinabove provided" by the grant of exclusive jurisdiction to the CFTC. *Id.* That language enables a "logical inference" of preemption as to matters within the CFTC's jurisdiction. *See Omnipoint Commc'ns, Inc. v. City of Huntington Beach*, 738 F.3d 192, 195–96 (9th Cir. 2013) (interpreting savings clause with an "[e]xcept as provided" proviso) (emphasis added).

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

1    and no further development of the record is required.

2          It is telling that neither brief cites case law rebutting the notion that field preemption is "purely

3    legal." *See* Moving Brief at 6-7 (citing *Sayles Hydro Assocs. v. Maughan*, 985 F.2d 451, 454 (9th

4    Cir. 1993)).  Defendants do not directly address the question, and NRA does so only half-heartedly

5    through citations to three cases.  The first, *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S.

6    132, 146-52 (1963), does not rely on the record in its discussion of field preemption, instead looking

7    to the text of the Agricultural Adjustment Act (the federal law at issue) and Congress's intent.  The

8    Supreme Court contrasted the Agricultural Adjustment Act with the Federal Tobacco Inspection Act,

9    which it previously determined preempted state law because Congress had declared the need for

10   "uniform" standards, just as it has with the CEA.  *Id.* at 147-48 (Agricultural Adjustment Act did not

11   "reveal a design that federal marketing orders should displace all state regulation" or otherwise

12   indicate a "comprehensive congressional design.").  NRA's attempt to resuscitate *Colorado Anti-*

13   *Discrimination Commission* and *Chowdhury*, both of which were distinguished in the Moving Brief

14   (at 8-9), also fails.  NRA cites the *Colorado Anti-Discrimination Commission* court's call for review

15   of the facts under its Dormant Commerce Clause analysis coupled with the court's separate

16   preemption analysis.  ECF 90 at 6.  The latter included no examination of the facts.  372 U.S. 714,

17   718-25 (1963).  And unlike in *Chowdhury*, where the court concluded that defendants had not

18   established that as a matter of law, California's antidiscrimination laws "tread[]" on federal regulation

19   of airline security, there is no genuine debate that Nevada's cease-and-desist demand is an attempt to

20   regulate trading on a DCM.  238 F. Supp. 2d 1153, 1156-57; ECF 90 at 8.

21         **B.       Analysis Of Conflict Preemption Requires No Discovery In This Case.**

22         Because the Court can resolve this case on field preemption grounds alone, it has no need to

23   address conflict preemption.[5]  But even if it did, NRA's heavy emphasis on supposed conflict

24   preemption issues is a diversion.  ECF 90 at 9-11.  The conflict is simple: the cease-and-desist letter's

25   directive that Kalshi cease "offering any event-based contracts in Nevada" conflicts with the fact that

26

27   [5] In its preliminary injunction order, the Court held that it "need not address conflict preemption"
     because Kalshi is "subject to the CFTC's exclusive jurisdiction and state law is field preempted."
28   ECF 45 at 13 & n.6.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

the same contracts are lawfully traded on Kalshi's exchange, as the Court has already held. ECF 45 at 16 ("[T]he status quo . . . is that these contracts are legal under federal law."). No amount of discovery will change the fact that that basic conflict exists.

*First*, Nevada's application of its gambling laws to Kalshi's contracts subverts Congress's aim of bringing futures markets "under a uniform set of regulations." *Am. Agric. Movement*, 977 F.2d at 1156. This is the necessary implication of the cease-and-desist letter, which would stop Kalshi's operations in Nevada but no other state. And it would require Kalshi to stop offering event contracts based on the outcomes of elections that a federal district court already found are permitted under federal law. *KalshiEX LLC v. CFTC*, 2024 WL 4164694, at *2, *12 (D.D.C. Sept. 12, 2024).

*Second*, Nevada's cease-and-desist demand conflicts with Congress's chosen "method of enforcement." *Arizona v. United States*, 567 U.S. 387, 406 (2012). Where Congress reserves enforcement discretion for federal authorities, a regime allowing for state enforcement regarding the same actions violates the federal scheme. *Id*. at 409. The CEA sets out a detailed enforcement scheme, overseen by the CFTC, for all federally registered DCMs, which applies to all derivatives (including all event contracts) traded and executed on those platforms. *See, e.g.*, 7 U.S.C. §§ 6(a), 6a(a)(1), 6c(a)(6), 9, 12. Nevada's cease-and-desist letter plainly interferes with that scheme.

