| | |
|---|---|
| DENNIS L. KENNEDY<br>Nevada Bar No. 1462<br>PAUL C. WILLIAMS<br>Nevada Bar No. 12524<br>**BAILEY❖KENNEDY**<br>8984 Spanish Ridge Avenue<br>Las Vegas, Nevada 89148-1302<br>Telephone: 702.562.8820<br>Facsimile: 702.562.8821<br>DKennedy@BaileyKennedy.com<br>PWilliams@BaileyKennedy.com<br><br>NEAL KUMAR KATYAL<br>(Admitted *pro hac* vice)<br>JOSHUA B. STERLING<br>(Admitted *pro hac* vice)<br>WILLIAM E. HAVEMANN<br>(Admitted *pro hac* vice)<br>**MILBANK LLP**<br>1850 K Street, Suite 1100<br>Washington, D.C. 20006<br>Telephone: 202.835.7505<br>Facsimile: 213.629.5063<br><br>GRANT R. MAINLAND<br>(Admitted *pro hac* vice)<br>ANDREW L. PORTER<br>(Admitted *pro hac* vice)<br>VICTOR HOLLENBERG<br>**MILBANK LLP**<br>55 Hudson Yards<br>New York, N.Y. 10001<br>Telephone: 212.530.5000<br>Facsimile: 212.822.5251<br><br>*Attorneys for Plaintiff KalshiEX, LLC* | AARON D. FORD<br>Attorney General<br>JESSICA E. WHELAN (Bar No. 14781)<br>Chief Deputy Solicitor General<br>SABRENA K. CLINTON (Bar No. 6499)<br>Senior Deputy Attorney General<br>**State of Nevada**<br>**Office of the Attorney General**<br>1 State of Nevada Way, Suite 100<br>Las Vegas, NV 89119<br><br>RORY K. SCHNEIDER<br>**MAYER BROWN**<br>1221 Avenue Of The Americas<br>New York, NY 10020<br><br>NICOLE A. SAHARSKY<br>MINH NGUYEN-DANG<br>**MAYER BROWN**<br>1999 K Street NW<br>Washington, DC 20006<br><br>*Attorneys for State Defendants*<br><br>ADAM HOSMER-HENNEN (Bar No. 12779)<br>A.G. BURNETT (Bar No. 5895)<br>JANE SUSSKIND (Bar No. 15099)<br>KATRINA WEIL (Bar No. 16152)<br>CASSIN BROWN (Bar No. 15877)<br>**McDONALD CARANO LLP**<br>100 West Liberty Street, 10th Floor<br>Reno, NV 89501<br><br>*Attorneys for Intervenor-Defendant* |

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| KALSHIEX, LLC,<br><br>                Plaintiff,<br><br>vs.<br><br>KIRK D. HENRICK, in his official capacity as Chairman of the Nevada Gaming Control Board; GEIRGE ASSAD, in his official capacity as a Member of the Nevada Gaming Control Board; CHANDENI K. SENDALL, in her official capacity as a Member of the Nevada Gaming | Case No. 2:25-cv-00575-APG-BNW<br><br>**JOINT SUBMISSION IN RESPONSE TO ORDER GRANTING STIPULATON TO SUSPEND CERTAIN DISCOVERY DEADLINES PENDING RULING ON PLAINTIFF'S MOTION TO STAY DISCOVERY** |

|   |   |
|---|---|
| 1 | Control Board; NEVADA GAMING CONTROL BOARD; JENNIFER TOGLIATTI, in her official capacity as Chair of the Nevada Gaming Commission; ROSA SOLIS-RAINEY, in her official capacity as a Member of the Nevada Gaming Commission; BRIAN KROLICKI, in his official capacity as a Member of the Nevada Gaming Commission; GEORGE MARKANTONIS, in his official capacity as a Member of the Nevada Gaming Commission; ABBI SILVER, in her official capacity as a Member of the Nevada Gaming Commission; NEVADA GAMING COMMISSION; AARON D. FORD, in his official capacity as Attorney General of Nevada, |
| 9 | Defendants. |

Plaintiff KalshiEX, LLC ("Kalshi"), Defendants Kirk D. Hendrick, George Assad, Chandeni K. Sendall, Nevada Gaming Control Board, Jennifer Togliatti, Rosa Solis-Rainey, Brian Krolicki, George Markantonis, Nevada Gaming Commission, and Aaron D. Ford (collectively "State Defendants") and Intervenor-Defendant Nevada Resort Association ("Intervenor-Defendant" and with the State Defendants, "Defendants") (collectively, the "Parties"), by and through their attorneys or record, hereby submit this Amended Stipulated Discovery Plan and Scheduling Order pursuant to Fed. R. Civ. P. 26(f) and this Court's September 2, 2025 Order (ECF 117) (the "Order").

