UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| KALSHIEX, LLC,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>KIRK D. HENDRICK, in his official capacity as Chairman of the Nevada Gaming Control Board, et al.,<br><br>　　　　　　Defendants,<br><br>　vs.<br><br>NEVADA RESORT ASSOCIATION,<br><br>　　　　　　Intervenor-Defendant. | Case No.  2:25-cv-00575-APG-BNW<br><br>**[PROPOSED] ELECTRONIC DISCOVERY PROTOCOL** |

　　　　The Parties (as defined below) mutually agree to the following protocol (the "Protocol") relating to the Production of Documents (as defined below) and electronically stored information ("ESI") for the above-captioned action.

## I.　GENERAL PROVISIONS

　　　　Nothing in this Protocol affects the Parties' discovery obligations under the District of Nevada's prevailing rules except as stated herein.  The obligations hereunder are not intended to abrogate or diminish any discovery obligations governed by any other order or rule.

　　　　**A.　Scope.**

　　　　The procedures and protocols outlined herein govern the production of ESI and paper Documents (collectively "Discoverable Information") by all Parties to these proceedings, whether they currently are involved or become so in the future.  For any other materials, the Parties shall meet and confer regarding the identification, location, collection, search, form, and format of production for specific items or categories of items.

　　　　All disclosures and productions made pursuant to this Protocol are subject to all orders

entered by this Court in this matter. Nothing in this Protocol shall limit a Party's right to seek or object to discovery as set out in applicable rules or to object to the authenticity or admissibility of any Discoverable Information produced in accordance with this Protocol.

**B.     Limitations and No Waiver.**

The Parties and their attorneys do not intend by this Protocol to waive their rights to the production, discoverability, confidentiality, attorney-client privilege, or attorney-work product protection as to any Discoverable Information addressed in this Protocol. All Parties preserve their attorney-client privileges, work product protections, and other relevant privileges, and there is no intent by the Protocol or the production of Discoverable Information pursuant to the Protocol to in any way waive or weaken these privileges or suggest their inapplicability in any respect to Discoverable Information in these proceedings. Nothing in this Protocol addresses, limits, or determines the relevance, discoverability, or admission into evidence of any Discoverable Information.

**C.     Cooperation.**

The Parties shall conduct discovery in a cooperative manner, including without limitation, by reasonably drafting discovery requests and responses in accordance with Federal Rules of Civil Procedure 1 and 26(b)(1); and producing ESI in accordance with Federal Rule of Civil Procedure 34; and by meeting and conferring in good faith on topics such as identification of key custodians, potentially relevant data sources, search methodologies, and such other issues as may arise during the course of discovery. Prior to bringing any discovery dispute to the Court, the Parties must attempt to resolve the dispute on their own, in good faith, and in accordance with the Local Rules of the District of Nevada and any orders entered by this Court.

**D.     Definitions.**

   **1.**     "Custodian" means an individual employed or formerly employed by a party that is likely to have responsive Documents or ESI.

   **2.**     The definition of "Documents" and ESI is the same as the definitions found in Fed. R. Civ. P. 34(a).

3.  "Parties" shall mean the named Plaintiff, named Defendants, and named Intervenor-Defendant in the above-captioned proceeding.

4.  "Producing Party" or "Producing Parties" shall mean the Party responsible for compiling and producing Discoverable Information in accordance with the terms of this Protocol in response to a request for production of Documents.

5.  "Requesting Party" or "Requesting Parties" shall mean the Party or Parties serving the requests for production of Documents.

## II.    SEARCH AND RETRIEVAL OF ESI

The Parties recognize that discovery is an iterative process.  The Parties will endeavor to agree to a method or methods for the search and retrieval of ESI for purposes of production.  The Parties will discuss the method or methods for the search for ESI as part of the meet-and-confer process pursuant to this Protocol.

