AARON D. FORD
  Attorney General
Jessica E. Whelan (Bar No. 14781)
  Chief Deputy Solicitor General—
  Litigation
Sabrena K. Clinton (Bar No. 6499)
  Senior Deputy Attorney General
State of Nevada,
  Office of the Attorney General
1 State of Nevada Way, Suite 100
Las Vegas, NV 89119
(702) 486-3420 (phone)
(702) 486-3773 (fax)
jwhelan@ag.nv.gov
sclinton@ag.nv.gov

Nicole A. Saharsky (*pro hac vice*)
Minh Nguyen-Dang (*pro hac vice*)
Mayer Brown LLP
1999 K Street, NW
Washington, D.C. 20006
(202) 263-3000 (phone)
nsaharsky@mayerbrown.com
mnguyen-dang@mayerbrown.com

Rory K. Schneider (*pro hac vice*)
Mayer Brown LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 506-2500 (phone)
rschneider@mayerbrown.com

*Attorneys for Kirk D. Hendrick, George Assad, Chandeni K. Sendall,
The Nevada Gaming Control Board, Jennifer Togliatti, Rosa Solis-Rainey, Brian
Krolicki, George Markantonis, Abbi Silver, The Nevada Gaming Commission, and
Aaron D. Ford*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| KALSHIEX, LLC,<br><br>Plaintiff,<br><br>v.<br><br>KIRK D. HENDRICK, in his official capacity as Chairman of the Nevada Gaming Control Board, et al.,<br><br>Defendants,<br><br>v.<br><br>NEVADA RESORT ASSOCIATION,<br><br>Intervenor-Defendant. | Case No. 2:25-cv-00575-APG-BNW<br><br>**STATE DEFENDANTS' MOTION TO COMPEL DISCOVERY** |

Defendants KIRK D. HENDRICK, in his official capacity as Chairman of the

Nevada Gaming Control Board; GEORGE ASSAD, in his official capacity as a Member

of the Nevada Gaming Control Board; CHANDENI K. SENDALL, in her official

capacity as a Member of the Nevada Gaming Control Board; NEVADA GAMING

CONTROL BOARD; JENNIFER TOGLIATTI, in her official capacity as Chair of the

Nevada Gaming Commission; ROSA SOLIS-RAINEY, in her official capacity as a Member of the Nevada Gaming Commission; BRIAN KROLICKI, in his official capacity as a Member of the Nevada Gaming Commission; GEORGE MARKANTONIS, in his official capacity as a Member of the Nevada Gaming Commission; ABBI SILVER, in her official capacity as a Member of the Nevada Gaming Commission; NEVADA GAMING COMMISSION; AARON D. FORD, in his official capacity as Attorney General of Nevada (collectively, "State Defendants"), by and through their attorneys of record, hereby move to compel discovery from Plaintiff KalshiEx, LLC ("Kalshi") pursuant to State Defendants' First Set of Requests for Production (the "Requests").

Specifically, State Defendants move to compel Kalshi's production of:

(1) documents and internal communications responsive to State Defendants' request for "[a]ll Documents concerning Kalshi's self-certification of event contracts to the [CFTC]" (Request No. 2), located by using the same custodians and search terms agreed upon with respect to Kalshi's communications with the CFTC, for the time period of October 2, 2024 to September 11, 2025;

(2) documents and internal communications responsive to State Defendants' request for "[a]ll documents reflecting, referencing, or discussing the financial, commercial, or economic consequences, if any, associated with Kalshi's event contracts" (Request No. 5), located by using the same custodians and search terms agreed upon with respect to Kalshi's communications with the CFTC, for the time period of October 2, 2024 to September 11, 2025; and

(3) documents and internal communications responsive to State Defendants' request for "all documents reflecting, referencing, or discussing Kalshi's contention that compliance with Nevada law interferes with the operation and function of Kalshi's markets for event contracts" (Request No. 7), located by using the custodians agreed upon with respect to Kalshi's communications with the CFTC (and others, if any, referenced in Mr. Sottile's declaration), the search terms proposed by both Kalshi and State Defendants following the parties' meet-and-confer process, and the time period of January 1, 2024 to present.

This motion is based on the attached Memorandum of Points and Authorities, the record in this matter, the Declaration of Rory K. Schneider provided contemporaneously with this Motion, and the exhibits attached thereto, and the papers and pleadings on file in this action.

DATED this 8th day of October, 2025.

By: */s/ Rory K. Schneider*
AARON D. FORD
Attorney General

Jessica E. Whelan (Bar No. 14781)
Chief Deputy Solicitor General—
Litigation
Sabrena K. Clinton (Bar No. 6499)
Senior Deputy Attorney General
State of Nevada
Office of the Attorney General
1 State of Nevada Way, Suite 100
Las Vegas, NV 89119
(702) 486-3420 (phone)
(702) 486-3773 (fax)
jwhelan@ag.nv.gov
sclinton@ag.nv.gov

Nicole A. Saharsky (pro hac vice)
Minh Nguyen-Dang (pro hac vice)
Mayer Brown LLP
1999 K Street, NW
Washington, D.C. 20006
(202) 263-3000 (phone)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

nsaharsky@mayerbrown.com
mnguyen-dang@mayerbrown.com

Rory K. Schneider (pro hac vice)
Mayer Brown LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 506-2500 (phone)
rschneider@mayerbrown.com

*Attorneys for State Defendants*

### MEMORANDUM OF POINTS AND AUTHORITIES

In response to State Defendants' first set of document requests, Kalshi agreed to produce two categories of documents: self-certification materials it submitted this year to the Commodity Futures Trading Commission ("CFTC"), and certain Rulebooks and other unspecified compliance-related materials.[1]  For every other request, Kalshi made quintessentially boilerplate objections—each set of objections virtually identical to the next—and offered to meet and confer.  While the meet-and-confer process resolved certain disagreements, Kalshi (1) refuses to produce any internal communications whatsoever and (2) proposes to produce only one month of one employee's communications concerning conflict-preemption issues.  Neither position is justified.

