| | |
|---|---|
| AARON D. FORD<br>  Attorney General<br>Jessica E. Whelan (Bar No. 14781)<br>  Chief Deputy Solicitor General –<br>  Litigation<br>Sabrena K. Clinton (Bar No. 6499)<br>  Senior Deputy Attorney General<br>State of Nevada,<br>  Office of the Attorney General<br>1 State of Nevada Way, Suite 100<br>Las Vegas, NV 89119<br>(702) 486-3420 (phone)<br>(702) 486-3773 (fax)<br>jwhelan@ag.nv.gov<br>sclinton@ag.nv.gov | Nicole A. Saharsky (*pro hac vice*)<br>Minh Nguyen-Dang (*pro hac vice*)<br>Mayer Brown LLP<br>1999 K Street, NW<br>Washington, D.C. 20006<br>(202) 263-3000 (phone)<br>nsaharsky@mayerbrown.com<br>mnguyen-dang@mayerbrown.com<br><br>Rory K. Schneider (*pro hac vice*)<br>Mayer Brown LLP<br>1221 Avenue of the Americas<br>New York, NY 10020<br>(212) 506-2500 (phone)<br>rschneider@mayerbrown.com |

*Attorneys for Kirk D. Hendrick, George Assad, Chandeni K. Sendall, The Nevada Gaming Control Board, Jennifer Togliatti, Rosa Solis-Rainey, Brian Krolicki, George Markantonis, Abbi Silver, The Nevada Gaming Commission, and Aaron D. Ford*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| KALSHIEX, LLC,<br><br>Plaintiff,<br><br>v.<br><br>KIRK D. HENDRICK, in his official capacity as Chairman of the Nevada Gaming Control Board, et al.,<br><br>Defendants,<br><br>v.<br><br>NEVADA RESORT ASSOCIATION,<br><br>Intervenor-Defendant. | Case No.: 2:25-cv-00575-APG-BNW<br><br>**DECLARATION OF RORY K. SCHNEIDER IN SUPPORT OF STATE DEFENDANTS' MOTION TO COMPEL** |

I, Rory K. Schneider, declare as follows:

1. I am a partner at the law firm Mayer Brown LLP, and I represent State Defendants in this matter. I have personal knowledge of the matters stated in this declaration, which I submit in support of State Defendants' Motion to Compel.

2. On August 1, 2025, State Defendants served their First Set of Requests for Production on Plaintiff KalshiEx, LLC ("Kalshi"), a true and correct copy of which is attached hereto as **Exhibit A.**

3. On September 9, 2025, Kalshi served its Responses and Objections to State Defendants' First Set of Requests for Production, a true and correct copy of which is attached hereto as **Exhibit B.**

4. On September 16, 2025, Kalshi made its initial production, containing approximately 1,180 event contract self-certification submissions, duplicate copies of the public and confidential components of those submissions, confirmations of the CFTC's receipt of those submissions, and four documents comprising Kalshi's "compliance-related materials"—the Rulebooks and Member Agreements for KalshiEx, LLC and Kalshi Klear.

5. On September 17, 2025, I sent a letter to Kalshi's counsel regarding deficiencies in Kalshi's Responses and Objections and requesting their availability for a meet-and-confer, a true and correct copy of which is attached hereto as **Exhibit C.**

6. On September 22, 2025 at 12:00 PM PST / 3:00 PM EST, counsel for State Defendants (myself, Jessica Whelan, Alexander Mendelson, and Miranda Katz) and counsel for Kalshi (Andrew Porter and Rosa Baum) met and conferred via Teams for approximately one hour to address the parties' outstanding discovery disputes.

7. On September 24, 2025, I sent a letter to Kalshi's counsel memorializing the details of that meet-and-confer. A true and correct copy of that letter is attached hereto as **Exhibit D**.

8. In sum, and as described in further detail in the letter, Kalshi's counsel maintained that Kalshi's objections were necessitated by the supposed breadth of State Defendants' document requests. Kalshi's counsel indicated that Kalshi was unable to formulate searches with which to identify potentially responsive documents. Kalshi's counsel represented that Kalshi had only undertaken to determine the volume of Kalshi's communications with the CFTC. Kalshi had not attempted to

assess the volume of documents responsive to any other requests. As described in my subsequent letter, State Defendants' counsel further clarified a number of requests during the September 22 meet-and-confer, and Kalshi agreed to consider several issues further on account of the clarification offered. *See* Ex. D.

