# Exhibit D

Case 2:25-cv-00575-APG-BNW    Document 138-5    Filed 10/08/25    Page 1 of 9



Mayer Brown LLP
1221 Avenue of the Americas
New York, NY 10020-1001
United States of America

T: +1 212 506 2500

mayerbrown.com

**Rory K. Schneider**
Partner
T: +1 212 506 2157
RSchneider@mayerbrown.com

September 24, 2025

BY EMAIL

Andrew L. Porter
MILBANK LLP
55 Hudson Yards
New York, New York 10001
(212) 530-5000
aporter@milbank.com

Re:   *KalshiEX, LLC v. Hendrick, at al.*, Case No. 2:25-cv-00575-APG-BNW (D. Nev.)

Dear Counsel:

On behalf of State Defendants in the above-referenced matter, we write to memorialize the parties' meet and confer on September 22, 2025 regarding Kalshi's Responses and Objections to State Defendants' First Set of Requests for Production (the "Requests").

The meet and confer lasted approximately an hour, during which time the parties addressed: (1) Kalshi's general objections to the Requests; (2) Kalshi's objections to certain definitions and instructions; and (3) Kalshi's specific objections and questions regarding individual Requests. The following is a brief summary of the call, and the relevant items about which Kalshi agreed to revert.

As we mentioned at the conclusion of the meet and confer, the Court's recent order (ECF No. 133) requires that any motion regarding current discovery disputes that the parties cannot resolve be filed no later than October 1. We therefore request that Kalshi provide us responses on each of the points below no later than Friday, September 26—to allow further meet and confers if necessary prior to the forthcoming motion deadline.

**Kalshi's Blanket Burden Objections**

At the outset of the call, we reiterated our position that Kalshi's boilerplate, copy-and-paste responses and objections are legally invalid, and reserved State Defendants' right to argue that Kalshi has therefore waived any objections. Further, we noted that Kalshi had made generic burden objections to each and every Request, and therefore asked for further information regarding the bases for those objections, including an explanation of what documents, if any, had been collected or withheld and their volume.

Mayer Brown is a global services provider comprising an association of legal practices that are separate entities including
Mayer Brown LLP (Illinois, USA), Mayer Brown International LLP (England), Mayer Brown (a Hong Kong partnership)
and Tauil & Chequer Advogados (a Brazilian partnership).

Counsel for KalshiEX, LLC
September 24, 2025
Page 2

You maintained that Kalshi's serial burden objections were a result of the broad language used in the Requests, such as "all communications" and "all documents." You indicated that the supposed breadth of the Requests rendered Kalshi completely unable to formulate searches with which to identify potentially responsive documents.

In response to our follow-up request to confirm that you had not undertaken to identify the volume of any potentially responsive documents, you indicated only that you had been working with Kalshi to determine the volume of its communications with the CFTC in response to one of State Defendants' Requests. Kalshi had apparently—and, in State Defendants' view, improperly—not attempted to assess the volume of documents responsive any other Request in connection with its responses and objections.

Recognizing that at least certain searches may be conducted after the meet and confer, we reminded you that the so-ordered ESI Protocol (ECF No. 130) requires Kalshi to furnish the search terms and custodians it intends to use to collect documents. We also noted that the one production Kalshi has made to date lacks essentially any metadata.

> **Action Items:** (1) Kalshi to produce search terms and custodians used in connection with its document collection efforts pursuant to the so-ordered ESI Protocol; (2) Kalshi to provide metadata for the one production made to date, including any folder paths to the extent documents were pulled from a central repository.

**Kalshi's Objection to the Requests' Definition of "Kalshi"**

We next raised Kalshi's objection to the definition of "You", asserting that it would instead be interpreted to include only KalshiEx, LLC and no other affiliates including Kalshi Klear (an affiliated clearinghouse). You argued that because KalshiEx, LLC is the only entity that operates, certifies, and runs the exchange at issue in this action, documents involving other entities are irrelevant.

You declined to answer whether Kalshi considers Kalshi Klear or any other affiliated entities within its control or not for purposes of document discovery. You only responded that, if directed to a Request that specifically implicated Kalshi Klear, you would speak to Kalshi about whether Kalshi Klear would possess responsive documents and whether Kalshi considers such documents within its possession, custody, or control.

