# Exhibit F



**ANDREW L. PORTER**
*Partner*
55 Hudson Yards  |  New York, NY 10001-2163
T: +1 (212) 530-5361
aporter@milbank.com  |  milbank.com

September 29, 2025

**VIA EMAIL**

| | |
|---|---|
| Jessica Whelan<br>Chief Deputy Solicitor General<br>Sabrena Clinton<br>Senior Deputy Attorney General<br>**State of Nevada**<br>**Office of the Attorney General**<br>1 State of Nevada Way, Suite 100<br>Las Vegas, NV 89119<br>JWhelan@ag.nv.gov<br>SClinton@ag.nv.gov | Rory Schneider<br>**Mayer Brown**<br>1221 Avenue of the Americas<br>New York, NY 10020<br>rschneider@mayerbrown.com<br><br>Adam Hosmer-Henner<br>**McDonald Carano**<br>100 W. Liberty Street<br>Reno, NV 89501<br>ahosmerhenner@mcdonaldcarano.com |

  Re: *KalshiEX, LLC v. Hendrick, et al.*, 2:25-cv-0575

Dear Counsel:

  We write on behalf of Plaintiff KalshiEX, LLC ("Kalshi") to address various issues raised during our September 22, 2025 meet and confer with State Defendants to discuss Kalshi's Responses and Objections to State Defendants' First Set of Requests for Production (the "State Requests"); the September 24, 2025 Letter from State Defendants (the "September 24 Letter") regarding the same; and the September 26, 2025 Letter from Intervenor-Defendant Nevada Resort Association ("NRA") (the "September 26 Letter") regarding NRA's First Set of Requests for Production and Interrogatories (the "NRA Requests" and, together with the State Requests, the "Requests").

  As a threshold matter, the bulk of the Requests are of little relevance to the issues in the case. Plaintiffs were forced to bring this action in response to a cease-and-desist letter issued by the Nevada Gaming Control Board ("NGCB") that seeks to unconstitutionally prohibit ***all trading*** of ***all*** event contracts offered on Kalshi's federally regulated exchange in Nevada. *See* ECF 1-2, Mar. 4, 2025 Letter from NGCB to T. Mansour and E. Mishory. In granting a preliminary injunction against NGCB's enforcement of its cease-and-desist letter against Kalshi, the Court held that the "plain and unambiguous language" of the Commodity Exchange Act ("CEA") "reflects congressional intent to occupy the field of regulating CFTC-designated exchanges and the transactions conducted on those exchanges." ECF 45 at 12. That preemption question is "purely legal" and does not turn on any disputed facts. *Hawaii Newspaper Agency v. Bronster*, 103 F.3d 742, 746 (9th Cir. 1996) (cleaned up). In denying Kalshi's motion to stay discovery, Magistrate

MILBANK LLP

NEW YORK | LOS ANGELES | WASHINGTON, D.C. | SÃO PAULO | FRANKFURT
LONDON | MUNICH | HONG KONG | SEOUL | SINGAPORE | TOKYO

September 29, 2025                                                                                                          Page 2

Judge Weksler recognized that discovery may be appropriate into three limited categories. *See* ECF 118 at 3. Specifically, the Court indicated that discovery may be appropriate regarding: (1) whether the event contracts Kalshi offers satisfy the definition of a "swap"; (2) the inability of Kalshi to comply with both Nevada and federal law; and (3) certain topics related to injunctive relief. *See id.* at 3-4. Kalshi has already agreed to produce documents related to all three categories identified by Magistrate Judge Weksler, or to log the documents as privileged as appropriate. And as we have explained, we are investigating whether there are any responsive, non-privileged documents relating to the second and third categories—but, to date, we believe that few, if any, responsive, non-privileged documents exist.

What Kalshi has objected to are a number of Requests that go well beyond discovery needed to address these questions or otherwise address the disputed issues in this case. These Requests seek discovery into, for example, "*[a]ll* communications to or from *any* official, employee, or representative of the United States Government reflecting, referencing, or discussing Kalshi's event contracts," State Requests No. 4, and "[a]ll Documents or Communications reflecting, referencing, or discussing consumer protection efforts made by Kalshi with respect to individuals in Nevada participating in Kalshi's event contracts," State Requests No. 9. As discussed on our call, Defendants' requests for "all documents" concerning Kalshi's core business activities are, in general, overbroad and disproportionate to the needs of this case. *See* Rule 26(b)(1).

