# EXHIBIT B

**Article:** *"Kalshi Puts Geolocation Tech Providers on Edge Amid Rapid Rise" -* SPORTICO



HOME / BUSINESS / TECH

# KALSHI PUTS GEOLOCATION TECH PROVIDERS ON EDGE AMID RAPID RISE

BY  DAN BERNSTEIN, EBEN NOVY-WILLIAMS, MICHAEL MCCANN
OCTOBER 16, 2025 1:00PM



**Los Angeles Chargers quarterback Justin Herbert, who has appeared in Kalshi promotional material, plays in one of the states that could require geoblocking technology.**

ILLUSTRATION BY SPORTICO; PHOTO BY GETTY IMAGES

Kalshi(https://www.sportico.com/t/kalshi/)'s

growth(https://www.sportico.com/business/sports-
         betting/2025/draftkings-flutter-stock-kalshi-parlay-1234872516/)

has concerned U.S. geolocation technology providers, who, like many in the gambling

industry, are

**scrambling(https://www.sportico.com/business/sports-betting/2025/draftkings-flutter-stock-kalshi-parlay-1234872516/)**

to figure out how federally regulated

**sports prediction markets (https://www.sportico.com/business/sports-betting/2025/prediction-markets-sports-kalshi-robinhood-polymarket-1234858418/)**

might reshape their businesses.

Kalshi, unlike traditional sportsbooks, offers bets in all 50 states and has no legal mandate to sign geolocation deals for advanced customer tracking. The geolocation firms that earn hundreds of millions of dollars annually from established gaming operators could lose out if this model continues to proliferate. Kalshi is already

**expanding its footprint (https://www.sportico.com/business/sports-betting/2025/south-park-kalshi-polymarket-prediction-episode-1234871979/)**

, and some prominent sportsbooks are

**considering launching (https://www.sportico.com/business/sports-betting/2025/fanduel-prediction-market-cme-agreement-1234867686/)**

similar prediction market products nationwide.

As Kalshi argues its broader case that federal Commodity Futures Trading Commission (**CFTC(https://www.sportico.com/t/cftc/)**) rules

**preempt(https://www.sportico.com/law/analysis/2025/kalsh-prediction-markets-maryland-loss-scotus-review-1234865768/)**

gambling laws elsewhere, it has said in court that adopting geolocation tools to shut out customers in regions where its services are banned would cause both economic and

"irreparable harm," a legal term that encompasses harm monetary damages can't later remedy.

Geolocation companies are fuming about this stance. Gaming operators that pay for geolocation technology in part so they can keep their state gaming licenses aren't thrilled, either.

Soon, Kalshi will need to furnish evidence and testimony to demonstrate the burden it claims is legitimate. U.S. District Judge Brenda Weksler recently

**green-** **(https://sbcamericas.com/2025/09/09/kalshi-nevada-**
**lighted** **discovery-ruling/)**

Nevada's pursuit of related materials for pretrial discovery after Kalshi argued such fact-finding was unnecessary.

The process could shed light on the intricacies of geolocation businesses and test federal commodity laws about limiting access to prediction markets.

"Kalshi is proudly the largest federally regulated prediction market in the country," Kalshi wrote in an emailed statement. "As a responsible actor, we strictly follow all CFTC regulations in order to further our mission of democratizing information and providing a safe and accountable platform for our consumers to trade on. That is exactly what we are doing in this case."

GeoComply, Radar and Xpoint Tech, the three biggest U.S. geolocation firms that work in gaming, have all built their operations to meet the sector's regulatory needs, benefitting from a fractured landscape in which only some states allow gambling.

To ensure compliance, their technology digs deeper than basic IP address recognition to monitor the exact place someone tries to place a wager, sifting through real-time data from sources such as GPS coordinates, cell phone towers, WiFi access points and Bluetooth beacons. They can tell with a high degree of certainty, for instance, whether

someone is on the New York or New Jersey side of the George Washington Bridge, which was essential when only the latter had legalized online betting.

As they now try to convince prediction market exchanges to enter commercial partnerships, they are emphasizing that their products can also be used for other reasons, an employee at a data provider told *Sportico* on the condition of anonymity because the discussions were private.

Additional uses of geolocation data, the providers say, include proving a bettor is dishonestly disputing credit card charges, revealing sign-up bonus abuse or showing that someone is illegally making proxy wagers across state lines. It can also be deployed as an integrity tool by seeing in real time whether suspicious bets are happening from, say, a sports team's facilities or, in the case of Kalshi's political wagers, from Congress or the White House.

Almost all U.S. gaming companies—some valued at a small fraction of Kalshi's reported $5 billion worth—license geolocation technology to ensure they only offer their products where legally permitted. State commissions have the power to revoke licenses if they don't do this.

