# EXHIBIT F

## CFTC LETTER DATED SEPT. 30, 2025

CFTC Letter No. 25-36   Advisories   September 30, 2025



**U.S. COMMODITY FUTURES TRADING COMMISSION**
Three Lafayette Centre, 1155 21st Street, NW, Washington, DC 20581
www.cftc.gov

CFTC Staff Advisory
Market Participants Division
Division of Market Oversight
Division of Clearing and Risk

September 30, 2025

**To:**   All Futures Commission Merchants ("**FCMs**"), Introducing Brokers ("**IBs**"), Designated Contract Markets ("**DCMs**"), Derivatives Clearing Organizations ("**DCOs**"), and Registered Futures Associations ("**RFAs**")

**Re:**   **Certain Contract Markets**

Ladies and Gentlemen:

The Market Participants Division ("**MPD**"), Division of Market Oversight ("**DMO**"), and Division of Clearing and Risk ("**DCR**" and, together with MPD and DMO, the "**Divisions**") of the Commodity Futures Trading Commission ("**CFTC**" or "**Commission**") are issuing this letter in connection with a potential lapse in government appropriations to advise FCMs, IBs, DCMs, DCOs, and RFAs to be prepared for all foreseeable conditions that may result from facilitating the trading and clearing of sports-related event contracts for customers, market participants, and clearing members.[1]

The Divisions are aware that certain registered entities and registrants are listing or facilitating the trading or clearing of sports-related event contracts, or may be interested in the future in doing so, and that there are market participants interested in trading these products.  The Divisions are also aware of

---

[1] *See* CFTC Press Release No. 9046-25, *CFTC Announces Prediction Markets Roundtable* (Feb. 5, 2025), *available at* https://www.cftc.gov/PressRoom/PressReleases/9046-25.

various forms of State regulatory actions[2] and pending and potential litigation concerning the legality of sports-related event contracts listed on DCMs.[3]

The Divisions are issuing this Advisory to caution FCMs, IBs, DCMs, and DCOs that State regulatory actions and pending and potential litigation, including enforcement actions, should be accounted for with appropriate contingency planning, disclosures, and risk management policies and procedures.[4] The Divisions note that FCMs, IBs, DCMs, and DCOs should be prepared to identify such contingency plans, disclosures, and risk management policies and procedures as part of the routine registration, oversight, and examination activities of the CFTC and applicable self-regulatory organizations, including monitoring legal developments and have risk mitigation and contingency plans in place to deal with any developments that may affect customer, market participant, or clearing member positions and funds.

FCMs, IBs, DCMs, and DCOs should provide customers, market participants, and clearing members with regularly updated information, including information based on any States in which they operate or engage in activity, to ensure that such customers, market participants, and clearing members understand the possible effects should State regulatory actions or ongoing or new litigation, including enforcement actions, result in termination of sports-related event contract positions. Among other things, FCMs and DCOs should ensure that their customers and clearing members are aware of liquidation or close-out policies and procedures that the FCM or DCO may deploy for sports-related event contracts as well as how the FCM or DCO will handle any necessary disposition of customer or clearing member funds and property.

---

[2] *See, e.g.,* Illinois Gaming Board, *Cease and Desist Letters Related to Unlicensed Sports Wagering Activity, available at* https://igb.illinois.gov/sports-wagering/cease-and-desist-letters.html (accessed Sept. 5, 2025); *OH Regulator Warns Sportsbooks about Wading Too Deep into Sports Contracts*, SBC Americas (Aug. 25, 2025), *available at* https://sbcamericas.com/2025/08/25/ohio-sports-contracts-letter/.

[3] For example, at least one federal district court has found that the Commodity Exchange Act ("CEA") does not preempt the application of State gambling, wagering, and gaming laws to sports-related event contracts listed and traded on a CFTC-registered trading venue. *See KalshiEX LLC v. Martin*, No. 25-CV-1283-ABA, 2025 WL 2194908 (D. Md. Aug. 1, 2025), on appeal to the U.S. Court of Appeals for the Fourth Circuit, Case No. 25-1892. *See also KalshiEX LLC v. CFTC*, No. 23-cv-3257, 2024 WL 4164694 at *8 (D.D.C. Sept. 12, 2024) ("The Court finds no reason to stray from the ordinary definitions of 'gaming,' which are 'the practice or activity of playing games' and 'playing games for stakes.'").

