DENNIS L. KENNEDY
Nevada Bar No. 1462
PAUL C. WILLIAMS
Nevada Bar No. 12524
**BAILEY✧KENNEDY**
8984 Spanish Ridge Avenue
Las Vegas, Nevada 89148-1302
Telephone: 702.562.8820
Facsimile: 702.562.8821
DKennedy@BaileyKennedy.com
PWilliams@BaileyKennedy.com

NEAL KUMAR KATYAL
(Admitted *pro hac vice*)
JOSHUA B. STERLING
(Admitted *pro hac vice*)
WILLIAM E. HAVEMANN
(Admitted *pro hac vice)*
**MILBANK LLP**
1101 New York Avenue NW
Washington, D.C. 20005
Telephone: 202.835.7500
Facsimile: 202.263.7586

GRANT R. MAINLAND
(Admitted *pro hac vice*)
ANDREW L. PORTER
(Admitted *pro hac vice*)
NICOLE D. VALENTE
(Admitted *pro hac vice*)
KATIE CASSIDY-GINSBERG
(Admitted *pro hac vice*)
VICTOR HOLLENBERG
(Admitted *pro hac vice*)
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
Telephone: 212.530.5000
Facsimile: 212.530.5219

*Attorneys for Plaintiff KalshiEX, LLC*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| KALSHIEX, LLC, | Case No. 2:25-cv-00575-APG-BNW |
| Plaintiff, | |
| vs. | **PLAINTIFF'S RESPONSE TO INTERVENOR'S JOINDER TO STATE DEFENDANTS' MOTION TO DISSOLVE INJUNCTION** |
| KIRK D. HENDRICK, in his official capacity as Chairman of the Nevada Gaming Control Board, et al., | |
| Defendants, | |
| vs. | |
| NEVADA RESORT ASSOCIATION, | |
| Intervenor-Defendant. | |

1

NRA[1] purports to "join" the State Defendants' Motion to Dissolve the Preliminary Injunction (ECF No. 142) (the "Motion to Dissolve"), but in substance, it submitted, without requesting leave, an impermissible supplemental brief. ECF No. 178 (the "NRA Submission"). The NRA Submission largely repeats points raised by State Defendants in the Motion to Dissolve and attempts to supplement that motion with additional facts and argument—including through a procedurally and substantively improper "expert declaration" from a non-testifying, interested witness.[2] The Court should strike the NRA's Submission from the record.

Even if the Court were to consider the arguments put forth by NRA, those arguments should be rejected. As explained in Kalshi's response to the State Defendants' Emergency Motion to Dissolve the Preliminary Injunction (ECF No. 183, the "Response"), there has been no material change in the facts or underlying law since the Court entered a preliminary injunction in Kalshi's favor, and a preliminary injunction continues to be warranted.

**I.      NRA's "Joinder" is an Improper Supplemental Brief and Should be Struck.**

NRA's filing goes far beyond a traditional, non-substantive joinder of the sort NRA has previously submitted in this case. *Cf.* ECF No. 139 (NRA joinder to State Defendants' Motion to Compel Discovery); ECF No. 159 (NRA joinder to State Defendants' Reply in Support of Motion to Compel). Though labeled as a "joinder," the NRA Submission offers pages of factual assertions and argument and appends an improper "expert declaration" packed with more of the same. NRA did not seek leave—and this Court did not permit—NRA's so-called "joinder." And despite largely supplementing arguments, or making arguments that could have been made in the Motion to Dissolve, the NRA Submission was filed just two days prior to Kalshi's deadline to respond to that motion, and just 16 days before the scheduled hearing on the same, forcing Kalshi to respond to improper and surplus briefing while contending with the pending motion. And there can be no

---

[1] Capitalized terms not otherwise defined have the meaning given to them in the Response.

