Adam Hosmer-Henner (NSBN 12779)
A.G. Burnett (NSBN 5895)
Jane Susskind (NSBN 15099)
Katrina Weil (NSBN 16152)
Thaddeus Houston (NSBN 17215)
**McDONALD CARANO LLP**
2300 West Sahara Avenue, Suite 1200
Las Vegas, NV 89102
Telephone: (702) 873-4100
ahosmerhenner@mcdonaldcarano.com
agburnett@mcdonaldcarano.com
jsusskind@mcdonaldcarano.com
kweil@mcdonaldcarano.com
thouston@mcdonaldcarano.com

*Attorneys for Intervenor Defendant the Nevada Resort Association*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| KALSHIEX, LLC,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>KIRK D. HENDRICK, in his official capacity as Chairman of the Nevada Gaming Control Board; GEORGE ASSAD, in his official capacity as a Member of the Nevada Gaming Control Board; CHANDENI K. SENDALL, in her official capacity as a Member of the Nevada Gaming Control Board; NEVADA GAMING CONTROL BOARD; JENNIFER TOGLIATTI, in her official capacity as Chair of the Nevada Gaming Commission; ROSA SOLIS-RAINEY, in her official capacity as a Member of the Nevada Gaming Commission; BRIAN KROLICKI, in his official capacity as a Member of the Nevada Gaming Commission; GEORGE MARKANTONIS, in his official capacity as a Member of the Nevada Gaming Commission; NEVADA GAMING COMMISSION; AARON D. FORD, in his official capacity as Attorney General of Nevada,<br><br>　　　　　　　　　Defendants.<br><br>vs.<br><br>NEVADA RESORT ASSOCIATION,<br><br>　　　　　　　　　Intervenor Defendant. | Case No.: 2:25-cv-00575-APG-BNW<br><br>**NEVADA RESORT ASSOCIATION'S OPPOSITION TO PLAINTIFF'S MOTION TO STAY PROCEEDINGS (ECF No. 259)** |

Intervenor Defendant the Nevada Resort Association (the "NRA") opposes the Motion to Stay Proceedings filed by Plaintiff KalshiEX, LLC's ("Kalshi") on December 18, 2025 (ECF No. 259 ("Motion")) and also joins in full the State Defendants' Opposition to the Motion (ECF No. 260). The NRA writes separately to address the interests of its members, who spend substantial resources to comply with Nevada's gaming laws and regulations, and contribute significantly to Nevada's economy.

<b><u>MEMORANDUM OF POINTS AND AUTHORITIES</u></b>

**I.   INTRODUCTION**

This Court should reject Kalshi's third attempt to stay discovery. Undeterred by Judge Weksler's orders denying its prior two attempts, Kalshi's request is now bolder and broader. It seeks to stay *all* proceedings rather than just discovery, even though nothing has changed about the underlying facts and law. In effect, Kalshi asks to delay resolution of the entire case indefinitely and extend the uncertainty that is disrupting Nevada's regulated gaming industry and harming Nevada's economy and its general welfare. Despite this extraordinary ask and the harm it would cause Defendants, Kalshi provides only conclusory allegations of the harm posed by continuation of this case—which Kalshi filed—arguing only that further discovery will be costly and may become irrelevant. This is a risk every plaintiff takes when filing a complaint, and it does not warrant a stay of these proceedings. The Court should allow discovery to proceed in parallel with the interlocutory appeal pending before the Ninth Circuit.

Kalshi also argues that the existence of its pending appeal itself warrants a stay. Not so. Kalshi is not relieved of the obligation to prosecute the case just because it appealed an interim ruling. Under that logic, a party could halt the orderly progression of discovery each time an appealable issue is decided. Kalshi offers no support for that sweeping assertion. *See Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 601 (D. Nev. 2011) (emphasizing that a stay of discovery "is at odds with the need for expeditious resolution of litigation").

