1  AARON D. FORD                              Nicole A. Saharsky (*pro hac vice*)
     Attorney General                          Minh Nguyen-Dang (*pro hac vice*)
2  Jessica E. Whelan (Bar No. 14781)           Mayer Brown LLP
     Chief Deputy Solicitor General—           1999 K Street, NW
3    Litigation                                Washington, D.C. 20006
   Sabrena K. Clinton (Bar No. 6499)           (202) 263-3000 (phone)
4    Senior Deputy Attorney General            nsaharsky@mayerbrown.com
   State of Nevada,                            mnguyen-dang@mayerbrown.com
5    Office of the Attorney General
   1 State of Nevada Way, Suite 100            Rory K. Schneider (*pro hac vice*)
6  Las Vegas, NV 89119                         Mayer Brown LLP
   (702) 486-3420 (phone)                      1221 Avenue of the Americas
7  (702) 486-3773 (fax)                        New York, NY 10020
   jwhelan@ag.nv.gov                           (212) 506-2500 (phone)
8  sclinton@ag.nv.gov                          rschneider@mayerbrown.com

9        *Attorneys for Mike Dreitzer, George Assad, Chandeni K. Sendall,*
      *The Nevada Gaming Control Board, Jennifer Togliatti, Rosa Solis-Rainey, Brian*
10   *Krolicki, George Markantonis, Abbi Silver, The Nevada Gaming Commission, and*
                             *Aaron D. Ford*

11

12                   **UNITED STATES DISTRICT COURT**

13                         **DISTRICT OF NEVADA**

14

15  KALSHIEX, LLC,

             Plaintiff,

16

         v.

17  MIKE DREITZER, in his official capacity     Case No. 2:25-cv-00575-APG-BNW
    as Chairman of the Nevada Gaming
18  Control Board, et al.,                      **STATE DEFENDANTS' MOTION TO**
                                                **COMPEL DISCOVERY**
             Defendants,

19

         v.

20  NEVADA RESORT ASSOCIATION,

21           Intervenor-Defendant.

22       Defendants Mike Dreitzer, George Assad, Chandeni K. Sendall, the Nevada

23  Gaming Control Board, Jennifer Togliatti, Rosa Solis-Rainey, Brian Krolicki, George

24
    Markantonis, Abbi Silver, the Nevada Gaming Commission, and Aaron D. Ford (State
25
    Defendants), by and through their attorneys of record, hereby move to compel
26
27  discovery from Plaintiff KalshiEx, LLC (Kalshi) pursuant to State Defendants' First

28

                                      1

Set of Requests for Production and pursuant to an agreement previously reached between the parties.

Specifically, State Defendants move to compel Kalshi's production of advertisements placed by Kalshi on the following platforms during the following representative time periods, and that incorporate the following search terms—all parameters to which Kalshi agreed on October 9, 2025:

**Platforms:**

- Meta (Facebook/Facebook blue, Instagram, Whatsapp, Threads)
- TikTok
- Twitter / X
- YouTube
- Twitch
- GoogleAds
- Snapchat
- LinkedIn
- Reddit

**Time Periods:**

- February 1–February 10, 2025
- March 24–April 7, 2025
- June 8–June 22, 2025
- August 24–September 23, 2025

**Search Terms:**

- "bet" or "betting" or "sports" or "sports betting" or "50" or "fifty" or "wager" or "wagering" or "gamble" or "gambling" or "promo" or "promo code"
- any advertising related to Kalshi's "College Ambassadors Program"

In the alternative, if Kalshi demonstrates (with information never provided to State Defendants during the meet and confer process) that it is not technologically feasible to produce its own advertisements, State Defendants respectfully request that the Court order Kalshi to instead (1) identify any third parties that assisted with the preparation or publication of advertisements over the relevant time period and (2) produce communications between and among relevant Kalshi employees and those identified third parties about advertisements using an appropriate set of search parameters.

This motion is based on the attached Memorandum of Points and Authorities, the record in this matter, the Declaration of Rory K. Schneider provided contemporaneously with this Motion, and the exhibits attached thereto, and the papers and pleadings on file in this action.

DATED this 11th day of March, 2026.

