AARON D. FORD
  Attorney General
Jessica E. Whelan (Bar No. 14781)
  Chief Deputy Solicitor General –
  Litigation
Sabrena K. Clinton (Bar No. 6499)
  Senior Deputy Attorney General
State of Nevada,
  Office of the Attorney General
1 State of Nevada Way, Suite 100
Las Vegas, NV 89119
(702) 486-3420 (phone)
(702) 486-3773 (fax)
jwhelan@ag.nv.gov
sclinton@ag.nv.gov

Nicole A. Saharsky (*pro hac vice*)
Minh Nguyen-Dang (*pro hac vice*)
Mayer Brown LLP
1999 K Street, NW
Washington, D.C. 20006
(202) 263-3000 (phone)
nsaharsky@mayerbrown.com
mnguyen-dang@mayerbrown.com

Rory K. Schneider (*pro hac vice*)
Mayer Brown LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 506-2500 (phone)
rschneider@mayerbrown.com

*Attorneys for Mike Dreitzer, George Assad, Chandeni K. Sendall, The Nevada Gaming Control Board, Jennifer Togliatti, Rosa Solis-Rainey, Brian Krolicki, George Markantonis, Abbi Silver, The Nevada Gaming Commission, and Aaron D. Ford*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| KALSHIEX, LLC,<br><br>Plaintiff,<br><br>v.<br><br>Mike Dreitzer, in his official capacity as Chairman of the Nevada Gaming Control Board, et al.,<br><br>Defendants,<br><br>v.<br><br>NEVADA RESORT ASSOCIATION,<br><br>Intervenor-Defendant. | Case No.: 2:25-cv-00575-APG-BNW<br><br>**DECLARATION OF RORY K. SCHNEIDER IN SUPPORT OF STATE DEFENDANTS' MOTION TO COMPEL** |

I, Rory K. Schneider, declare as follows:

1. I am a partner at the law firm Mayer Brown LLP, and I represent State Defendants in this matter. I have personal knowledge of the matters stated in this declaration, which I submit in support of State Defendants' Motion to Compel.

2. On September 9, 2025, Kalshi served its Responses and Objections to State Defendants' First Set of Requests for Production, a true and correct copy of which is attached hereto as **Exhibit A.**

3. On September 22, 2025, counsel for State Defendants (myself, Jessica Whelan, Alexander Mendelson, and Miranda Katz) and counsel for Kalshi (Andrew Porter and Rosa Baum) met and conferred via Teams for approximately one hour to address the parties' outstanding discovery disputes. At that meet and confer, Kalshi agreed to consider the feasibility of producing advertisements for its event contracts as a form of, or otherwise referencing, betting or gambling, in response to State Defendants' Requests.

4. On September 24, 2025, I sent a letter to Kalshi's counsel memorializing the details of that meet and confer. A true and correct copy of that letter is attached hereto as **Exhibit B.**

5. A true and correct copy of an email chain among counsel for the parties beginning on Friday, September 26, 2025 and ending on Thursday, October 16, 2025, is attached hereto as **Exhibit C**.

6. On September 29, 2025, Kalshi's counsel provided a written response, a true and correct copy of which is attached hereto as **Exhibit D.** As to advertisements, Kalshi informed State Defendants that it was "willing to consider a request to provide an appropriate sample of advertisements targeted at Nevada consumers—for example, an extract of the ads surfaced on a particular platform (such as Instagram) within a defined period of time (such as one week)," and that it was "willing to meet and confer regarding these parameters." Ex. D at 6–7.

7. On September 30, 2025, State Defendants accepted Kalshi's invitation, and proposed search parameters with which to identify a sample of relevant Kalshi advertisements. Ex. C at 13–14.

8. On October 1, 2025, Kalshi's counsel notified State Defendants that it was "continuing to review State Defendants' proposed platforms, time periods, and

search terms related to advertisements" and "expect[ed] to provide . . . Kalshi's position on that request by the end of the week." *Id.* at 12.

9. On October 3, 2025, Kalshi's counsel again noted that it was "continuing to work with Kalshi regarding" State Defendants' proposed search terms, "including determining the extent to which the advertising on each platform is duplicative of one another, and expect[ed] that a more fulsome response [was] forthcoming." *Id.* at 8.

10. On October 7, 2025, Kalshi's counsel noted that evaluating State Defendants' proposed search terms "involved running search terms on nine separate platforms, across four time periods." *Id.* at 6. Given the impending deadline for motions to compel and the potential need for further meet and confers on the subject, the parties agreed to keep the meet and confer process open with respect to Requests 6 and 10 for documents related to advertising. *Id.*

11. On October 9, 2025, Kalshi accepted State Defendants' proposed search terms, stating "we are amenable to using Defendants' search terms on ads placed by Kalshi with the identified platforms and during the relevant time periods that you identified." *Id.* at 5.

