# EXHIBIT F
# Letter from Kalshi to
# State Defendants
# 11/21/2025



# Milbank

### ANDREW L. PORTER
*Partner*

55 Hudson Yards  |  New York, NY 10001-2163
T: +1 (212) 530-5361
aporter@milbank.com  |  milbank.com

November 21, 2025

<u>**VIA EMAIL**</u>

Jessica Whelan
Chief Deputy Solicitor General
Sabrena Clinton
Senior Deputy Attorney General
**State of Nevada**
**Office of the Attorney General**
1 State of Nevada Way, Suite 100
Las Vegas, NV 89119
JWhelan@ag.nv.gov
SClinton@ag.nv.gov

Rory Schneider
**Mayer Brown**
1221 Avenue of the Americas
New York, NY 10020
rschneider@mayerbrown.com

Re:  ***KalshiEX, LLC v. Hendrick, et al.***, 2:25-cv-0575

Counsel,

We write on behalf of Plaintiff KalshiEX, LLC ("<u>Kalshi</u>" or "<u>KalshiEX</u>") to recap our November 20, 2025 meet-and-confer call and address various issues in your letter dated November 13, 2025 (the "<u>Letter</u>").

Separately, please let us know your availability on Tuesday, November 25, 2025, to meet and confer regarding the custodians for KalshiEX's production of documents in response to State Defendants' Requests 2, 5 and 7.

**<u>State Defendants First Set of Requests for Production</u>**

*CFTC Communications*:  In the Letter, you state that, based on Kalshi's November 7, 2025 letter, you "understand Kalshi to be representing that its production, dated October 27, 2025 . . . comprises all documents and communications exchanged between the CFTC and the five custodians proposed by Kalshi during the period October 2, 2024 through September 11, 2025 that hit upon the parties' agreed upon search terms in response to Request No. 1."  Letter at 1.

As an initial matter, Kalshi's November 7, 2025 letter made clear that the October 27, 2025 production included email communications responsive to Request 1—*i.e.*, "communications with the CFTC ***regarding Kalshi's event contracts*** for the period October 2, 2024 through September 11, 2025."  *See* Nov. 7, 2025 Letter from A. Porter to Counsel at 2-3 (emphasis added).  Kalshi never represented that the October 27, 2025 production included *all* documents that hit on the parties' agreed-upon search terms.  Nor was Kalshi under an obligation to produce all documents that hit on the parties agreed-upon search terms without any sort of review for responsiveness.

MILBANK LLP

NEW YORK | LOS ANGELES | WASHINGTON, D.C. | SÃO PAULO | FRANKFURT
LONDON | MUNICH | HONG KONG | SEOUL | SINGAPORE | TOKYO

Instead, Kalshi properly reviewed the documents that hit on the parties' agreed-upon search terms and produced documents responsive to State Defendants' request for communications with the CFTC "regarding Kalshi's event contracts." Kalshi is, however, undertaking a review of additional documents—identified by the parties' agreed-upon search terms—submitted to the CFTC through the CFTC's portal, rather than submitted by email to the CFTC. To the extent that review identifies additional responsive communications with the CFTC, Kalshi will produce them.

*Metadata*: As we explained during the November 20 meet-and-confer, and in our prior letters and on meet-and-confers, Kalshi has undertaken significant efforts—both in terms of time and expense—to obtain any additional metadata associated with Kalshi's first production of self-certifications filed with the CFTC and associated appendices (the "First Production"). As we explained during the parties' prior meet and confer, we determined that Kalshi's internal IT department could not extract additional metadata (to the extent any existed) and, accordingly, Kalshi was in the process of engaging a vendor.

Since that meet and confer occurred, we can confirm Kalshi engaged a vendor, who did a forensic collection of the self-certifications and associated appendices that Kalshi previously produced in an effort to collect additional metadata. That forensic collection resulted in little to no additional metadata. Nonetheless, Kalshi is preparing a metadata overlay for documents in the First Production with the metadata that was available, which will be provided under separate cover.[1]

*Advertisements*: As explained during the November 20 meet-and-confer, we are preparing the agreed-upon production of Kalshi's advertisements and will produce them as soon as practicable.

---

[1] In light of the foregoing, State Defendants are not "entitled" to a declaration "confirming [1] the specific steps that Kalshi took to collect the documents, [2] the steps that Kalshi has taken to retrieve any associated metadata, and [3] the basis for its conclusion that such metadata does not exist or is inaccessible." Letter at 2. To the contrary, this is a classic example of "discovery-on-discovery"—which is plainly "disfavored" and inappropriate under the circumstances. *See, e.g.*, *Ashcraft v. Experian Info. Solutions, Inc.*, 2018 WL 6171772, at *2 n. 2 (D. Nev. 2018) ("Discovery into another party's discovery process is disfavored."); *Zeitlin v. Bank of Am., N.A.*, 2021 WL 5154114, at *2 (D. Nev. Nov. 2021) (explaining that plaintiffs were not entitled to question defendant's 30(b)(6) witness on its discovery methods because "discovery-on-discovery 'is neither relevant to a claim or defense in the litigation or proportional to the needs of the case'") (citation omitted). For example, it is exceedingly obvious that the "steps that Kalshi has taken to retrieve [the documents and] any associated metadata" are utterly irrelevant to the claims and defenses at issue in this case and, accordingly, outside the scope of discovery permitted under Rule 26. Courts consistently hold that for discovery-on-discovery to be warranted, the party seeking such discovery "must show a specific deficiency in the other party's production." *Uschold v. Carriage Servs., Inc.*, 2019 WL 8298261, at *4 (N.D. Cal. 2019); *Nichols v. Credit Union 1*, 2019 WL 13147902, at *2 (D. Nev. 2019) ("Generally, courts will only permit such discovery [*i.e.*, discovery-on-discovery] where there is some indication that a party's discovery has been insufficient or deficient."); *Jensen v. BMW of North Am., LLC*, 328 F.R.D. 557, 566 (S.D. Cal. 2019) (same). But no "specific deficiency" in Kalshi's First Production exists here.

