# EXHIBIT I
# Letter from Kalshi to State Defendants
# 2/24/2026



**KATHERINE KELLY FELL**
*Partner*
55 Hudson Yards | New York, NY 10001-2163
T: +1 212.530.5207
kfell@milbank.com | milbank.com

February 24, 2026

**VIA EMAIL**

Jessica Whelan
State of Nevada
Office of the Attorney General
1 State of Nevada Way, Suite 100
Las Vegas, NV 89119
JWhelan@ag.nv.gov

Mayer Brown LLP
Nicole Saharsky
1999 K Street, NW
Washington, DC 20006-1101
nsaharsky@mayerbrown.com

Rory Schneider
1221 Avenue of the Americas
New York, NY 10020
rschneider@mayerbrown.com

Re:   ***KalshiEX, LLC v. Hendrick, et al.*, 2:25-cv-0575**

Counsel,

We write on behalf of KalshiEX, LLC ("Kalshi") to follow up on our prior communications regarding discovery in this matter and to address other concerning conduct by State Defendants in recent weeks, which we believe to be a misuse of process to gain an unfair advantage in this and other litigation.

Our concerns include that State Defendants issued discovery requests in this action seemingly to gain an improper "sneak peek" at information relevant to State Defendants' separate civil enforcement proceedings; made misrepresentations regarding Kalshi and its CEO, including in their filings in the Ninth Circuit appeal in this action; have failed to comply in good faith with their discovery obligations; and have attempted to game the schedule in this case to produce an unjust result.

State Defendants' recent course of conduct has exposed, and continues to expose, Kalshi to significant prejudice. While we recognize that this litigation has been hard fought, it nonetheless

MILBANK LLP

NEW YORK | LOS ANGELES | WASHINGTON, D.C. | SÃO PAULO | FRANKFURT
LONDON | MUNICH | HONG KONG | SEOUL | SINGAPORE | TOKYO

should be fought fairly.  We urge State Defendants to take steps to correct the issues identified in this letter.  Among other potential relief, Kalshi plans to move for a protective order in this action if State Defendants do not agree to take such corrective action.

Please provide your response to the information requested at the close of this letter by no later than 5:00 pm Pacific on Wednesday, February 25.

### I. State Defendants' Improper Discovery Requests

As previewed in our February 13 meet-and-confer, Kalshi believes the January 30 requests served on it by State Defendants are improper and should be withdrawn.

First, while Kalshi does not contest that the January 30 requests were timely served, there is an air of sandbagging with respect to when State Defendants determined to serve them.  Indeed, State Defendants initially represented to the Court that this case presents "largely a legal issue." ECF No. 46 at 69:4-5.  Accordingly, on August 22, 2025, State Defendants told the Court that the "scope of depositions that we would want is quite limited," and that beyond the 10 requests that had already been served on Kalshi at that point, there may be "some additional requests" that "maybe haven't already been propounded" that would be served prior to the then-applicable deadline for discovery of October 31, 2025.  *See* ECF No. 115 at Tr. 18:18-19, 19:17-21. Accordingly, thereafter, State Defendants served 22 additional requests on Kalshi on September 15, 2025, for a total of 32 requests.  Subsequently, the parties agreed to extend the discovery schedule, and Kalshi served 18 requests on State Defendants on October 14, 2025; two requests on November 6, 2025; and 14 requests on December 15, 2025, for a total of 34 requests.

Then, on January 30, 2026—more than four months since State Defendants had served their last requests, two days before the deadline to substantially complete production of documents, and only 31 days before the close of fact discovery—State Defendants dropped an additional ***23 requests*** on Kalshi, nearly doubling the number of requests served during the prior six months. Moreover, there is nothing about the January 30 requests that suggests any reason (such as new information coming to light) for waiting until such a late date to serve them.  We note that, in contrast, Kalshi served its last requests on State Defendants on December 15, 2025—six weeks prior to the substantial completion deadline (and more than ten weeks before the close of fact discovery).