*Third*, complying with Nevada's demand to cease offering event contracts in Nevada could force Kalshi out of compliance with the CEA's "Core Principles," including that DCMs such as Kalshi provide their users "with impartial access to [their] markets and services" nationwide and that they establish mechanisms to prevent "market disruptions." 17 C.F.R. §§ 38.151(b), 38.255. Excluding traders located in Nevada from a *nationwide* marketplace is the kind of discriminatory barrier that the impartial access standard prohibits. Similarly, applying Nevada law requirements solely to Kalshi participants who come and go from Nevada while continuing to trade on Kalshi would undeniably disrupt Kalshi's *nationwide* market—whether the effect would be to preclude participants from trading while in Nevada, or subject their trades and contract positions to different rules solely based on where they are when they transact. The consequence of allowing Nevada to apply its gambling laws to Kalshi's exchange-traded event contracts is clear without resort to any additional facts. Contrast this certainty with the question presented to the Ninth Circuit in *Arizona*

*Dream Act Coalition v. Brewer*, 757 F.3d 1053 (9th Cir. 2014). There, the court analyzed the conflict between Arizona's policy to prevent recipients of Deferred Action of Childhood Arrivals ("DACA") status from obtaining driver's licenses and the federal government's authorization that DACA recipients may receive Employment Authorization Documents. The court determined it needed proof of the "link between driver's licenses and the ability to work in Arizona" because, on their face, the federal and state provisions regulated distinct conduct. *Id*. at 1062. Not so here—the exact same conduct is at issue, and yet Nevada claims that it is subject to the wildly divergent policy objectives of the federal government **and** fifty states plus the District of Columbia. In granting the CFTC exclusive jurisdiction, Congress said otherwise.

## II. Defendants Seek Discovery Into Facts That Are Either Undisputed, Judicially Noticeable, or Irrelevant.

Defendants seek discovery into five principal topics: (1) the "nature" of the event contracts Kalshi offers so that they can contest if they qualify as swaps under the CEA; (2) Kalshi's registration with the CFTC and the CFTC's regulatory requirements; (3) the manner in which the CFTC has exercised its regulatory authority over Kalshi; (4) the various ways in which the CFTC's regulation of Kalshi conflicts with state law; and (5) the harm to Kalshi that would arise from complying with the cease-and-desist letter. ECF 89 at 10-15; ECF 90 at 8-13. Even if any discovery were necessary (it is not), these areas of inquiry either include information that is publicly available and judicially noticeable under Federal Rule of Evidence 201, or that is irrelevant to the preemption issue.

*First*, documents identifying all of Kalshi's event contract offerings (including historical) are available on Kalshi's website. *See Regulatory Documents*, Kalshi, kalshi.com/regulatory/product-certifications (last accessed Aug. 15, 2025). And in any event, because the cease-and-desist letter extends to **all** of Kalshi's offerings, the specifics of any particular contract—including their potential financial, economic, or commercial consequences—are irrelevant to the preemption question. ECF 1-2 at 2. The CFTC has permitted all of Kalshi's contracts to be traded on its DCM, and any inquiry into their potential financial, economic, or commercial consequences would run afoul of the CFTC's exclusive jurisdiction.

*Second*, documents evidencing Kalshi's status as a DCM are also publicly available, as are

BAILEY✦KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

1   the requirements that it must follow as a DCM.  Defendants do not need discovery into those

2   requirements when they are (a) legal matters, and (b) available online

3   (www.cftc.gov/IndustryOversight/TradingOrganizations/DCMs/index.htm); in the U.S. Code,

4   7 U.S.C. § 7(d); and in the Code of Federal Regulations, *see* 17 C.F.R. pt. 38 & Appendix B.

5          *Third*, Defendants' proposed inquiry into the manner of the CFTC's regulation of Kalshi is

6   not relevant here because the question whether a particular event contract is a swap is a purely legal

7   question to which the CEA's broad definitional text provides a clear answer.  *See* 7 U.S.C.

8   § 1a(47)(A)(ii) (defining a swap as "any agreement, contract, or transaction . . . that provides for any

9   purchase, sale, payment, or delivery . . . that is dependent on the occurrence, nonoccurrence, or the

10  extent of the occurrence of an event or contingency associated with a potential financial, economic,

11  or commercial consequence").  The CFTC's decision to review them or not under the Special Rule is

12  irrelevant; indeed, Congress has deliberately abandoned the requirement that *any* derivative be

13  approved by the CFTC before being listed on a DCM.  *See* 64 Fed. Reg. 40528, 40530 (July 27, 1999)

14  (discussing prior requirement that new contracts receive agency approval before they became

15  effective).