Pursuant to the Order, the Parties met-and-conferred following entry of the Court's Order denying Plaintiff's Motion to Stay Discovery (ECF 118). The Parties were unable to reach agreement on a proposal and thereafter exchanged prefatory and response statements outlining their positions, which are reproduced below.

**Kalshi's Prefatory Position on Revised Discovery Deadlines**: On September 2, 2025, the Court entered the Order, which adjourned deadlines for (1) Kalshi's Responses and Objections to Defendants' First Set of Interrogatories and First Set of Requests for Production (the "Responses and Objections") and (2) disclosure of experts. ECF 117 at 2. The Court further directed the Parties to file revised Discovery Plan and Scheduling Order (either joint, or competing, as necessary) containing revised deadlines for Kalshi's Responses and Objections to State Defendants' Discovery Requests and disclosure of experts. *Id.* The Order did not alter any other case deadlines.

With respect to the Responses and Objections, Kalshi served responses and objections to the State Defendants and Intervenor Defendants' Requests for Production on September 9, 2025,[1] obviating the need for a reset deadline. Kalshi has likewise prepared its responses and objections to Defendants' and Intervenor-Defendant's First Sets of Interrogatories. Such responses contain sensitive and confidential information which Kalshi intends to provide subject to a protective order. Kalshi provided a draft protective order to Defendants on September 5, 2025, but has not yet received any comments or feedback. Kalshi has informed Defendants that it is prepared to serve its responses and objections to their respective interrogatories within one day of the Court entering a protective order proposed by the parties, or within one day of Kalshi receiving written confirmation from Defendants that they will agree to treat designated material provided by Kalshi as subject to a jointly agreed protective order proposed to the Court.

With respect to expert disclosure deadlines, Kalshi proposes initial disclosures be made on **October 1, 2025**, and rebuttal disclosures be made on **October 22, 2025**. Those deadlines would allow the Parties to complete discovery by the October 31, 2025 deadline proposed by Defendants and adopted by the Court. *See* ECF No. 116; ECF No. 117. Kalshi is committed to moving discovery forward in a prompt fashion, as befitting the expedited schedule Defendants proposed. Kalshi has informed Defendants it is prepared to make a substantial document production within a day of a protective order being in place (or agreement by the parties to abide by the terms of a proposed protective order), and has also informed Defendants that it will make Xavier Sottile—who provided a declaration in support of Kalshi's preliminary injunction motion, and who is the only current employee of Kalshi with responsibility for submitting self-certifications to the CFTC—available for a deposition at Defendants' convenience, including as soon as the end of this week, or the beginning of next week.

Kalshi understands from the meet-and-confer process that Defendants intend to seek a broad modification of the case schedule not contemplated by the Order. Kalshi submits that such a request must be made through a motion to alter or amend the schedule pursuant to Fed. R. Civ. P. 16(d), and

---

[1] Intervenor-Defendant served its discovery requests on Kalshi on August 15, 2025. By rule, Kalshi's deadline to respond to these requests was September 15, 2025.

will respond to the specifics of Defendants' proposal in its response statement.

**Kalshi's Response to Defendants' and Intervenor-Defendant's Prefatory Position:**

The Parties stipulated to, and the Court ordered, an agreement that contemplated the resetting of deadlines for just (1) expert disclosures and (2) certain of Kalshi's responses and objections to discovery requests. Kalshi's proposal does just that. Defendants, in contrast, have seized on that narrow Order to propose a vast expansion of the entire case schedule and the consolidation of discovery in this case with that of one of Kalshi's competitors. The schedule proposal runs contrary to a litany of statements previously made by Defendants to the Court emphasizing the expedited and narrow nature of contemplated discovery. And the proposed consolidation with *North American Derivatives Exchange, Inc. v. Nevada et al.,* No. 2:25-cv-978 (D. Nev.) (*Crypto.com*) was never even mentioned to Kalshi in the meet-and-confer process, who first learned of it when they received Defendants' prefatory submission. Both requests are procedurally improper in response to the Order, and though Defendants are free to make them, they should be required to do so through appropriate motions, to give the Court an adequate opportunity to consider the Parties' positions. Kalshi responds to the proposals in turn below.