### A.    Defining Search Terms.

The Parties agree that ESI can be collected through the use of search terms.  The Producing Party shall provide to the Requesting Party a list of search terms it intends to use to capture responsive ESI it has agreed to produce, or otherwise specify the manner in which the Producing Party intends to locate and produce documents in response to any particular document request.  In connection with proposing such search terms, the Producing Party shall make a reasonable inquiry of client employees to identify relevant terminology, including nicknames, code words, euphemisms, acronyms, slang, terms of art, and other language likely to be contained in responsive Documents; and Producing Party may test its proposed search terms to identify terms that are inadvertently overbroad and/or that fail to capture information that such Producing Party has agreed to produce.  A Producing Party may modify its list of proposed search terms as a result of the aforementioned testing process.   Upon receipt of the search terms and disclosures, if the Requesting Parties have any additions or modifications to the search terms, they must communicate the additional or modified search terms to the Producing Party.  The Parties may then meet and confer regarding the appropriateness of the proposed search term and, where applicable, information regarding the impact

of the proposed search term.  If the Parties are unable to agree on search terms after meeting and conferring in good faith, any Party may notify the Court of the unresolved dispute(s) and seek resolution from the Court.

### B. Other Search Methodologies.

If a Producing Party intends to use a methodology for the search of relevant ESI for purposes of Production other than, or in addition to, the use of search terms, it must disclose sufficient information to the Requesting Parties for them to make a reasonable determination as to the efficacy and efficiency of such proposed search methodology.  If a Producing Party intends to use a review process that relies on AI-assisted review, the Parties agree to meet and confer to determine an appropriate protocol for the AI-assisted review.  If the Requesting Party objects to the use of other search methodologies, the Parties agree to meet and confer in good faith to resolve the dispute.  The Parties shall attempt to resolve any objections before seeking relief from the Court.

### C. Follow-up Discovery.

A Party may for good cause shown request that ESI for additional Custodians be collected and searched and/or that additional search terms be applied.  When such a request is made, the Parties will promptly meet and confer and attempt in good faith to reach agreement as to the additional Custodians or search terms requested.  The Parties reserve all rights and objections with respect to adding Custodians or search terms.  If the Parties cannot reach agreement, such dispute may be presented to the Court for resolution.

## III. FILTERING OF ESI

### A. Email Threading.

1. Email threads are email communications that contain prior or lesser-included email communications that also may exist separately in the Party's electronic files.  A most inclusive email thread is one that contains all the prior or lesser-included emails, including attachments, for that branch of the email thread.  Each Party may produce (or list on any required privilege log) only the most inclusive email threads as long as the most inclusive email thread includes all

non-produced emails that are part of the same string.

  2. Following production of the most-inclusive email threads, a Requesting Party may make reasonable requests for production of individual prior or lesser-included emails within the identified most-inclusive email threads. The Producing Party shall cooperate reasonably in responding to any such requests.

**B.** **De-Duplication.**

  1. "Duplicate ESI" means files that are exact duplicates using an industry-accepted file hash algorithm. The Producing Party need produce only a single copy of responsive Duplicate ESI. A Producing Party shall take reasonable steps to de-duplicate ESI globally (i.e., both within a particular custodian's files and across all custodians). Entire Document families may constitute Duplicate ESI. De-duplication shall not break apart families.

  2. No Party may de-duplicate near duplicates (i.e., Documents containing handwriting or other alterations will not be considered duplicates). The Parties will de-duplicate exact duplicates according to the following requirements:

    a. All custodians who were in possession of a de-duplicated Document must be identified in the CUSTODIAN-DUPE metadata field specified in Section VI.H.1.;

    b. The Parties further agree that an email that includes content in the BCC or other blind copy field will not be treated as a duplicate of an email that does not include content in the BCC or other blind copy field, even if all remaining content in the email is identical; and

    c. If a Producing Party becomes aware of any file that was incorrectly filtered during the de-duplication process and that should have been produced, the Producing Party shall promptly produce the Document

to the Requesting Parties.

**C.  De-NISTing.**

Electronic file collections will be DE-NISTed, removing commercially available operating system and application file information contained on the current NIST file list.

**D.  Zero-byte Files.**

The Parties shall filter out stand-alone files identified as zero-bytes in size.