*First*, Kalshi's steadfast refusal to produce any relevant internal communications is insupportable.  While Kalshi has agreed to search for and produce communications with the CFTC, it refuses to do the same with internal communications involving the same custodians and subjects, simply maintaining that they are categorically irrelevant.  But just as the self-certifications and CFTC communications Kalshi has agreed to produce are relevant, so too are related internal communications.  Among other things, internal communications may bear on: (i) Kalshi's views of the financial, commercial, or economic consequences of the events on which their contracts are based and whether they satisfy the definition of a "swap"; (ii) the extent to which Kalshi considers whether its event contracts may fall within a prohibited category, including because they relate to gaming or unlawful activity; (iii) Kalshi's bases for certifying that its event contracts serve legitimate risk mitigation and price discovery purposes rather than pure recreational purposes; and (iv) whether

---

[1] Kalshi's responded to Intervenor-Defendant Nevada Resort Association's ("NRA") discovery requests with the same agreement to produce just two categories of documents. Based on  the overlap of the discovery issues, and the joint meet-and-confer efforts, the State Defendants understand that the NRA intends to join this Motion. The State Defendants welcome the joinder.

and, if so, how each submission complies with the CFTC's Core Principles. Kalshi should not be permitted to artificially limit discovery by excising relevant internal communications from the record. And while Kalshi has made a boilerplate burden objection to producing internal communications, Kalshi fails to articulate the specific burden, if any, with complying with its discovery obligations. Nor can it, because Kalshi refused to run any searches for responsive documents and thus has no specific factual basis to support its boilerplate objections

*Second*, Kalshi seeks to unduly limit State Defendants' discovery into Kalshi's own contention that compliance with state law interferes with the operation and function of its contract market. Following meet-and-confer efforts, Kalshi is only willing to apply a limited set of search terms to one custodian's communications over the one-month period between Nevada's cease-and-desist letter and the start of this action. Again, though, Kalshi has made no attempt to support its original boilerplate burden objection to producing documents regarding conflict-preemption issues. It just does not believe compliance with Nevada law would have been discussed in a non-privileged setting outside of that period. If that is really the case, the search terms specific to Nevada should return few, if any, results. And in any event, Kalshi's conflict-preemption argument is not specific to Nevada—it claims to be exempt from any states' regulations. Documents and communications concerning Kalshi's ability or inability to comply with state law, and the supposed challenges associated with doing so—subjects Kalshi put at issue and addressed in a sworn declaration—are plainly relevant and should be produced. And to the extent certain responsive communications are privileged, they should be included on a privilege log.

Accordingly, State Defendants respectfully request that the Court compel Kalshi to produce—utilizing the searches State Defendants proposed during the parties' meet-and-confer process—the following: (1) documents and internal communications responsive to State Defendants' requests for information concerning Kalshi's self-certifications and the financial, commercial, or economic consequences

associated with its event contracts; and (2) documents and internal communications responsive to State Defendants' request for information concerning Kalshi's contention that compliance with Nevada law interferes with the operation and function of Kalshi's market for event contracts.

## BACKGROUND

### I.    KALSHI SERVED BOILERPLATE RESPONSES AND OBJECTIONS TO STATE DEFENDANTS' DOCUMENT REQUESTS.

On September 3, 2025, the Court denied Kalshi's emergency motion to stay discovery, concluding that Defendants are not only entitled to discovery but need discovery to respond to Kalshi's pending motion for summary judgment. ECF No. 118 ("Stay Order"). In that order, the Court provided illustrative examples of the topics on which it deemed discovery necessary and appropriate: whether Kalshi's political- and sports-event contracts "have independent, real-world consequences and thus, fall under the exclusive jurisdiction of the CFTC"; "the way in which eliminating contracts in Nevada would risk and/or facilitate market manipulation and the Core principles Kalshi maintains would be violated (and on which its federal designation depends)"; and "matters associated with reputational harm, potential CFTC consequences for failure to comply with Core principles, costs of geolocation, and public interest." ECF No. 118 at 3-4.

State Defendants' First Set of Requests for Production sought information on those and other issues. As relevant here, State Defendants requested: "All Documents concerning Kalshi's self-certification of event contracts to the Commodity Futures Trading Commission" (Request No. 2); "All Documents reflecting, referencing, or discussing the financial, commercial, or economic consequences, if any, associated with Kalshi's event contracts" (Request No. 5); and "All Documents reflecting, referencing, or discussing Kalshi's contention that compliance with Nevada law interferes with the operation and function of Kalshi's markets for event contracts"

1
2

(Request No. 7) (together, the "At-Issue Requests").  *See* Declaration of Rory K. Schneider ("Schneider Decl."), Ex. A at 3-4.[2]

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19

On September 9, 2025, Kalshi served its Responses and Objections to State Defendants' First Set of Requests for Production.  In response to State Defendants' ten initial document requests, Kalshi agreed to produce only (1) its self-certifications to the CFTC between January 1, 2025 and September 4, 2025, and (2) risk management and consumer-safety policies in its Rulebook and other (unspecified) "compliance-related materials."  *See* Ex. B at 8-13 ("Responses").  As to every other type of document requested, Kalshi either outright objected to producing any information or offered to meet and confer—in both instances based on facially boilerplate objections.  *Id.*  For example, Kalshi objected to nine of the ten requests, including Requests 5 and 7, as "overly broad, unduly burdensome, not proportional to the needs of the case, and because the burden or expense of the proposed discovery outweighs its likely benefit." Response Nos. 1, 3-10.  Kalshi's Response to Request No. 2 included substantially identical language, objecting to the request as "overly broad, unduly burdensome, and not proportional to the needs of the case," and—in an apparent copy and paste from Kalshi's responses to separate discovery—objected that "this *Interrogatory* seeks information that cannot practicably be identified or obtained by Kalshi without undue burden or expense."  Response No. 2 (emphasis added).