9. On September 25, 2025, Intervenor-Defendant Nevada Resort Association ("NRA") informed Kalshi it was preparing a letter outlining its position on ongoing discovery disputes and requested to meet-and-confer. Intervenor-Defendant sent that letter early the following day.

10. On the afternoon of September 26, 2025, Kalshi's counsel informed Defendants that they were in receipt of both letters and would prepare a joint response, and requested a joint meet-and-confer the following week to further address the parties' outstanding discovery disputes. Ex. E at 13-14.

11. A true and correct copy of an email chain among counsel for the parties beginning on Friday, September 26, 2025 at 11:57 AM EST and ending on Tuesday, October 7, 2025 at 12:02 PM EST, is attached hereto as **Exhibit E.**

12. On September 26, 2025, Kalshi made a second production, containing approximately 174 complete event contract self-certification submissions, copies of the public and confidential components of submissions, and confirmations of the CFTC's receipt of submissions.

13. On September 29, 2025, Kalshi's counsel provided written responses to both State Defendants' and Intervenor-Defendant's letters. A true and correct copy of Kalshi's response letter is attached hereto as **Exhibit F.**

14. In its letter, Kalshi agreed to produce (i) non-privileged communications with the CFTC from January 1, 2025 through September 4, 2025, using a set of proposed search terms, (ii) non-privileged materials concerning Kalshi's contention that compliance with Nevada law would negatively impact its functions and operations, subject to search parameters that would be provided on a later date; and (iii) "an appropriate sample of advertisements targeted at Nevada consumers—for

example, an extract of the ads surfaced on a particular platform (such as Instagram) within a defined period of time (such as one week)" in response to State Defendants' requests for documents reflecting Kalshi's marketing of its event contracts as either sports wagers or sports bets. *See* Ex. F at 4-5, 7.

15. Kalshi refused to produce responsive internal communications on any subject, including with respect to State Defendants' requests for "[d]ocuments concerning Kalshi's self-certification of event contracts to the [CFTC]" (Request No. 2) and "documents reflecting, referencing, or discussing the financial, commercial, or economic consequences, if any, associated with Kalshi's event contracts" (Request No. 5). *Id.* at 5. Kalshi's counsel stated that such internal communications "are entirely irrelevant to the analysis of whether Kalshi's event contracts qualify as swaps, or to the question at issue in this action—whether the CEA preempts state regulation of trading on Kalshi." *Id.*

16. On the same basis, Kalshi refused to produce internal communications regarding "the representations in the self-certifications or [those that] generally discuss whether a contract is a swap and why" (*id.* at 5), and refused to produce internal communications related to Kalshi's advertisements of its offerings as a form of betting or gambling (*id.* at 7).

17. On September 29, 2025, at 11:30 AM EST / 8:30 AM PST, the parties jointly met and conferred via Teams for approximately 45 minutes to further address outstanding discovery disputes. Counsel for State Defendants (myself and Alexander Mendelson), counsel for Kalshi (Andrew Porter, Rosa Baum, Katie Cassidy-Ginsburg, and Paul Williams), and counsel for Intervenor-Defendant NRA (Adam Hosmer-Henner, Jane Susskind, A.G. Burnett, and Thad Houston) attended the meet-and-confer.

18. At the meet-and-confer, Kalshi reiterated its objection to the relevance of internal communications on any subject, and confirmed that it was unwilling to

reconsider its position with respect to the production of internal communications in response to any of Defendants' requests.

19. With respect to State Defendant's request for Kalshi's communications with the CFTC, State Defendants reserved the right to review the proposed search terms received earlier that morning, and Kalshi agreed to specify the custodians that it intended to cover in its search, which it asserted was inadvertently omitted from its letter.

20. Following that meet and confer, the parties continued to confer via email in an effort to resolve or narrow the scope of their ongoing discovery disputes.

21. On the evening of September 29, 2025, Kalshi's counsel identified a list of five Kalshi custodians who are reasonably likely to have contact with the CFTC regarding Kalshi's self-certifications of event contracts, and who Kalshi proposed using as custodians for the search terms and date range identified in its September 29, 2025 letter. *See* Ex. E at 9-10.