As we explained, your suggestions to the contrary notwithstanding, Kalshi's self-certification materials do not comprise the full universe of relevant and responsive information. Among other things, Kalshi's relationship with Kalshi Klear and Kalshi Klear's role in trades on Kalshi's exchange is relevant to Kalshi's consumer protection efforts (Request No. 9) inasmuch as Kalshi Klear is involved in clearing trades. Kalshi Klear or other affiliated entities like Kalshi Trading may also be relevant to the extent to which Kalshi does or does not operate like a traditional sportsbook (Request No. 10), given Kalshi's representations that there is no "house" involved in trades on its platform because Kalshi is not a counterparty to any such trades.

Counsel for KalshiEX, LLC
September 24, 2025
Page 3

**Action Item:** Kalshi's counsel to specify which, if any, Kalshi affiliates it considers within its control for purposes of discovery, including but not limited to Kalshi Klear.

## Kalshi's Objections to the Requests' Time Period

Kalshi also objected to the date range provided in the Requests (January 1, 2024 to present) because it extends beyond "the time period during which Kalshi offered sports events contracts, which Kalshi began offering on January 24, 2025."

We explained that January 1, 2024 to the present is a reasonable proposed date range, and noted that responsive materials such as Kalshi's preparation for the offering of sports events contracts, including preparation for the launch of the product offerings, consideration of whether the event contracts are swaps, and your discussions with the CFTC regarding event contracts, would be responsive and may well predate January 24, 2025. Accordingly, we asked for your justification for unduly shortening the relevant time period

You responded that the relevant communications with the CFTC sports contracts are solely what was submitted to the CFTC starting on January 24, 2025. However, in connection with assessing specific Requests, you agreed to consider whether there may be other responsive documents from the earlier timeframe specified in the Requests.

**Action Items:** Kalshi to reconsider whether it will produce responsive documents from the relevant time period identified by State Defendants.

## Kalshi's Objections to Specific Requests

**Request No. 1:** "All Communications between the Commodity Futures Trading Commission and Kalshi concerning Kalshi's event contracts."

We noted that this Request is not limited to self-certification materials that have been submitted to the CFTC, and asked whether Kalshi has had other communications with the CFTC that are being withheld.

You responded that the CFTC is Kalshi's regulator and any exchanges with the CFTC could conceivably be construed as "concerning Kalshi's event contracts." You indicated that as a result, Kalshi could not even draft search terms to identify potentially responsive documents short of searching for all communications with "cftc.gov." You indicated that if State Defendants specified the subjects to which the requested communications pertain, you would consider addressing the Request with Kalshi.

We explained that you presupposed that there are extensive communications with the CFTC in the less-than-two-year timeframe specified in the Requests, and we therefore asked whether a search for the CFTC domain had even been run. You responded that you had run that search for some

Counsel for KalshiEX, LLC
September 24, 2025
Page 4

subset of employees at Kalshi who would likely have had communications with the CFTC, and estimated that there were "less than 20,000 documents" that hit on the search since 2023.

You failed to explain how that volume of documents would impose an undue burden on Kalshi; it would not. We also disagreed with the suggestion that Kalshi could not formulate appropriate search terms to refine the number of hits. Having instituted this action, Kalshi is well aware of the subject matter at issue and presumably knows well the types of communications it has with the CFTC and the terminology that would be involved in any that relate to its event contracts.

We further mentioned, by way of example only, that State Defendants are interested in communications about the self-certifications; whether event contracts are swaps; the manner in which the Core Principles apply (or not); communications regarding potential invocation of the Special Rule; and communications regarding the applicability (or lack thereof) of certain state laws. You agreed to speak with Kalshi about those categories and revert.

Based on your estimate of less than 20,000 potentially responsive documents between Kalshi custodians and the CFTC, and based on your suggestion that nearly every such communication would arguably relate to event contracts, State Defendants maintain that Kalshi should review those 20,000 documents and produce responsive ones. At a minimum, Kalshi is obligated to run appropriate searches over that population of documents (which it must disclose to State Defendants) and produce responsive ones.