Although Defendants have argued that Kalshi's "R&Os consist entirely of boilerplate objections that fail to specify a limited basis for withholding the requested discovery" and are therefore improper, Sept. 17, 2025 Letter from R. Schneider to A. Porter, Kalshi's responses were appropriate given the overbreadth of the Requests. Indeed, the Requests were so overbroad as to make them impossible to respond to without clarification as to the actual discovery sought. Likewise, the Requests were so overbroad that there was no reasonable way for Kalshi to even begin to determine the best method to identify a potentially relevant universe of documents. *United States v. Chen*, No. CV-S-04-0859, 2005 WL 8153116, at *3–4 (D. Nev. 2005) (observing that a "party may object to discovery on the grounds that it is so broad and all-inclusive as to be burdensome" and that a party "resisting discovery on grounds that a request is overly broad has the burden to support its objection, *unless the request is overly broad on its face*") (emphasis added). That is precisely why Kalshi offered to meet and confer in response to many of the Requests—so that it could understand the actual discovery being sought.

Defendants' continued pursuit of materials responsive to overbroad requests also flies in the face of prior representations Defendants made to the Court, which emphasized the limited nature of discovery sought by Defendants. *See* ECF 115 at 18:15-19 (Whelan) ("[T]his Court has already entered an expedited discovery schedule. Discovery is set to close on October 31st. There has been a dozen or so, you know, a few dozen discovery requests going on. The scope of depositions that we would want is quite limited."), 19:9-13 (Whelan) ("I would find that to be a bit specious to say that this could go into the seven figures, given that we're at the end of August already, so we're looking at September and October, two months of discovery.").

Plaintiffs have already produced over 4,500 documents and more than 41,000 pages in response to Defendants' Requests. These productions included hundreds of Kalshi event contract self-certifications provided to the CFTC and related confidential appendices, which are plainly

September 29, 2025 Page 3

sufficient to address Defendants' complaint (however untrue) that Kalshi had not "disclose[d] the contracts they are offering." *Id.* 55:22-23. And, as discussed below, Kalshi intends to continue to provide information responsive to Defendants' requests to the extent those requests are relevant to the issues in this case and not overbroad or unduly burdensome.

In an effort to fully address the wide array of issues Defendants raised in the September 24 Letter and the September 26 Letter, Kalshi takes the issues presented in both letters in turn.

### I.   Kalshi's Response to Defendants' September 24 Letter

The State Defendants' September 24 Letter set out several "Action Items." Our response to each "Action Item" is as follows:

> *Action Item 1 (Page 2): (1) Kalshi to produce search terms and custodians used in connection with its document collection efforts pursuant to the so-ordered ESI Protocol; (2) Kalshi to provide metadata for the one production made to date, including any folder paths to the extent documents were pulled from a central repository.*

Pursuant to the ESI protocol entered by the Court, the "Producing Party shall provide to the Requesting Party a list of search terms it intends to use to capture responsive ESI ***it has agreed to produce***, or otherwise specify the manner in which the Producing Party intends to locate and produce documents in response to any particular document request." ECF 130 at 3 (emphasis added). As explained during the meet-and-confer call, Kalshi maintains files collecting as-submitted versions of its self-certifications to the CFTC, and we made inquiries with appropriate personnel at Kalshi to identify and collect those files. Since these files were collected without the use of search terms, there are none to provide. To the extent Kalshi does utilize search terms in relation to producing documents, it will provide them consistent with the requirements of the ESI protocol.

Defendants also claim that Kalshi has some obligation to "assess the volume of documents responsive" to any request made by Defendants. Not so. Kalshi is not required to undertake efforts to collect and otherwise assess information in order to respond to a facially overbroad and objectionable request. *See Chen*, 2005 WL 8153116, at *3–4. Kalshi has fully complied with its discovery obligations to date, including by producing more than 34,000 pages of documents within hours of the Court entering the Protective Order and within a week of serving its Responses and Objections to the Requests.

Regarding Defendants' request for metadata, Kalshi agrees to continue to investigate the issue identified by Defendants and intends to produce any additional metadata associated with Kalshi's initial production, to the extent any unproduced metadata exists.

> *Action Item 2 (Page 3): Kalshi's counsel to specify which, if any, Kalshi affiliates it considers within its control for purposes of discovery, including but not limited to Kalshi Klear.*

During our call, you suggested that Defendants were entitled to documents from Kalshi's affiliate, Kalshi Klear Inc. ("Klear"). First, Klear is not a party to this action, and is a separate

September 29, 2025                                                                                                                           Page 4

legal entity distinct from Plaintiff KalshiEX LLC. Second, Klear is a clearinghouse—not a designated contract market ("DCM"). Documents from Klear would have no bearing on the court's determination of whether the state of Nevada has jurisdiction to regulate trading on Kalshi's platform because Kalshi is subject to the exclusive jurisdiction of the Commodity Futures Trading Commission ("CFTC") as a federally regulated DCM. With that said, Klear's documents are in Kalshi's possession, custody, or control. To the extent these materials are in the files of agreed upon custodians, are captured by the agreed-upon search terms, and are otherwise responsive and not privileged, Kalshi intends to produce the materials.