While Kalshi has an integrity monitoring agreement with IC360, the deal notably does not include the geolocation technology IC360 makes available through its partnership with Radar, IC360 co-CEO Scott Sadin confirmed to *Sportico*. Kalshi argues that paying for a geolocation suite would come with dire financial consequences.

(In an interesting twist, Kalshi head of corporate development Sara Slane is a former GeoComply advisor, having worked in the traditional gaming space for many years before joining Kalshi.)

The company did not answer whether it has given any thought to adding a geolocation service for the purpose of anti-fraud or integrity measures.



**Kalshi's Weekly Volume Skyrocketed in September**

Legend: NFL · NCAAF · NBA · March Madness · MLB · Golf · Tennis · Other (Sports & Non-Sports)

Chart: Lev Akabas • Source: Kalshi

Sportico

When states began to legalize sports betting in the wake of *Murphy v. NCAA* in 2018, geolocation firms primarily charged clients per ping, which activated when a user logged in, tried to place a bet, had been on the app for a certain amount of time, or if they were near a relevant border.

Some betting operators saw this as an inefficient method that risked overcharging relative to user count. In response, geolocation firms have begun presenting alternative options that tie prices to monthly unique active users, or in some cases, revenue.

New pricing options and increased competition between GeoComply, the market share leader, and Radar and Xpoint, have helped limit geolocation fees from shooting upward at an unsustainable rate. This has kept geolocation deals from causing severe economic harm compared to revenue, multiple people at betting companies told *Sportico*.

The biggest sportsbooks in the U.S.—

**DraftKings(https://www.sportico.com/t/draftkings/)** and

**FanDuel(https://www.sportico.com/t/fanduel/)**—spend in the mid-tens-of-millions per year, according to the source at the data provider with knowledge of their agreements. That figure, which is at the highest end of annual geolocation payments, does not include initial integration costs.

DraftKings projects $6.2 billion to $6.4 billion in revenue in fiscal year 2025, likely putting its geolocation expenses well below 1% of total income.

It is unclear whether large sportsbooks' potential forays into prediction markets might change their expenses. FanDuel is close to launching a prediction market product

**with       (https://www.sportico.com/business/sports-**
**CME       betting/2025/fanduel-prediction-market-cme-agreement-**
**Group     1234867686/)**

, while DraftKings

**has  (https://www.sportico.com/business/sports-betting/2025/draftkings-**
**said futures-contracts-cryptocurrency-1234828320/)**

it is considering its options as it determines the risks of upsetting the state regulators it works closely with.

---

Kalshi's proclamations about geolocation expenses having a serious adverse effect on its budget are disputed by people and companies from the gambling establishment.

It is not known the exact amount Kalshi would need to pay to adopt geolocation technology; the company said in a legal declaration in the Nevada case that it would be at least "tens of millions" and take "many months" to set up any geolocation service.

Kalshi does not share its monthly active user total or state-by-state engagement numbers, so geolocation costs cannot be reasonably estimated by an outside party.

Sporttrade chief operating officer David Huffman said the cost of geolocation was "not at all" financially crippling to his business and would still be "quite useful" if the prediction market company

**transitions**(https://www.sportico.com/business/sports-betting/2025/sporttrade-cftc-kalshi-prediction-market-1234850501/)

from a state licensed entity to one under CFTC oversight.

The CEO of a prominent gaming company that operates in most U.S. states, who spoke on the condition of anonymity to talk frankly about an issue that concerns a competitor, told *Sportico* they consider their geolocation fees quite cheap relative to overall expenses.

The founder of a gaming startup with fewer than 50,000 users—an example of a smaller operation that makes geolocation work in its budget—said the cost of the technology is not prohibitive to the operations of their company. The person, also speaking under the condition of anonymity because the topic is sensitive, noted that geolocation is ubiquitous throughout sportsbook, fantasy and sweepstakes apps of all sizes, and that payment processors often require it.

It is worth noting that because entrenched betting companies pay for geolocation while Kalshi does not—and Kalshi poses a threat to their market share—they have an incentive to tout the merits of tracking services.

"GeoComply works with companies of all sizes across a wide range of industries," a representative for GeoComply wrote in an emailed statement. "Fraud prevention and compliance should never be viewed as a barrier to entry. It is an investment in consumer protection, regulatory trust and long-term sustainability. Our customers consistently find that the value our tools deliver far outweighs the cost of implementation."

Radar and Xpoint did not respond to requests for comment.

---

As Kalshi has complained in court of the potential costs associated with geolocation, the company has flashed its cash elsewhere.

On Sept. 12, *The Information* reported that Kalshi was raising funds at a valuation of $5 billion—roughly the market cap of Caesars Entertainment. The company confirmed the round last week, more than doubling its valuation since June, when it announced a $185 million raise valuing it at $2 billion.