[4] The Commission has not, to date, been requested to take or taken any official action to approve the listing for trading of sports-related event contracts on any DCM pursuant to sections 5c(c)(4)-(5) of the CEA and Commission regulation 40.3. 7 U.S.C. § 7a-2(c)(4)-(5), 17 CFR 40.3. *See also* 17 CFR 38.4(a). All sports-related event contracts that are currently listed for trading on DCMs have been listed pursuant to self-certifications filed by the relevant DCM pursuant to CEA section 5c(c)(1) and Commission regulation 40.2, 7 U.S.C. § 7a-2(c)(1).17 CFR 40.2, and the Commission has not, to date, made a determination regarding whether any such contracts involve an activity enumerated or prohibited under CEA section 5c(c)(5)(C)(i), 7 U.S.C. § 7a-2(c)(5)(C)(i), or Commission regulation 40.11(a), 17 CFR 40.11(a). The activities enumerated under CEA section 5c(c)(5)(C)(i) and Commission regulation 40.11(a) are: activity that is unlawful under any Federal or State law; terrorism; assassination; war; and gaming. *See* Provisions Common to Registered Entities, 76 Fed. Reg. 44776, 44786 (July 27, 2011) ("[T]he Commission would like to note that its prohibition of certain 'gaming' contracts is . . . to 'protect the public interest from gaming and other event contracts.'") and at 44786, FN 35 ("[T]he Commission 'needs the power to, and should, prevent derivatives contracts that are contrary to the public interest because they exist predominantly to enable gambling through supposed event contracts.'"). Transactions subject to the Commission's jurisdiction "are affected with a national public interest by providing a means for managing and assuming price risks, discovering prices, or disseminating pricing information through trading in liquid, fair and financially secure trading facilities." 7 U.S.C. § 5(a).

FCMs are reminded that Commission regulation 1.55[5] prohibits an FCM from entering into a customer account agreement or accepting funds from a customer unless the FCM discloses to the customer all information about the FCM, including its business, operations, risk profile, and affiliates, that would be material to the customer's decision to entrust such funds to and otherwise do business with the FCM and that is otherwise necessary for full and fair disclosure.[6] In particular, FCMs are reminded that Commission regulations require an FCM to disclose a summary of the FCM's current risk practices, controls and procedures,[7] expanding upon such information as necessary to keep such disclosure from being misleading, whether through omission or otherwise.[8]

FCMs are required to update such information as and when necessary to keep such information accurate and complete and to promptly disclose such updated information to all of its customers.[9] In connection with such obligation to update information, an FCM must take into account any material change to its business operations, financial condition, and other factors material to a customer's decision to entrust the customer's funds and otherwise do business with the FCM since its most recent disclosure.[10]

FCMs are further reminded that each FCM is required to adopt policies and procedures reasonably designed to ensure that advertising and solicitation activities by each such FCM and any IBs associated with such FCM are not misleading to its customers in connection with their decision to entrust funds to and otherwise do business with such FCM.[11]

DCMs are reminded that certain statutory and regulatory requirements apply to providing complete and accurate information, and promoting transparency and fair and equitable trading.[12] For example, DCMs are reminded that Commission regulation 38.401(b) provides that, with respect to any information required to be transmitted or made available to market participants and the public, including on the DCM's website or otherwise, the DCM must provide information that it believes, to the best of its knowledge, is accurate and complete, and must not omit material information.[13]

DCOs are reminded that Commission regulation 39.21 requires that a DCO must provide to market participants sufficient information to enable the market participants to identify and evaluate accurately the risks and costs associated with using the services of the DCO and must make information concerning the rules and the operating and default procedures governing the clearing and settlement systems of the DCO available to market participants.[14]

---

[5] 17 CFR 1.55.

[6] *See* 17 CFR 1.55(i).

[7] *See* 17 CFR 1.55(k)(11).

[8] *See* 17 CFR 1.55(i).

[9] *Id*.

[10] *Id*.

[11] *See* 17 CFR 1.55(l).

[12] Relevant requirements include but are not limited to: DCM Core Principle 4 (Prevention of Market Disruption), DCM Core Principle 7 (Availability of General Information), and DCM Core Principle 12 (Protection of Markets and Market Participants), as well as implementing regulations thereunder.

[13] 17 CFR 38.401(b).

[14] *See* 17 CFR 39.21(a) and (b).

Under the CEA and Commission regulations, persons are prohibited from engaging in regulated activities unless appropriately registered.[15]

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This Advisory is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable by law by any party in any matter. This Advisory does not provide any no-action position with respect to a recommendation by any Division that the Commission initiate an enforcement action for failure to comply with the CEA or Commission regulations. Further, this Advisory is not intended to, does not, and may not be relied upon to create any new binding rules or regulations, or to amend existing rules or regulations. This Advisory represents only the views of the Divisions and does not necessarily represent the views of the Commission or of any other division or office of the Commission. Nothing in this Advisory is intended to waive any pre-decisional or other privileges that may apply to the Commission's or Divisions' deliberations or decision making regarding potential enforcement actions or potential rulemaking.

---

[15] *See, e.g.*, definitions of FCM and IB in Commission regulation 1.3, 17 CFR 1.3, sections 4d(a) and (g) of the CEA, 7 U.S.C. §§ 6d(a) and (g). *See also* frequently asked questions (FAQs) regarding registering an entity as a futures commission merchant, available at: https://www.cftc.gov/PressRoom/PressReleases/9091-25.

Questions concerning this Advisory may be directed to Thomas J. Smith, Acting Director, MPD, tsmith@cftc.gov, Rahul Varma, Acting Director, DMO, rvarma@cftc.gov or Richard Haynes, Acting Director, DCR, rhaynes@cftc.gov.

Sincerely,

_____

Thomas J. Smith
Acting Director
Market Participants Division


_____

Rahul Varma
Acting Director
Division of Market Oversight


_____

Richard Haynes
Acting Director
Division of Clearing and Risk