[2] State Defendants and NRA have taken a hand-in-glove approach to this and other similar cases that goes beyond mirroring one another's arguments, up to and including NRA being "consulted" and voicing "no objection" on State Defendants' decision to enter an agreement not to seek enforcement of state law against Crypto.com. ECF No. 110 at ¶ 6, *N. Am. Derivatives Exch., Inc. v. Nevada ex rel. Nevada Gaming Control Bd.*, No. 25-cv-978 (D. Nev. Oct. 24, 2025).

2

dispute that the NRA Submission was substantive: NRA conceded as much to Kalshi,[3] and also tacitly acknowledged to the Court that Kalshi would need to respond. NRA Submission at 2. Further, under the assumption it would be entitled to a reply brief as if it had filed a motion itself, rather than a mere "joinder," NRA offered to waive that reply because of the timing bind it imposed on Kalshi and the Court. *Id*.

All of this is well outside the bounds of typical practice in this District, and the clear requirements of the Local Rule 7-2(g), which provides both that "[a] party may not file supplemental pleadings, briefs, authorities, or evidence without leave of court granted for good cause" and that such pleadings may be struck when "made without leave of court." Courts in this District regularly strike filings like the NRA Submission in precisely these circumstances. *See, e.g., Est. of Graves v. Nye Cnty.*, No. 2:20-cv-02359, 2023 WL 4747404, at *2 (D. Nev. July 24, 2023) (striking "joinder" to motion where submitting party "joined their co-defendants not only in form, but also in substance, adding almost 5 pages of additional [] argument" without leave); *Snow Covered Cap., LLC v. Fonfa*, No. 2:22-cv-01181, 2023 WL 3884631, at *1, *3 (D. Nev. June 8, 2023) (striking "joinders" filed without leave that raised new arguments and did "not merely incorporate by reference or adopt [submissions of moving party]," as improper "supplemental, companion briefs" and "rogue filings"). Indeed, those same decisions recognize that while some foreign districts have rules permitting "substantive joinders" under some circumstances, in this District Local Rule 7-2(g) alone controls.[4]

Accordingly, the NRA Submission should be struck.

---

[3] In addition to not seeking leave, NRA did not inform Kalshi of its intent to file the NRA Submission. Instead, the day after filing, NRA wrote to Kalshi to "confirm" that since the Joinder was "substantive" NRA would not object to Kalshi responding to the filing and would waive its assumed right to reply.

[4] The NRA Submission is procedurally improper for an additional reason. When courts do permit joinders to motions, it is when the parties are so similarly situated as to render a separate motion redundant, or when the joining party "specifically points out: which parts of the motion apply to the joining party, the joining party's basis for standing, and the factual similarities between the joining party and moving party that give rise to a similar claim or defense." *See Tatung Co., Ltd. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138, 1151 (C.D. Cal. 2016) (collecting cases); *Crockford v. Clark Cnty. Dep't of Fam. Servs.*, No. 2:25-cv-00917, 2025 WL 2301653, at *3 (D. Nev. Aug. 8, 2025) (same). NRA cannot satisfy either prong: the PI—which was issued before NRA sought to intervene—applies to State Defendants and enjoins them from "pursuing civil or criminal prosecutions against" Kalshi, something NRA, an industry lobbying group, cannot do. ECF No. 45 at 17.

**II.     NRA's Submission of an "Expert Declaration" is Improper and Premature.**

NRA relies heavily on the declaration of attorney Dan Reaser, whom it "intends to proffer as an expert should this case proceed further." ECF No. 178 at 2; ECF No. 178-1 ("Reaser Decl."). The deadline for initial expert disclosures is not until December, so Kalshi did not learn of Mr. Reaser's submission until NRA's filing, and has had no opportunity to depose him or offer rebuttal expert testimony.[5] That alone would make reliance on his testimony prejudicial, but even putting it aside, Mr. Reaser's declaration is not reliable evidence.