Regardless, the issues presently on appeal are far from certain to resolve the need for discovery. This Court concluded both that Kalshi's event contracts based on the outcome of sporting events are not swaps and that an event contract is a "swap" only if the underlying event is "inherently

2

joined or connected with a potential financial, economic, or commercial consequence . . . without looking at externalities like potential downstream financial consequences." ECF No. 237 ("Dissolution Order") at 12-13 (citing 7 U.S.C. § 1a(47)(A)(ii)). Kalshi posits that affirmance or reversal of the Dissolution Order on these specific grounds *might* obviate discovery. However, these are not the only issues on which the Court could rule against Kalshi on the merits, and the Ninth Circuit may not reach these issues on appeal. The Ninth Circuit could, for example, affirm because Kalshi has failed to establish irreparable harm or another element required for a preliminary injunction. This case, like many others, can be resolved based on one of the multiple legal issues presented. Kalshi should not be permitted to cause significant delay to resolve one legal issue with finality when there are multiple grounds on which the Court could rule against Kalshi and on which the Court has already ruled that discovery is necessary. A stay here would only lead to piecemeal, serial litigation and delay. For these reasons, the Court should deny the Motion.

## II.    LEGAL STANDARD

The Court's decision whether to stay this case pending the outcome of Kalshi's appeal "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *In re PG&E Corp. Sec. Litig.*, 100 F.4th 1076, 1085 (9th Cir. 2024) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936)). The traditional, nonexclusive *Landis* factors are: (1) "the possible damage which may result from the granting of a stay"; (2) "the hardship or inequity which a party may suffer [if the case is allowed] to go forward"; and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (internal quotation marks omitted). And "[d]iscovery should proceed absent a strong showing to the contrary." *Flynn v. Nevada*, 345 F.R.D. 338, 352 (D. Nev. 2024). None of the *Landis* factors favors a complete stay of this case.

///
///
///
///

3

## III. ARGUMENT

Kalshi has attempted to stay or avoid discovery at every stage of this litigation.[1] Each time, this Court has rejected Kalshi's attempts and for good reason. At the beginning of this case, Kalshi refused to agree to a discovery plan, complaining about the costs of engaging in discovery. *See generally* ECF No. 80. Kalshi argued that because it intended to move for summary judgment, "the Court should not permit any discovery to commence and thereby avoid subjecting Plaintiff to the cost and burden of discovery." *Id.* at 2. Judge Weksler entered the Defendants' proposed discovery plan over Kalshi's objection, signaling that discovery should move forward. *Id.* at 7. When Kalshi moved for summary judgment before any discovery had taken place, Kalshi again asked this Court to halt discovery. ECF No. 87. Its purported rationale there (much like here) was that the Court should "not to subject Kalshi to the burdens of discovery while Chief Judge Gordon decides whether the case can be resolved with no discovery at all." *Id.* at 5; *see also id.* at 2 (attempting to justify its request for emergency relief by arguing that "[i]f the Motion is heard in the ordinary course, Kalshi will be forced to engage in costly discovery in a case involving preempted state laws").[2] Judge Weksler denied Kalshi's request for a stay of discovery, affirming again that discovery should move forward. ECF No. 118. And after Kalshi relied on its self-serving litigation position to withhold relevant discovery, Judge Weksler compelled Kalshi to produce almost all of the documents it was withholding, not only affirming that discovery should move forward but explaining its importance. ECF No. 233. By asking this Court for the same relief again, Kalshi ignores the several times the Court has already rebuffed similar requests.

---

[1] The State Defendants thoroughly outlined Kalshi's obstructionist conduct, *see* ECF No. 260 at 2-4, which the NRA incorporates herein.

[2] Kalshi also argued that discovery was unnecessary when it prematurely moved for summary judgment in a motion since denied without prejudice. ECF No. 86 at 3 (arguing that "no factual development is needed to resolve the merits of Kalshi's preemption claim. And while the Court alluded to the possibility of limited factfinding to address the other requirements for injunctive relief, there is no genuine dispute that Kalshi will face irreparable harm absent an injunction and that the public interest favors injunctive relief"), 24-29 (fleshing out the same argument).

4

In any event, Kalshi's latest attempt fails on its own terms. None of the *Landis* factors supports a stay. A stay would continue to harm the NRA and its members, who have faced significant uncertainty since Kalshi filed this case; Kalshi's purported harms are based on theoretical possibilities that may not come to pass or are simply the natural consequences of its own decision to file suit and seek preliminary injunctive relief in the first place; and the orderly course of justice requires that the parties proceed with discovery so that a final judgment on the merits comes sooner rather than later.