By: */s/ Rory K. Schneider*
AARON D. FORD
Attorney General

Jessica E. Whelan (Bar No. 14781)
Chief Deputy Solicitor General—Litigation
Sabrena K. Clinton (Bar No. 6499)
Senior Deputy Attorney General
State of Nevada
Office of the Attorney General
1 State of Nevada Way, Suite 100
Las Vegas, NV 89119
(702) 486-3420 (phone)
(702) 486-3773 (fax)

1

jwhelan@ag.nv.gov
sclinton@ag.nv.gov

2

Nicole A. Saharsky (pro hac vice)

3

Minh Nguyen-Dang (pro hac vice)
Mayer Brown LLP

4

1999 K Street, NW
Washington, D.C. 20006

5

(202) 263-3000 (phone)
nsaharsky@mayerbrown.com

6

mnguyen-dang@mayerbrown.com

7

Rory K. Schneider (pro hac vice)
Mayer Brown LLP

8

1221 Avenue of the Americas
New York, NY 10020

9

(212) 506-2500 (phone)
rschneider@mayerbrown.com

10

*Attorneys for State Defendants*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

In October 2025, Kalshi agreed to produce a narrow set of advertisements that it placed on nine platforms, during four limited representative periods, using narrow search criteria. For months, Kalshi repeatedly represented to State Defendants that its collection of responsive materials was ongoing, and that the agreed-upon document production would be provided in due time. But in February 2026, Kalshi reneged on its promise, revealing for the first time that it has been unable to find its own advertisements and that "it is not clear it will ever be able to do so."

That Kalshi has advertised its event contracts as a form of gambling is relevant to whether those contracts are swaps, whether there is preemption, and the relevant balance of harms. State Defendants agreed to forego the bulk of its advertisement-related discovery requests based on Kalshi's commitment to produce a distinct set of identifiable advertisements of particular relevance. State Defendants did so on the understanding Kalshi could perform its part of the agreement, only to be informed months later that Kalshi would not because of supposed technical challenges. But it has failed to substantiate the supposed burden or to propose an alternative compromise.

State Defendants respectfully request that the Court order Kalshi to produce the advertisements it agreed to produce, absent a clear showing that it actually cannot to do so. In the event Kalshi finally demonstrates that it is not technologically feasible to produce its own advertisements, State Defendants request that the Court order Kalshi to instead (1) identify any third parties that assisted with the preparation or publishing of advertisements over the relevant time period and (2) produce communications between appropriate custodians and those third parties and resulting advertisements using an appropriate set of document custodians and search terms.

# BACKGROUND

## I. Kalshi Served Boilerplate Objections to State Defendants' Document Requests

On August 1, 2025, State Defendants' propounded its First Set of Requests for Production on Kalshi, requesting, among others, (1) "[a]ll Documents reflecting, referencing, or discussing Kalshi's advertising or marketing of any of its event contracts as either sports wagers or sports bets" (Request No. 6); and (2) "[a]ll Documents or Communications reflecting, referencing, or discussing Kalshi's event contracts in comparison with wagers or bets offered on sports in Nevada" (Request No. 10) (collectively, the "Requests"). *See* Declaration of Rory K. Schneider ("Schneider Decl."), Ex. A at 10, 12.[1]  At their core, the Requests seek information about the extent to which Kalshi holds itself out to retail consumers as a sports betting platform.

On September 9, 2025, Kalshi served its Responses and Objections to State Defendants' First Set of Requests for Production ("R&Os").  Kalshi objected to the overwhelming majority of State Defendants' document requests, agreeing only to produce (1) its self-certifications to the CFTC between January 1, 2025, and September 4, 2025, and (2) risk management and consumer-safety policies in its Rulebook and other (unspecified) "compliance-related materials." *See id.* at 7–12.

Kalshi objected to the Requests at issue in boilerplate fashion, objecting to each: (1) "to the extent it seeks information that is neither relevant to the subject matter involved in this Action, nor relevant to a claim or defense of any party"; (2) "as overly broad, unduly burdensome, [and] not proportional to the needs of the case"; (3) "because the burden or expense of the proposed discovery outweighs its likely benefit"; and (4) "to the extent it seeks documents protected from disclosure by the attorney-client privilege, work product privilege, or any other privilege." *Id.* at 10, 12.

---

[1]    All Exhibits cited herein are appended to the accompanying declaration of Rory K. Schneider.

On November 18, 2025, in connection with a separate motion, this Court confirmed that Kalshi's initial R&Os were "boilerplate" and "[un]substantiate[d]," and held that Kalshi had waived any objections to the discovery sought therein.[2]

## II. Kalshi Agreed to Produce a Limited Set of Advertisements Following a Lengthy Meet and Confer Process

On September 29, 2025, following a meet and confer to discuss, among other things, the Requests, Kalshi informed State Defendants that it was "willing to consider a request to provide an appropriate sample of advertisements targeted at Nevada consumers—for example, an extract of the ads surfaced on a particular platform (such as Instagram) within a defined period of time (such as one week)[,]" and expressed that it was "willing to meet and confer regarding these parameters." Ex. D at 6–7.