12. The same day, State Defendants asked Kalshi to confirm whether its agreement to produce "ads placed by Kalshi" included advertisements placed "through an affiliate or third party (such as an advertising agency)." *Id.* at 4.

13. State Defendants followed up several times over the course of the following week for a response to their request for clarification. On October 13, counsel for Kalshi indicated that they had "been working with Kalshi to prepare a response." *Id.* at 2–4.

14. On October 16, 2025, Kalshi confirmed that it would apply the agreed-upon search terms only to "advertisements placed directly by Kalshi on one of the specified platforms." *Id.* at 1. Kalshi confirmed that it "contracts with advertising agencies to place some advertisements," and had "been looking into the feasibility of producing such advertisements," but determined that doing so would be unduly

1  burdensome, "particularly when . . . Kalshi has agreed to produce the advertisements
2  directly placed by Kalshi." *Id.* Kalshi agreed that "[t]o the extent further discovery
3  on advertisements is warranted after Kalshi produces the documents it has already
4  agreed to produce, Kalshi is willing to meet and confer." *Id.*

5        15.    Based on these communications, I understood that Kalshi had evaluated
6  the "feasibility" and burden of producing advertisements "placed directly by Kalshi"
7  and of producing advertisements placed by its third-party advertising agencies. I
8  understood that Kalshi determined that the former would be feasible and less
9  burdensome.

10       16.    A true and correct copy of an email chain among counsel for the parties
11 beginning on October 20, 2025 and ending on October 21, 2025 is attached hereto as
12 **Exhibit E**.

13       17.    On October 20, 2025, State Defendants accepted Kalshi's offer to produce
14 advertisements placed directly by Kalshi on the specified platforms during the agreed-
15 upon dates. Ex. E at 2.

16       18.    On November 20, 2025, the parties met and conferred via Teams to
17 discuss outstanding discovery issues. Counsel for State Defendants (myself,
18 Alexander Mendelson, and Miranda Katz), counsel for Kalshi (Andrew Porter, Rosa
19 Baum, and Katie Cassidy-Ginsberg), and counsel for Intervenor-Defendant NRA (A.G.
20 Burnett and Jane Susskind) attended the meet and confer.

21       19.    At the meet and confer, Kalshi's counsel represented that a third-party
22 vendor was working on processing the requested advertisements, and that a
23 production would be forthcoming.

24       20.    The next day, Kalshi confirmed in writing that, "[a]s explained during
25 the November 20 meet and confer," it was "preparing the agreed-upon production of
26 Kalshi's advertisements and will produce them as soon as practicable." *See* Ex. F at
27 2. A true and correct copy of Kalshi's letter to State Defendants, dated November 21,
28 2025, is attached hereto as **Exhibit F**.

21. On November 25, 2025, the parties met and conferred via Teams to discuss outstanding discovery issues. Counsel for State Defendants (myself, Alexander Mendelson, and Miranda Katz) and counsel for Kalshi (Andrew Porter, Rosa Baum, and Peter Farag) attended the meet and confer. At the meet and confer, I requested a further update regarding the status of Kalshi's production of advertisements. Kalshi explained that the advertisements were housed on a third party advertising platform, confirmed that they had the ability to download them through a somewhat manual process, and reiterated that that process was underway. I requested that counsel keep State Defendants apprised of any developments regarding the production of advertisements.

22. A true and correct copy of an email chain among counsel for the parties beginning on Tuesday, December 2, 2025 and ending on Wednesday, January 14, 2026 is attached hereto as **Exhibit G**.

23. On December 12, 2025, the parties met and conferred via Teams to discuss outstanding discovery issues. Counsel for State Defendants (myself, Alexander Mendelson, and Jay Jung) and counsel for Kalshi (Andrew Porter and Katie Cassidy-Ginsberg) attended the meet and confer. I again requested information about the status of Kalshi's production of advertisements, and Kalshi's counsel again informed me that the collection process was ongoing. I again asked Kalshi's counsel to keep us apprised of any updates.

24. On December 16, 2025, State Defendants' counsel emailed Kalshi's counsel regarding a number of outstanding discovery issues, and noted our understanding that Kalshi expected to produce the agreed-upon advertisements in the near term. Ex. G at 9.

25. On January 2, 2026, Kalshi's counsel stated that they were "continuing to work with [their] client and the vendor to collect advertisements and expect[ed] to provide an update in the coming days." *Id.* at 7.