**State Defendants' Second Set of Requests for Production**

*Requests 11, 18 and 27*:  With respect to Request 11, during the November 20 meet-and-confer we advised we will evaluate Kalshi's ability, and the burden, of providing a list of all event contracts offered on Kalshi.  With respect to Request 18, we informed you that no discovery took place in *KalshiEX LLC v. Commodity Futures Trading Commission*, 2024 WL 4164694 (D.D.C. Sept. 12, 2024), mooting the Request.  With respect to Request 27, we advised that Kalshi is considering State Defendants' narrowed request for a copy of the presentation made to State Defendants on March 28, 2025, and will advise of our position on this Request in future correspondence.

*Requests 12 and 30*:  Requests 12 and 30 seek documents concerning Kalshi's business model, revenue generation and profitability, as well as documents concerning Kalshi's assertion that it is not the "house" or a counterparty to any trade.  We previously explained why these Requests do not seek information that is relevant to any claim or defense at issue in this proceeding.  And we explained, in detail, why the fact that KalshiEX's affiliate, Kalshi Trading LLC ("Kalshi Trading"), engages in trading activity on KalshiEX's exchange has no bearing on whether KalshiEX acts like the "house" or is a counterparty to any trade.  Nevertheless, as we discussed during the November 20 meet-and-confer, we are willing to consider a narrowed request related to Kalshi Trading, which we understand you are preparing.  We will respond in due course once we receive your proposal.  And, as stated in our November 7 letter, we will produce KalshiEX's "Affiliate Trader Safeguards" policy and "Affiliate Trader Acknowledgement as a compromise to avoid bringing an unnecessary issue to the Court.

*Request 13*:  As discussed, we are preparing a supplemental response to State Defendants' Interrogatory 5 to describe KalshiEX's age verification process.

*Requests 15 and 16*:  These requests seek the production of Kalshi's application for designation as a contract market, including any communications with the CFTC regarding the application, as well as documents and communications related to KalshiEX's "status as a designated contract market under the Commodity Exchange Act . . . ."  In our November 7 letter, we explained that (1) these requests do not seek information relevant to the claims or defenses at issue; and (2) KalshiEX's status as a CFTC-designated contract market is undisputed.  We further noted that, to the extent there were communications with the CFTC regarding, for example, KalshiEX's compliance with CFTC Core Principles, such documents would have been included in the October 27 production or in any forthcoming supplemental production.

Your Letter maintains that "Kalshi's status as a designated contract market is indisputably relevant" and that Kalshi has not "articulate[d] any possible burden in producing this limited set of documents."  Letter at 3.[2]  Kalshi's status as a designated contract market is not in dispute.  The "burden" imposed by this request is that it seeks completely unnecessary and irrelevant information.  There is no need for Kalshi to undertake the burden and expense of collecting and reviewing irrelevant documents that have no bearing on the issues.  In light of the foregoing, as

---

[2] Your Letter also claims that Kalshi did not deny "the existence of relevant and responsive records" and "their inclusion of relevant representations concerning Kalshi's offerings."  Letter at 3.  But Kalshi clearly explained why these documents were not relevant in its November 7 letter— most obviously, because KalshiEX's status as a CFTC-designated contract market is not in dispute.

indicated during the November 20 meet-and-confer, KalshiEX agrees that the parties have reached an impasse on this issue.

*Request 19*:  Request 19 seeks documents and communications related to the CFTC's January 2025 review of event contract certified by the North American Derivatives Exchange, Inc. d/b/a Crypto.com ("NADEX").  As indicated during the November 20 meet-and-confer, Kalshi is further evaluating this Request.  We will advise of our position on this Request in future correspondence.

*Requests 24 and 28*:    Requests 24 and 28 seek documents and communications regarding KalshiEX's consumer protection and betting integrity efforts.  As we stated in our November 7 letter, KalshiEX will produce six additional policies in response to this request:  (1) Kalshi Inc.'s Anti-Money Laundering and Counter-Terrorist Financing policy; (2) Kalshi's Procedures: Know-Your Customer (KYC) Process; (3) KalshiEX's Market Surveillance and Oversight Policy; (4) KalshiEX's Market Surveillance and Oversight Procedures; (5) KalshiEX's Market Surveillance and Oversight Procedures for Futures Commission Merchants; and (6) KalshiEX's Insider Trader Procedures.

During the November 20 meet-and-confer, we discussed the forthcoming production of these policies, and our understanding is the parties will meet-and-confer to discuss if further discovery on these topics is warranted once State Defendants have had a chance to review that forthcoming production.

Sincerely,

/s/ *Andrew L. Porter*
Andrew L. Porter

cc:  Adam Hosmer-Henner
A.G. Burnett
Jane Susskind
Katrina Weil
Cassin Brown