At the same time, the January 30 requests have almost nothing to do with the topics that Judge Weksler suggested would be appropriate for discovery in this case (nor the topics that State Defendants represented to the Judge would be the focus of their inquiries).  But they appear *directly* relevant to the allegations in State Defendants' civil enforcement action filed on February 17, 2026. Judge Weksler identified three illustrative examples of categories of potentially relevant documents in her order denying Kalshi's motion to stay discovery: (1) whether the contracts offered on Kalshi's designated contract market are swaps; (2) the inability of Kalshi to comply with both Nevada and federal law; and (3) the harm to Kalshi that necessitates injunctive relief. ECF 118 at 3-4.  And, in response to questioning from Judge Weksler on what, precisely, the State

February 24, 2026                                                                                                                                         Page 3

Defendants might need in discovery, the State Defendants focused almost exclusively on documents and communications regarding Kalshi's self-certification of event contracts. *See* ECF No. 115 at Tr. 65:9-66:9. But the January 30 requests seek nothing of the sort; rather, they ask for information on (i) Kalshi's lobbying efforts; (ii) Kalshi's app design; (iii) Kalshi's Market Maker Program; (iv) Kalshi's investors or potential investors; (v) disciplinary proceedings and trading violations; (vi) Kalshi's organizational structure, operating agreements and articles of incorporation; and (vii) Kalshi's consumer protection efforts. *See, e.g.*, Request Nos. 33-35, 36-38, 41, 45-47, 53-56.[1]

While the majority of these requests are facially irrelevant to this action, they are a core focus of State Defendants' enforcement action. For example, State Defendants' requests relating to Kalshi's investors and corporate structure are not relevant to whether Nevada state law is preempted by the CEA.[2] But the State clearly deems that information relevant to its enforcement action, as that complaint alleges that "Nevada law requires . . . an in-depth investigation of *all entities and natural persons who directly or indirectly have an ownership interest in the entity offering the wagers.*" State Compl. ¶ 27 (emphasis added).

Similarly, information about how Kalshi's app compares to "the user interface of [ ] apps" used by sportsbooks, "including but not limited to BetMGM, DraftKings, FanDuel, Caesars Sportsbook, theScore Bet, bet365, or Fanatics," has no relevance to whether Kalshi offers swaps or can comply with both state and federal law. *See* Request No. 38; ECF No. 118 at 3-4. But the enforcement complaint alleges that Kalshi offers a "game" subject to regulation in Nevada because it is "played with . . . equipment or any mechanical or electronic device," such as Kalshi's "mobile app." State Compl. ¶¶ 17-18.

And the parallels continue when you consider the statements that State Defendants made to the Ninth Circuit, when they decided to break their commitment to refrain from enforcement

---

[1] Only three of the requests arguably fall within the scope of discovery that Magistrate Judge Weksler found to be appropriate—Request No. 42 and Request Nos. 50-51. But those are objectionable for other reasons. Kalshi notes that Request No. 42 is cumulative of Request Nos. 20 and 26, and that Kalshi has already provided an explanation of its ability to geolocate in response to State Defendants Interrogatory No. 8. Accordingly, Kalshi does not intend to produce further documents in response to the Request. Request No. 50, in turn, seeks "[a]ll Documents and Communications concerning event contracts certified by Kalshi from August 30, 2025 to the present." But the Parties already agreed to the relevant time range for documents and communications regarding Kalshi's event contracts in response to State Defendants' prior Requests—October 2, 2024 through September 11, 2025. This request constitutes a re-trade on our prior agreements, on which Kalshi relied in good faith, so it is not a topic Kalshi is willing to reopen at this late date. The same is true with respect to Request No. 51.

[2] *See* Request No. 33 (seeking documents regarding the "corporate relationship" among Kalshi entities and "any other corporate affiliate of Kalshi"); Request No. 34 (seeking "operating agreements and articles of incorporation" for Kalshi entities); Request No. 36 (seeking communications with "investors or potential investors" of Kalshi).

February 24, 2026                                                                                                                                             Page 4

against Kalshi while that court was considering whether to issue a stay pending appeal. For example, the January 30 requests seek detailed information about the "total monthly, weekly, and daily trading volume" of both Kalshi market makers and individual users, *see* Request Nos. 40, 43, which is not relevant to the instant action. But Kalshi's recent trading volume was one motivation behind State Defendants' decision to bring an enforcement action. *See KalshiEX, LLC v. Hendrick,* No. 25-7516, ECF 61.1 (9th Cir.) (arguing that enforcement at this time was proper because Kalshi has "massively increased its trading volumes.").

Obviously, it is improper to use discovery in this action to preview information relevant to a separate lawsuit—and the confidentiality order in this case expressly prohibits it. *See* ECF No. 128 ¶ 9 ("Persons having knowledge of Confidential Information by virtue of their participation in the conduct of the Proceeding shall use that Confidential Information only in connection with the prosecution, defense, and appeal of the Proceeding, and shall neither use such Confidential Information for any other purpose . . . ."). In fact, the risk that State Defendants would do *exactly this* was one of the concerns that Kalshi raised in its initial motion to stay discovery. *See* ECF No. 115 at Tr. 24:17-21 (NRA defendants acknowledging that Kalshi argues "it would be irreparably harmful to disclose documents to the Nevada gaming regulator because [ ] the Nevada gaming regulators wouldn't have access to those sort of interrogatories in the ordinary regulation process"); *see also id.* at 24:22-25:3 (arguing that Kalshi should be required to "put their money where their mouth is" because if Kalshi's legal position is correct "they will never be subject to the jurisdiction of Nevada."). In response to those concerns, State Defendants argued that "the strongest thing weighing against [Kalshi's] argument . . . is the fact that there's a preliminary injunction in place." ECF No. 115 at Tr. 17:25-18:4.