16         Nor do Defendants need evidence of Congressional intent—something Kalshi could have no

17  evidence of, and which can be gleaned only from the text of the CEA and, if the Court is inclined,

18  legislative history.  Defendants are not entitled to conduct an audit of the federal regulatory scheme

19  for swaps trading on the basis of conjecture.  Notwithstanding the unambiguous statutory language

20  that controls here, Congressional intent is a legal question.

21         Along the same lines, Defendants' requests for Kalshi's communications with the CFTC are

22  thinly veiled efforts to challenge the sufficiency of the CFTC's regulation of Kalshi as a DCM and

23  Kalshi's self-certification of its event contracts.  But those points are settled in the plain text of the

24  CEA, where Congress said that the CFTC regulates DCMs, and that DCMs can self-certify their

25  contracts.  No amount of discovery will change what the law says.  Even more troublingly,

26  Defendants imply that Kalshi is somehow exercising improper "political influence" over the CFTC.

27  *See*, *e.g.*, ECF 90 at 11.  If Nevada has an issue with the CFTC's regulatory process, it should take it

28  up with the agency or its overseers in Congress.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

*Fourth*, given the CFTC's exclusive jurisdiction, Defendants' discovery requests bearing on their claim that Kalshi can somehow comply with *both* federal and state law provide further evidence that discovery here would be futile.  The only issue in this case is whether enforcement of the cease-and-desist letter is preempted by the CEA.  Broader questions involving Kalshi's ability to additionally comply with preempted state law are irrelevant.  And here, Chief Judge Gordon has already held that Nevada's gaming laws are field preempted.  ECF 45 at 13 & n.6.

In any case, a state agency (let alone a trade association such as NRA) cannot challenge the conclusion that Kalshi's event contracts became—and remained—effective upon self-certification. 7 U.S.C. § 7a-2(c)(1); 17 C.F.R. § 40.2(a).  As noted *supra,* any efforts to identify, for example, "particular event contracts" that "make parallel compliance impossible" (ECF 90 at 10) are unnecessary where the Court has already held that Kalshi is *only* subject to the jurisdiction of the CFTC, and Defendants have argued that ***all*** of its event contracts are unlawful in any case.  Nor is it clear why NRA seeks to identify "particular market participants" on Kalshi's platform to ascertain whether Kalshi is complying with Nevada state law (ECF 90 at 10) when Kalshi is required to provide "impartial access to its markets and services" nationwide.  17 C.F.R. § 38.151(b).

*Finally*, discovery is not required to evaluate whether Kalshi would suffer irreparable harm in the absence of injunctive relief.  As the Court has already credited on the existing record, Kalshi faces a Hobson's choice between defiance of a still-pending cease-and-desist letter or the reputational, regulatory, and non-recoverable financial harm that would ensue if Kalshi were to comply.  And Kalshi will suffer irreparable harm absent an injunction, because an injunction is the only way to effectuate a judgment preventing the enforcement of preempted state law.  *See* ECF 45 at 15.

True, Kalshi's request for permanent injunctive relief requires it to prove that an injunction would be in the public interest.  But it "is always in the public interest to prevent the violation of a party's constitutional rights." *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 731 (9th Cir. 2022) (quotation omitted).  NRA contends, without support, that Kalshi's "gambling offerings" would "exacerbate issues of problem gaming and sporting integrity in Nevada." ECF 90 at 13.  But because Nevada views all of Kalshi's event contracts as "gambling offerings," that framing would open the door to an endless audit of Kalshi's entire business.  This would be state regulation through

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

a back door that Congress slammed shut 50 years ago. That is the particularly the case, where, as here, Congress has given the CFTC exclusive jurisdiction over a DCM, Defendants cannot credibly argue that preemption of state statutes is not in the public interest.