**Case Schedule**

The current case schedule in this case was proposed by Defendants, who, from the start, have repeatedly emphasized the need for expedited discovery. At the May 15, 2025 status conference, counsel for the State Defendants told Chief Judge Gordon, "[i]t's obviously . . . in defendant's best interest to get this resolved quickly, and that's why in any proposed discovery plan that we would submit *we would likely be looking to complete discovery ahead of the standard time frame*. I think I proposed to plaintiff's counsel 90 to 120 days to get everything done, so we're looking to move quickly." ECF No. 119 at 16:1-7 (Whelan) (emphasis added). Defendants emphasized the same in their scheduling proposal. *See* ECF No. 79 at 4 ("Defendants and Intervenor-Defendant propose that discovery in this action proceed in the normal course, *although along a shortened discovery schedule* to account for the pending preliminary injunction.") (emphasis added). And Defendants again relied on the expedited nature of the schedule in opposing Kalshi's motion to stay discovery, emphasizing to Magistrate Judge Weksler the limited nature of the discovery sought, and that the

short time frame would reduce any costs borne by Kalshi. *See* ECF 115 at 18:15-19 (Whelan) ("[T]his Court has already entered an expedited discovery schedule. Discovery is set to close on October 31st. There has been a dozen or so, you know, a few dozen discovery requests going on. The scope of depositions that we would want is quite limited."), 19:9-13 (Whelan) ("I would find that to be a bit specious to say that this could go into the seven figures, given that we're at the end of August already, so we're looking at September and October, two months of discovery.").

Now, Defendants seek to extend the very same discovery deadlines that *they* proposed, and the Court adopted, including the October 31, 2025 deadline for the close of discovery. *See* ECF 79 at 6. And they make their request not through a motion under Fed. R. Civ. P. 16(d), but rather in response to an ordered stipulation that called for the adjustment of only select deadlines following the disposition of Kalshi's motion to stay. In doing so, Defendants have not provided any reason why discovery could not be completed by the expedited deadline that they proposed, October 31, 2025—particularly where, as described below, Kalshi is actively working to facilitate such discovery.

Defendants contend that "Kalshi has prevented any meaningful fact discovery from occurring." The exact opposite is true. Discovery has been open since the Court ordered it to proceed on July 7, 2025—more than *two months ago*—and any factual issues that Defendants believe exist have been clear since Kalshi obtained a preliminary injunction in April. Nevertheless, Defendants waited nearly a month after the opening of discovery—until August 1, 2025, the same day Kalshi had previously told the Court and Defendants that it intended to file its motions for summary judgment and for a stay of discovery (*see* ECF 79 at 2)—to serve its discovery requests. Had Defendants promptly served their discovery requests, Kalshi would have been required under the Federal Rules of Procedure to respond within thirty days, and then the parties could begin the meet-and-confer process regarding areas of disagreement. Defendants chose not to do so.

And Defendants' contention that new product offerings from Kalshi necessitate additional discovery is a red herring. The cease-and-desist letter at issue in this case seeks to bar Kalshi from offering *all* event contracts in Nevada. If Kalshi's offering of a new product type were a reason to extend discovery, it would never end. Further, Defendants cite an article from August 18, 2025 in

1  support of this point, but have not issued any new discovery requests to Kalshi regarding these
2  contracts in the interim, nor have Defendants explained why their current discovery requests do not
3  cover these contracts.  Indeed, Kalshi's forthcoming document production will include its
4  certifications to the CFTC for the complained-of new products, including a discussion provided to
5  the CFTC for the potential financial, economic, or commercial consequences of each.

6  Likewise, Defendants' attempt to excuse their failure to expeditiously request discovery by
7  pointing to Plaintiff's pending motion to stay is just that—an excuse.  Defendants were well aware
8  when the parties made their joint proposal regarding the discovery plan and case schedule that
9  Plaintiff planned to move for summary judgment and a stay of discovery by August 1, 2025. *See*
10 ECF 79 at 2, 5.  Defendants still proposed an October 31, 2025 deadline for the close of discovery.
11 And once the Court ordered discovery to proceed on July 7, 2025, Defendants did not actively pursue
12 it for weeks.  Instead, State Defendants waited until late in the evening on August 1, 2025 (Kalshi's
13 declared filing date for its motions for summary judgment and a stay of discovery) to issue their
14 original requests.  Intervenor-Defendant waited until late in the evening on the day Kalshi's reply
15 papers for its motion to stay were due to do the same.  And now, Defendants seek to not only extend
16 the discovery by months, but alter the entire arc of the case without any explanation or justification.
17 This reversal can only be motivated by Defendants desire to delay a decision on the merits by
18 suggesting there is a substantial discovery record that must be uncovered before the Court rules on
19 Defendants' motion for summary judgment.