**E.**  The Parties may meet and confer about additional filtering techniques.

**IV.  PRODUCTION OF HARD-COPY DOCUMENTS**

A Party will produce Documents that exist only in hardcopy form scanned and produced in TIFF form as set out in Section VI.A & VI.C-E.  The scanning must be done such that the resulting image includes all information on the original hardcopy Document.  The production of original hardcopy Documents in TIFF form does not otherwise require that the scanned images be treated as ESI.  For all hardcopy Documents produced in *.tif format, the following fields, if available, shall be provided in the data load file: (a) BEGDOC; (b) ENDDOC; (c) CUSTODIAN; (d) REDACTION; and (e) CONFDESG.

**V.  PRODUCTION OF ESI**

**A.  Document Image Format.**

The Producing Party shall produce Documents in 300 D.P.I. Group IV compression single-page TIFF format images ("Production Images") with associated text files.

**1.**  If ESI has hidden text (e.g., track changes, hidden columns, comments, notes, markups, etc.) associated with it, the Parties shall produce the ESI in a form showing such hidden text to the extent reasonably practicable.

**2.**  Accompanying the production shall be a multipage text (.TXT) file containing searchable text from the native file, including, with regard to email, the email header text, and the metadata identified below.

**3.**  Load files of the Static Images (.OPT files) shall be created and produced together with their associated Static Images to facilitate the use of the

produced images by a Document management or litigation support database system.

### B. Native File Format.

A party shall have the option to produce ESI in native format; provided, however, that all Excel spreadsheets, similar spreadsheet files, or data sets must be produced in native format, unless any such Documents are available only in hard-copy format. All Excel spreadsheets, similar spreadsheet files, or data sets produced in native format without redactions should retain all formulae, macros, and VBA code. Any redaction applied to a native Excel spreadsheet, similar spreadsheet file, or data set shall be performed by freezing the original values of all cells and replacing removed content with "REDACTED" and a brief description of the reason for the redaction.

All Documents produced solely in Native format should (i) have an assigned Document level Bates number, (ii) include a placeholder image for each file that identifies the Bates number, (iii) be renamed according to the assigned Bates number and include an appropriate confidentiality provision if the Document qualifies for confidential treatment pursuant to the terms of any confidentiality and protective order ordered by the Court, and (iv) have a "nativepath" populated along with the metadata load file pursuant to the guidelines outlined in paragraph VI.H and Exhibit A attached hereto. Native file productions shall also be accompanied by a single slip sheet TIFF image with the Bates number and any confidentiality designation associated with that Document. The Parties agree that compliance with these provisions shall not constitute spoliation.

The Producing Party will honor reasonable requests made in good faith for production of Documents or particular file types in native format where the Requesting Parties have a particular need to review these Documents or types of files in native format.

### C. Document Unitization.

For files produced as TIFF images, each page of a Document shall be electronically saved as an image file. If a Document consists of more than one page, the unitization of the Document and any attachments and/or affixed notes shall be maintained as it existed in the original when creating the image files. The Producing Party shall produce a unitization file (.OPT file) ("load file") for all

1  produced Documents in accordance with paragraph VI.J. In scanning Hard copy Documents, distinct
2  documents will not be merged into a single record, and single documents will not be split into
3  multiple records (i.e., paper documents will be logically unitized). The parties will commit to re-
4  unitize improperly unitized documents.

      **D.**    **Color.**

Hard copy Documents and Documents reduced to TIFF may be produced in black and white in the first instance unless the Producing Party believes that production in color is reasonably necessary for a Document to be understood, in which case such Document will be produced in color. In addition, the Producing Party will honor reasonable requests made in good faith for copying or production of a color image of the Document (and, in the case of a hard copy Document, a color hard copy) where a Requesting Party explains why the color is reasonably necessary to decipher the meaning, context, or content of the Document.

      **E.**    **Bates Numbering and Other Unique Identifiers.**

For files produced in the Document image format agreed to pursuant to paragraph VI.A., each page of a produced Document, shall have a legible, unique page identifier ("Bates Number") electronically "burned" onto the image in such a manner that information from the source Document is not obliterated, concealed, or interfered with. There shall be no other legend or stamp placed on the Document image unless a Document qualifies for confidential treatment pursuant to the terms of any confidentiality and protective order entered by the Court in this action, or has been redacted in accordance with applicable law or order. In the case of any confidentiality or other designation applicable to a Document, or materials redacted in accordance with applicable law or order, a designation may be "burned" onto the Document's image at a location that does not obliterate or obscure any information from the source Document. Any Party producing ESI in a Native format shall produce the Document in the format agreed to pursuant to paragraph VI.B.