20
21
22
23
24
25

Kalshi also objected to each of the At-Issue Requests "to the extent it seeks documents protected from disclosure by the attorney-client privilege, work product privilege, or any other privilege" and "to the extent it seeks documents [or communications] that are publicly available," without further explanation.  *See* Response Nos. 1, 2, 4, 5, 6, 7, 8, 9 (publicly available); Response Nos. 2, 3, 5, 6, 7, 9, 10 (privilege).

26
27
28

---

[2] All Exhibits cited herein are appended to the accompanying declaration of Rory K. Schneider.

On September 16, 2025, Kalshi made its initial production, containing approximately 1,180 event contract self-certification submissions, duplicate copies of the public and confidential components of those submissions, confirmations of the CFTC's receipt of those submissions, and four documents comprising Kalshi's "compliance-related materials"—the Rulebooks and Member Agreements for KalshiEx, LLC and Kalshi Klear. Schneider Decl. ¶ 4. Kalshi made a second smaller production of the similar self-certification submissions on September 26, 2025. *Id.* ¶ 12.

## II. KALSHI REFUSES TO PRODUCE ANY INTERNAL COMMUNICATIONS, AND IMPOSES UNDUE LIMITATIONS ON DISCOVERY INTO CONFLICT-PREEMPTION ISSUES.

The parties' meet-and-confer process is described in detail in the accompanying declaration. *See* Schneider Decl. ¶¶ 5-28. The parties' related written correspondence is appended to that declaration as Exhibits C through F.

During the parties' initial meet and confer on September 22, 2025, Kalshi's counsel maintained that Kalshi's boilerplate objections were necessitated by the supposed breadth of State Defendants' document requests. Schneider Decl. ¶ 8. Kalshi claimed not to be able to even begin formulating searches with which to identify potentially responsive documents. *Id.* Kalshi represented that, to that point, it had only undertaken to determine the volume of its communications with the CFTC. *Id.* Kalshi had not attempted to assess the volume of documents responsive to any other requests. *Id.* As described in State Defendants' subsequent letter, State Defendants' counsel responded to Kalshi's requests for clarification regarding a number of requests during the meet and confer, and Kalshi agreed to consider a host of issues further on account of the clarification offered. *See* Ex. D.

On September 29, 2025, Kalshi provided a written response (*see* Ex. F), and the parties met and conferred later that same day (*see* Schneider Decl. ¶ 17). In its letter and subsequent correspondence, Kalshi agreed to produce (i) non-privileged communications with the CFTC from October 2, 2024 through September 11, 2025

9

using a proposed set of search terms, and (ii) non-privileged materials responsive to State Defendants' request for documents and communications concerning Kalshi's contention that compliance with Nevada law would negatively impact its functions and operations, subject to search terms that were proposed on a later date. *See* Ex. F; Ex. E; Schneider Decl. ¶¶ 21-24.

*Internal Communications.* Kalshi flatly refused to produce responsive internal communications on any subject, arguing that internal communications "are entirely irrelevant to the analysis of whether Kalshi's event contracts qualify as swaps, or to the question at issue in this action—whether the CEA [Commodity Exchange Act] preempts state regulation of trading on Kalshi." Ex. F at 5. On the same relevance grounds, Kalshi refused to produce internal communications regarding "the representations in the self-certifications or [those that] generally discuss whether a contract is a swap and why" (*id.* at 5), and refused to produce internal communications related to Kalshi's advertisements of its offerings as a form of betting or gambling (*id.* at 7). Kalshi refused to reconsider this position at or following the meet-and-confers.

*Conflict Preemption-Related Documents.* Following the meet and confers, Kalshi offered only to apply a limited set of search terms against the files of a single custodian—Xavier Sottile, its Head of Markets—between March 4, 2025 (the date of Nevada's cease-and-desist) and March 28, 2025 (the date Kalshi instituted this action). Ex. E at 6. Kalshi stated simply that it "does not believe compliance with Nevada law would have been discussed prior to receipt of the Nevada Gaming Control Board's cease and desist letter on March 4, 2025," and that it believes "any communications on this topic" beyond March 28, 2025 "would likely be privileged or constitute attorney work product." *Id.* at 3. Kalshi refused to reconsider this position at or following the meet-and-confers.

Having reached an impasse on these issues, State Defendants now move to compel.

1

## LEGAL STANDARD

2       Where a party fails to produce documents requested under Rule 34, the party

3  propounding the request for production of documents may move to compel discovery.

4  Fed. R. Civ. P. 37(a).  In moving to compel, the party seeking discovery must overcome

5  a "relatively low threshold" to demonstrate "the possibility of a nexus between the

6  information sought and the claims or defenses of a party." *Tsatas v. Airborne Wireless*

7  *Network, Inc.,* 2022 WL 74003, at \*2 (D. Nev. Jan. 7, 2022) (internal citations and

8  quotation marks omitted); *see also Jones v. Russell*, 2024 WL 3202431, at \*1 (D. Nev.