22. On September 30, 2025, State Defendants proposed additional search terms to supplement Kalshi's proposal with respect to CFTC communications, and proposed specific search parameters with respect to State Defendants' requests regarding Kalshi's advertisements. *Id.* at 8-9.

23. On October 1, 2025, Kalshi's counsel agreed that Kalshi would run those proposed additional search terms, and extend the time period applicable to its search for all communications to and from the CFTC from October 2, 2024 through at least September 4, 2025. *Id.* at 6-7.

24. On October 2, 2025, Kalshi's counsel confirmed Kalshi's acceptance of an additional expansion of the time period from September 4, 2025 to September 11, 2025. *Id.* at 5-6. Kalshi's counsel also provided the search terms for documents responsive to State Defendants' Request No. 7, which Kalshi had indicated were forthcoming in their September 29 letter. *Id.*; *see also* Ex. F at 6. In connection with this response, Kalshi proposed a set of search terms to apply to a single custodian—

Xavier Sottile, its Head of Markets—from March 4, 2025 through March 28, 2025. Ex. E at 6.

25. On October 3, 2025, my colleague Alexander Mendelson confirmed State Defendants' agreement to Kalshi's proposals with respect to CFTC communications, and State Defendants' unwillingness to accept Kalshi's proposal with respect to State Defendants' Request No. 7. *Id.* at 4-5.

26. On October 4, 2025, State Defendants confirmed their position that the parties had reached an impasse with respect to Request No. 7, and notified Kalshi's counsel of State Defendants' intent to move to compel the production of documents beyond the limited scope that Kalshi had proposed. *Id.* at 2-3.

27. Between October 1, 2025 and October 7, 2025, counsel for Kalshi indicated that it was working on a response to State Defendant's proposed search parameters with respect to Request Nos. 6 and 10 for documents related to advertising. *Id.* at 1-7. Given the impending deadline for motions to compel and the potential need for further meet-and-confers on the subject, the parties agreed to keep the meet-and-confer process open with respect to those requests. *Id.* at 1.

28. Despite a sincere effort to resolve or narrow the disputes during the above-referenced meet-and-confers, the parties were unable to fully resolve their disagreements over the discovery issues addressed in State Defendants' Motion to Compel without Court intervention.

29. The Motion to Compel cites to a select number of non-confidential documents produced by Kalshi on September 16, 2025 and September 26, 2025.

30. Attached as **Exhibit G** is a true and correct copy of a letter dated August 11, 2025, from Xavier Sottile to the CFTC, providing notification of Kalshi's self-certification of the "Will <people> shake hands before <date>?" contract, produced in this litigation at KALSHI_NVAG_0038401.

31. Attached as **Exhibit H** is a true and correct copy of a letter dated August 12, 2025, from Xavier Sottile to the CFTC, providing notification of Kalshi's self-

certification of the "Will <people> shake hands for <above/ below/ between/ exactly/at least> <duration>?") contract, produced in this litigation at KALSHI_NVAG_0006824.

32. Attached as **Exhibit I** is a true and correct copy of a letter dated July 3, 2025, from Xavier Sottile to the CFTC, providing notification of Kalshi's self-certification of the "Will Mark Zuckerberg release a new July 4th themed video by <date>" contract, produced in this litigation at KALSHI_NVAG_0015770.

33. Attached as **Exhibit J** is a true and correct copy of a letter dated August 18, 2025, from Xavier Sottile to the CFTC, providing notification of Kalshi's self-certification of the "Will <team> win <game> by <above/below/between/ exactly/ at least> <count> points?" contract, produced in this litigation at KALSHI_NVAG_0003326.

34. Attached as **Exhibit K** is a true and correct copy of letter dated August 30, 2025, from Xavier Sottile to the CFTC, providing notification of Kalshi's self-certification of the "Will <outcomes> occur in <events>?" contract, produced in this litigation at KALSHI_NVAG_0034937.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: October 8, 2025
New York, NY

Respectfully submitted,

*/s/ Rory K. Schneider*
Rory K. Schneider (*pro hac vice*)
Mayer Brown LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 506-2500
rschneider@mayerbrown.com
*Attorney for State Defendants*