> **Action Items:** (1) Kalshi to revert whether it will produce the responsive documents already identified, subject to review for privilege; (2) Kalshi alternatively to consider running appropriate searches over the universe of CFTC communications it has already isolated and provide State Defendants with the search terms and custodians used pursuant to the operative ESI stipulation.

**Request No. 2:** "All Documents concerning Kalshi's self-certification of event contracts to the Commodity Futures Trading Commission."

We noted that Kalshi's production of self-certification filings from January 24, 2025 to September 4, 2025 is not a complete response to this Request. First, we noted that the timeframe excludes certain event contracts which are relevant to the issues in this action, including political event-based contracts and election-based contracts which were offered prior to January 2025. Second, we noted that this Request also includes internal communications regarding the preparation of self-certification submissions. State Defendants are entitled to understand Kalshi's basis for its representations to the CFTC; they need not accept those representations at face value.

You questioned the relevance of internal communications, arguing that Kalshi's voluntary explanations to the CFTC regarding the financial, economic, and commercial consequences of an offering, if unchallenged, renders the event contract a swap automatically. You further suggested, again, that the Request is too broad for Kalshi to conduct a proper search for responsive material, given that self-certifications are such a significant part of what Kalshi does.

Counsel for KalshiEX, LLC
September 24, 2025
Page 5

We noted our objection to your reliance on a generalized burden and breadth objection as insufficient, and noted that State Defendants do not object to Kalshi using reasonable search terms and custodians to limit the volume of potentially responsive documents for review. To assist, we explained that the Request would encompass, among other things, drafts of the self-certifications (to the extent not privileged), communications regarding the preparation and drafting of the self-certifications, and communications concerning the extent to which the event contracts being self-certified qualify as swaps and their potential financial, commercial, or economic consequences.

> **Action Items:** Kalshi to utilize State Defendants' representative list of responsive subjects to formulate appropriate searches to identify additional documents responsive to Request No. 2.

**Request No. 3**: "All Communications to or from Brian Quintenz concerning Kalshi's event contracts."

You asserted that, as a Kalshi board member, Mr. Quintenz is not involved in the self-certification process, but when asked for a representation to that effect, you indicated that you would have to confirm with your client whether it was actually true. We explained that as a board member who is nominated to serve as the CFTC Chair, it was plausible that Mr. Quintenz would have been involved in relevant communications regarding, among other things, the scope of regulatory the Commission's regulatory authority, whether event contracts are swaps, and Kalshi's ability to comply with state and federal law.

You stated that Kalshi would stand on its position that the fact of Mr. Quintenz's involvement in a communications does not alone make it relevant, but that if Kalshi comes across communications with Mr. Quintenz that are responsive to other Requests, they would not be withheld on account of Mr. Quintenz's involvement.

> **Action Items:** Subject to Kalshi's confirmation that documents would not be withheld based on Mr. Quintez's involvement, State Defendants will consider whether Kalshi's forthcoming searches and productions in response to other Requests are sufficient for Request No. 3.

**Request No. 5**: "All Documents reflecting, referencing, or discussing the financial, commercial, or economic consequences, if any, associated with Kalshi's event contracts."

As stated during the meet and confer, State Defendants expect Kalshi to search for and produce documents and communications, both internal and external, that bear on the representations in the self-certifications and/or more generally discuss whether a contract is a swap and why.

> **Action Items:** Kalshi to formulate searches for documents and communications that relate to the representations in the self-certifications or generally discuss whether a contract is a swap and why.

Counsel for KalshiEX, LLC
September 24, 2025
Page 6

**Request No. 7**: "All Documents reflecting, referencing, or discussing Kalshi's contention that compliance with Nevada law interferes with the operation and function of Kalshi's markets for event contracts."

We explained that this Request goes directly to Kalshi's conflict preemption argument and asked whether Kalshi has undertaken to locate responsive documents. You stated that there is "little to nothing" and that you are undertaking to confirm "whether it is little or nothing." You further suggested that, to the extent there are responsive documents, they would necessarily be privileged.

We explained that to the extent there are responsive documents that are privileged, Kalshi is obligated to properly log them. We further explained that it was presumptuous to assume that any document responsive to the Request would necessarily be privileged. Contrary to your suggestion, it is eminently plausible that Kalshi considered the extent to which it could or could not comply with state law in non-privileged settings. Indeed, Mr. Sottile's declaration (ECF No. 18-1) discussed conversations he has had with Kalshi leadership and technical teams regarding geofencing and the purported complications that would arise if Kalshi were to have to comply with Nevada law.