Without waiving its objections, Kalshi is willing to meet and confer to discuss a limited production of documents sufficient to show the purpose and manner of Klear's operations as a clearinghouse to facilitate the functioning of Kalshi's exchange.

*Action Item 3 (Page 3): Kalshi to reconsider whether it will produce responsive documents from the relevant time period identified by State Defendants.*

Kalshi maintains its objection to the time period identified by State Defendants (January 1, 2024 to the present). The cease-and-desist letter at issue in this case seeks to prohibit Kalshi from offering ***all*** event contracts in Nevada. To that end, Kalshi has produced to date hundreds of self-certifications filed with the CFTC in 2025. These certifications include those for both election and sports contracts (the latter category of which was not self-certified Kalshi until January 24, 2025).[1] This information is more than sufficient for Defendants to have discovery into whether the contracts offered by Kalshi "have independent real-world consequences and thus, fall under the exclusive jurisdiction of the CFTC." ECF 118. Defendants have not articulated a reason why self-certifications pre-dating January 1, 2025, would be relevant to an inquiry before the Court, or anything but cumulative. To the extent Defendants identify specific contracts that were self-certified prior to January 1, 2025, for which they are interested in discovery of the kind Kalshi has otherwise agreed to produce, Kalshi is willing to consider producing discovery for such contracts, but it will not agree to non-targeted discovery that is cumulative to that already provided.

*Action Item 4 (Page 4): (1) Kalshi to revert whether it will produce the responsive documents already identified, subject to review for privilege; (2) Kalshi alternatively to consider running appropriate searches over the universe of CFTC communications it has already isolated and provide State Defendants with the search terms and custodians used pursuant to the operative ESI stipulation.*

Kalshi has considered Defendants' position and will expand the universe of documents Kalshi agreed to produce in in its Responses and Objections to include non-privileged communications with the CFTC from January 1, 2025, through September 4, 2025. Kalshi is using the following search terms: "sports event contracts" and swaps; "sports event contracts and swaps and (qualify or qualified or treat! or consider!); "core principles"; "core principles" and (apply or application or allow to violate or comply or complying or compliance); "core principles" and (apply or application or allow to violate or comply or complying or compliance) and sports; "state

---

[1] *See, e.g.*, KALSHI_NVAG_0036678 (sports-related certification); KALSHI_NVAG_0003326 (same); KALSHI_NVAG_0034917 (same); KALSHI_NVAG_0021212 (election-related certification); KALSHI_NVAG_0020908 (same); KALSHI_NVAG_0000390 (same).

September 29, 2025 Page 5

law" or (state w/10 law)" or "state regulation" or (state w/10 regulation) or "state gaming laws" or "state gambling laws"; ("state law" or (state w/10 law) or "state regulation" or (state w/10 regulation) or "state gaming laws" or "state gambling laws") and (compliance or comply! or preempt! or applicability or applicable); "federal law" or (federal w/10 law) or "federal regulation" or (federal w/10 regulation); ("federal law" or (federal w/10 law) or "federal regulation" or (federal w/10 regulation) and (compliance or comply!); "exclusive jurisdiction"; (CFTC or Commission) w/10 (jurisdiction or preempt!); sports.

> *Action Item 5 (Page 5): Kalshi to utilize State Defendants' representative list of responsive subjects to formulate appropriate searches to identify additional documents responsive to Request No. 2.*

Kalshi will not produce internal communications regarding its self-certifications to the CFTC. Judge Weksler identified the relevant question as whether the "contracts offered on [Kalshi's] DCM have independent real-world consequences"—*i.e.*, whether the "contract in question" is "associated with a potential financial, economic, or commercial consequence.'" ECF 118 at 3 (quoting and citing 7 U.S.C. § 1a(47)(A)(ii)). The self-certifications Kalshi has agreed to, and has, produced, address that issue. Kalshi has also agreed to produce communications with the CFTC that a hit upon the search terms identified *supra* at 4-5. Internal communications are entirely irrelevant to the analysis of whether Kalshi's event contracts qualify as swaps, or to the question at issue in this action—whether the CEA preempts state regulation of trading on Kalshi—and Kalshi will not produce them.