On the back of the new cash, Kalshi has also announced an international expansion into more than 140 countries. It

**said the move will include** **(https://www.sportico.com/business/sports-betting/2025/kalshi-china-india-access-launch-1234873579/)**

China and India, the world's most populated countries, though it could meet government resistance. Kalshi has not indicated whether moving into new territories will force it to adopt geolocation technology.

States have taken note of Kalshi's apparent financial strength as it sees rapid growth.

"Would the purported 'tens of millions of dollars annually' spent on geolocation implementation (for '10,000 Nevada users') torpedo Kalshi's entire existence, or is it a mere drop in Kalshi's revenue bucket?" Nevada lawyers wrote in an April 4 filing, which came well before the company's valuation ballooned into the billions this summer.

---

In its unsuccessful Aug. 22 motion to stay discovery, Kalshi said its legal claims present "purely legal questions that require no further factual development," thus making Nevada's geolocation discovery inquiries irrelevant. Kalshi's core argument has been that CFTC rules should take precedence over the application of state gambling

regulations. From its perspective, this is a matter of legal interpretation that "fact finding" in pretrial discovery wouldn't influence.

Kalshi also portrayed the requests for emails, texts and other company materials related to geolocation as burdensome, given that identifying and organizing materials would require additional legal expenses and disruption.

While the company failed to convince Weksler to issue a stay that would have postponed pretrial discovery, a motion for summary judgement is still pending. The court's determination will occur after the parties have shared evidence and testimony. Summary judgment is granted if the court believes the parties aren't in dispute about key facts and that the legal debate should be resolved a particular way.

As the Nevada case and similar ones develop—Kalshi is also in court battles with Maryland, New Jersey and Massachusetts—Kalshi will likely continue to argue that requiring it to geolocate users, even on a temporary basis, risks irreparable harm in addition to its alleged financial harm.

For instance, an injunction to stop a company from polluting a lake is premised on the idea that damage to a lake and the life in it is irreparable. In sports, an athlete can sometimes show that loss of the chance to play games—games that will never be replayed—is a type of irreparable harm, as is reputational damage that irreversibly alters one's reputation or a company's brand.

The toll from adding geolocation capabilities, Kalshi claims, fits the irreparable harm definition because it would require alterations to its business model and impact the company's goodwill and brand. It has said that blocking any U.S. user from its service based on where they are attempting to place wagers would break CFTC rules, potentially leading to punitive action from the agency.

CFTC **core principles(https://www.law.cornell.edu/cfr/text/17/38.150)** dictate that exchanges cannot prevent anyone from participating in the purchase or sale

of contracts, with the exception of parties privy to inside information and those who break platform rules.

In a supporting document filed by Kalshi in the Nevada case in April, Kalshi head of markets Xavier Sottile noted how ErisX, a predecessor to the current sports prediction market craze, previously butted up against the impartial access issue. After the CFTC stopped ErisX from facilitating sports prediction markets for sportsbooks to hedge activity on their own apps in 2021, then-CFTC commissioner Dan Berkovitz **wrote(https://www.cftc.gov/PressRoom/SpeechesTestimony/berkovitzstatem** in a statement that the "proposed exclusion of the general public from trading the contract on the [exchange] would violate DCM Core Principles and CFTC regulations regarding impartial access."

But

**much        (https://www.sportico.com/business/sports-betting/2025/cftc-**
**has          whistleblower-enforcement-sports-prediction-market-**
**changed   1234867107/)**

at the CFTC since 2021. It is not a foregone conclusion that the agency will punish Kalshi if it uses a geolocation tool under court orders to halt access in certain states or tribal lands. Sottile did not identify any actual threat of action from the CFTC toward Kalshi this year in his court declaration.

Joshua Sterling, a Milbank attorney who represents Kalshi in court, declined to comment when asked whether the CFTC has said anything to Kalshi about the matter. The CFTC did not respond to a request for comment, but in an advisory sent to exchanges two weeks ago, the contents of which were **first(https://x.com/dan_bernstein_/status/1973157368675352986)** reported by *Sportico*, the agency implied the CFTC would not punish Kalshi or anyone else offering sports prediction market contracts for following court orders that impede impartial access.

Instead, it warned exchanges that they might need to shut off their services in certain states, asking operators to prepare accordingly.

Kalshi did not provide a comment addressing whether the CFTC had made any threat of action over the impartial access issue.



**RELATED STORY**

**Kalshi Says Global Push Includes China, India Launches**

[(https://www.sportico.com/business/sports-betting/2025/kalshi-china-india-access-launch-1234873579/)](https://www.sportico.com/business/sports-betting/2025/kalshi-china-india-access-launch-1234873579/)



Sportico is a part of Penske Media Corporation. © 2025 Sportico Media, LLC. All Rights Reserved.
Powered by WordPress.com VIP