*First*, though presented as factual expert testimony, it is in large part legal argument. Mr. Reaser, citing solely to statutes and regulations, summarizes Nevada's stated policy underlying its gambling laws (Reaser Decl. ¶ 7), the nature of "sports pool" regulations (*id.* ¶ 8), age requirements (*id.* ¶ 10), financial regulations (*id.* ¶ 11), consumer protection requirements (*id.* ¶¶ 12-13), restrictions on betting (*id.* ¶ 14), and regulatory scheme (*id.* ¶¶ 15-16). Such testimony usurps the role of the Court and is inadmissible under Fed. R. Evid. 702. *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996) ("Experts 'interpret and analyze factual evidence. They do not testify about the law[.]'") (citations omitted); *United States v. Tamman*, 782 F.3d 543, 552 (9th Cir. 2015); *United States v. Boulware*, 558 F.3d 971, 975 (9th Cir. 2009); *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058-60 (9th Cir. 2008).

*Second*, Mr. Reaser's discussion of geofencing (Reaser Decl. ¶¶ 17-21) relies on nothing more than speculation, which is improper. *Stephens v. Union Pac. R.R.. Co*., 935 F.3d 852, 856 (9th Cir. 2019) (expert's opinion cannot rest on "mere[] assumptions and speculation"). Mr. Reaser does not purport to have performed, commissioned, or reviewed any technical study or financial analysis regarding the cost or implementation of geofencing technology, let alone as applied to Kalshi specifically. Instead, he claims "there is no reason why Kalshi would be unable . . . to use geolocation

---

[5] Mr. Reaser's publicly available law firm biography, available at https://www.fennemorelaw.com/people/attorneys/dan-r-reaser/, includes an extensive list of "representative matters" involving the gaming industry, including clients that appear to be, at the least, affiliated with purported members of the NRA. *Compare with* ECF No. 141. Since Kalshi has not yet received Rule 26(a)(2) disclosures for Mr. Reaser, nor had the opportunity to depose him, it has had no opportunity to evaluate whether Mr. Reaser's client representations may present conflicts that could impact his ability to provide expert testimony to this Court in this proceeding.

4

1 and geofencing technology to ensure compliance with Nevada law" because "other companies do." Reaser Decl. ¶ 21. This Court has already found that Kalshi presented "credible evidence that even if it could implement geofencing at great expense, it could not do so immediately as the defendants demanded," and that it could not recover the costs to do so if it actually prevailed. ECF No. 45 at 15. State Defendants challenge neither finding in the Motion to Dissolve,[6] and Mr. Reaser's stated basis for his speculation is a partial quote from an employee of a non-DCM and non-CFTC-regulated entity that he plucked from a news article. Reaser Decl. ¶ 20. Mr. Reaser does not purport to have done any analysis comparing that entity, or its business model, to Kalshi, nor provide any basis to discount the sworn testimony of a Kalshi employee the Court has previously relied upon.

*Third*, many of Mr. Reaser's thinly veiled legal arguments involving public policy, consumer protection, and geofencing resemble arguments made by plaintiffs in *Blue Lake Rancheria v. Kalshi Inc.*, a case involving allegations that Kalshi's designated contract market ("DCM") violates the Indian Gaming Regulatory Act ("IGRA"), the Lanham Act, tribal ordinances, and tribal sovereignty. The court in that case recently denied the tribes' bid for a preliminary injunction, finding that they were unlikely to prevail on the merits of their IGRA and Lanham Act claims. *See Blue Lake Rancheria v. Kalshi Inc.*, No. 25-cv-06162, 2025 WL 3141202 (N.D. Cal. Nov. 10, 2025). Even if Mr. Reaser's arguments were relevant here—they are not—they have not carried the day in court, either.