### A.  The NRA's Members Will Be Harmed if the Court Stays This Case.

A stay would indefinitely delay resolution of this case and extend the uncertainty facing Nevada's regulated gaming industry. The NRA's members are directly harmed by this uncertainty. As this Court recognized, NRA members "have significantly protectable interests in their Nevada gaming licenses," ECF No. 70 at 2, and have "invested millions of dollars to comply with state regulations" under the assumption that industry counterparts will all play by the same rules, Dissolution Order at 27. Right now, however, NRA's members are forced to compete "at a considerable competitive disadvantage" to Kalshi, ECF No. 70 at 2, which entirely avoids "complying with Nevada's regulatory regime [and] paying taxes in this state," Dissolution Order at 28. "NRA members benefit from the well-regulated market of betting in Nevada," and Kalshi's ongoing violation of state law "erode[s] that market and the regulations that make it fair for the public and profitable for licensees." ECF No. 70 at 2. An indefinite delay only serves to give Kalshi more time to damage NRA's interests. *See Flynn*, 345 F.R.D. at 349 ("Staying discovery delays resolution of the case and doing so without sufficient cause erodes the justness of the ultimate result.").

By initiating this litigation and continuing its operations, Kalshi is signaling that companies can offer sports betting in Nevada and ignore State gaming law. This endangers the welfare of the State, and as this litigation continues, the resultant uncertainty harms the NRA members and chills investment in Nevada. Indeed, "two of the largest sports betting operators in the U.S., FanDuel and DraftKings" chose to leave Nevada's regulated gaming industry and launch prediction markets rather than comply with state law. Dissolution Order at 28. Since the Court issued its Dissolution

Order, both operators have launched those prediction markets outside of Nevada.[3] And Fanatics has now followed their lead.[4] These are serious developments. If other licensed gaming companies, which have invested "substantial sums to obtain, maintain, and protect" their licenses, ECF No. 70 at 2, decide "that they c[an] [] just become CFTC-registered exchanges to offer sports gambling nationwide" and avoid Nevada's regulatory regime, "there is a not-insignificant chance" that these companies "will abandon their current model and become DCMs, unleashing even more unregulated gambling and devastating the Nevada economy and related tax revenues." Dissolution Order at 27-28. Expeditiously resolving this litigation is the best way to mitigate these ongoing and potential harms.

Not only will uncertainty continue to erode the well-regulated market that the NRA's members worked with the State to help create, but it violates Nevada's public policy. *See* NRS 463.0129(1)(a)-(d) ("The gaming industry is vitally important to the economy of the State and the general welfare of the inhabitants" and "[a]ll establishments where gaming is conducted . . . must therefore be licensed, controlled and assisted to protect the public health, safety, morals, good order and general welfare of the inhabitants of the State, to foster the stability and success of gaming and to preserve the competitive economy and policies of free competition of the State of Nevada"). Nevada's regulatory scheme and compliance with the same is critical to advancing Nevada's public policy and the success of its gaming industry. Dissolution Order at 26. As this Court aptly noted, "there is no question that some segment of the population will suffer from problem gambling, but neither DCMs nor the CFTC is equipped to address those issues the same way state gaming regulators and licensed entities are." Dissolution Order at 27. The longer Kalshi is able to offer unlicensed sports betting in Nevada—which threatens to be further extended through a stay of the

---

[3] *See FanDuel, CME Group launch prediction markets in five states*, REUTERS (Dec. 22, 2025 at 10:15am); https://www.reuters.com/business/fanduel-cme-group-launch-prediction-markets-five-us-states-2025-12-22/; Nathan Borney, *DraftKings launches prediction market amid fight over sports betting*, AXIOS (Dec. 19, 2025); https://www.axios.com/2025/12/19/draftkings-predictions-polymarket-kalshi-prediction-markets.

[4] *See* Dan Bernstein, Eben Novy-Williams, *Fanatics Launches a Prediction Market - Without the G Word*, SPORTICO (Dec. 3, 2025 at 12:00pm); https://perma.cc/M7PB-AUXA.