In response, on September 30, 2025, State Defendants proposed reasonable search parameters with which to identify a sample of relevant Kalshi advertisements. Ex. C at 12–14 (9/30/2025 Email from A. Mendelson). On October 1 and October 3, Kalshi indicated that it was evaluating State Defendants' proposed search parameters, and "work[ing] with Kalshi regarding this request, including determining the extent to which the advertising on each platform is duplicative of one another[.]" *Id.* at 8–9, 11–12 (10/1/2025 and 10/3/2025 Emails from K. Cassidy-Ginsberg).[3]

On October 9, Kalshi agreed to "us[e] Defendants' search terms on ads placed by Kalshi with the identified platforms and during the relevant time periods that [Defendants] identified." *Id.* at 5 (10/9/2025 Email from K. Cassidy-Ginsberg). The same night, State Defendants requested clarification to confirm whether "'ads placed by Kalshi' would include advertisements placed by Kalshi on one of the specified

---

[2]    The Court went on to independently evaluate the Requests then at-issue for relevance and proportionality. ECF 233 at 4:22–5:17.

[3]    On October 7, 2025, Kalshi indicated that it was continuing to evaluate the feasibility of responding to State Defendants' proposal, noting that "Defendants' proposal involved running search terms on nine separate platforms, across four time periods." Ex. C at 5–6 (10/7/2025 Email from A. Porter).

platforms through an affiliate or third party (such as an advertising agency)[.]" *Id.* at 4–5 (10/9/2025 Email from A. Mendelson). State Defendants followed up on their request for clarification on October 13 and again on October 16. *Id.* at 1–3 (10/13/2025 and 10/16/2025 Emails from R. Schneider).

On October 16, Kalshi confirmed that its proposal was "limited to advertisements placed directly by Kalshi on one of the specified platforms." *Id.* at 1 (10/16/2025 Email from K. Cassidy-Ginsberg). Kalshi maintained that production of advertisements placed by its advertising agencies would be unnecessary given that "Kalshi has agreed to produce the advertisements directly placed by Kalshi," and agreed to further meet and confer "[t]o the extent further discovery on advertisements is warranted after Kalshi produces the documents it has already agreed to produce[.]" *Id.* On October 20, State Defendants accepted Kalshi's proposal. Ex. E at 1–2 (10/20/2025 Email from A. Mendelson).

### III. Kalshi Represented That It Would Produce Advertisements for Months, But Then Suddenly Reneged

State Defendants repeatedly requested status updates concerning the production of advertisements. Kalshi repeatedly represented that the collection was in progress and that a production was forthcoming. *See, e.g.*, Ex. F at 2 ("[W]e are preparing the agreed-upon production of Kalshi's advertisements and will produce them as soon as practicable."); Ex. G at 7 (1/2/2026 Email from K. Cassidy-Ginsberg) ("With respect to advertisements in particular, as explained on our most recent meet and confer, we are continuing to work with our client and the vendor to collect advertisements and expect to provide an update in the coming days."); *see also* Schneider Decl. ¶¶ 18–30. Though Kalshi's counsel expressed their own frustration with the process of collecting information from the system Kalshi uses to generate advertisements, Kalshi never indicated that production of the agreed-upon documents was infeasible. *Id.* ¶¶ 18–19, 21, 23, 26–27, 29–30 (describing November 20, November 25, December 12, January 20, and February 13 meet and confers).

Then, on February 24, 2026, in a footnote to a letter about separate discovery disputes, Kalshi revealed for the first time that it "does not keep, in the ordinary course of business, a repository of past advertisements from which it can export these materials for use in litigation[,]" that it had not yet obtained an export from the third-party program that it uses that "accurately reflects the requested material[,]" and that "it is not clear that [Kalshi] will ever be able to do so." Ex. I at 10 n.10. Accordingly, Kalshi informed State Defendants that it "does not intend to produce archived advertisements" because "the burden on Kalshi . . . far exceeds the needs of State Defendants in this action[.]" *Id.*

In response, on February 27, 2026, State Defendants noted that Kalshi had agreed to produce responsive documents pursuant to agreed-upon search parameters and had never before indicated that doing so was not feasible. Ex. H at 9–10 (2/27/2026 Email from R. Schneider). In a subsequent email on February 27, Kalshi declined to reconsider its position and invited State Defendants to file this motion. *Id.* at 7–8 (2/27/2026 Email from K. Fell).