26. On January 20, 2026, the parties met and conferred via Teams to discuss a number of outstanding discovery issues. Counsel for State Defendants (myself, Alexander Mendelson, and Miranda Katz), counsel for Kalshi (Andrew Porter and Katie Cassidy-Ginsberg), and counsel for Intervenor-Defendant NRA (Thad Houston) attended the meet and confer.

27. At the meet and confer, I again requested a status update regarding Kalshi's review and anticipated production of advertisements. Kalshi indicated that technical barriers with a third party system were extending the timeline, but provided no additional details.

28. A true and correct copy of an email chain among counsel for the parties beginning on Thursday, February 12, 2026 and ending on Wednesday, March 11, 2026 is attached hereto as **Exhibit H**.

29. On February 13, 2026, the parties met and conferred via Teams to discuss a number of outstanding discovery issues. Counsel for State Defendants (myself, Alexander Mendelson, and Miranda Katz) and counsel for Kalshi (Katherine Fell, Matthew Laroche, Camille Cummings, and Peter Farag) attended the meet and confer.

30. At the meet and confer, I again requested an update regarding Kalshi's advertisements, expressing frustration for the delay in production and lack of communication about the issue. In response, Kalshi stated that they "have been working on it," that the advertisements are stored on a system that is not under Kalshi's control, and that the advertisements are publicly available.

31. On February 24, 2026, in a footnote to a letter concerning other discovery disputes among the parties, Kalshi communicated, for the first time, its purported inability to produce the agreed-upon advertisements and its intent not to honor the parties' October 2025 agreement. A true and correct copy of Kalshi's Letter to State Defendants, dated February 24, 2026, is attached hereto as **Exhibit I**.

32. In the footnote to its letter, Kalshi stated:

> [Kalshi] does not keep, in the ordinary course of business, a repository of past advertisements from which it can export these materials for use in litigation. As State Defendants are aware, Kalshi utilizes a third-party product to create advertising material and, despite extensive efforts, we have yet to obtain an export from the third-party program that accurately reflects the requested material—and it is not clear that we will ever be able to do so. Moreover, Kalshi does not believe that its advertisements are material to the issues in this action, particularly as Judge Weksler explained them, *see* ECF 118 at 3–4, and note that State Defendants already have access to publicly available copies of Kalshi's advertisements (as evidenced by State Defendants' inclusion of them in their complaint in enforcement action). Because the burden on Kalshi to access archived advertisements far exceeds the needs of State Defendants in this action, Kalshi does not intend to produce archived advertisements in response to State Defendants' requests.

Ex. I at 10 n.10.

33. On February 27, 2026, I explained in an email to Kalshi's counsel that the parties had reached a compromise months earlier, that Kalshi agreed to produce a limited set of advertisements in return for State Defendants' agreement to forego the remainder of Requests 6 and 10, and that State Defendants expected to make a motion to compel absent further explanation regarding Kalshi's supposed inability to access its own advertising materials. *See* Ex. H at 9–10. I also requested that Kalshi identify the third party that Kalshi had repeatedly referred to as assisting with its advertisements so that State Defendants might issue a subpoena. *Id.*

34. Later that day, Kalshi acknowledged State Defendants' intent to move to compel, and stated that contrary to their prior assertions, Kalshi "now believe[s] that an archive of the nature that you are requesting simply does not exist and we have not been able, despite extensive efforts, to identify a way to produce to you archived material that accurately reflects what Kalshi advertised in the past." *Id.* at 8.

35. On March 4, 2026, I sent a letter to Kalshi's counsel regarding a number of outstanding discovery disputes, including Kalshi's abrupt about-face with respect to advertisements. A true and correct copy of State Defendants' letter to Kalshi, dated March 4, 2026, is attached hereto as **Exhibit J**.

36. Given that Kalshi had to date provided only a conclusory explanation regarding the supposed burden of accessing its own advertisements, I requested that Kalshi provide: "(1) the identity of the third-party program used by Kalshi; (2) the identity of the individuals at Kalshi and/or third-party vendors responsible for placing Kalshi advertisements; (3) a specific description of the efforts undertaken to collect the agreed-upon advertisements and of the purported obstacles to collection and/or production; and (4) a description of when Kalshi first became aware of its inability to produce advertisements pursuant to the parties' October 2025 agreement." Ex. J at 4.

37. On March 9, 2026, the parties met and conferred via Teams. Counsel for State Defendants (myself, Alexander Mendelson, Jay Jung, and Nicole Hamilton), and counsel for Kalshi (Katherine Fell and Camille Cummings) attended the call.