But today, the script has flipped. There is no preliminary injunction in place. And while, in opposition to Kalshi's motion to stay the district court's order vacating the preliminary injunction, the State represented to the Ninth Circuit that it would not initiate enforcement proceedings, it reneged on that commitment less than two weeks after it served the improper January 30 requests. *See KalshiEX, LLC v. Hendrick,* No. 25-7516, ECF 61.1 (9th Cir.). Yet, State Defendants continue to insist that Kalshi respond to the January 30 requests—which now pose a clear, non-hypothetical risk of prejudice to Kalshi—and that they do so immediately, substantially completing production by March 4. *See* Feb. 9 email from R. Schneider to K. Fell, *et al.*[3] State Defendants make this demand notwithstanding that the dispositive motion and pretrial deadlines in this case have been taken off calendar indefinitely. *See* ECF 263 at 1.

State Defendants also argue that Kalshi should be required to answer the January 30 requests but prohibited from serving reciprocal requests on the same topics. *See* R. Schneider Feb. 9 email. But Kalshi could not have predicted that State Defendants would have sought to dramatically expand the scope of discovery at the last minute. While Kalshi can—and intends to—seek a protective order from the Court, basic principles of fairness and proportionality dictate that Kalshi should, at a minimum, be afforded an opportunity to issue protective reciprocal discovery

---

[3] Hereinafter, "R. Schneider Feb. 9 email."

February 24, 2026                                                                                                                                Page 5

requests on the topics in the January 30 requests. That way—in the unlikely event that the Court finds the January 30 requests to seek relevant information—the discovery record will be fair and balanced, with disclosure from *both* sides on those issues. State Defendants' position to the contrary is conspicuous gamesmanship—an attempt to use the administrative schedule in this matter to create a substantively disproportionate discovery record, weighted in State Defendants' favor.

In sum, the content and timing of the January 30 requests, and State Defendants' position on the discovery schedule, cannot be explained by any legitimate need of State Defendants in *this* case. State Defendants will have an opportunity to seek discovery in their separate enforcement action and should be required to follow the proper procedure there, assuming it proceeds. Kalshi firmly believes that the Court would disapprove of State Defendants' approach, particularly given their prior representations to the Court that there could be no harm to Kalshi in expedited discovery because of the lack of threat of enforcement.

Accordingly, Kalshi reiterates its request that State Defendants withdraw the January 30 requests. If State Defendants do not confirm that they are withdrawing the requests by 5:00 p.m. Pacific on Wednesday, February 25, 2026, Kalshi intends to move promptly for a protective order prohibiting the disclosure sought therein.[4]

## II. State Defendants' Pattern of Misrepresentations About Kalshi

Kalshi also is gravely concerned about a pattern of misrepresentation by State Defendants in recent weeks, including in statements made to state and federal courts. Kalshi requests that State Defendants take immediate action to correct these errors.

### A. Misrepresentations in Ninth Circuit and Civil Enforcement Filings

First, we are disappointed by State Defendants' decision to withdraw their commitment to refrain from enforcement during the pendency of the Ninth Circuit appeal. We were particularly disappointed because, as discussed above, the lack of threat of enforcement was a key basis on which you obtained an order from the Court permitting discovery in this case. Kalshi relied on those representations, and your statement to the Ninth Circuit that you would refrain from enforcement, in good faith when producing over 6,000 documents to State Defendants, many of which State Defendants never would have received under any other circumstance.

---

[4] As noted in the email accompanying this letter, if State Defendants do not withdraw the January 30 requests, Kalshi demands that the discovery schedule in this matter be extended to accommodate time for Kalshi to serve reciprocal requests on State Defendants on the topics at issue in the January 30 requests, and to permit additional time for production and review of documents ahead of depositions.