### III.    Kalshi Will Be Harmed If Subjected To Discovery.

Under either approach used to analyze motions to stay discovery in this district, Kalshi has met its burden to prove that good cause exists for a stay here. *See Flynn v. Nevada*, 345 F.R.D. 338, 349 (D. Nev. 2024); *Schrader v. Wynn Las Vegas, LLC*, No. 2:19-cv-02159-JCM-BNW, 2021 WL 4810324, at *2 (D. Nev. Oct. 14, 2021). That is because any discovery is harmful to Kalshi, which has shown that it is entitled to summary judgment. Chief Judge Gordon already determined that Kalshi was likely to succeed on the merits of its preemption claim. ECF 45 at 14. This case can now be decided on the merits with the record already before it. *See* Moving Brief at 13-14. Since Kalshi's preemption claim presents a purely legal question for which no discovery is necessary, it would be a waste of party and judicial resources to proceed with discovery while Chief Judge Gordon considers Kalshi's pending motion for summary judgment. *Id.*

Indeed, requiring Kalshi to comply with any discovery requests under such circumstances is a source of considerable harm, and particularly so where, as here, that discovery would require Kalshi to turn over internal documents to a regulator without jurisdiction and a trade organization representing entities that perceive Kalshi as a competitor. The Court "must" limit the frequency or extent of discovery if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C)(iii). Defendants' contention that any discovery would be "limited" in both scope and timeframe (ECF 89 at 7; ECF 90 at 16) flies in the face of their proposed discovery program. Among the factors that courts should consider when entering a discovery stay is the public's "interest in the speedy resolution of the issues presented." *Schrader*, 2021 WL 4810324, at *4. Here, there is ample good cause to enter a discovery stay on all of those grounds. *Id.* at *5. That is particularly so since Chief Judge Gordon's grant of a preliminary injunction required him to conclude that Kalshi was likely to succeed on the merits of its preemption claim. ECF 45 at 14. That claim is once again before the Court in the form of Kalshi's summary judgment motion, which State Defendants intend to challenge with a Rule 56(d) request (ECF 89 at

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

2), duplicating the arguments made in opposing this motion. When presented with such 56(d) request, if Chief Judge Gordon determines that there are fact issues necessary to resolution of the case, he will deny summary judgment and order discovery into whatever fact issues are identified, as opposed to the kind of broad-based, intrusive discovery Defendants seek here.

State Defendants attack Kalshi for seeking emergency relief (ECF No. 89 at 5-7) and misrepresent the parties' competing views on the propriety of discovery to suggest that the parties jointly proposed deadlines for fact and expert discovery. *Id.* at 4. In actuality, Kalshi has consistently contended discovery in this case is inappropriate and harmful. ECF No. 80 at 2-4. And while ***Defendants*** proposed a discovery schedule, they took the position that Kalshi should seek an immediate stay of discovery if it so desired. *Id.* at 5. The Court then invited Kalshi to file "an appropriate motion to stay discovery so as to afford the Court well-developed arguments in support of its request," which it has. *Id* at 8.[6]

Ignoring the fact that ***any*** discovery would be a form of harm to Kalshi, State Defendants then point to Kalshi's implied enterprise value to suggest Kalshi can absorb the cost the discovery they seek. Even putting aside that the implied value of a young, fast-growing company is in no way a measure of its available funds, the fact remains that State Defendants—regulators which lack jurisdiction over swaps traded or executed on Kalshi—are seeking to use a dispute over a purely legal question to probe Kalshi's files and demand answers to interrogatories they could not otherwise pose. Allowing any discovery in these circumstances represents irreparable harm—a document cannot be unproduced, and an interrogatory cannot be unresponded to—and the harm is only heightened by the breadth of the State Defendants' requests, which are in no way tailored to the legal issue before the Court, and instead target nearly every aspect of Kalshi's business.[7] That some of the requests are

---

[6] Shortly before the deadline for the filing of this brief—and two weeks after Kalshi initially moved for summary judgment and a stay of discovery—Defendants filed an emergency motion seeking to hold briefing on Kalshi's Motion for Summary Judgment in abeyance while the Court considers the stay request. ECF No. 93. Kalshi strenuously opposes the relief sought in that motion and intends to respond in due course.

[7] State Defendants' reliance on their own pled lack of knowledge of readily ascertainable facts should be set aside. ECF 89 at 11-12. "A party may not assert a lack of knowledge or information if the necessary facts or data involved are within his knowledge or easily brought within his knowledge, a matter of general knowledge in the community, or a matter of public record." Wright & Miller, 5 Fed. Prac. & Proc. Civ. § 1262 (4th ed.) (footnotes omitted).