20 Indeed, to the extent Defendants' proposal is targeted at altering the current schedule for
21 briefing Kalshi's motion for summary judgment, it should be rejected.  Rule 56(b) is unambiguous
22 that a party may move for summary judgment "at any time" prior to 30 days after the close of
23 discovery. At the May 15, 2025 status conference, Chief Judge Gordon made clear he viewed that
24 rule as controlling: "So if I just say, follow the rules. . . . You can file a summary judgment motion
25 anytime you want . . . ." ECF No. 119 at 14:25-15:3; *see also id.* at 9:15-17 ("[I]f [Kalshi] believes
26 there is no genuine issue of fact, nothing stops you from filing an MSJ at this point."). And when
27 Defendants' counsel raised the prospect of factual issues with respect to summary judgment, Chief
28 Judge Gordon referred her to Rule 56(d), which is the proper avenue to challenge a motion for

summary judgment when a party contends that they lack essential facts:

> Ms. Whelan: If I can respond to one thing that Mr. Havemann mentioned, which is he thinks with respect to the non-monetary damages they have established that by the declaration that was attached to, I think, the motion for temporary restraining order. I mean, that's exactly the type of thing that, you know, they have all the facts in their possession that were stated in that declaration and so we should be entitled to go ahead and depose the declarant, to seek documents in support for that declaration so that we're not just shooting from the hip in our response to any motion for summary judgment.
>
> The Court: And there's certainly the provision under, I think it's 56(d), that allows the party to say, we're allowed to do discovery and here's why and here's what we think we're going to find.

*Id*. at 16:16-17:4. Indeed, Defendants have already once requested that the Court delay briefing on the motion for summary judgment until after the close of discovery,[2] and Chief Judge Gordon declined to grant that relief, instead extending the deadline for Defendants to file their opposition by one month. *See* ECF 109. While Kalshi recognizes that Magistrate Judge Weksler found that some of the arguments Kalshi made may implicate factual issues, Kalshi respectfully submits that this case is still ripe for resolution on its pending summary judgment motion. To the extent Defendants contest that, the proper avenue to do so is through a Rule 56(d) application, which will allow Chief Judge Gordon to determine if any discovery is necessary—and if so, on what subjects—to determine whether Kalshi is entitled to judgment as a matter of law.

In the meantime, however, Kalshi—notwithstanding its stay motion and in contrast to Defendants' approach—has taken efforts since July to prepare for discovery, and is committed to completing it on the expedited scheduled requested by Defendants and ordered by the Court. On Friday, September 5, 2025—two days after the Court issued its order denying requests for a stay—Kalshi circulated a draft protective order and ESI protocol to Defendants (who have yet to respond). It has served its responses and objections to the State Defendants' document requests (ahead of the stipulated deadline to even propose a new deadline), and to the Intervenors' document requests (six days ahead of when they were due under the applicable rules).[3] And as Kalshi has communicated

---

[2] *See* ECF 93 at 5 ("Specifically, if the Court denies the Emergency Motion to Stay, then the State Defendants and the NRA request that the Court hold in abeyance the briefing on the Motion for Summary Judgment until the close of discovery.").

[3] Defendants fault Kalshi for seeking to meet-and-confer in response to several of Defendants'

to Defendants, it is prepared to serve its interrogatory responses within a day of the parties reaching agreement on the terms of a protective order. Within that same day, Kalshi will produce hundreds of Kalshi event contract self-certifications provided to the CFTC, for all event types (including sports), since January 1, 2025.[4] That production—which numbers more than 34,000 pages—will include confidential appendices submitted to the CFTC, including any that address, among other things, the "potential financial, economic, or commercial consequences" associated with the underlying events. As for depositions, during a meet-and-confer call on September 5, 2025, Kalshi noted Defendants have yet to notice a deposition, but inquired as to their plans. Counsel for State Defendants represented they had not made any final decisions on depositions, but they expected to at least depose Mr. Xavier Sottile—who provided a declaration in support of Kalshi's preliminary injunction motion—as well as an employee of Kalshi involved in Kalshi's contract self-certification process. Kalshi explained that Mr. Sottile is the only current employee of Kalshi with responsibility for submitting self-certifications to the CFTC, and that Kalshi was willing to make Mr. Sottile available for a deposition at Defendants' convenience, including as soon as the end of this week, or the beginning of next week. In response, Defendants stated they were unlikely to seek a deposition of Mr. Sottile until later in the discovery period.

The Court should not indulge Defendants premature and improper request to modify the case schedule in response to the stipulated order. That is particularly the case where, as here, Kalshi has committed to providing discovery on an expedited schedule—and ***on the very same schedule that Defendants themselves proposed***. Instead, the Court should allow discovery to proceed on the current schedule. And, at the very least, if the Court is inclined to consider a modification of the schedule, it should direct Defendants to file a motion to alter or amend pursuant to Rule 16(d), so that it can consider the question in full rather than in this abbreviated form.

---

requests. But this is a normal part of the discovery process, and necessitated by the extraordinary breadth of many of the requests, which sought, for example, "[a]ll Communications to or from any official, employee, or representative of the United States Government reflecting, referencing, or discussing Kalshi's event contracts." Kalshi is committed to meeting and conferring promptly, and in good faith, in an attempt to resolve any discovery disputes. To the extent the Parties are unable to resolve those disputes, the appropriate remedy is a motion to compel, not an extension of the discovery schedule before Defendants have even requested an initial meet and confer.