      **F.**    **Production Media.**

The Producing Party shall produce Documents by secure FTP or comparable secure electronic transfer means, unless the quantity of data produced makes it more efficient to produce Documents

1  on external hard drive (with standard PC compatible interface) (the "Production Media").
2  Documents produced on external hard drive shall be encrypted; the password shall be provided to
3  the Requesting Parties under separate cover. Each media volume should have its own unique name
4  and a consistent naming convention (e.g., ZZZ001 or SMITH001).

### G. Electronic Text Files.

Where Documents maintained in the ordinary course of business contain searchable text, text files shall be produced reflecting the full text that has been electronically extracted from the Documents ("Extracted Text"), including any hidden text. In the event a Document is not text searchable, for instance when original files exist in paper format and were scanned to create a digital copy, or when redactions have been applied to a document, the Producing Party shall provide optical character recognition ("OCR") text files. The content of these OCR text files must be associated with the particular TIFF format images reflecting the content of that Hard Copy Document through a database load file/cross-reference file as described above and included as a field in the record in the database load file/cross-reference file associated with those TIFF format images. With respect to emails, the Extracted Text shall include email header information, including to, from, cc, bcc, subject, date, and the names of attachment files. The Extracted Text shall be labeled and produced on Production Media in accordance with the provisions of paragraph VI.F above. The text files shall be produced in multi-page text file format and will be named in such a way that they can be associated with their corresponding Static Images in databases utilized by commercially available Document management or litigation support software.

### H. Metadata.

1. The Parties are not obligated to populate manually any metadata fields, except for the CUSTODIAN, CUSTODIAN-DUPE, and SOURCE fields, if such fields cannot automatically be extracted from a Document. To the extent any ESI contains information subject to a claim of privilege or any other applicable protection, its respective metadata may be redacted or withheld. If metadata is redacted or withheld, the Producing Party will so inform the

Requesting Parties and record the redaction on any privilege log prepared by the Producing Party. Redacted metadata will be preserved.

**2.** Each Party will produce metadata fields associated with each electronic Document produced in TIFF format (to the extent such metadata exists in the collected Documents) listed in Exhibit A attached hereto.

**3.** The Parties must produce all files attached to each email they produce to the extent the attachments are reasonably accessible, unless the Parties agree otherwise or the Court orders otherwise. To the extent a Party produces electronic Documents attached to emails, a Party will produce the metadata for those attached electronic Documents.

### I.     **Attachments.**

Email attachments and embedded files or links must be mapped to their parent by the Document or Production number. If attachments and embedded files are combined with their parent Documents, then "BeginAttach" and "EndAttach" fields (or the functional equivalent, depending on the production format chosen) listing the unique beginning and end number for each attachment or embedded Document must be included, when possible. Bates numbering for any Attachments must sequentially follow the Bates number(s) for the parent record.

### J.     **Load Files.**

The Producing Party will produce (a) a data load file, which will contain the bates-number range, attachment range and associated metadata, if any, for each Document; and (b) an image load file which shall cross reference the TIFF images with the location path. The load files should be provided as DAT files (CONCORDANCE). If in a particular instance the above steps are not reasonably possible, then the Producing Party will disclose the nature and extent of the difficulties and the Parties will seek to agree on an alternate means of production.

### K.     **Password-protected files.**

The Producing Party will make reasonable efforts to open and access password-protected files that are identified during processing, or otherwise provide such passwords.

## VI. ASSERTIONS OF PRIVILEGE

**A.** Nothing in this Protocol is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties to object to a Requesting Party's document requests.

**B.** **Privilege Log.**

If a Producing Party withholds Discoverable Information based on a claim of privilege, the Producing Party will provide a metadata privilege log, with each entry to include the following metadata fields: Author/From, Recipient/To, CC Recipient, BCC Recipient, Email Subject/File Name, and Basis for Withholding (*e.g.*, attorney-client privilege, attorney work product). The Parties recognize that Production of Discoverable Information will likely occur on a rolling basis. Within 30 days of each document production, the producing party will produce a privilege log to identify documents withheld from that production. In the event the Receiving Party reasonably believes that further information regarding a withheld document is necessary to assess the claim of privilege, it may make a request for such information to the Producing Party and the Producing Party shall, within 3 business days, furnish such requested information.