9  June 25, 2024) ("Relevance is a low threshold and merely requires the possibility of a

10  nexus between the information sought and the claims or defenses of a party.");

11  *Jackson v. Montgomery Ward & Co.,* 173 F.R.D. 524, 528 (D. Nev. 1997) ("Under the

12  Federal Rules, the scope of discovery is broad and discovery should be allowed unless

13  the information sought has no conceivable bearing on the case."); *F.T.C. v. AMG*

14  *Servs., Inc.*, 291 F.R.D. 544, 556 (D. Nev. 2013) ("Relevance within the meaning of

15  Rule 26(b)(1) is considerably broader than relevance for trial purposes.") (citing

16  *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978)).

17       Once this threshold relevance showing is made, "the party opposing discovery

18  has the burden of showing that the discovery should be prohibited, and the burden of

19  clarifying, explaining or supporting its objections." *Reflex Media Inc. v. Does No. 1*,

20  2022 WL 20328162, at \*2 (D. Nev. Aug. 25, 2022) (quoting *Garces v. Pickett*, 2021 WL

21  978540, at \*2 (E.D. Cal. Mar. 16, 2021)).  "The opposing party is 'required to carry a

22  heavy burden of showing why discovery was denied.'" *Id.* (quoting *Garces*, 2021 WL

23  978540, at \*2).  Accordingly, "[t]he party resisting discovery must specifically detail

24  the reasons why each request is irrelevant or otherwise objectionable, and may not

25  rely on boilerplate, generalized, conclusory, or speculative arguments." *Tsatas*, 2022

26  WL 74003, at \*2 (citing *AMG Servs.*, 291 F.R.D. at 553).

27

28

**ARGUMENT**

## I. KALSHI WAIVED ITS OBJECTIONS BY RELYING EXCLUSIVELY ON BOILERPLATE LANGUAGE.

As an initial matter, Kalshi should be compelled to produce the documents sought here because it has waived its objections.

"[B]oilerplate objections or blanket refusals inserted into a response to a Rule 34 request for production of documents are insufficient to assert a privilege." *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005). Indeed, boilerplate objections are "tantamount to not making any objection at all," and are often found to constitute a waiver. *Tsatas*, 2022 WL 74003, at \*2 (quoting *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999)); *see also Pasiecznik v. Home Depot USA, Inc.*, 2022 WL 1652367, at \*5 (D. Nev. May 24, 2022) (finding that a party "waived its objections" based on its boilerplate objections which read verbatim and appeared to have been copied and pasted).

First, in *nearly every response*, including responses to two of the three At-Issue Requests, Kalshi asserts, verbatim, that each Request is "overly broad, unduly burdensome, not proportional to the needs of the case, and because the burden or expense of the proposed discovery outweighs its likely benefit." Response Nos. 1, 3-10.[3] The only Response in which that exact language does not appear is Response No. 2; there, Kalshi appears to have copied and pasted similarly boilerplate burden language from its *interrogatory* responses. *See* Response No. 2 ("[T]his Interrogatory seeks information that cannot practicably be identified or obtained by Kalshi without undue burden or expense."). Kalshi made no effort whatsoever to substantiate those generic objections, offering no indication of the volume of documents likely responsive to State Defendants' requests or specific explanation as to how producing such

---

[3] Kalshi also repeats itself in each and every response that the request is "overly broad and unduly burdensome in seeking" the requested information. Response Nos. 1-10.

1  documents would impose an undue burden, especially given the enormity of the stakes

2  in this litigation.

3          A "[p]laintiff cannot object on the basis of hardship or undue burden and not

4  justify the ways in which responding constitutes a hardship or undue burden," as such

5  "[b]oilerplate objections . . . are improper." *Lehman v. Moore*, 2024 WL 2302144, at *2

6  (May 21, 2024) (citing A. *Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D.

7  Cal. 2006)); *see also Shakespear v. Wal-Mart Stores, Inc., LLC*, 2012 WL 13055159, at

8  *3 (D. Nev. Nov. 5, 2012) ("Each of [defendant's] objections of burdensomeness and

9  oppressiveness are conclusory and unsupported by any articulated reasoning.

10  [Defendant] does not refer to specific examples supported by factual detail to establish

11  why these enumerated [requests for production] are either unduly burdensome or

12  oppressive. [Defendant] makes only general unsupported claims that the documents

13  are voluminous.").

14          Second, in response to one of the At-Issue Requests (and to several other

15  requests), Kalshi raised a boilerplate objection that State Defendants seek

16  information "that is neither relevant to the subject matter involved in this Action, nor

17  relevant to a claim or defense of any party." Responses 1, 2, 3, 4, 6, 8, 9, 10. But

18  "[r]elevance for the purposes of discovery is defined broadly," and as the party

19  opposing discovery, Kalshi must bear the "heavy burden of showing why . . . discovery

20  should be denied" "by specifically detailing the reasons why each request is

21  irrelevant." *V5 Techs. v. Switch, Ltd.,* 334 F.R.D. 306, 309-10 (D. Nev. 2019) (internal

22  citations omitted).    Kalshi's blanket relevance objections to requests for facially

23  relevant materials lack any specificity and are also palpably improper.[4]

24

25

---

26  [4] Kalshi also objects to nearly every request as seeking documents or communications

27  that are publicly available (Response Nos. 1, 2, 4, 5, 6, 7, 8, 9), and/or as seeking
   "documents protected from disclosure by the attorney-client privilege, work product

28  privilege, or any other privilege." Response Nos. 2, 3, 5, 6, 7, 9, 10. These boilerplate
   objections are not only inconsistent, but are likewise improper and ineffective.