You agreed to consider further what, if any, documents exist that are responsive to this Request.

> **Action Items:** (1) Kalshi to confirm what, if any, non-privileged documents exist that are responsive to this Request; (2) To the extent any responsive documents are privileged, Kalshi to appropriately log them.

**Request No 9**: "All Documents or Communications reflecting, referencing, or discussing consumer protection efforts made by Kalshi with respect to individuals in Nevada participating in Kalshi's event contracts."

We asked how Kalshi came up with producing the limited set of Rulebooks and related compliance material in its first production, and what else is encompassed by the Request but is being withheld. You responded that there are consumer-facing materials about Kalshi's consumer protection efforts (*i.e.* the ability to self-exclude), and that these are derived from the Rulebooks that had been produced.

We explained that the Request also encompassed, among other things, the existence of and/or Kalshi's efforts to address age verifications, problem gambling, the ability to self-exclude, and market manipulation. We further noted that consumer protection efforts go to public interest, which is a topic specifically identified in Magistrate Judge Weksler's order denying Kalshi's emergency motion to stay discovery (ECF No. 118).

You stated that none of that is a "core part of the issues here" but that you'd go back to your client to consider if there were other responsive documents that Kalshi may be willing to produce.

Counsel for KalshiEX, LLC
September 24, 2025
Page 7

**Action Items:** (1) Kalshi to consider whether documents along the lines identified by State Defendants during the meet and confer exist and, if so, whether it will agree to produce them; (2) If Kalshi refuses to produce additional documents, Kalshi to explain why.

**Request Nos. 6 and 10**: "All Documents reflecting, referencing, or discussing Kalshi's advertising or marketing of any of its event contracts as either sports wagers or sports bets."; "All Documents and Communications reflecting, referencing, or discussing Kalshi's event contracts in comparison with wagers or bets offered on sports in Nevada."

We explained that one of State Defendants' arguments is that sports betting is a traditional area of state regulation and to the extent there are documents and communications equating what Kalshi is allowing traders to do with traditional forms of sports betting, those would be responsive.

You stated that this Request is broad and you need more specificity. You stated that Kalshi runs ads all over the country and sometimes those include the word "bet." You further stated that just because something says "bet" does not mean Kalshi does the same thing as a sportsbook or casino. You said you'd consider giving an acknowledgement that ads in Nevada have been run with the word "bet" in them but if we want every ad shown to Nevada residents, that will be more difficult.

We stated that if the ads you acknowledged exist are centrally stored or are otherwise accessible (which is presumably the case), there would be no undue burden producing them. Additionally, the Request would encompass documents and communications discussing the extent to which Kalshi's event contracts are similar to traditional forms of betting, the extent to which they may differ (including Kalshi's representation that it is not a counterparty to trades and does not function like the "house"), and whether to market the contracts as a form of betting or gambling.

You said you would address the issue with Kalshi.

**Action Items:** (1) Kalshi will consider the feasibility of producing advertisements for its event contracts as a form of, or otherwise referencing, betting or gambling; (2) Kalshi to consider the extent to which related communications exist and will be searched for and produced.

\* \* \*

Kalshi agreed to send State Defendants a letter this week with responses to the aforementioned action items. We expect this letter to include an explanation of how Kalshi is searching for responsive documents pursuant to the ESI Protocol, as well as clear explanations of the volume of responsive documents, the extent to which any are being withheld, and the specific bases for withholding them.

State Defendants reserve all rights, including the right to seek relief from the Court and the costs associated with seeking such relief.

We are available to meet and confer further as appropriate.

Mayer Brown LLP

Counsel for KalshiEX, LLC
September 24, 2025
Page 8

        Sincerely,

        */s/ Rory K. Schneider*

        Rory K. Schneider

cc: Jessica E. Whelan
   Sabrena K. Clinton
   Nicole A. Saharsky
   Minh Nguyen-Dang
   Adam Hosmer-Henner
   A.G. Burnett
   Jane Susskind
   Katrina Weil
   Cassin Brown