As noted above, to the extent Defendants identify specific pre-2025 self-certifications they are interested in, Kalshi is willing to consider providing discovery with respect to those self-certifications and related communications with CFTC.

> *Action Item 6 (Page 5): Subject to Kalshi's confirmation that documents would not be withheld based on Mr. Quintenz's involvement, State Defendants will consider whether Kalshi's forthcoming searches and productions in response to other Requests are sufficient for Request No. 3.*

Mr. Quintenz is a Kalshi board member who is not involved in the self-certification process. We can confirm that Kalshi does not intend to withhold otherwise responsive, non-privileged materials if and to the extent Mr. Quintenz was copied on such materials. Kalshi does not, however, agree to conduct additional searches solely in response to this Request.

> *Action Item 7 (Page 5): Kalshi to formulate searches for documents and communications that relate to the representations in the self-certifications or generally discuss whether a contract is a swap and why.*

Kalshi has already produced materials responsive to State Defendants' Request No. 5 in the form of tens of thousands of pages of self-certifications provided to the CFTC, including optional confidential appendices included with those self-certifications that address, among other things, the "potential financial, economic, or commercial consequences" associated with the underlying events. For the reasons stated in response to Action Item 5, Kalshi will not produce internal communications regarding this topic.

September 29, 2025                                                                                                                          Page 6

> *Action Item 8 (Page 6): (1) Kalshi to confirm what, if any, non-privileged documents exist that are responsive to this Request; (2) To the extent any responsive documents are privileged, Kalshi to appropriately log them.*

Kalshi's business has been subject to federal regulation since 2020, and as such, Kalshi does not expect its employees to have discussed matters of compliance with state law. If such materials exist, given the nature of this Request, we expect any responsive materials would have been generated as part of privileged communications with attorneys or in anticipation of litigation following Kalshi's receipt of Nevada's C&D Letter. Nonetheless, Kalshi agrees to produce non-privileged materials responsive to this request and, accordingly, is identifying the appropriate custodians and will provide a list of search terms by close of business on Wednesday, October 1, 2025. Any materials responsive to this request but withheld on the basis of privilege will be appropriately logged.

> *Action Item 9 (Page 7): (1) Kalshi to consider whether documents along the lines identified by State Defendants during the meet and confer exist and, if so, whether it will agree to produce them; (2) If Kalshi refuses to produce additional documents, Kalshi to explain why.*

State Defendants' Request No. 9 seeks "All Documents or Communications reflecting, referencing, or discussing consumer protection efforts made by Kalshi with respect to individuals in Nevada participating in Kalshi's event contracts." These materials are irrelevant, and the Request, as written, is facially overbroad. *See Chen*, 2005 WL 8153116, at *3–4. We understand your position to be that "consumer protection efforts go to public interest" and are therefore discoverable in this case. We disagree, and Magistrate Judge Weksler's Order denying Defendants' Motion to Stay Discovery does not suggest otherwise. *See* ECF 118 at 3-4.

Magistrate Judge Weksler observed that Defendants should be allowed to inquire into matters associated with the public interest in the context of permitting discovery into injunctive relief, along with the reputational harm Kalshi expects to incur absent injunctive relief, the cost of geolocation, and the potential consequences for failure to comply with the CEA's Core Principles. ECF 118 at 3-4. The Court's reference to matters of "public interest" had nothing to do with Kalshi's arguments regarding preemption. Defendants now attempt to shoehorn requests relating to Kalshi's efforts to address consumer protection efforts, such as age verifications, problem gambling, and the ability to self-exclude, into Magistrate Judge Weksler's order. But the Court's statement on public interest in the context of Kalshi's requested injunctive relief should not be construed as some sort of catchall to permit broad discovery into factual matters that have no bearing on this case. Defendants have not articulated any basis on which these topics relate to the claims or defenses raised by the Parties in this case.

Nonetheless, subject to and without waiver of its relevance objections, Kalshi agreed to produce its policies and programs related to risk management and consumer safety contained in its Rulebook and other compliance-related materials. Kalshi produced those materials earlier this month.

> *Action Item 10 (Page 7): (1) Kalshi will consider the feasibility of producing advertisements for its event contracts as a form of, or otherwise referencing, betting or*

*gambling; (2) Kalshi to consider the extent to which related communications exist and will be searched for and produced.*

As discussed on our meet and confer, Kalshi understands Defendants are seeking materials that are available in the public domain and readily available to any party that wishes to reference them. *See, e.g.*, *Blue Lake Rancheria v. Kalshi Inc.*, No. 1:25-cv-06162-RMI, ECF 1, Exs. A-E (N.D. Cal. July 22, 2025). Nevertheless, Kalshi is willing to consider a request to provide an appropriate sample of advertisements targeted at Nevada consumers—for example, an extract of the ads surfaced on a particular platform (such as Instagram) within a defined period of time (such as one week). We are willing to meet and confer regarding these parameters. Kalshi maintains that its advertisements have no relevance to the claims or defenses at issue in this case. But to the extent they do, under Defendants' public interest framing, it is only to the extent they were shown to consumers in Nevada. As such, Kalshi will not produce internal communications regarding advertisements.