*Fourth*, the balance of Mr. Reaser's declaration is not expert testimony at all, but rather a claim that he "keep[s] up with news affecting the gaming industry" and a listing of news articles or press statements he's recently reviewed. Reaser Decl. ¶ 22-27. This is nothing more than record-stuffing, and the fact that Mr. Reaser has read a statement in an article—particularly when there is no indication he has used the articles to inform an opinion offered—does make it the sort of "facts or data" reasonably relied upon by expert witnesses. *United States v. Vera*, 770 F.3d 1232, 1237 (9th Cir. 2014) (citing Fed. R. Evid. 703); *see also United States v. Mejia*, 545 F.3d 179, 199 (2d Cir. 2008) (expert cannot serve as conduit for testimonial hearsay "in the guise of an expert opinion"

---

[6] Resp. in Opp'n to State Defs' Emergency Mot. to Dissolve the Prelim. Inj. (ECF No. 183, the "Motion to Dissolve Response" or "Dissolve Resp.") at 18-19.

5

(citation omitted)).

The Court should therefore strike or disregard Mr. Reaser's declaration.

## III. NRA's Substantive Arguments Fail.

Even if the Court considers the merits arguments presented in the NRA Submission, they do not justify dissolution of the injunction. To avoid duplicative briefing, where applicable Kalshi incorporates by reference the arguments it advanced in its Motion to Dissolve Response, and responds in detail only to new arguments raised in NRA's joinder.

### A. No Change in Law or Fact

Like State Defendants, NRA cites (at 2-3) the decisions in *KalshiEX LLC v. Martin*, No. 25-cv-1283, 2025 WL 2194908 (D. Md. Aug. 1, 2025) and *N. Am. Derivatives Exch. v. Nevada ex rel. Nevada Gaming Control Bd.*, No. 2:25-cv-978, 2025 WL 2916151 (D. Nev. Oct. 14, 2025), to justify their motion to dissolve the injunction. NRA also argues (at 3) that the "balance of hardships and public interest factors" "strongly support dissolving the preliminary injunction." But, like the State Defendants, NRA does not acknowledge that a motion to dissolve must rest "on grounds that could not have been raised before." Dissolve Resp. at 4-5 (quoting *Alto v. Black*, 738 F.3d 1111, 1120 (9th Cir. 2013)).

### B. The Balance of Hardships and Public Interest Favor an Injunction

*First*, NRA (at 2) claims "short shrift" was given to the equities during the preliminary injunction proceedings. But that is not an accurate characterization. In granting the preliminary injunction, this Court explained that Kalshi has "shown the threat of prosecution is imminent," added that a "credible threat of imminent prosecution for a state violation that conflicts with federal law can establish a likelihood of irreparable harm," and noted that Kalshi faced a Hobson's choice of either subjecting itself to "civil and criminal liability" if it does not comply with Defendants' cease-and-desist letter, or else incurring "substantial economic and reputational harm as well as the potential existential threat of the CFTC taking action against it for violating the CFTC's Core Principles if Kalshi disrupts contracts or geographically limits who can enter contracts on what is supposed to be a national exchange." ECF No. 45 at 14-16. By contrast, Defendants and NRA suffer no cognizable injury from an injunction preventing them from enforcing preempted state laws or

6

from "preserv[ing] the status quo, which is that [Kalshi's] contracts are legal under federal law." *Id*. at 15-16; *see also* Dissolve Resp. at 21-22; *United States v. California*, 921 F.3d 865, 893-894 (9th Cir. 2019) ("preventing a violation of the Supremacy Clause serves the public interest"). Kalshi continues to face the same risk of irreparable harm the Court previously recognized—exposure to prosecution and the loss of its ability to operate a nationwide market. NRA's arguments do not call that conclusion into question.

*Second*, NRA relies (at 3) on 17 C.F.R. § 40.11(a) (2011) to claim the CFTC has "made a public interest determination on a blanket basis" that contracts involving "gaming" are unlawful. This too repeats State Defendants, and Kalshi submits it is incorrect. *See* Dissolve Resp. at 14. In offering its sports-event contracts, and in response to a specific request from the CFTC for a "[d]emonstration of compliance" with the CEA,[7] Kalshi provided the CFTC an extensive explanation of why the contracts comported with Section 40.11 (and the CEA more generally), and the CFTC took no action. *Id*.