6

proceedings—the longer Nevada residents, some of whom are susceptible to problem gaming, will be subject to Kalshi's unlicensed sports betting without the protections that state regulation requires.

This harm will also affect the millions of tourists who travel to Nevada each year, as they too will be able to use Kalshi's platform to place wagers within the state without any protections against problem gaming.[5] In fact, given the option to place wagers on Kalshi's platform without the same restrictions imposed by Nevada's gaming licensees, these tourists may decide not to travel to Nevada in the first place. This would severely impact Nevada's economy, which relies on the billions of dollars in revenue generated from casino gaming,[6] and Nevada's gaming licensees, who have invested significant money and resources to comply with state regulations.

Staying these proceedings will result in other harmful consequences resulting from Kalshi's continued operations in Nevada. For example, Kalshi does not follow the Nevada rules that the NRA's members must follow to ensure that gaming is fair, such as the requirements that prevent insider betting. *See*, *e.g.*, Nev. Gaming Reg. 22.1205; *see also* Dissolution Order at 26-28. Similarly, Nevada law requires licensees like the NRA's members to offer deposit-limit tools and to prominently display responsible-gaming resources. *See* Nev. Gaming Reg. 5.225(18)(a)-(b). Kalshi does not, instead advertising its products as "kind of addicting."[7] In sum, granting Kalshi a stay here will harm the NRA, its members, and the communities they serve.

Finally, Kalshi fails to meaningfully address the harms the NRA's members will suffer if this Court stays this case pending appeal. Instead, Kalshi tries argues that "any delay . . . would be a function of the appeal itself, not a stay pending that appeal." ECF No. 259 at 10:22-23. This is

---

[5] Las Vegas Convention and Visitors Authority, Historical Visitation Statistics: 1970-2024 (Feb. 27, 2025), Las Vegas Historic Tourism Statistics (last accessed Jan. 2, 2026); *see also* Nevada Resort Association, Tracking the Industry's Performance, https://www.nevadaresorts.org/data/ (last accessed Jan. 2, 2026).

[6] Nevada Resort Association, Tracking the Industry's Performance, https://www.nevadaresorts.org/data/ (showing that the annual gross casino gaming revenue as of November 2025 totaled $1.3 billion).

[7] Dustin Gouker, *Kalshi Says It's 'Kind of Addicting' In Instagram Post*, Event Horizon (Oct. 21, 2025), https://perma.cc/U5AH-GJ8P.

7

incorrect. While there may be some delay caused by the appeal, that delay could be mitigated if discovery runs parallel to the appeal. This is especially true here because there are several arguments and facts necessary to the disposition of those arguments that require discovery regardless of the Ninth Circuit's decision. These include the precise sports-based event contracts Kalshi offers to Nevadans, whether these contracts are "associated with a potential financial, economic, or commercial consequence" under 7 U.S.C. § 1a(47)(A)(ii)), and whether it would be impossible for Kalshi to comply with both Nevada gaming laws and regulations and the CEA. *See infra* § IV(B). Discovery therefore can and should move forward.

### B.   Kalshi Has Not Demonstrated that it will be Harmed if this Case Proceeds.

The only potential harm Kalshi argues it will face without a stay is the cost of discovery that may be unnecessary depending on the Ninth Circuit's ruling. ECF No. 259 at 9-10. This is purely speculative, as Kalshi admits. ECF No. 259 at 3:9 ("Of course, no one knows what the result of the appeal will be."). But even if that was verifiably true (and it is not), "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*." *Lockyer*, 398 F.3d at 1112. This rationale is even more applicable here because Kalshi is the plaintiff, not the defendant. Participating in discovery to advance a final merits resolution does not constitute cognizable harm under *Landis* meriting a stay of all proceedings—and Kalshi has not even attempted to quantify that purported harm through specific allegations or a declaration. Kalshi should not be allowed to file a lawsuit and then pause it upon losing an interlocutory decision.