In a letter on March 4, State Defendants reiterated that Kalshi was impermissibly reneging on its agreement without any valid basis for doing so, and requested that Kalshi provide further explanation regarding: (i) the identity of the third-party program used by Kalshi; (ii) the identity of the individuals at Kalshi and/or third-party vendors responsible for placing Kalshi advertisements; (iii) a specific description of the efforts undertaken to collect the agreed-upon advertisements and of the purported obstacles encountered; and (iv) a description of when Kalshi first became aware of its inability to produce advertisements pursuant to the parties' October 2025 agreement. Ex. J at 4.

At a meet and confer on March 9, 2026, counsel for Kalshi again failed to identify the program used by Kalshi to create or place advertisements but indicated that it is a design tool that apparently does not save, and cannot produce complete versions of, advertisements. *See* Schneider Decl. ¶¶ 37–38. Kalshi indicated that it

does not keep a centralized file of past advertisements and had searched its non-public systems and produced what it could; Kalshi could not confirm whether the accounts on the requested platforms (from which Kalshi posted the advertisements) were themselves searched. *Id.* Kalshi also failed to identify the individuals or third-party vendors responsible for placing advertisements, and Kalshi did not confirm when it first determined that it would not uphold its agreement. *Id.*

On March 11, 2026, on the eve of this filing, Kalshi offered to produce 24 screenshots of advertisements placed on two of the agreed-upon platforms, "which Kalshi located by searching through its Meta and Reddit ad accounts." Ex. H at 2 (3/11/2026 Email from K. Cassidy-Ginsberg). Notwithstanding prior communications indicating that Kalshi had evaluated the feasibility of production and the extent to which the proposed platforms contained duplicative advertisements before agreeing to produce advertisements from all of them, *see* Ex. C at 5–6, 8 (10/3/2025 Email from K. Cassidy-Ginsberg; 10/7/2025 Email from A. Porter), Kalshi informed State Defendants for the first time that "Meta and Reddit are the primary platforms on which responsive ads would have been placed and that any ads that ultimately appeared on another platform are likely to be duplicative of anything distributed on Meta or Reddit." Ex. H at 2 (3/11/2026 Email from K. Cassidy-Ginsberg).

Kalshi further noted that it had "not done an exhaustive search of the thousands of advertisements that are publicly available[,]" to find the ones it had agreed to produce. *Id.* Kalshi informed State Defendants that Meta and Reddit have publicly available repositories of advertisements, *id.,* but State Defendants' subsequent review was unable to replicate the limited results that Kalshi agreed to provide at the last minute from its own accounts. *Id.* at 1; Schneider Decl. ¶¶ 44–45.[4]

---

[4]   For example, Reddit offers a landing page providing "some of the top performing ads on Reddit." https://ads.reddit.com/inspiration. A search for "'Kalshi" yields zero responsive results. Likewise, a search for "betting" among active and inactive advertisements in Meta's repository does not reproduce the same documents that Kalshi proffered on the eve of this filing.

1   Kalshi stated that it would "not be producing any other advertisements to State
2   Defendants in this case unless you can identify a specific advertisement, state its
3   relevance to this case, and explain the efforts that you undertook to locate it on the
4   numerous publicly available sources for this kind of material."  Ex. H at 2 (3/11/2026
5   Email from K. Cassidy-Ginsberg).

6       Having reached an impasse on these issues, State Defendants now move to
7   compel.

**LEGAL STANDARD**

9   Where a party fails to produce documents requested under Rule 34, the party
10  propounding the request for production of documents may move to compel discovery.
11  Fed. R. Civ. P. 37(a).  In moving to compel, the party seeking discovery must overcome
12  a "relatively low threshold" to demonstrate "the possibility of a nexus between the
13  information sought and the claims or defenses of a party." *Tsatas v. Airborne Wireless*
14  *Network, Inc.,* 2022 WL 74003, at *2 (D. Nev. Jan. 7, 2022) (internal citations and
15  quotation marks omitted); *see also Jones v. Russell*, 2024 WL 3202431, at *1 (D. Nev.
16  June 25, 2024) ("Relevance is a low threshold and merely requires the possibility of a
17  nexus between the information sought and the claims or defenses of a party."); 
18  *Jackson v. Montgomery Ward & Co.,* 173 F.R.D. 524, 528 (D. Nev. 1997) ("Under the
19  Federal Rules, the scope of discovery is broad and discovery should be allowed unless
20  the information sought has no conceivable bearing on the case."); *FTC v. AMG Servs.,*
21  *Inc.*, 291 F.R.D. 544, 556 (D. Nev. 2013) ("Relevance within the meaning of Rule
22  26(b)(1) is considerably broader than relevance for trial purposes.") (citing
23  *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978)).