38. Kalshi's counsel explained for the first time during this call that the third-party vendor that had repeatedly been referenced throughout the parties' communications was actually a design tool used by Kalshi to create advertisements, which they claimed does not save complete versions of prior advertisements and cannot export prior advertisements in a producible format. Kalshi's counsel did not identify the program that it used or the individuals at Kalshi or at third-party vendors responsible for placing advertisements. Nor could Kalshi's counsel confirm whether Kalshi had checked the accounts through which it posted advertisements on various social media platforms to see whether past advertisements could be located that way in the alternative.

39. On March 9, 2026, following the meet and confer, I sent an email to Kalshi's counsel noting that when the issue of advertisements was first raised Kalshi represented that it "had used a third party advertising agency in addition to placing its own advertisements." Ex. H at 3. Accordingly, I asked whether Kalshi had "considered making a proposal for instead producing advertisements from that agency in light of the issues it has now raised with producing its self-placed advertisements." *Id.* I noted that State Defendants would be open to receiving advertisements placed

by Kalshi's third-party advertising agency in lieu of the agreed-upon advertisements placed directly by Kalshi. *Id.*

40. On March 11, 2026, Kalshi's counsel responded with a proposal to "promptly produce" a limited set of 24 "screenshots of ads placed on Meta and Reddit during the requested time periods, which Kalshi located by searching through its Meta and Reddit accounts." *Id.* at 2. Kalshi stated that any ads placed on any other platform than Meta and Reddit "are likely to be duplicative of anything distributed on Meta or Reddit." *Id.*

41. Kalshi's counsel repeated that Kalshi "does not have the ability to produce copies of these or other advertisements in any other format other than screenshots, as Kalshi does not maintain, in the ordinary course, an archive of 'native files' containing of past advertisements," and that "[d]espite extensive efforts to obtain accurate copies of any such native, original files, we have been unable to do so, as we have described to you in correspondence and in numerous meet and confers." *Id.*

42. In the same email, Kalshi's counsel directed State Defendants to "publicly available repositor[ies] of advertisements" maintained by Meta and Reddit which it claimed "contain both active and inactive advertisements." *Id.* Kalshi's counsel further stated that "[a]lthough we have not done an exhaustive search of the thousands of advertisements that are publicly available through Kalshi's profiles on social media platforms or publicly available ad repositories, we expect that most, if not all, of Kalshi's advertisements with any conceivable relevance to this action are available publicly." *Id.*

43. They explained that Kalshi would "not be producing any other advertisements to State Defendants in this case" unless State Defendants can "identify a specific advertisement, state its relevance to this case, and explain the efforts that [State Defendants] undertook to locate it on the numerous publicly available sources for this kind of material." *Id.*

44. Following receipt of this email, members of my team searched the public advertisement repositories that Kalshi identified but were unable to locate a majority of the advertisements that Kalshi claimed came from its own accounts.

45. Later that day, I responded to Kalshi's counsel via email that State Defendants would not accept Kalshi's proposal. *Id.* at 1. Specifically, I noted that Meta and Reddit are only two of the nine platforms covered by Kalshi's prior agreement, that State Defendants' search of the public repositories did not yield the same advertisements that Kalshi offered to produce, and that Kalshi's response failed to provide the requested information regarding Kalshi's third-party tool and the technological challenges associated with compiling advertisements. *Id.*

46. Despite a sincere effort to resolve or narrow the disputes during the above-referenced meet and confers, the parties were unable to fully resolve their disagreements over the discovery issues addressed in State Defendants' Motion to Compel without Court intervention.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: March 11, 2025
New York, NY

Respectfully submitted,

*/s/ Rory K. Schneider*
Rory K. Schneider (*pro hac vice*)
Mayer Brown LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 506-2500
rschneider@mayerbrown.com
*Attorney for State Defendants*

**Index of Exhibits**

| Exhibit | Description |
|---|---|
| A | Kalshi's Responses and Objections to State Defendants' First Set of Requests for Production, dated September 9, 2025. |
| B | Letter from State Defendants to Kalshi, dated September 24, 2025. |
| C | Email chain among counsel for the parties beginning on Friday, September 26, 2025 and ending on Thursday, October 16, 2025. |
| D | Letter from Kalshi to State Defendants, dated September 29, 2025. |
| E | Email chain among counsel for the parties beginning on October 20, 2025 and ending on October 21, 2025. |
| F | Letter from Kalshi to State Defendants, dated November 21, 2025. |
| G | Email chain among counsel for the parties beginning on Tuesday, December 2, 2025 and ending on Wednesday, January 14, 2026. |
| H | Email chain among counsel for the parties beginning on Thursday, February 12, 2026 and ending on Wednesday, March 11, 2026. |
| I | Letter from Kalshi to State Defendants, dated February 24, 2026. |
| J | Letter from State Defendants to Kalshi, dated March 4, 2026. |