February 24, 2026 — Page 6

Moreover, in the State Defendants' letter to the Ninth Circuit informing it that they were withdrawing their agreement to stay enforcement, State Defendants made several significant misrepresentations about Kalshi:

*First*, the letter falsely states that Kalshi "is the only prediction market currently operating in Nevada." Ltr. at 2. As State Defendants are aware, Crypto.com, a designated contract market ("DCM"), and Robinhood, a futures commission merchant (which partners with Kalshi and other DCMs), both continue to operate in Nevada subject to agreements that apply only to sports-event contracts and, at least with respect to Crypto.com, restrict access to sports-event contracts only for non-residents. *See* 2-ER-35-36; Dkt. 17 at 25; *Robinhood Derivatives, LLC v. Dreitzer*, 25-7831 (9th Cir. Dec. 24, 2025), Dkt. No. 10.1 at 22-23. This means that Crypto.com and Robinhood can freely offer non-sports event contracts to anyone in Nevada, and Crypto.com can offer sports-event contracts in Nevada to the approximately *50 million* annual out-of-state visitors to Nevada, a number that vastly exceeds the State's 3 million residents.

There is no reasonable explanation for these misrepresentations.[5] Certain counsel of record for State Defendants in this action are also counsel of record in the *Crypto.com* and *Robinhood* matters, and we understand that those counsels negotiated the State Defendants' agreement with Crypto.com. This issue also has been extensively addressed by the parties in this matter, including in:

(i) Kalshi's opposition to the State Defendants' emergency motion to dissolve in which Kalshi noted its understanding that the Crypto.com agreement applies only to Nevada residents (ECF No. 183 at 18-21);

(ii) the State Defendants' opposition to Kalshi's motion for a stay pending appeal in which defendants confirmed that agreement (ECF No. 250 at 16); and

(iii) the State Defendants' merits brief before the Ninth Circuit in which it confirmed the same (No. 25-7516, Dkt. 33 at 67).

*Second*, State Defendants' representations concerning Kalshi not maintaining the so-called "status quo" during the pendency of the Ninth Circuit appeal were misleading. Your letter cited to a Kalshi announcement as alleged evidence of what Kalshi has done "[s]ince filing its stay motion" in December 2025. But the announcement cited is dated *January* 2025—eleven months earlier. Marketing statements made nearly a year before the stay motion was filed do not show that Kalshi has departed from the status quo since filing its stay motion in *December 2025* and it was, at least, extremely careless to suggest otherwise. In any case, all Kalshi has done during that pendency is operate as a DCM. Daily variation in trading volume does not show a

---

[5] State Defendants' opposition to Kalshi's motion for an administrative stay did not correct these errors or alert the Ninth Circuit of the misstatements in your letter. Dkt. 64.1 at 20 n.3.

February 24, 2026 — Page 7

change in the status quo—particularly where an event like the Super Bowl (which affected revenues for *both* Kalshi and Nevada's gaming industry) happens to occur during that pendency.

State Defendants had an opportunity to correct these misstatements in their opposition brief but instead introduced more misleading statements. For example, State Defendants said Kalshi "took full advantage" of the State Defendants' non-enforcement agreement by partnering with "Sleeper to offer sports contracts on Sleeper's platform." Dkt. 64.1 at 8. But Sleeper does not operate in Nevada, which is clear from publicly available information. So, the non-enforcement agreement had nothing to do with that partnership. Kalshi's reply brief also identified other incorrect and misleading statements by the State Defendants. Dkt. 65.1, at 8 & n.1.

*Third,* in opposing Kalshi's motion for an administrative stay in this action, State Defendants cited to a recent interview on CNBC for the proposition that Kalshi's "own chief executive officer recently said that insider trading on its platform is 'fair game' and simply 'part of the risk in the market.'" Opp. 24. That allegation also appears in State Defendants' civil enforcement complaint. *See* Compl. ¶ 36 (citing CNBC, Kalshi CEO Tarek Mansour on Super Bowl Trades, at 10:13-16 (Feb. 10, 2026), bit.ly/4aISwfh). Those representations are false. In the interview, Kalshi's CEO said the opposite, making clear that "you cannot do insider trading on Kalshi." In response to questions about how the SEC protects against insider trading, he added that "we do the exact same thing on Kalshi"; he also noted that "if you have access to information you're not supposed to reveal to the public, material nonpublic information, you cannot trade on that" information on Kalshi; and he extensively discussed Kalshi's protocols for identifying and preventing insider trading, explaining that if there is "insider trading, the punishment goes from fines to referral to the CFTC for criminal enforcement." Far from suggesting that insider trading is "fair game," Kalshi's CEO explained that trading on *public* or *non-material* information is "fair game."[6]

These misstatements pose a significant risk of harm to our clients. While we understand that mistakes occasionally happen, the sheer number of objectively incorrect statements that State Defendants made about Kalshi in the past few weeks suggest more than just inattention. In particular, falsely asserting—in multiple court filings—that Kalshi's CEO has affirmatively endorsed insider trading is an egregious error, and one that risks harm to both Kalshi and Mr. Mansour personally. Moreover, making misrepresentations in expedited court proceedings amplifies potential prejudice to Kalshi's legal position, as courts may crystallize their views before Kalshi is able to correct the record

---

[6] As you are aware, Kalshi's Rulebook explicitly and comprehensively bars trading by, among others, (i) insiders with material non-public information, (ii) decision makers who can influence the result of a contract on Kalshi, (iii) and anyone using or employing any manipulative device, scheme, or artifice to defraud. *See* Kalshi Rulebook § 5.17 (y), (z), and (cc).