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

1   purportedly related to State Defendants' affirmative defenses does not change the analysis.  ECF 89
2   at 13-14.  "A defendant is not entitled to discovery in connection with a defense merely because the
3   defendant's answer pleads a defense."  *FTC v. AMG Servs., Inc.*, No. 2:12-cv-536-GMN-VCF, 2014
4   WL 5454170, at *10 (D. Nev. Oct. 27, 2014).  This is particularly so when those defenses are based
5   on misrepresentations about Kalshi's public statements, as Defendants' equitable and judicial
6   estoppel defenses are.[8]  And though State Defendants claim a stay would "tie [their] hands" (ECF 89
7   at 15), that is simply not the case in an action where the only issue is a legal question of preemption.
8          For its part, NRA offers two arguments, both misplaced, in support of the idea that discovery
9   here would be harmless.  First, NRA chastises Kalshi for failing to provide specific facts about the
10  "volume, cost, or nature of discovery," despite the fact that NRA ***has not yet served requests***.  ECF
11  90 at 15.  Kalshi's first substantive glimpse at NRA's proposed scope came in NRA's opposition,
12  which revealed an intent to seek wide-ranging discovery untethered to preemption.  Second, NRA
13  criticizes Kalshi because it "brought this lawsuit, yet it seeks to evade discovery in a rush to a final
14  merits ruling."  *Id*.  This is exactly backward.  Kalshi received a cease-and-desist letter from a
15  regulator that lacks jurisdiction, and which sought to shut down the entirety of Kalshi's operations in
16  Nevada.  It had no choice but to seek relief from this Court—on a narrow question of law—and now
17  that same regulator and a trade association are seeking to exploit the discovery process to receive
18  documents from Kalshi they otherwise would have no right to obtain.

19                                          **<u>CONCLUSION</u>**

20         For the foregoing reasons, and those stated in the Moving Brief, Kalshi respectfully requests
21  that the Court stay discovery in this case during the pendency of its motion for summary judgment.

22
23
24

---

25  [8] In litigation before the U.S. Court of Appeals for the D.C. Circuit, Kalshi argued that Congress's
    interest in ensuring gaming contracts were used for bona fide commercial or hedging purposes led
26  to the provision for public-interest review by the CFTC, not that it banned them outright, and
    certainly not that it permitted states to regulate them.  *See* 7 U.S.C. § 7a-2(c)(5)(C); D.C. Cir. Br.,
27  *KalshiEX LLC v. CFTC*, No. 24-5205, 2024 WL 4802698, at *45 (D.C. Cir. Nov. 15, 2024) (it was
    "sensible for Congress to empower the CFTC to at least *review* the category of game-based
28  contracts").  Kalshi never argued that sports-event contracts are not "swaps."

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

DATED this 15th day of August, 2025.

BAILEY ❖ KENNEDY

By: /s/ Paul C. Williams
    DENNIS L. KENNEDY
    PAUL C. WILLIAMS

MILBANK LLP
NEAL KUMAR KATYAL (Admitted *pro hac vice*)
JOSHUA B. STERLING (Admitted *pro hac vice*)
WILLIAM E. HAVEMANN (Admitted *pro hac vice*)
GRANT R. MAINLAND (Admitted *pro hac vice*)
NOLA B. HELLER (Admitted *pro hac vice*)
ANDREW L. PORTER (*pro hac vice* application forthcoming)
*Attorneys for Plaintiff KalshiEX, LLC*

## CERTIFICATE OF SERVICE

I certify that I am an employee of BAILEY❖KENNEDY and that on the 15th day of August, 2025, service of the foregoing was made by mandatory electronic service through the United States District Court's electronic filing system and/or by depositing a true and correct copy in the U.S. Mail, first class postage prepaid, and addressed to the following at their last known address:

| | |
|---|---|
| JESSICA E. WHELAN<br>SABRENA K. CLINTON<br>DEVIN A. OLIVER<br>**STATE OF NEVADA**<br>**OFFICE OF THE ATTORNEY GENERAL**<br>1 State of Nevada Way, Suite 100<br>Las Vegas, NV 89119 | Email:  jwhelan@ag.nv.gov<br>sclinton@ag.nv.gov<br>doliver@ag.nv.gov<br><br>*Attorneys for Defendants* |
| ADAM HOSMER-HENNER<br>A.G. BURNETT<br>JANE SUSSKIND<br>KATRINA WEIL<br>CASSIN BROWN<br>**McDONALD CARANO LLP**<br>100 West Liberty Street, 10th Floor<br>Reno, NV 89501 | Email:<br>ahosmerhenner@mcdonaldcarrano.com<br>agburnett@mcdonaldcarano.com<br>jsusskind@mcdonaldcarano.com<br>kweil@mcdonaldcarano.com<br>cbrown@mcdonaldcarano.com<br><br>*Attorneys for Intervenor*<br>*Nevada Resort Association* |

_____/s/ Paul C. Williams_____
Employee of BAILEY❖KENNEDY