[4] Kalshi did not self-certify its first sports event contract until January 24, 2025. *See* ECF 1 ¶ 53.

**Consolidation**

In addition to extending the schedule, Defendants propose an even more significant change to the case—consolidation of discovery with *Crypto.com*. Kalshi first learned of this request when the Parties exchange initial position statements on the afternoon the instant filing was due to the Court.[5] As a result Kalshi (1) does not have the benefit of understanding the details of Defendants' proposal beyond what is stated in Defendants' initial position statement, and (2) has not had an opportunity to meaningfully confer with counsel regarding the proposal. In any event, the proposal goes well beyond the adjustment of certain discovery deadlines called for by the stipulation, and is potentially problematic for a number of reasons. These include, but are not limited to, issues related to comingling of sensitive discovery from Kalshi and Crypto.com, which are competitors, the fact that Crypto.com and Kalshi offer distinct event contracts from one another, and the fact that Crypto.com, which would be a necessary party to any consolidation request, is absent here. While it is premature for Kalshi to take a position on a consolidation proposal it learned of just hours ago, in any event, it opposes coordination of the schedules between the two cases for the reasons stated above. And to the extent the Court is inclined to consider a consolidation proposal, it should only do so with the benefit of full briefing on the matter.

**Defendants' and Intervenor-Defendant's Prefatory Position on Revised Discovery Deadlines**:

The Court has now denied Plaintiff's emergency motion to stay discovery, recognizing that "discovery is needed" in this case. Stay Order (ECF No. 118) at 4. To date, however, Kalshi has prevented any meaningful fact discovery from occurring. Accordingly, this case remains in a very similar posture to *North Am. Derivatives Exchange, Inc. v. Nevada et al.,* No. 2:25-cv-978 (D. Nev.) (*Crypto.com*), a related case pending before this Court which raises substantially similar issues. *See Crypto.com*, 25-cv-978 (ECF No. 14) (Notice of Related Case).

This Court just entered a schedule for discovery in *Crypto.com* on September 3, 2025. *Crypto.com*, No. 25-cv-978 (ECF No. 56) (Scheduling Order). Defendants and Intervenor-

---

[5] In a meet-and-confer call Defendants suggested they may propose a schedule mirroring that of the *Crypto*.com case, but never raised the prospect of consolidation.

Defendants ("Defendants") propose that the schedules in both actions be aligned. That alignment would allot reasonable time in both cases for the parties to conduct fact discovery before the deadline for initial expert disclosures, and would ensure consistency across discovery, including in rulings that the Court renders concerning the appropriate scope of discovery. In light of the preliminary injunction that is in place, Plaintiff will suffer no prejudice if discovery is coordinated with and proceeds on a similar schedule as *Crypto.com*.

The Court should put in place a new schedule that aligns with *Crypto.com* because discovery has not yet begun in earnest. Shortly after the entry of a discovery plan and scheduling order in this action on July 7, 2025 (ECF No. 80), Defendants served initial disclosures on July 21, and a first set of requests for production and interrogatories on August 1, 2025. On the same day, Plaintiff filed their emergency motion to stay discovery (ECF No. 87). Because the scope of discovery remained uncertain during the pendency of that motion, the parties agreed to adjourn immediate deadlines for disclosure of experts and for Plaintiff's responses and objections, and agreed to "submit a revised Discovery Plan and Scheduling Order (either joint, or competing, as necessary) containing revised deadlines for disclosure of experts and Plaintiff's Responses and Objections" following decision on the motion. *See* ECF No. 116. As a result, no meaningful fact discovery has taken place.

In its recent order, the Court confirmed that Defendants are entitled to discovery (and in fact need discovery to respond to Kalshi's motion for summary judgment) into a number of issues, including, for example, whether Kalshi's political- and sports- events contracts "have independent, real-world consequences and thus, fall under the exclusive jurisdiction of the CFTC"; "the way in which eliminating contracts in Nevada would risk and/or facilitate market manipulation and the Core principles Kalshi maintains would be violated (and on which its federal designation depends)"; and "matters associated with reputational harm, potential CFTC consequences for failure to comply with Core principles, costs of geolocation, and public interest." Stay Order (ECF No. 118) 3-4.

Indeed, Kalshi has continued to self-certify and offer new types of sports betting contracts on its platform, including contingent parlays, prop bets, and point spreads: quintessential sports-

betting concepts and tools. *See, e.g.*, Dustin Gouker, *News: Kalshi Can Now Offer Point Spreads, Totals and TD Props for Football Games*, THE EVENT HORIZON (Aug. 18, 2025), https://nexteventhorizon.substack.com/p/news-kalshi-can-now-offer-point-spreads-totals-football; Daniel O'Boyle, *Off and Running: Kalshi Lists its First Player Prop Bets*, YAHOO SPORTS (Sept. 4, 2025), https://sports.yahoo.com/article/off-running-kalshi-lists-first-201200036.html. Kalshi's expansion into additional sports betting products has rendered discovery a moving target: Since Kalshi seeks sweeping and permanent injunctive relief that would prevent Defendants from regulating any of its event contracts (including those listed in the future), Defendants are entitled to fully vet these and other intended offerings.