**C.** **No Waiver.**

In accordance with Section I.B and the terms of any confidentiality and protective order ordered by the Court, a Producing Party's failure to log specific privileged ESI on the privilege log shall not be deemed a waiver of the privilege.

The inadvertent production of any non-responsive documents by any party making production of materials in this Proceeding shall not be deemed a waiver or impairment of any right to redesignate the inadvertently produced documents as non-responsive. Upon receiving written notice, parties who have received materials inadvertently produced shall, within five (5) business days, return, sequester, or destroy all copies of such materials and provide a certification of counsel of such treatment, and shall promptly attempt to obtain all copies of inadvertently produced materials which were transmitted to other persons, firms, or entities. Any party that discovers it has received what it thinks may be inadvertently produced materials must promptly inform the Producing Party.

**D.     Email Thread.**

A Producing Party may not withhold embedded or related emails within a thread based solely on a claim of privilege to a separate email within the same thread. In other words, any individual email within a thread withheld on a claim of privilege must have its own basis for privilege.

**E.     Documents Redacted for Privilege.**

As an initial production matter, redacted Documents need not be logged as long as (i) for emails, the bibliographic information (i.e. to, from, cc, bcc, recipients, date and time) is not redacted, and the nature of the privilege asserted (i.e., attorney-client privilege; work product doctrine) is noted on the face of the Document; and (ii) for non-email Documents, the nature of the privilege asserted (i.e., attorney-client privilege; work product doctrine) is noted on the face of the Document. Documents that are redacted shall be identified as such in a "redaction" field in the accompanying data load file. After receipt of the production, a Requesting Party may request in good faith that the Producing Party create a privilege log for some, any, or all redacted Documents. Upon receipt of such a request, the Parties shall meet and confer regarding the need for a log and if one is agreed to, the format of such log. If the Parties cannot agree on the need for or format of a log of redacted Documents, any Party may seek the assistance of the Court.

**VII.    PROCESSING OF NON-PARTY DOCUMENTS**

    **A.**   A Party that issues a non-party subpoena ("Issuing Party") shall include a copy of this Protocol with the subpoena and request that the non-party produce Documents in accordance with the specifications set forth herein.

    **B.**   The Issuing Party is responsible for producing to all other Parties any Documents obtained pursuant to a subpoena to any non-party, in a manner that is consistent with the terms of any confidentiality and protective order ordered by the Court. To the extent practical given the data volume, productions by a non-party should be produced by the Issuing Party to all other Parties within three (3) business days of the non-party's production to the Issuing Party. The parties agree that any production deliverable received from a non-party shall be produced in the format in which it was

received.

    **C.**    Nothing in this Protocol is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or non-parties to object to a subpoena.

**VIII.  Production of Documents to STATE DEFENDANTS**

All productions made to State Defendants will be transmitted to attorneys of record for State Defendants' outside counsel, Mayer Brown LLP ("Mayer Brown"). Mayer Brown will provide access to such productions to other counsel of record for State Defendants.

**IX.    IMPLEMENTATION AND MODIFICATION OF PROTOCOL**

    Counsel for the Parties agree to meet and confer if any Party believes this Protocol should be modified, and the Parties may negotiate and agree in writing to any reasonable exception to or modification of this Protocol. If such negotiation does not lead to an agreed upon modification, the Party may apply to this Court for an exception to or modification of this Protocol.

Dated this 15th day of September, 2025.

By: /s/ *Jessica E. Whelan*
    JESSICA E. WHELAN
    Nevada Bar No. 14781
    Chief Deputy Solicitor General
    SABRENA K. CLINTON
    Nevada Bar No. 6499
    **State of Nevada**
    **Office of the Attorney General**
    1 State of Nevada Way, Suite 100
    Las Vegas, NV 89119

    RORY K. SCHNEIDER
    **MAYER BROWN**
    1221 Avenue Of The Americas
    New York, NY 10020

    NICOLE A. SAHARSKY
    MINH NGUYEN-DANG
    **MAYER BROWN**
    1999 K Street NW
    Washington, DC 20006

*Attorneys for State Defendants*

Dated this 15th day of September, 2025.