At most, Kalshi's counsel indicated during the meet-and-confer process that State Defendants' requests are so overbroad that Kalshi could not even attempt to formulate searches for responsive information. *See* Schneider Decl. ¶ 8; Ex. F at 2. But even if Defendants' requests cover a significant volume of documents (a showing Kalshi has never made), the requests unquestionably seek specific and relevant information, including (as relevant here) information: "concerning Kalshi's self-certification of event contracts to the [CFTC]"; "reflecting, referencing, or discussing the financial, commercial, or economic consequences, if any, associated with Kalshi's event contracts"; and "reflecting, referencing, or discussing Kalshi's contention that compliance with Nevada law interferes with the operation and function of Kalshi's markets for event contracts." Request Nos. 2, 5, 7. Fully aware of what documents and communications on those subjects may exist and who may have participated in them, nothing prevented Kalshi from proposing reasonable searches to identify responsive documents from the start. Kalshi instead opted to rely on generic objections to stall discovery.

Given its failure to object to any request with any reasonable level of particularity, Kalshi has waived its objections. That alone is an adequate basis to grant the relief sought here.

## II. STATE DEFENDANTS SEEK RELEVANT AND PROPORTIONAL DISCOVERY.

Even if Kalshi had not waived its objections by asserting them in generic boilerplate fashion, Kalshi has not satisfied its heavy burden of showing that the discovery sought should be denied.

### A. The Court Should Compel Production of Internal Communications Regarding Kalshi's Self-Certification of Event Contracts and Their Supposed Economic Consequences.

Whether Kalshi's self-certified event contracts have "potential financial, economic, or commercial consequence[s]" and thus qualify as "swaps" is a matter of dispute that the Court has already held warrants further factual development. Stay

Order at 3.  State Defendants' requests for "Documents concerning Kalshi's self-certification of event contracts to the [CFTC]" and "Documents reflecting, referencing, or discussing the financial, commercial, or economic consequences, if any, associated with Kalshi's event contracts" plainly bear on these topics and are thus relevant. Request Nos. 2, 5.  *See, e.g.*, *Jackson,* 173 F.R.D. at 528 ("[T]he scope of discovery is broad and discovery should be allowed unless the information sought has no conceivable bearing on the case.").

After initially refusing to produce anything other than self-certification submissions to the CFTC over a limited time period, Kalshi agreed to produce "non-privileged communications with the CFTC" from five custodians, based on a set of agreed-upon search terms over the same period.  Ex. F at 4-5, Ex. E at 9-10.  But standing on its unsupported assertion that these documents should be sufficient to respond to State Defendant's requests, Kalshi refused to produce any internal communications regarding the same subject matter, arguing that "internal communications are entirely irrelevant to the analysis of whether Kalshi's event contracts qualify as swaps, or to the question at issue in this action—whether the CEA preempts state regulation of trading on Kalshi[.]"  Ex. F at 5.  That is flat wrong.

Courts regularly direct parties to produce internal communications regarding the subject matter in dispute.  *See, e.g.*, *Zeitlin v. Bank of Am., N.A.*, 2022 WL 19760015, at *2 (D. Nev. Oct. 3, 2022) (directing production of responsive communications with Federal Law Enforcement, internal communications, written investigative work product, and documents of defendant executives who were involved in investigation previously withheld by a producing party that "unilaterally imposed an unreasonably narrow reading on [the] requests to produce"); *Rovai v. Select Portfolio Servicing, Inc.*, 2019 WL 1330922, at *8 (S.D. Cal. Mar. 22, 2019) (granting motion to compel because party's "policies and internal communications" relating to subject matter of dispute are relevant).  There is no basis to artificially excise such communications from the record in this case.

1    Kalshi's sole stated objection to producing internal communications is based on

2    their supposed irrelevance.  *See* Ex. F at 5.  But Kalshi cannot credibly explain how

3    its self-certifications and communications with the CFTC *are* relevant, but internal

4    communications regarding the same subject matter are *not*.  Indeed, Kalshi did not

5    even specifically object to relevance in its initial response to Request No. 5 for "[a]ll

6    documents reflecting, referencing, or discussing the financial, commercial, or

7    economic consequences, if any, associated with Kalshi's event contracts," which by its

8    plain terms includes internal communications.  *See* Response No. 5.  Even if Kalshi's

9    boilerplate objections were capable of preserving its objections, Kalshi has waived its

10    purported relevance objection to many of the internal communications sought.  *See*

11    *Bartech Sys. Int'l, Inc. v. Mobile Simple Sols., Inc.*, 2018 WL 834589, at *2 (D. Nev.

12    Feb. 12, 2018) ("Failure to assert an objection to discovery requests constitutes a

13    waiver of an objection.").

14    That objection is patently misguided anyway.  For starters, the Court already

15    identified the issue of whether Kalshi's event contracts constitute swaps as an issue

16    deserving of discovery—signaling the relevance of internal communications about

17    them.  *See* Stay Order at 3.  There is nothing unique about internal communications

18    that exempts them from that order.  Kalshi's internal discussions regarding the

19    process of self-certification and the content of such submissions, including discussions

20    regarding its representations to the CFTC and whether any particular contract has

21    sufficient financial, commercial, or economic consequences to qualify as a swap have

22    more than a merely "conceivable bearing" on the case; they are highly probative and

23    bear directly on the credibility of Kalshi's arguments and evidence.  *See, e.g.*, *Jones v.*

24    *Hawley*, 255 F.R.D. 51, 52 (D.D.C. 2009) ("[A] fundamental purpose of discovery is to

25    secure information that will impeach or contradict an opponent's case."); *Kerr v.*

26    *United States District Court*, 511 F.2d 192, 196–97 (9th Cir.1975) ("In addition to

27    discovering information pertaining to a party's case in chief, it is entirely proper to

28

obtain information for other purposes such as cross-examination of adverse witnesses.").