### II. Kalshi's Response to Intervenor Defendants' September 26 Letter

The September 26 Letter from NRA purports to identify other issues not raised by State Defendants in the September 24 Letter. Below please find our position on each of your stated concerns.

*NRA's Position Regarding RFP Nos. 1, 2, and 3 (Page 2)*

Your September 26 Letter states NRA agrees with the approach articulated by State Defendants, but that NRA "continues to request and emphasizes the importance of internal communications and documents (e.g., emails, meeting agendas, memos) responsive to RFP Nos. 1, 2, and 3." Kalshi refers NRA to its discussion on these issues above, including in Action Items 4 and 5. We maintain our position that internal communications between employees are irrelevant to Kalshi's action for declaratory judgment regarding federal preemption and its claim for an injunction to prevent Defendants from enforcing preempted state law.

*NRA's Position Regarding RFP No. 4 (Pages 2-3)*

Your September 26 Letter indicates NRA takes the same positions as State Defendants with respect to Kalshi's Responses and Objections to Request No. 4. Kalshi refers NRA to its discussion on these issues above, including in Action Item 10.

*NRA's Position Regarding RFP Nos. 5, 6, and 7 (Page 3)*

Kalshi refers NRA to its discussion on these issues above, including in Action Items 5, 7, and 8. Furthermore, with respect to Request No. 6, Kalshi objected to this request on relevance grounds. Defendants have yet to provide an articulation for why Kalshi's communications with third-party Susquehanna have any relevance to Kalshi's action for declaratory judgment regarding federal preemption and its claim for an injunction to prevent Defendants from enforcing preempted state law. Kalshi maintains its objections and will not be producing any communications with Susquehanna.

September 29, 2025                                                                                                                          Page 8

*NRA's Position Regarding RFP No. 8 (Page 3)*

Your September 26 Letter states that "the NRA is not satisfied" that the materials produced by Kalshi thus far "represent the universe of responsive documents." September 26 Letter at 3. Kalshi refers NRA to its discussion of Action Item 9, above.

*NRA's Position Regarding RFP No. 9 (Pages 3-4)*

Your September 26 Letter states that NRA seeks communications between Kalshi and State Defendants and notes "NRA does not have access to these communications." September 26 Letter at 3. This is plainly untrue, as such communications are readily available to you from your Co-Defendants (with whom NRA is obviously coordinating). In light of that, please explain why Kalshi should be put to the burden and expense of locating and producing these communications, especially in the context of discovery that Defendants previously represented to the Court would be limited in nature.

*NRA's Position Regarding RFP No. 10 (Pages 3-4)*

NRA Request No. 10 seeks "[a]ll Documents reflecting, referencing, or discussing Kalshi's knowledge, monitoring, and actions relating to sports betting in Nevada and the Nevada sports gaming industry, sportsbook betting lines, sportsbook website and application design." Your September 26 Letter states that NRA believes the information requested "is relevant to assess Kalshi's offerings and the similarities between them and those offered under Nevada's regulatory scheme." September 26 Letter at 4. But a comparison between event contracts and the activities of casinos or other gaming entities that Nevada regulates has no bearing on the question of federal preemption. Nor does it have any bearing on the three categories of potentially permissible discovery identified by Judge Weksler. *See supra* at 2. For these reasons, including those articulated in Kalshi's Responses and Objections to the Requests, Kalshi maintains its objections to Request No. 10 but is willing to further meet and confer to the extent NRA is able to articulate the relevance of the information sought by such request.

*NRA's Position Regarding Interrogatories 4, 6, and 7 (Page 4)*

Your September 26 Letter states that NRA seeks information through Interrogatory Nos. 4 and 7 "to determine to what extent Kalshi or its affiliates are acting as the 'house' on the exchange." September 26 Letter at 4.

As requested in your September 26 Letter, Kalshi is willing to meet and confer to discuss Interrogatory No. 4.

                          *       *       *       *       *

We look forward to speaking later today to discuss these issues.

                                                                Sincerely,

                                                                s/ Andrew L. Porter
                                                                Andrew L. Porter