*Third,* NRA further cites (at 3-4) the Nevada Legislature's ratification of Senate Bill 256 as evidence of the State's determination that "unregulated" gaming violates the public interest. But Kalshi does not offer unregulated gaming; it operates a DCM subject to extensive federal regulation. The question is not whether Kalshi should be regulated, but by whom, and regardless, it should come as no surprise that, when the Supremacy Clause is invoked, it may be in conflict with the desires of state legislators. Preemption still applies in this circumstance. Dissolve Resp. at 16-18, 21-22.

*Fourth*, NRA refers (at 4-5) to Kalshi's recent funding round and the growth in Kalshi's sports offerings. On the first point, a funding round valuation does not equate to cash-on-hand, and even if it did, Kalshi has presented the Court with evidence of the immense and irreparable harm, both financial and reputational, that would befall it if forced to face the Hobson's choice of whether to risk state enforcement proceedings or comply with preempted state law. Dissolve Resp. at 18-21. On the second point, NRA contends (at 5) that "Kalshi only started to emphasize sports in its product

---

[7] 17 CFR § 38.5(b) (2012).

1  design and advertising this year," but Kalshi only started to *offer* sports contracts this year.[8]  The
2  fact that Kalshi's sports offerings are popular does not change the issue before the Court, which has
3  been focused on sports (in addition to elections) from the start.  ECF No. 45 at 2.  The volume of
4  trades does not impact the analysis.

*Fifth*, NRA's reliance (at 5-6) on the September 30, 2025 CFTC staff advisory[9] regarding sports event contracts misses the mark.  That letter involves emergency planning in anticipation of the lapse in federal appropriations.  Although the footnote cited by NRA states that the CFTC has not affirmatively approved sports event contracts, it does not call into question the self-certification process provided by the CEA, under which no affirmative approval is needed.  Indeed, Kalshi provided the CFTC with far more than the typical self-certification with respect to its sports event contracts and their compliance with the CEA.  Dissolve Resp. at 8, 14.  In fact, contrary to NRA's view, the CFTC staff advisory underscores that the CFTC has *exclusive jurisdiction* to regulate Kalshi's DCM and event contracts traded thereon because they are "listed pursuant to self-certifications filed by the relevant DCM pursuant to CEA section 5c(c)(1) and Commission regulation 40.2, 7 U.S.C. § 7a-2(c)(1).17 CFR 40.2."  ECF No. 178-7 at 2 n.4.

*Sixth*, NRA's joinder (at 6) refers to Crypto.com's asserted agreement "not to offer sports event contracts in the state" of Nevada, which NRA claims undermines Kalshi's argument that it would be "either technically impossible or financially infeasible to determine which of its customers are located in Nevada."  Contrary to NRA's argument (at 6), it does not appear that Crypto.com "withdr[e]w from the Nevada market and agreed not to offer sports event contracts in the state until the lawsuit was resolved."  Dissolve Resp. at 18-21.  Indeed, though the terms of Crypto.com's agreement are not public, in support of the Motion to Dissolve, State Defendants concede Crypto.com has merely, and voluntarily, "ceased offering sports event contracts to Nevada residents."  ECF No. 198 at 13.  That is entirely different from what State Defendants seek to compel

---

[8] To the extent NRA takes issues with any particular new offering, it has no bearing on the merits of the preliminary injunction dissolution—Nevada is seeking to bar the offering of *all* Kalshi contracts.

[9] See Commodity Futures Trading Commission, *CFTC Staff Issues Advisory on Certain Contract Markets* (Sept. 30, 2025), https://www.cftc.gov/PressRoom/PressReleases/9137-25; Commodity Futures Trading Commission, CFTC Letter No. 25-36 (Sept. 30, 2025), available at https://www.cftc.gov/csl/25-36/download.

Kalshi to do, and differences between Kalshi's and Crypto.com's business model create substantial harms for Kalshi not applicable to Crypto.com. Dissolve Resp. at 18-21.