### C.   The Orderly Course of Justice Weighs in Favor of This Case Proceeding.

The inquiry under the third *Landis* factor is whether a stay could be expected to "simplify[] or complicat[e]" the litigation. *Lockyer*, 398 F.3d at 1110 (internal quotation marks omitted). A stay would delay, and thus complicate, this proceeding. The Ninth Circuit routinely cautions district courts against staying discovery pending preliminary injunction appeals. *See, e.g.*, *California v. Azar*, 911 F.3d 558, 583 (9th Cir. 2018); *Melendres v. Arpaio*, 695 F.3d 990, 1003 (9th Cir. 2012). This is because "the fully developed factual record may be materially different from that initially before the district court" at the preliminary injunction stage. *Melendres*, 695 F.3d at 1003 (quoting *Sports Form, Inc. v. United Press Int'l, Inc.*, 686 F.2d 750, 753 (9th Cir. 1982)). This reasoning

8

applies here. For example, the Ninth Circuit could reverse, finding that Kalshi showed a reasonable likelihood of success. But that outcome would not require this Court to rule in Kalshi's favor on a fully developed record. Alternatively, the Ninth Circuit could affirm the Dissolution Order on the basis that Kalshi has failed to establish irreparable harm. In that scenario, the case would proceed on remand in the same way it would have proceeded had there been no appeal. Under either scenario (or any number of other scenarios), discovery completed during the pendency of the appeal would still be relevant and necessary.

And the Court has also already stated that such factual development is necessary to decide the merits because Kalshi's preemption claims may ultimately turn on facts developed during discovery. As Judge Wekler determined in denying Kalshi's second stay motion, such facts include precise details of Kalshi's event contracts, including whether these contracts are swaps and/or are associated with potential financial, economic, or commercial consequences, as well as the factual underpinnings of Kalshi's conflict preemption arguments. *See* ECF No. 118 at 3.

The NRA has sought and is entitled to discovery on these core issues, and Kalshi has not provided sufficient justification for making the NRA wait until after a lengthy appeal to obtain it.[8] A delay would only further suspend resolution of this critical case threatening Nevada's gaming industry. Indeed, and as State Defendants explain in their Opposition, Kalshi's appeal is unlikely to entirely resolve this case—despite Kalshi's suggestion otherwise—rendering discovery of these factual matters particularly important for resolution of the case.[9]

---

[8] The NRA agrees with and incorporates the State Defendants' recitation of the status of discovery as if fully restated herein. Of particular note, Kalshi has not yet fully complied with Judge Weksler's Order, issued at the hearing held on November 18, 2025, compelling Kalshi to produce, among other things, internal communications.

[9] In the Dissolution Order, the Court considered the substance of Kalshi's event contracts in deciding that (1) changes in law and fact warranted dissolving Kalshi's injunction; and (2) Kalshi's self-certified event contracts are not swaps. Dissolution Order at 3-4 ("Since my preliminary injunction order, Kalshi has issued a range of new contracts that potentially are contrary to what Kalshi told me at the preliminary injunction hearing likely would not count as swaps because they have no real-world economic consequence, such as prop bets on things like whether a team will score a touchdown in a certain part of a game or the point total over/under on a game."); 14 n.3 ("Kalshi has changed its tune and now self-certifies to the CFTC that not only a game but things that happen

The NRA therefore joins in full the State Defendants' proposal that "the most efficient course would be for the parties to complete discovery now, and then supplement that discovery (if needed) based on the Ninth Circuit's decision." ECF No. 260 at 13.

## IV. CONCLUSION

The NRA respectfully requests that the Court deny the Motion, allow discovery to continue, and joins the State Defendants' Opposition in full.

Dated: January 2, 2026.

**McDONALD CARANO LLP**

By: */s/ Adam Hosmer-Henner*

Adam Hosmer-Henner (NSBN 12779)
A.G. Burnett (NSBN 5895)
Jane Susskind (NSBN 15099)
Katrina Weil (NSBN 16152)
Thaddeus Houston (NSBN 17215)
2300 West Sahara Avenue, Suite 1200
Las Vegas, NV 89102

*Attorneys for Intervenor Defendant the Nevada Resort Association*

---

during a game have potential financial consequences."). The Court also offered further guidance on the "potential financial, economic, or commercial consequence[s]" necessary for a self-certified event contract to constitute a swap. *Id.* at 14.

10