24      Once this threshold relevance showing is made, "the party opposing discovery
25  has the burden of showing that the discovery should be prohibited, and the burden of
26  clarifying, explaining or supporting its objections."  *Reflex Media Inc. v. Does No. 1*,
27  2022 WL 20328162, at *2 (D. Nev. Aug. 25, 2022) (quoting *Garces v. Pickett*, 2021 WL
28  978540, at *2 (E.D. Cal. Mar. 16, 2021)).  "The opposing party is 'required to carry a

1   heavy burden of showing why discovery was denied.'" *Id.* (quoting *Garces*, 2021 WL

2   978540, at \*2).  Accordingly, "[t]he party resisting discovery must specifically detail

3   the reasons why each request is irrelevant or otherwise objectionable, and may not

4   rely on boilerplate, generalized, conclusory, or speculative arguments." *Tsatas*, 2022

5   WL 74003, at \*2 (citing *AMG Servs.*, 291 F.R.D. at 553).

## ARGUMENT

## I.    Kalshi Waived Its Objections and Is Bound by Its Commitment to Produce the Agreed-Upon Documents

Kalshi has not preserved any of its objections to State Defendants' initial
Requests.  On November 18, 2025, this Court found that Kalshi's Responses and
Objections to State Defendants' First Set of Requests for Production—which included
the Requests—were "boilerplate" and "[un]substantiate[d]" such that Kalshi had
waived its objections.  ECF 233 at 4:22–5:4; *see also Burlington N. & Santa Fe Ry. Co.
v. U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005) ("[B]oilerplate
objections or blanket refusals inserted into a response to a Rule 34 request for
production of documents are insufficient to assert a privilege."); *Tsatas*, 2022 WL
74003, at \*2 (boilerplate objections are "tantamount to not making any objection at
all," and are often found to constitute a waiver); *Pasiecznik v. Home Depot USA, Inc.*,
2022 WL 1652367, at \*5 (D. Nev. May 24, 2022) (finding that a party "waived its
objections" based on its boilerplate objections which read verbatim and appeared to
have been copied and pasted).  That is enough to order the requested discovery.

Still, State Defendants worked with Kalshi to address concerns it raised
regarding advertisements.  In return for State Defendants foregoing the rest of their
advertising Requests, Kalshi ultimately agreed to produce responsive advertisements
pursuant to an agreed-upon set of parameters and repeatedly reaffirmed its
commitment to do so over the course of several months.  *See supra* pp. 7–11 (Sections
II and III in Background).  It never suggested to State Defendants that it was unable
to uphold its agreement until revoking that agreement months later in a footnote to

unrelated discovery correspondence. *Id.* And in addition to providing State Defendants with little detail regarding its supposed burden, Kalshi has not even proposed any alternative forms of discovery regarding its advertisements.

"Parties will be held to the agreements their counsel reached during conferral discussions." *Underwood v. O'Reilly Auto Enters., LLC*, 2022 WL 4359096, at *2 (D. Nev. Sept. 20, 2022) ("The conferral requirements 'are very important and the Court takes them very seriously.' . . . Attorneys must also take that process seriously, as they are required to participate in 'good faith,' . . . and their clients are generally bound by the agreements reached during such conferences[.]"); *see also ProDox, LLC v. Prof'l Document Servs., Inc.*, 341 F.R.D. 679,  685–86 (D. Nev. 2022) ("The Court will not countenance an attorney's attempt to renege on his prior [discovery-related] agreement as a means to gain a litigation advantage."); *Troy Capital, LLC v. Patenaude & Felix APC*, 2022 WL 943069 (D. Nev. Mar. 28, 2022) (holding plaintiff to its prior representations to produce certain agreements). Indeed, like waiver, Kalshi's commitment is sufficient to compel the requested discovery. *Underwood*, 2022 WL 43590096, at *2 ("The Court *begins and ends its analysis* with [defendant's] prior agreement to provide [discovery].") (emphasis added).

## II. State Defendants' Requests for Kalshi's Advertisements Are Relevant and Proportional

State Defendants' requests are relevant and proportional. Kalshi fails to meet its heavy burden to show otherwise.

### A. State Defendants' Requests are Relevant

State Defendants  satisfy the "relatively low threshold" required to demonstrate "the possibility of a nexus between the information sought and the claims or defenses of a party." *Tsatas*, 2022 WL 74003, at *2; *see also Jackson*, 173 F.R.D at 528.