February 24, 2026                                                                                                                    Page 8

     To correct these harmful errors, Kalshi demands that State Defendants immediately file a correction in the courts in which State Defendants made these misstatements. The filing should clearly identify the misstatement at issue, explain how the misstatement was misleading, and either withdraw or correct the statement to accurately reflect the facts.[7]

### B. Misstatements in State Defendants' February 12 Letter

     State Defendants' February 12 letter also contained several misstatements that Kalshi wishes to correct.

     *First*, it stated that Kalshi's February 9 letter was "baseless[]," "meritless," and "frivolous." While we understand that lawyers use these words for rhetorical flourish, their application to describe our February 9 letter was unsupported. Far from "baseless," our February 9 letter contained four single spaced-pages stating the factual bases for our concerns regarding the State Defendants' productions, with citations to the record and other sources. *See* Feb. 9 Let at 1-5. Moreover, your letter, on the one hand, argued that "Kalshi's frivolous letter cites misstatements of fact and misrepresentations of the record in order to support its contentions," but, on the other hand, confirmed many of the facts cited by Kalshi in support of its position. *Compare, e.g.,* Feb. 9 Let. at 1-2 (contending that the State Defendants' productions contained publicly available filler material, such as "80 duplicative as-filed court documents," "70 generic casino industry newsletters," and "at least 50 publicly available agendas and notices") *with* Feb. 12 Let at 2 (acknowledging the State Defendants' productions 81 newsletters, "transcripts of public hearings, as-filed court documents, and publicly available agendas and notices").[8]

     *Second*, you complain that our February 9 letter "threatened sanctions," but it did nothing of the sort. Rather, page 1 of the letter stated: "For the reasons set forth below, Kalshi believes that the State Defendants have failed to comply with their discovery obligations," and gave notice

---

[7] We note that many news outlets covered State Defendants' filings, which amplified the misstatements. *E.g,* Law360, *9th Circ. Clears Way For Nev. Gaming Action Against Kalshi*, https://www.law360.com/securities/articles/2442727/9th-circ-clears-way-for-nev-gaming-action-against-kalshi ("'Kalshi is the only prediction market currently operating in Nevada . . . ,' Nevada's Chief Deputy Solicitor General Jessica E. Whalen told the court."); Reuters, *Nevada sues Kalshi to block prediction market in state,* https://www.reuters.com/technology/nevada-sues-block-kalshi-operating-prediction-market-state-2026-02-18/ ("It said Kalshi had not complied with state gaming regulations, including those prohibiting anyone under 21 from placing wagers and requiring entities accepting wagers on sports events to deploy safeguards against wagers by insiders like players and match fixing."). Both Kalshi and Mr. Mansour reserve all rights.

[8] Your letter also stated that our February 9 letter was "unprofessional" and you stated in our meet and confer that it was "borderline unethical." Those accusations are baseless in the context of a detailed letter with copious citations and seem bizarrely personal against the lawyers who prepared the letter. Obviously, there is nothing unprofessional or unethical about marshaling facts and law to advocate for your client's position.

February 24, 2026                                                                                                         Page 9

that "Kalshi intends to make a *motion to compel disclosure under Rule 37* if the deficiencies detailed below are not immediately corrected." (emphasis added). The letter went on to accurately state relevant discovery law; detail the bases for Kalshi's belief that State Defendants are not in compliance with their obligations; and request additional information about State Defendants' discovery efforts in the hopes that we could "avoid burdening the Court with discovery motions."[9] In any event, even if the letter had "threatened sanctions," it is not inappropriate to do so where there is a good faith basis to believe that misconduct has occurred. Thus, we cannot understand the letter's extreme accusation that "Kalshi's threat to seek sanctions smacks of bad faith and is itself sanctionable."