Now that the Court has determined that discovery is appropriate, the parties should have a mutual interest in ensuring that discovery is conducted in an orderly and effective manner. Coordinating the discovery schedule here with the schedule entered in *Crypto*.com will do that, by allotting reasonable time for the parties to conduct fact discovery prior to the deadline for initial expert disclosures. And given the significant overlap in legal and factual issues in these actions, coordinating discovery will promote judicial economy by allowing cross-cutting discovery issues to be addressed together in full context.

Plaintiff's proposed schedule is not workable and would prevent the orderly conduct of discovery. Under Plaintiff's proposal, initial expert disclosures would be due on October 1, rebuttal expert disclosures would be due on October 22, and discovery would end on October 31. But Plaintiff only served responses and objections to initial document requests yesterday (September 9), and has yet to produce any documents. Combined with Plaintiff's proposal, these responses demonstrate Plaintiff's intent to run out the clock and resist discovery despite the Court's order denying a stay. Even were Plaintiff to make a document production today, its proposed schedule would leave at most three weeks to review Plaintiff's production, raise and resolve disagreements concerning the scope of that production (and any other discovery that may be sought), conduct witness depositions, and incorporate the resulting discovery into initial expert disclosures.

The content of Plaintiff's recent responses and objections underscores the impracticability of Plaintiff's proposed schedule. For example, all Plaintiff agreed to produce in response to the

State Defendants' ten initial document requests are (1) its certifications to the CFTC between January 1, 2025 and September 4, 2025 and (2) risk-management and consumer-safety policies in its Rulebook and other unspecified "compliance-related materials." As to every other type of document requested, Plaintiff either outright objected to producing any information or offered to meet and confer—in both instances based on facially boilerplate objections. The documents that Plaintiff agreed to produce scratch the surface of what the Court has already deemed appropriate. *See* Stay Order (ECF No. 118). The schedule must, at minimum, allow for time for the parties to meet and confer as Plaintiff proposes and, if necessary, raise with the Court objections, if any, they are unable to resolve without court intervention.

Plaintiff suggests that Defendants are responsible for any time pressure that may result from its proposed schedule because Defendants could have served document requests earlier than August 1. But there is no indication that Plaintiff would have participated in discovery in that event; Plaintiff would still have moved to stay discovery, and the parties would be in the same position as they are today. Rather than engage in finger pointing, the parties' focus should be on establishing a workable schedule that permits the discovery that the Court has found appropriate. Plaintiff will suffer no prejudice if discovery in this case proceeds at a reasonable pace in coordination with discovery in the *Crypto.com* action. Kalshi sought and obtained a preliminary injunction to preserve the status quo.

The schedule proposed below aligns with the *Crypto.com* schedule, and Defendants request that the Court adopt it. At minimum, the Court should decline Plaintiff's proposed schedule and direct the parties to jointly propose a compromise schedule.

**1. Pending Discovery Requests:** Defendants served a First Set of Requests for Production, dated August 1, 2025, and a First Set of Interrogatories, dated August 1, 2025. Intervenor-Defendant served a First Set of Requests for Production on August 15, 2025. Plaintiff served responses and objections to the Requests for Production on September 9, 2025. A limited production of documents and answers to interrogatories are awaiting the entry of a protective order.

**2. Proposed timing and sequence of remaining discovery:**

Defendants and Intervenor-Defendant submit that the following discovery deadlines should be entered:

a) **Discovery cut-off:** March 2, 2026.

b) **Responses to Defendants' Outstanding Requests for Production and Interrogatories:** September 17, 2025.

c) **Expert disclosures:** 60 days before the close of discovery pursuant to LR 26-1(b)(3), or alternatively January 2, 2026.

d) **Expert rebuttal disclosures:** 30 days after the initial expert disclosure deadline pursuant to LR 26-1(b)(3), or alternatively February 2, 2026.

e) **Dispositive motions:** 30 days after the close of discovery, or alternatively April 1, 2026. The Parties further agree that any opposition to a dispositive motion shall be due 30 days after the filing of the motion, and any reply shall be due 30 days after the filing of the opposition.

f) **Pretrial order:** 30 days after the dispositive motion deadline pursuant to LR 26-1(b)(5), or alternatively May 1, 2026.

**3.** **Electronic Information**: Pursuant to the Court's directive, the Parties will submit an ESI Protocol and Stipulated Protective Order, no later than September 15, 2025. *See* Stay Order at 3.