By: /s/ *Adam Hosmer-Henner*
    ADAM HOSMER-HENNER
    Nevada Bar No. 12779
    A.G. BURNETT
    Nevada Bar No. 5895
    JANE SUSSKIND
    Nevada Bar No. 150699
    KATRINA WEIL
    Nevada Bar No. 16152
    CASSIN BROWN
    Nevada Bar No. 15877
    **McDONALD CARANO LLP**
    100 West Liberty Street, 10th Floor
    Reno, NV 89501

*Attorneys for Intervenor*
*Nevada Resort Association*

Dated this 15th day of September, 2025.

By: /s/ *Paul C. Williams*
    DENNIS L. KENNEDY
    Nevada Bar No. 1462
    PAUL C. WILLIAMS
    Nevada Bar No. 12524
    **BAILEY✥KENNEDY**
    8984 Spanish Ridge Avenue
    Las Vegas, Nevada 89148-1302
    Telephone: 702.562.8820
    Facsimile: 702.562.8821
    DKennedy@BaileyKennedy.com
    PWilliams@BaileyKennedy.com

    NEAL KUMAR KATYAL
    (Admitted *pro hac* vice)
    JOSHUA B. STERLING
    (Admitted *pro hac* vice)
    WILLIAM E. HAVEMANN
    (Admitted *pro hac* vice)
    **MILBANK LLP**
    1850 K Street, Suite 1100
    Washington, D.C. 20006
    Telephone: 202.835.7500
    Facsimile: 202.263.7586

    GRANT R. MAINLAND
    (Admitted *pro hac* vice)
    ANDREW L. PORTER
    (Admitted *pro hac vice*)
    VICTOR HOLLENBERG
    (Admitted *pro hac* vice)
    **MILBANK LLP**
    55 Hudson Yards
    New York, N.Y. 10001
    Telephone: 212.530.5000
    Facsimile: 212.822.5251

*Attorneys for Plaintiff KalshiEX, LLC*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IT IS SO ORDERED:

_____
The Honorable Brenda Weksler
United States Magistrate Judge

DATED:_____

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

## Exhibit A: LOAD FILE FORMAT

### LOAD FILE FIELDS

| Field | Description |
|---|---|
| BegBates | Bates Number of First Page of Document |
| EndBates | Bates Number of Last Page of Document |
| BegAtt | BegBates of first document in the Attachment Range |
| EndAtt | EndBates of last document in the Attachment Range |
| ConvIndex | Unique identifier for email thread (email only) |
| Custodian | Name for the mail user or owner of the document collection |
| Custodian Duplicates | Name(s) of custodian(s) of duplicated documents that were removed during processing and were not published/visible in the review database |
| Title/Document Title | Meta-data of e-files only |
| Email Subject | Subject of email message |
| Author | Author of document |
| From | Email sender name |
| To | Email recipient(s) |
| CC | Email courtesy copy recipient(s) |
| BCC | Email blind courtesy copy recipient(s) |
| SentDate | Date email message sent |
| SentTime | Email message sent timestamp |
| ReceivedDate | Date email message received |
| ReceivedTime | Email message received timestamp |
| FileCreatedDate | Date-email attachment or application file created, or, if the created date cannot be captured, the date the file was last modified |
| FileModDate | Date-email attachment or application file modified. |
| FilePath | Original file path (if any) |
| FileExtension | File extension of email attachment or document (if any) |

| FileName | Text in file header describing content of the file |
|---|---|
| FileSize | Size of original file in bytes |
| MD5 | Original email message or file MD5 hash value |
| TextPath | Path to the multi-page TXT files in the delivery |
| NativePath | Path to any native file in the deliverable |

**LOAD FILE SPECIFICATIONS**

| Field Qualifier (quote): | (254) |
|---|---|
| Field Delimiter (comma): | (020) |
| Newline Delimiter: | (174) |
| Multi-entry Delimiter: | (059) |
| Date Format: | MM/DD/YYYY |
| Null Fields: | Left empty |
| Field Names in First Line: | Yes |