The Court also noted in the Stay Order that "Defendants should not be forced to accept Plaintiff's conclusion that contracts offered on its DCM have independent real-world consequences and thus, fall under the exclusive jurisdiction of the CFTC. And, given Kalshi's ability to self-certify contracts, Defendants should not be required to accept as a fait accompli that 'the CFTC has taken no action to bar Kalshi's contract on the grounds that they are not swaps.'" Stay Order at 3. Kalshi has now produced hundreds of self-certification documents, addressing events that range from the specific—such as whether a handshake will occur,[5] the duration of a handshake,[6] whether Mark Zuckerberg will release a July 4th-themed video,[7] and whether a given team will win a game by a certain number or spread of points[8]—to the very general question applicable to the sports events contracts structured as parlay bets: "Will <outcomes> occur in <events>?"[9] And while Kalshi has produced the confidential appendices to its self-certifications that purport to justify the events' consequences, Kalshi presumably communicated internally about these contracts and submissions as well.[10] State Defendants should not be required to accept at face value the assertions and representations Kalshi made in its submissions to the CFTC, and are entitled to know whether there was any discussion (debate even) surrounding the

---

[5] Ex. G, KALSHI_NVAG_0038401 ("Will <people> shake hands before <date>?").

[6] Ex. H, KALSHI_NVAG_0006824 ("Will <people> shake hands for <above/ below/ between/ exactly/at least> <duration>?").

[7] Ex. I, KALSHI_NVAG_0015770 ("Will Mark Zuckerberg release a new July 4th themed video by <date>").

[8] Ex. J, KALSHI_NVAG_0003326 ("Will <team> win <game> by <above/below/between/ exactly/ at least> <count> points?").

[9] Ex. K, KALSHI_NVAG_0034937 ("Will <outcomes> occur in <events>?").

[10] To reduce the burden of preparing, filing, and reviewing motions to seal on the parties and the Court, State Defendants append to this motion only documents that Kalshi has not designated as "Confidential" or "Confidential—Outside Counsel Only" pursuant to the protective order entered in this case. State Defendants are willing to supplement the record with such confidential appendices to the extent requested by the Court.

1
2
3

event contracts' qualification as swaps, including discussion regarding the real-world consequences of the events and potential conflicts with the special rule prohibiting certain categories of contracts, including those that involve or refer to gaming.

4
5
6
7
8

To the extent such documents tend to show that Kalshi has submitted event contracts that do not qualify as swaps under the CEA's definition, and that those contracts are therefore not subject to the CFTC's jurisdiction, Kalshi would not be entitled to the sweeping injunctive relief precluding *any and all forms of state regulation* of Kalshi's products which it seeks.

9
10
11
12
13

Accordingly, State Defendants respectfully request that the Court order Kalshi to produce internal communications, from October 2, 2024 to September 11, 2025, concerning Kalshi's self-certification of event contracts and reflecting or discussing the financial, commercial, or economic consequences, if any, associated with Kalshi's event contracts.

14
15

**B.      The Court Should Compel Production of Documents Addressing Kalshi's Contention that Compliance with Nevada Law Interferes with Its Operation and Function.**

16
17

Kalshi's objection to producing most conflict-preemption-related documents should also be rejected.

18
19
20
21
22
23
24
25
26
27
28

State Defendants requested "[a]ll documents reflecting, referencing, or discussing Kalshi's contention that compliance with Nevada law interferes with the operation and function of Kalshi's markets for event contracts," from January 1, 2024, to present. *See* Request No. 7. At the parties' first meet and confer, Kalshi claimed that it likely had few, if any, responsive documents, and that any responsive documents it may possess are privileged because the request calls exclusively for the production of "legal memos." Ex. D at 6. Following the meet-and-confers, Kalshi offered only to apply a limited set of search terms against the files of a single custodian—Mr. Sottile, its Head of Markets—between March 4, 2025 (the date of Nevada's cease-and-desist) and March 28, 2025 (the date Kalshi instituted this action). Ex. E at 6. That represents another improper attempt to unduly limit the

1  scope of State Defendants' discovery—into an essential issue (conflict preemption)

2  that Kalshi placed squarely at issue in its complaint.

3  Both Kalshi's own complaint and subsequent motions assert that it is

4  impossible for Kalshi to comply with both federal and state law, that compliance with

5  state law would create an obstacle to federal objectives, and that "immediate and

6  irreparable harm" will befall Kalshi and its customers if it were required to comply

7  with Nevada gaming regulations. *See* ECF No. 1 ("Compl.") ¶¶ 9, 61, 63, 68-69; ECF

8  No. 86 ("MSJ") at 16 (asserting that "compliance with both the CFTC's and Nevada's

9  requirements would be impossible."). Indeed, Kalshi specifically seeks a permanent

10  injunction "restraining Defendants from enforcing Nevada law that interferes with

11  the operation and function of Plaintiff's futures market described herein." Compl. ¶

12  63.

13  State Defendants are undoubtedly permitted to test Kalshi's contentions. The

14  Court already held as much. *See* Stay Order at 3 (noting that State Defendants are

15  entitled to discovery on whether Kalshi could comply with federal and state law,

16  including "the way in which eliminating contracts in Nevada would risk and/or

17  facilitate market manipulation and the Core principles Kalshi maintains would be

18  violated" if it were to comply with Nevada law). And rightfully so: The documents

19  and communications sought in Request No. 7 easily satisfy the low relevance

20  threshold, as they go to the heart of Kalshi's conflict preemption arguments. State

21  Defendants are entitled to understand, at least: (i) whether application of Nevada law

22  would in fact require excluding Nevada residents from the exchange; (ii) whether

23  application of Nevada law would, in fact, require pausing trades or liquidating

24  positions; (iii) the extent to which excluding Nevada residents is feasible and, if so,

25  what it would entail; and (iv) whether and, if so, how the CFTC reviews Kalshi's

26  compliance with Core Principles, and what those principles require (or don't require).