Accordingly, the substantive arguments presented by NRA, whether new or merely expanding on what State Defendants have already presented at length, should not alter the Court's analysis, and the Motion to Dissolve should be denied.

## CONCLUSION

For the foregoing reasons, and those presented in the Motion to Dissolve Response, Kalshi respectfully requests that the Court:

1. Strike the Nevada Resort Association's Joinder to State Defendants' Motion to Dissolve Injunction (ECF No. 178) as an unauthorized supplemental filing under Local Rule 7-2(g);

2. Strike or disregard the Declaration of Dan R. Reaser (ECF No. 178-1) and the exhibits thereto; and

3. Deny the Motion to Dissolve.

DATED this 12th day of November, 2025.

**BAILEY✧KENNEDY**

By: /s/ Paul C. Williams
   DENNIS L. KENNEDY
   PAUL C. WILLIAMS

   NEAL KUMAR KATYAL (Admitted *pro hac vice*)
   JOSHUA B. STERLING (Admitted *pro hac vice*)
   WILLIAM E. HAVEMANN (Admitted *pro hac vice*)
   **MILBANK LLP**
   1101 New York Avenue NW
   Washington, D.C. 20005

   GRANT R. MAINLAND (Admitted *pro hac vice*)
   ANDREW L. PORTER (Admitted *pro hac vice*)
   NICOLE D. VALENTE (Admitted *pro hac vice*)
   KATIE CASSIDY-GINSBERG
    (Admitted *pro hac vice*)
   VICTOR HOLLENBERG (Admitted *pro hac vice*)
   **MILBANK LLP**
   55 Hudson Yards
   New York, NY 10001

*Attorneys for Plaintiff KalshiEX, LLC*

9

# CERTIFICATE OF SERVICE

I certify that I am an employee of BAILEY✥KENNEDY and that on the 12th day of November, 2025, service of the foregoing was made by mandatory electronic service through the United States District Court's electronic filing system and/or by email or by depositing a true and correct copy in the U.S. Mail, first class postage prepaid, and addressed to the following at their last known address:

| | |
|---|---|
| JESSICA E. WHELAN<br>SABRENA K. CLINTON<br>DEVIN A. OLIVER<br>**STATE OF NEVADA**<br>**OFFICE OF THE ATTORNEY GENERAL**<br>1 State of Nevada Way, Suite 100<br>Las Vegas, NV 89119 | Email: jwhelan@ag.nv.gov<br>sclinton@ag.nv.gov<br>doliver@ag.nv.gov<br><br>*Attorneys for Defendants* |
| ADAM HOSMER-HENNER<br>A.G. BURNETT<br>JANE SUSSKIND<br>KATRINA WEIL<br>THADDEUS C. HOUSTON<br>**McDONALD CARANO LLP**<br>100 West Liberty Street, 10th Floor<br>Reno, NV 89501 | Email:<br>ahosmerhenner@mcdonaldcarrano.com<br>agburnett@mcdonaldcarano.com<br>jsusskind@mcdonaldcarano.com<br>kweil@mcdonaldcarano.com<br>thouston@mcdonaldcarano.com<br><br>*Attorneys for Intervenor*<br>*Nevada Resort Association* |
| RORY K. SCHNEIDER<br>**MAYER BROWN LLP**<br>1221 AVENUE OF THE AMERICAS<br>NEW YORK, NY 10020 | Email: rschneider@mayerbrown.com<br><br>*Attorneys for Defendants* |
| NICOLE A. SAHARSKY<br>MINH NGUYEN-DANG<br>**MAYER BROWN LLP**<br>1999 K STREET NW<br>WASHINGTON, DC 20006 | Email:<br>nsaharsky@mayerbrown.com<br>mnguyen-dang@mayerbrown.com<br><br>*Attorneys for Defendants* |

/s/ Sharon Murnane
Employee of BAILEY✥KENNEDY