*First*, the requested advertisements are relevant to Kalshi's preemption arguments. Kalshi argues that Congress intended to preempt State Defendants from regulating Kalshi's event contracts because those contracts constitute "swaps" subject

to the exclusive jurisdiction of the CFTC. ECF 1, ¶ 64–70. But Kalshi itself has repeatedly recognized that "Congress did *not* want sports betting to be conducted on derivatives markets." *See, e.g.*, Brief of Appellee, *KalshiEX LLC v. CFTC*, 2024 WL 4802698, at *41 (D.C. Cir. Nov. 15, 2024) (emphasis added); *see also, e.g.*, Mem. of Law in Support of Pl.'s Mot. for Summ. J., *KalshiEX LLC v. CFTC*, 23-cv-03257-JMC, ECF 17-1 at 16 (D.D.C. Jan. 25, 2024) (acknowledging that contracts involving "whether a certain team will win the Super Bowl" fall within the Special Rule's "'gaming' category," which "functions as a check on attempts to launder casino-style or sports gambling through the derivatives markets"); *id.* at 23 (citing 156 Cong. Rec. S5907 (daily ed. July 15, 2010)). The CFTC specifically prohibits DCMs like Kalshi from offering contracts that "involve[], relate[] to, or reference[] . . . gaming[.]" 17 C.F.R. § 40.11(a)(1).

The advertisements that Kalshi agreed to produce—including those that hit on search terms intended to capture Kalshi's use of "betting" terminology—tend to show that Kalshi is a sports betting platform that Congress intended to remain subject to state regulation, and the extent to which its contracts impermissibly "involve, relate to, or reference gaming." Chief Judge Gordon himself cited Kalshi's advertisements in his order dissolving the preliminary injunction in this case. *See* ECF 237 (Order Dissolving Prelim. Inj.) at 16 ("Kalshi characterizes its sports-related event contracts in various ways, but at bottom, they are sports wagers. . . . These are sports wagers and everyone who sees them knows it. That includes Kalshi, who has advertised itself as the 'first app for legal sports betting in all 50 states.' Kalshi has not disputed that is how it advertised itself, nor has it successfully distinguished its arguments here from its own plain words.").

In this litigation and in more recent public statements, Kalshi has tried to distinguish its platform from more traditional forms of gambling. *See* ECF 86 at 20 (noting Kalshi is unlike casinos or sportsbooks because it is "not the 'house' or the counterparty to any trade"); *see also, e.g.*, Jim Cramer, *On Kalshi there is no house,*

*anybody can win, says CEO Tarek Mansour*, CNBC (Dec. 4, 2025) (Kalshi Co-Founder and CEO seeking to distinguish Kalshi from gambling because, inter alia, "there is no house"), https://www.cnbc.com/video/2025/12/04/on-kalshi-there-is-no-house-anybody-can-win-says-ceo-tarek-mansour.html. Advertisements in which Kalshi characterizes itself as a sports betting platform bear directly on the credibility of that position.

*Second,* the advertisements are relevant to the balance of harms on which injunctive relief depends. Kalshi not only allows 18- to 20-year-olds to place bets on its platform in direct violation of Nevada law, but its advertisements specifically target younger demographics with catchy posts on social media platforms like Instagram and X. For example, last Spring, Kalshi advertised itself as "the first app for legal sports betting in all 50 states" by featuring a meme of the hip hop artist Drake. *See* Dustin Gouker, *Ten Times Kalshi Said People Could Bet on Things*, Event Horizon (Apr. 3, 2025), https://nexteventhorizon.substack.com/p/ten-times-kalshi-said-people-could. Last Fall, Kalshi reportedly posted a video to Instagram in which the narrator touted Kalshi as "Simple, regulated, and kind of addicting." *See* Dustin Gouker, *Kalshi Says It's 'Kind of Addicting' In Instagram Post*, Event Horizon (Oct. 21, 2025), https://nexteventhorizon.substack.com/p/kalshi-says-its-kind-of-addicting. Kalshi even runs a "College Ambassadors Program" designed to enlist influencers on campus to promote their betting platform. *See* Brian Pempus, *Sports Betting Site Kalshi Seeks 'Ambassadors' on College Campuses*, Gambling Harm (Sept. 19, 2025) https://gamblingharm.org/kalshi-college-ambassadors-program; *see also* Katherine Long et al., *Prediction Market Bets Driving a Campus Frenzy*, Wall St. J. (Mar. 5, 2026), https://www.wsj.com/business/media/prediction-markets-campus-e57cd19f (https://perma.cc/84BA-HGUU) (identifying a 15-year-old hired to promote Kalshi's brand on X, and a 19-year-old "sophomore at NYU who said he was paid by Kalshi to create TikTok content promoting the company. 'Betting my life savings on @Kalshi,' [his] TikTok bio read. His videos didn't disclose his relationship with Kalshi.").