### III.    State Defendants' Deficient Productions of Documents

As discussed in our prior communications, Kalshi continues to have concerns regarding the timing and quality of the State Defendants' productions of documents in response to Kalshi's requests. These failures by State Defendants are concerning in and of themselves, but when considered with the totality of the circumstances addressed in this letter, appear to be part-and-parcel of State Defendants' recent gloves-off approach to its disputes with Kalshi. Kalshi requests that State Defendants immediately correct the issues identified below and agree to a revised discovery schedule that permits sufficient time for Kalshi to regain a level playing field from which to conduct depositions.

Following a review of the State Defendants' supplemental production of documents on February 10, State Defendants' February 12 letter, and the information provided by State Defendants in our February 13 meet and confer, Kalshi has identified the following un-remediated issues in State Defendants' document productions:

- ***State Defendants will produce a majority of probative documents well after the substantial completion deadline of February 2.*** The information provided to date confirms that State Defendants will produce the majority of internal, non-public communications well after the

---

[9] *See, e.g.,* Feb. 9 Let. at 3 ("We remind you that a failure to search for responsive documents in places where a party knows they may exist can expose a party to potential sanctions . . . To the extent that the paucity of responsive communications from the Primary Custodians or Additional Custodians is because such custodians routinely use off-channel sources for relevant business, and you have yet to search such accounts and devices, Kalshi demands that you immediately complete the required collections, and produce all responsive materials, by no later than February 27, 2026."); *compare also id.* (stating that "Rule 37 makes clear that, for purposes of a motion to compel, 'evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond,'" and noting courts will order forensic audits of a party's review process where "there are 'serious questions' about the reliability and completeness of the materials produced") *with id.* at 5 (asking for forensic information about the State Defendants' review process in the hopes it would help assuage Kalshi's concerns and avoid "potentially avoid burdening the Court with discovery motions").

February 24, 2026 Page 10

substantial completion deadline of February 2. As we previously noted, your February 2 production contained only approximately 300 documents, excluding publicly-available "filler" material. You produced an additional approximately 300 documents on February 10. And your February 12, 2026, letter explained that out of 2,100 responsive documents, approximately 50% were set aside for further review as potentially privileged. You stated that you have only begun to review those documents and that you will produce non-privileged results by March 2, 2026. *See* Feb. 12, 2026 Let. In contrast, on or before February 2, Kalshi produced over 6,000 documents, and, save for a select few materials,[10] we completed our document productions on February 17, 2026, nearly two weeks before the existing close of fact discovery.

We acknowledge your February 12 letter's objections to our characterization of the publicly available materials in your productions as "filler" material. However, your response did nothing to change our view of these documents. For one, the material constituted over one-third of the materials produced by State Defendants as of February 2. While we understand that these materials may be technically responsive to certain requests, because, for example, they hit on the term "Kalshi," that does not mean that Kalshi has what it needs to prepare for depositions. If Kalshi had padded its productions, prior to substantial completion, with 1,500 copies of news articles about State Defendants, but withheld, for example, the 1,000 confidential appendices that Kalshi submitted to the CFTC in connection with its self-certifications until March 2, presumably the State would not agree that it had ample time and material from which to prepare for depositions simply because Kalshi, early on, produced a large number of news articles. The same is true in the reverse.

Nor is the State Defendants' production of these filler materials akin to Kalshi's productions of publicly-available self-certification materials for the basic reason that State Defendants specifically asked for "[a]ll Documents concerning Kalshi's self-certification of event contracts to the Commodity Futures Trading Commission," Request No. 2, and when Kalshi objected to the request on the basis that the materials were publicly available, *see* R&Os to Request

---

[10] Kalshi acknowledges that State Defendants have asked for production of archived Kalshi advertisements that have not been produced, as well as a structure chart showing the relationship between KalshiEX and Kalshi Trading. The structure chart is publicly available and can be found at Exhibit A-7 to this filing: https://www.cftc.gov/IndustryOversight/IndustryFilings/ClearingOrganizations/53075. With respect to the archived advertisements, as Kalshi has informed State Defendants, it does not keep, in the ordinary course of business, a repository of past advertisements from which it can export these materials for use in litigation. As State Defendants are aware, Kalshi utilizes a third-party product to create advertising material and, despite extensive efforts, we have yet to obtain an export from the third-party program that accurately reflects the requested material—and it is not clear that we will ever be able to do so. Moreover, Kalshi does not believe that its advertisements are material to the issues in this action, particularly as Judge Weksler explained them, *see* ECF 118 at 3-4, and note that State Defendants already have access to publicly available copies of Kalshi's advertisements (as evidenced by State Defendants' inclusion of them in their complaint in enforcement action). Because the burden on Kalshi to access archived advertisements far exceeds the needs of State Defendants in this action, Kalshi does not intend to produce archived advertisements in response to State Defendants' requests.