**4.** **Alternative Dispute Resolution:** The parties do not believe that ADR is a viable option at this time.

**5.** **Alternative Forms of Case Disposition (L.R. 26-1(b)(8)):** The parties have considered consent to trial by a magistrate judge under 28 U.S.C. 636(c) and Fed. R. Civ. P. 73 and the use of the Short Trial Program (General Order 2013-01), and do not consent to those alternative forms of case disposition at this time.

**Defendants' and Intervenor-Defendant's Response to Plaintiff's Prefatory Position:** Plaintiff's initial position statement reinforces that its objective is to curtail meaningful fact discovery, despite the Court recently denying its emergency motion to stay and holding that discovery is necessary. The new deadlines Plaintiff proposes leave at most three weeks for initial

expert disclosures despite no meaningful fact discovery having been exchanged. If Plaintiff genuinely wanted to move expeditiously toward resolution, it could have participated in discovery from the get-go. Instead, Plaintiff sought an emergency stay. That was Plaintiff's prerogative. But with its emergency motion having been denied, Plaintiff should not be allowed to unilaterally limit discovery by running out the clock. That is precisely what it proposes.

Nothing in its position statement remotely justifies Plaintiff's proposed deadlines. Defendants would be severely prejudiced were they to be adopted.

*First*, Plaintiff is technically right that the October 1 and October 22 expert disclosure deadlines it proposes "would allow the Parties to complete discovery by the [current] October 31, 2025 deadline." What it would *not* allow is for the parties to complete *fact* discovery in advance of those expert deadlines. Expert disclosures generally occur at the end of the discovery period so that information learned in fact discovery may inform the expert disclosures. It is essential that the new schedule adopted by the Court allow for that; Plaintiff's proposal does not. Indeed, even the ten days it allots for expert depositions is ambitious.

*Second*, Plaintiff suggests that fact discovery can proceed expeditiously because it served responses and objections to Defendants' initial document requests yesterday. But Plaintiff says nothing about *how* it responded and objected to those requests. As explained in Defendants' position statement, Plaintiff only agreed to produce two categories of documents. In response to the majority of Defendants' initial document requests, Plaintiff made improper boilerplate objections and offered to meet and confer. But Plaintiff's proposed expert disclosure deadline of October 1 does not leave nearly enough time for those meet and confers to take place; for any resulting productions to be made and reviewed; and for the Court to address any unresolved objections.

*Third*, Plaintiff further maintain that October 1 is a reasonable deadline for initial expert disclosures because it is "prepared to make a substantial document production" very soon. But Plaintiff neglects to mention that the production will be almost entirely comprised of the self-certifications it has filed with the CFTC this year. Defendants are eager to receive that production and review those filings. But the fact that the production will be "substantial" because Plaintiff have self-certified so many event contracts hardly warrants a compressed window for those documents to

be reviewed and incorporated into initial expert disclosures. In any event, Plaintiff's CFTC filings are only *one* category of documents that Defendants have requested, and they do not address many of the issues identified in the Court's recent order as meriting discovery. Stay Order (ECF No. 118) 3-4.

And even within that single category, Plaintiff's promised production will be deficient as it will not include information about self-certifications filed after September 4. But as explained in Defendants' initial position statement, Plaintiff recently announced its intention to offer new and more novel sports betting contracts. Just today, during oral argument in a related appeal in the Third Circuit, Plaintiff's counsel seemingly acknowledged that certain "player prop bets" would not have a sufficient financial, economic, or commercial consequences to qualify as swaps. *See* Oral Argument Recording, *KalshiEx LLC v. Flaherty*, No. 25-1922, (3d Cir.) (link and citation forthcoming).

*Fourth*, Plaintiff's willingness to "make Xavier Sottile . . . available for a deposition . . . as soon as the end of this week" does not solve the inherent unfairness of its proposed schedule. It is a strategic ploy. After all, Plaintiff has not produced any documents yet, and it objects to the overwhelming number of documents that Defendants request. Defendants should not be forced to examine Plaintiff's marquee witness on an underdeveloped record. If Mr. Sottile is as important a witness as Plaintiff suggests he is, Defendants are entitled to a full documentary record with which to examine him. Indeed, regardless of the witness, documents are a critical to any deposition. Yet again, though, Plaintiff does not explain how its proposed deadlines allow for document discovery *and* subsequent depositions.

*Fifth*, and finally, Plaintiff claims that it is procedurally improper for Defendants to propose an amended schedule because the Court ordered the parties to propose only revised deadlines for Plaintiff's responses and objections and disclosure of experts. Plaintiff insists that to revise other deadlines, Defendants must make a "a motion to alter or amend the schedule pursuant to Fed. R. Civ. P. 16(d)." Plaintiff did not insist on a formal motion to adjourn expert disclosure deadlines, and it identifies no legitimate purpose of requiring such a motion now; doing so would only create additional delay and waste more resources. And while the Court's order only specifically referred to

the deadlines for responses and objections and expert disclosures, it would hardly make sense to shift only those deadlines and not also adjust related ones, like the close of discovery. That is all Defendants propose.