27  Discovery on these topics is relevant. Importantly, Kalshi did not even object to

28  the relevance of State Defendant's request. *See* Response No. 7. Nevertheless, Kalshi

1   unilaterally seeks to significantly curtail discovery on this key subject. Its purported

2   justifications for doing so fall short in a number of ways.

3           For example, Kalshi offers no justification at all for limiting its search for

4   responsive documents to a single custodian. Mr. Sottile (Kalshi's proposed custodian)

5   himself explained in his declaration that he discussed the challenges associated with

6   complying with both state and federal law with Kalshi's leadership and technical

7   teams—demonstrating that others may well have responsive documents and

8   communications on this topic. *See* Sottile Decl. (ECF No. 18-1) ¶ 13. Even if those

9   communications were not documented, Kalshi has not come close to demonstrating

10  that applying the search terms to other custodians' files would impose any burden at

11  all, let alone an undue burden. *See, e.g.*, *Nationstar Mortg., LLC v. Flamingo Trails*

12  *No. 7 Landscape Maint. Ass'n*, 316 F.R.D. 327, 334 (D. Nev. 2016) ("[I]t has long been

13  clear that a party claiming that discovery imposes an undue burden must 'allege

14  specific facts which indicate the nature and extent of the burden, usually by affidavit

15  or other reliable evidence.' Conclusory or speculative statements of harm,

16  inconvenience, or expense are plainly insufficient.") (quoting *Jackson*, 173 F.R.D. at

17  529). Accordingly, Kalshi should, at a minimum, identify and include in its search for

18  responsive documents the other members of the "leadership" and "technical" teams

19  that Mr. Sottile referenced in his declaration, and produce responsive and non-

20  privileged documents from those custodians.

21          Kalshi further fails to justify its stringent limitations on the timeframe of its

22  proposed search. With respect to the beginning date, Kalshi claims that it "does not

23  believe compliance with Nevada law would have been discussed prior to receipt of the

24  Nevada Gaming Control Board's cease and desist letter on March 4, 2025." Ex. E at

25  3. That unsupported assertion is not a direct representation that no documents or

26  communications pre-dating the cease-and-desist letter exist, particularly since Kalshi

27  has apparently not yet conducted any search for responsive documents. *See In re J&J*

28  *Inv.*, 2025 WL 783260, at \*7 n.13 (D. Nev. Mar. 11, 2025) (to properly make a

representation that no responsive written communications exist, "a litigant must first undertake a reasonable search for responsive documents. That need to conduct a reasonable search exists in any case, but is particularly important when a litigant has testified under oath . . . to possessing a responsive written document"). Indeed, it is at least conceivable that documents predating the cease-and-desist letter regarding Kalshi's ability (or inability) to comply with state law exist: the extent to which sports betting and other forms of events contracts were appropriately listed on contract markets was a live issue well before the cease-and-desist letter.

Even if Kalshi's unsupported "belief" that it is unlikely to find responsive documents prior to March 4, 2025 were taken at face value, Kalshi does not attempt to explain how running the same search terms over the more reasonable period requested by State Defendants—January 1, 2024 to present—would impose any burden at all upon Kalshi, let alone an undue burden, particularly given Kalshi's significant resources and the high stakes of this matter for the future of gaming regulation writ large. *See, e.g.*, *Viacom Int'l, Inc. v. YouTube, Inc.*, 2008 WL 3876142, at *5 (N.D. Cal. Aug. 18, 2008) (finding no undue burden "given the resources of the parties and the limited date range of this discovery," and ordering production where "the issues at stake are also important not only for defendant . . . but also for the future of user-generated video on the internet").

With respect to the end date, Kalshi claims that "there is no reason to extend the review beyond March 28, 2025, the date Kalshi filed the instant action, given that any communications on this topic would likely be privileged or constitute attorney work product." Ex. E at 3; *see also* Ex. F at 6 ("[G]iven the nature of this Request, we expect any responsive materials would have been generated as part of privileged communications with attorneys or in anticipation of litigation following Kalshi's receipt of Nevada's C&D Letter."). Again, Kalshi's counsel's unsworn and unsupported statements regarding the likelihood of finding non-privileged responsive documents do not constitute a representation that no such documents exist. And even

1  if responsive documents and communications were privileged, such documents must

2  be logged in accordance with the governing Electronic Discovery Protocol.  *See* ECF

3  No. 130.  Kalshi's unsupported claim to privilege over documents that it has not

4  searched for is premature.

5      In sum, "complying with discovery requests is not a 'voluntary' choice."

6  *Pasiecznik*, 2022 WL 1652367, at *4.  Kalshi cannot unilaterally and artificially limit

7  the scope of discovery on a matter of obvious relevance to a single custodian's files over

8  a one-month period on the basis of its unsupported "beliefs" regarding the existence

9  of those documents and premature privilege objections.  Accordingly, State

10  Defendants respectfully request that the Court order Kalshi to apply the search terms

11  proposed by both Kalshi and State Defendants (*see* Ex. F at 4-5, Ex. E at 5) to the

12  internal communications of relevant custodians, including the five custodians

13  identified with respect to communications with the CFTC and any individuals

14  referenced and consulted in connection with Mr. Sottile's declaration, from January

15  1, 2024 to present.