1    Nevada of course has a significant interest in protecting its young people from
2    the risks of problem gaming.  *See* ECF 237 at 26–27 (noting that defendants "have
3    strong interests in regulating gaming in Nevada," that "some segment of the
4    population will suffer from problem gambling" which "neither DCMs nor the CFTC is
5    equipped to address . . . in the same way state gaming regulators and licensed entities
6    are," and that "[a]llowing Kalshi to continue offering sports-related event contracts to
7    18-year-olds, even though the CFTC issued a regulation that prohibits DCMs like
8    Kalshi from listing gaming contracts, is not in the public interest").  Advertisements
9    like the ones that the agreed-upon search parameters are designed to identify
10   demonstrate the threat that Kalshi poses to that and other state interests.  They
11   should be part of the record.

12   **B.    State Defendants' Requests are Proportional to the Needs of the Case**
13

14   State Defendants' targeted requests for advertisements distributed on specific
15   platforms, during specific time periods, and including specific terms, are proportional
16   to the needs of this action.  That Kalshi agreed to the narrow search parameters that
17   State Defendants proposed with little pushback confirms as much.  *See* Ex. C at 12–
18   14 (9/30/2025 Email from A. Mendelson) (proposing search terms); *Id.* at 5 (10/9/2025
19   Email from K. Cassidy Ginsberg) (noting that Kalshi is "amenable to using
20   Defendants' search terms on ads placed by Kalshi with the identified platforms and
21   during the relevant time periods that you identified").  Kalshi cannot credibly argue
22   that those parameters are unduly burdensome.  *Jones v. Riot Hospitality Grp. LLC*,
23   95 F.4th 730, 739 (9th Cir. 2024) (rejecting plaintiffs' arguments that the search terms
24   applied resulted in overbroad discovery because plaintiffs agreed to those very search
25   terms).

26   Kalshi claims that it "utilizes a third-party product to create advertising
27   material and, despite extensive efforts, [has] yet to obtain an export from the third-
28   party program that accurately reflects the requested material—and it is not clear that

we will ever be able to do so." Ex. I at 10 n. 10 (02/24/2026 Letter from K. Fell to State Defendants). Notwithstanding State Defendants' requests for further information, Kalshi has not identified the "third-party product" used to generate and place advertisements, and has not detailed the supposedly extensive efforts that it has undertaken to obtain the advertisements beyond cursory references to technical barriers and vendor issues. Schneider Decl. ¶ 45. Absent "specific examples supported by factual detail" explaining the burden imposed—including the technical difficulties and what specifically has been done to overcome them—Kalshi cannot substantiate its (already-waived) burden objection. *Shakespear v. Wal-Mart Stores, Inc., LLC*, 2012 WL 13055159, at *3 (D. Nev. Nov. 5, 2012).

That advertisements were once publicly available (and select ones may still be) is insufficient. Kalshi argued in its latest attempt to avoid its prior commitment that it is "not under any obligation to produce" publicly available information. *See* Ex. H at 2 (3/11/2026 Email from K. Cassidy-Ginsberg) (citing *Neal v. City of Bainbridge Island*, 2023 WL 2214245, at *4 (W.D. Wash. 2023)).[5] This ignores that Kalshi affirmatively took on that obligation when it agreed to produce the documents in October, and that the limited set of advertisements Kalshi was willing to produce at the eleventh hour came from its own accounts, rather than public repositories. *Id.* Moreover, public sources indicate that Kalshi has begun "to scrub some of th[e] betting language from the internet as it started getting cease-and-desist letters from the

---

[5]     In *Neal*, plaintiff contended that her adversary's failure to produce hundreds of public comments available on its website constituted proof that the defendant did not perform an adequate search for "all documents" responsive to her request. 2023 WL 2214245, at *4. The court denied plaintiff's motion to compel and declined to impose sanctions for defendant's alleged lack of diligence in failing to produce publicly available documents that were already in plaintiff's possession where defendant had already produced other documents responsive to the request. *Id.* Here, Kalshi affirmatively agreed to produce the agreed-upon advertisements, whether publicly available or not, and has not produced a single document in response to Requests 6 or 10. And the few advertisements Kalshi sent screenshots of on the eve of this filing were not readily identified through State Defendants' searches on the public libraries to which Kalshi directed them.

1
2
3
4
5
6
7

states." Dustin Gouker, *Kalshi Is Still Marketing Itself as 'Betting,'* Event Horizon (June 18, 2025), https://nexteventhorizon.substack.com/p/kalshi-is-still-marketing-itself. Indeed, State Defendants searched the publicly available advertisement repositories that Kalshi revealed on the eve of this filing, and were unable to find a majority of the advertisements that Kalshi claimed came from its own accounts. Schneider Decl. ¶¶ 44–45. For the record to accurately reflect the nature and extent of Kalshi's betting-related advertisements, discovery is necessary.