February 24, 2026                                                                                                                           Page 11

No. 2, State Defendants nonetheless insisted that they be produced. In any event, in addition to the publicly available self-certifications, Kalshi produced over 1,000 confidential appendices, which are not publicly available, and which are directly relevant to the issues at the heart of this case. The production of those confidential appendices alone outnumbers the total number of documents produced by State Defendants.[11]

The February 12 letter also argues that Kalshi produced a non-responsive document that is nearly 5,000-pages long. *See* Letter at 3. But that document is a "weekly filing" that Kalshi submits to the CFTC, which is something that the State Defendants demanded and initially contended was "missing" from Kalshi's productions. See Nov. 3 email from A. Mendelson to G. Mainland, *et al*. Moreover, that document was part of a family, the cover email to which is responsive to State Defendants' Request for "[a]ll Communications between the [CFTC] and Kalshi concerning Kalshi's event contracts." Request No. 1.

Because of the discrepancy in amount of time that Kalshi will have, compared to State Defendants, to review probative documents prior to the start of depositions, it is appropriate to extend the discovery schedule to give Kalshi an opportunity to receive and review documents prior to depositions. Moreover, for the reasons set forth below and in our prior communications, Kalshi believes additional review and production by State Defendants may be necessary to capture all relevant materials that are responsive to Kalshi's requests. Under the State Defendants' proposed schedule, depositions would begin only one week after State Defendants make their final production—which could be substantial, given the potentially-privileged population was more than 1,000 documents. *See* Feb. 12 Let. And importantly, there is no prejudice to State Defendants in extending the discovery schedule, as dispositive motions and pretrial deadlines have been vacated in this case pending a decision in the Ninth Circuit.

- ***Lack of responsive materials from the files of numerous custodians.*** We acknowledge that your February 10, 2026 production was partially responsive to the concerns in our February 9 letter, in that it contained documents from the files of four custodians whom we noted were absent from your prior productions. However, you still have not produced any documents from the files of George Markantonis or Abbi Silver. There also were remarkably few documents in your production from certain other custodians, including just 16 from Jennifer Togliatti, 14 from Brian Krolicki, 21 from George Assad, and 1 from Rosa Solis-Rainey. As we explained in our February 9 letter, it is difficult to believe that these custodians would not have a meaningful number of responsive communications, considering their professional positions and extensive public statements about Kalshi and prediction markets.[12]

---

[11] State Defendants also overlook that Kalshi's most recent production included (i) draft self-certifications; and (ii) documents submitted through the "CFTC portal."

[12] There are indications that the State Defendants have not produced all responsive communications. We have identified at least one document in NRA's productions that is a responsive communication with State

February 24, 2026                                                                                                                           Page 12

      In our last conversation, we noted that State Defendants' February 10 production revealed that at least 5 of the 9 custodians use their personal email addresses for work-related communications.  This includes:

- togliattinvgc@gmail.com (Jennifer Togliatti)
- briankrolicki@msn.com (Brian Krolicki)
- rsr@solisrainey.com (Rosa Solis-Rainey)
- george9636@yahoo.com (George Markantonis)
- silvernvgc@gmail.com (Abbi Silver)

      Please confirm that State Defendants have collected, reviewed, and produced all responsive materials from these accounts, and all custodians' personal and professional email accounts.  For any custodian from whom State Defendants have not collected personal email communications, please clearly state the custodian's name and the diligence conducted to reach the conclusion that those repositories would not contain responsive materials.

      For Kalshi's part, your February 12 letter inaccurately contended that Kalshi has not produced materials from the files of all custodians.  Kalshi has produced, at a minimum, Slack materials from the files of every custodian, including the three custodians for whom the February 12 letter stated there are no "custodial files."  *See* Letter at 3.  As State Defendants are likely aware, employees at modern technology companies frequently use Slack to a greater degree than email for internal communications. Thus, the fact that there are no *emails* (but rather Slack messages) from the files of certain custodians is not surprising.  Moreover, as we have previously explained, Lior Hirschfeld and Marcus Lee were designated as custodians primarily for requests relating to geofencing—topics for which Kalshi has repeatedly told State Defendants that it is likely to have few, if any, non-privileged, responsive documents—considering that Kalshi is a 50-state federal derivatives exchange that has not, to date, geofenced anywhere.