In any event, the rule Plaintiff invokes, Federal Rule 16(d), concerns pretrial orders, not amendments to scheduling orders. Federal Rule 16(b)(4) concerns scheduling order amendments and merely requires a showing of good cause, which Defendants have made for all of the reasons set forth here and in its opening position statement. "'Good cause' is a non-rigorous standard that has been construed broadly across procedural and statutory contexts." *Clarke v. City of Las Vegas*, No. 2:24-CV-01047-CDS-BNW, 2025 WL 1785837, at *2 (D. Nev. June 26, 2025) (citing *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1259 (9th Cir. 2010)). "The good cause inquiry focuses primarily on the movant's diligence." *Id*. Defendants acted diligently by serving initial disclosures and initial discovery requests within a few weeks after the Court issued the original schedule. They should not be penalized for Plaintiff's refusal to engage in discovery until being required to do so by the Court.

Defendants want to proceed with discovery expeditiously. But time must be allotted for that discovery to be meaningful. The stakes are high, and Plaintiff identifies no legitimate harm that would result from instituting Defendants' proposed schedule. Defendants accordingly request that the Court adopt their proposed schedule and allow discovery to proceed on a similar cadence as the *Crypto.com* matter.

Defendants would welcome the opportunity for a status conference to address these issues if the Court would consider that productive.

Respectfully Submitted: September 10, 2025.

| | |
|---|---|
| /s/ Paul C. Williams | /s/ Rory K. Schneider |
| DENNIS L. KENNEDY | JESSICA E. WHELAN, ESQ. |
| Nevada Bar No. 1462 | SABRENA K. CLINTON, ESQ. |
| PAUL C. WILLIAMS | DEVIN A. OLIVER, ESQ. |
| Nevada Bar No. 12524 | **State of Nevada** |
| **BAILEY❖KENNEDY** | **Office of the Attorney General** |
| 8984 Spanish Ridge Avenue | 1 State of Nevada Way, Suite 100 |
| Las Vegas, Nevada 89148-1302 | Las Vegas, NV 89119 |
| Telephone: 702.562.8820 | |
| Facsimile: 702.562.8821 | RORY K. SCHNEIDER |
| DKennedy@BaileyKennedy.com | **MAYER BROWN** |
| PWilliams@BaileyKennedy.com | 1221 Avenue Of The Americas |
| | New York, NY 10020 |
| NEAL KUMAR KATYAL | |
| (admitted *pro hac vice*) | NICOLE A. SAHARSKY |
| JOSHUA B. STERLING | MINH NGUYEN-DANG |
| (admitted *pro hac vice*) | **MAYER BROWN** |
| WILLIAM E. HAVEMANN | 1999 K Street NW |
| (admitted *pro hac vice*) | Washington, DC 20006 |
| **MILBANK LLP** | |
| 1850 K Street, Suite 1100 | |
| Washington, D.C. 20006 | *Attorneys for State Defendants* |
| GRANT R. MAINLAND | ADAM HOSMER-HENNEN (Bar No. 12779) |
| (Admitted *pro hac* vice) | A.G. BURNETT (Bar No. 5895) |
| ANDREW L. PORTER | JANE SUSSKIND (Bar No. 15099) |
| (Admitted *pro hac* vice) | KATRINA WEIL (Bar No. 16152) |
| VICTOR HOLLENBERG | CASSIN BROWN (Bar No. 15877) |
| **MILBANK LLP** | **McDONALD CARANO LLP** |
| 55 Hudson Yards | 100 West Liberty Street, 10th Floor |
| New York, N.Y. 10001 | Reno, NV 89501 |
| Telephone: 212.530.5000 | |
| Facsimile: 212.822.5251 | *Attorneys for Intervenor-Defendant* |
| *Attorneys for Plaintiff KalshiEX LLC* | |

**CERTIFICATE OF SERVICE**

I certify that I am an employee of BAILEY❖KENNEDY and that on the 10th day of September, 2025, a true and correct copy of JOINT SUBMISSION IN RESPONSE TO ORDER GRANTING STIPULATON TO SUSPEND CERTAIN DISCOVERY DEADLINES PENDING RULING ON PLAINTIFF'S MOTION TO STAY DISCOVERY was served by electronically filing with the Clerk of the Court using the Odyssey eFileNV system and serving all parties with an email-address on record, pursuant to Administrative Order 14-2 and Rule 9 of the N.E.F.C.R.

                                                            /s/ Paul C. Williams
                                            Employee of BAILEY❖KENNEDY