16  **III.    STATE DEFENDANTS REQUEST AN AWARD OF ATTORNEYS' FEES.**

17      Under Federal Rule of Civil Procedure 37(a)(5)(A), subject to certain exceptions,

18  "[i]f the motion is granted—or if the disclosure or requested discovery is provided after

19  the motion was filed—the court must, after giving an opportunity to be heard, require

20  the party . . . whose conduct necessitated the motion, the party or attorney advising

21  that conduct, or both to pay the movant's reasonable expenses incurred in making the

22  motion, including attorney's fees."  "The district court has great latitude in imposing

23  sanctions under Fed. R. Civ. P. 37."  *Kiessling v. Rader*, 2018 WL 1401972, at *4 (D.

24  Nev. Mar. 20, 2018) (quoting *Lew v. Kona Hosp.*, 754 F.2d 1420, 1425 (9th Cir. 1985)).

25      In addition to exchanging correspondence, State Defendants attempted in good

26  faith to meet and confer with Kalshi on these issues before seeking the Court's

27  intervention.  Kalshi's use of unsupported boilerplate objections and continued refusal

28  to produce requested documents concerning issues that the Court has already

determined are properly the subject of discovery is unjustified. Therefore, State Defendants respectfully request that Kalshi be ordered to pay the attorneys' fees and costs incurred by State Defendants in bringing this motion.[11] *See, e.g.*, *Big City Dynasty v. FP Holdings, L.P.*, 336 F.R.D. 507, 514 (D. Nev. 2020) (granting request for award of expenses where opposing party's "relevance objection clearly lacks merit"); *Pasiecznik*, 2022 WL 1652367, at *6-*7 (awarding sanctions where objecting party "failed to establish that its objections were substantially justified or that other circumstances make an award of expenses unjust" and directing parties to meet and confer regarding the amount of costs and fees to be paid).

## CONCLUSION

For the foregoing reasons, State Defendants respectfully request that the Court compel Kalshi to produce, by a date certain:

(1) documents and internal communications responsive to State Defendants' request for "[a]ll Documents concerning Kalshi's self-certification of event contracts to the [CFTC]" (Request No. 2), located by using the same custodians and search terms agreed upon with respect to Kalshi's communications with the CFTC, using the time period of October 2, 2024 to September 11, 2025;

(2) documents and internal communications responsive to State Defendants' request for "[a]ll documents reflecting, referencing, or discussing the financial, commercial, or economic consequences, if any, associated with Kalshi's event contracts" (Request No. 5), located by using the same custodians and search terms agreed upon with respect to Kalshi's communications with the CFTC, using the time period of October 2, 2024 to September 11, 2025; and

(3) documents and internal communications responsive to State Defendants' request for "[a]ll documents reflecting, referencing, or discussing Kalshi's contention that compliance with Nevada law interferes with the operation and

---

[11] If the Court grants this request, State Defendants are prepared to submit an affidavit consistent with LR 54-14 substantiating the fees incurred in bringing—and replying in support of—this motion.

function of Kalshi's markets for event contracts" (Request No. 7), located by using the custodians agreed upon with respect to Kalshi's communications with the CFTC (and others, if any, referenced in Mr. Sottile's declaration), the search terms proposed by both Kalshi and State Defendants following the parties' meet-and-confer process, and the time period of January 1, 2024 to present.

State Defendants further request that the Court order Kalshi to pay State Defendants' attorneys' fees and costs in bringing this Motion.

Dated this 8th day of October, 2025

By: */s/ Rory K. Schneider*
AARON D. FORD
Attorney General

Jessica E. Whelan (Bar No. 14781)
Chief Deputy Solicitor General—
Litigation
Sabrena K. Clinton (Bar No. 6499)
Senior Deputy Attorney General
State of Nevada
Office of the Attorney General
1 State of Nevada Way, Suite 100
Las Vegas, NV 89119
(702) 486-3420 (phone)
(702) 486-3773 (fax)
jwhelan@ag.nv.gov
sclinton@ag.nv.gov

Nicole A. Saharsky (pro hac vice)
Minh Nguyen-Dang (pro hac vice)
Mayer Brown LLP
1999 K Street, NW
Washington, D.C. 20006
(202) 263-3000 (phone)
nsaharsky@mayerbrown.com
mnguyen-dang@mayerbrown.com

Rory K. Schneider (pro hac vice)
Mayer Brown LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 506-2500 (phone)
rschneider@mayerbrown.com

*Attorneys for State Defendants*

24

# CERTIFICATE OF SERVICE

I certify that on October 8, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel or parties of record electronically by CM/ECF.

Dated:    October 8, 2025

By: */s/ Rory K. Schneider*
Jessica E. Whelan (Bar No. 14781)
   Chief Deputy Solicitor General—
   Litigation
Sabrena K. Clinton (Bar No. 6499)
   Senior Deputy Attorney General
State of Nevada
Office of the Attorney General
1 State of Nevada Way, Suite 100
Las Vegas, NV 89119
(702) 486-3420 (phone)
(702) 486-3773 (fax)
jwhelan@ag.nv.gov
sclinton@ag.nv.gov

Nicole A. Saharsky (pro hac vice)
Minh Nguyen-Dang (pro hac vice)
Mayer Brown LLP
1999 K Street, NW
Washington, D.C. 20006
(202) 263-3000 (phone)
nsaharsky@mayerbrown.com
mnguyen-dang@mayerbrown.com

Rory K. Schneider (pro hac vice)
Mayer Brown LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 506-2500 (phone)
rschneider@mayerbrown.com

*Attorney for State Defendants*