8
9
10
11
12
13
14
15
16
17
18

As previously noted, State Defendants requested, but did not receive, information detailing the nature of the supposedly undue burden that Kalshi argues prevents it from producing the agreed-upon materials. In the event Kalshi finally demonstrates that it is not technologically feasible to produce its own advertisements despite Kalshi's prior representations to the contrary, State Defendants should not be left without any of the discovery they requested months ago. State Defendants accordingly request in the alternative that the Court order Kalshi to instead (1) identify any third parties that assisted with the preparation or publishing of advertisements over the relevant time period and (2) produce communications with those third parties regarding advertisements using an appropriate set of custodians and search terms.

19

### III.    State Defendants Request an Award of Attorneys' Fees

20
21
22
23
24
25

Under Federal Rule of Civil Procedure 37(a)(5)(A), subject to certain exceptions, "[i]f [a discovery] motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A).

26
27
28

Neither Kalshi's initial reliance on boilerplate objections nor its subsequent revocation of a longstanding commitment to produce advertisements is justified. Kalshi also failed to provide State Defendants adequate information to support its

supposed inability to locate and produce the agreed-upon documents, or to propose an alternate form of discovery to address State Defendants' discovery requests. An award of fees and cost is appropriate.[6] *See, e.g.*, *Pasiecznik*, 2022 WL 1652367, at \*6–7 (awarding sanctions where objecting party "failed to establish that its objections were substantially justified or that other circumstances make an award of expenses unjust" and directing parties to meet and confer regarding the amount of costs and fees to be paid).

## CONCLUSION

For the foregoing reasons, State Defendants respectfully request that the Court compel Kalshi to produce, by a date certain, the advertisements it previously agreed to produce absent proof that it is actually unable to do so.

In the event Kalshi finally demonstrates that it is not technologically feasible to produce its own advertisements, State Defendants request that the Court order Kalshi to instead (1) identify any third parties that assisted with the preparation or publishing of advertisements over the relevant time period and (2) produce communications with those third parties regarding advertisements using an appropriate set of search parameters.

State Defendants further request that the Court order Kalshi to pay State Defendants' attorneys' fees and costs in bringing this Motion.

---

[6]    If the Court grants this request, State Defendants are prepared to submit an affidavit consistent with LR 54-14 substantiating the fees incurred in bringing—and replying in support of—this motion.

Dated this 11th day of March, 2026

By: */s/ Rory K. Schneider*
    AARON D. FORD
    Attorney General

Jessica E. Whelan (Bar No. 14781)
    Chief Deputy Solicitor General—
    Litigation
Sabrena K. Clinton (Bar No. 6499)
    Senior Deputy Attorney General
State of Nevada
Office of the Attorney General
1 State of Nevada Way, Suite 100
Las Vegas, NV 89119
(702) 486-3420 (phone)
(702) 486-3773 (fax)
jwhelan@ag.nv.gov
sclinton@ag.nv.gov

Nicole A. Saharsky (pro hac vice)
Minh Nguyen-Dang (pro hac vice)
Mayer Brown LLP
1999 K Street, NW
Washington, D.C. 20006
(202) 263-3000 (phone)
nsaharsky@mayerbrown.com
mnguyen-dang@mayerbrown.com

Rory K. Schneider (pro hac vice)
Mayer Brown LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 506-2500 (phone)
rschneider@mayerbrown.com

*Attorneys for State Defendants*

1

**CERTIFICATE OF SERVICE**

2        I certify that on March 11, 2026, I electronically filed the foregoing with the

3  Clerk of the Court using the CM/ECF system, which will send notification of such

4  filing to counsel or parties of record electronically by CM/ECF.

5

6    Dated:       March 11, 2026

By: */s/ Rory K. Schneider*
Jessica E. Whelan (Bar No. 14781)
   Chief Deputy Solicitor General—
   Litigation
Sabrena K. Clinton (Bar No. 6499)
   Senior Deputy Attorney General
State of Nevada
Office of the Attorney General
1 State of Nevada Way, Suite 100
Las Vegas, NV 89119
(702) 486-3420 (phone)
(702) 486-3773 (fax)
jwhelan@ag.nv.gov
sclinton@ag.nv.gov

Nicole A. Saharsky (pro hac vice)
Minh Nguyen-Dang (pro hac vice)
Mayer Brown LLP
1999 K Street, NW
Washington, D.C. 20006
(202) 263-3000 (phone)
nsaharsky@mayerbrown.com
mnguyen-dang@mayerbrown.com

Rory K. Schneider (pro hac vice)
Mayer Brown LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 506-2500 (phone)
rschneider@mayerbrown.com

*Attorney for State Defendants*