- ***State Defendants have not produced materials responsive to at least 17 of Kalshi's requests.***  After reviewing the supplemental February 10 production, we still do not believe State Defendants have produced documents in response to Request Nos. 2-13, 22, 25-29, and 31.  The "example documents" identified by State Defendants in their February 12 letter as being "responsive to Kalshi's requests" did little to rebut our points in this regard.  For example, Requests 21-22, 26 and 32 seek, among other things, communications with the NRA and Nevada licensees regarding a publicly-available November 12, 2025 notice.  Your letter cites

---

Defendants, but that document does not appear in State Defendants' productions.  *See* NRA001915.  The document is not privileged, and we would expect it to have been captured through the agreed-upon search terms and marked as responsive to Kalshi Request No. 2.

February 24, 2026                                                                                                                                       Page 13

NGCB_KALSHI_00017052 as a document responsive to those requests, but NGCB_KALSHI_00017052 is the November 12, 2025 Notice itself. Likewise, NGCB_KALSHI_00019132 is cited, presumably as an example of internal communications as opposed to publicly-available "filler," but that document is an email sent from Sharla Ballinger to herself, containing approximately 17 news articles (including one entitled "Names from Las Vegas' mobster past were once in states' 'Black Book.'").

- ***State Defendants have yet to provide a search term report.*** We appreciate the information that you provided to us in the days following our February 9 letter regarding your discovery process so far, including the number of documents reviewed, the number determined to be responsive, the responsiveness rate, and the number yet to be reviewed or determined to be potentially privileged. The information was helpful to us as we continue to evaluate the concerns noted in our letter. We note, however, that you have not yet provided the search term report we requested, identifying the number of hits resulting from the application of the agreed-upon search terms to the files of State Defendant custodians.

As you are aware, a number of our concerns regarding the nature and extent of the State Defendants' productions so far arise from our skepticism that there would be such a paucity of relevant communications in the files of custodians who have been actively engaged in attempted regulation of prediction markets in the past two years. *See* Feb. 9, 2026 Let. K. Fell to R. Schneider and J. Whelan. While the search terms were heavily negotiated, we are nonetheless at a disadvantage in evaluating whether the search terms effectively captured relevant materials. Providing a search term report would help close that information gap and inform our negotiations. Please note that, if Kalshi pursues a motion to compel based on its belief that State Defendants have not conducted sufficiently rigorous searches for relevant material, we will ask the Court to order production of a search term report.

- ***Deficient families in State Defendants' productions.*** Kalshi has identified technical issues with certain documents in State Defendants' productions. Pursuant to the ESI Protocol, "[e]mail attachments and embedded files or links must be mapped to their parent by the Document or Production number." ESI Protocol Section V.I. The following email communications are either missing attachments altogether, or the email attachments are not "mapped to their parent by the Document or Production number," including:

  - NGCB_KALSHI_00022669
  - NGCB_KALSHI_00022709
  - NGCB_KALSHI_00022709
  - NGCB_KALSHI_00022711
  - NGCB_KALSHI_00022713
  - NGCB_KALSHI_00022787

February 24, 2026 | Page 14

- NGCB_KALSHI_00022794
- NGCB_KALSHI_00022800
- NGCB_KALSHI_00024862
- NGCB_KALSHI_00024867
- NGCB_KALSHI_00024879
- NGCB_KALSHI_00024880

Please confirm that you will provide replacement copies of all email communications that have been produced either (i) without the corresponding attachments, at all; or (ii) without the attachments "mapped to their parent by the Document or Production number."

**IV.   Conclusion**

By 5:00 pm Pacific on Wednesday, February 25, please provide us with the following:

- A response regarding whether State Defendants will withdraw the January 30 requests;

- A response as to whether State Defendants' will make the corrections to their misstatements about Kalshi requested above;

- A response on Kalshi's revised proposed schedule extension, as set forth in the email accompanying this letter;

- A search term report showing the number of hits of each agreed-upon search term as applied to the custodial files of the State Defendant custodians described above;

- The information regarding the collection of personal email accounts described above;

- Replacement files for the deficient families noted above, or an approximate date by which you will provide such replacement files;

- Any additional information you can provide regarding the lack of responsive communications relating to Requests Request Nos. 2-13, 22, 25-29, and 31 and from the files of certain custodians.

\*   \*   \*

February 24, 2026                                                                                                                    Page 15

      Kalshi reserves all rights with respect to these issues and proposals, including seeking appropriate relief from the Court.

      We remain available to meet and confer.

                                                                       Sincerely,

                                                                       */s/ Katherine Kelly Fell*
                                                                       Katherine Kelly Fell

cc:     Joshua Sterling, Esq.
        William Havemann, Esq.
        Grant Mainland, Esq.
        Matthew Laroche, Esq.
        Andrew Porter, Esq.

        Adam Hosmer-Henner, Esq.
        *Counsel to Intervenor-Defendant NRA*