# EXHIBIT J
# Letter from
# State Defendants to Kalshi
# 3/4/2026



Mayer Brown LLP
1221 Avenue of the Americas
New York, NY 10020-1001
United States of America

T: +1 212 506 2500

mayerbrown.com

**Rory K. Schneider**
Partner
T: +1 212 506 2157
RSchneider@mayerbrown.com

March 4, 2026

BY EMAIL

Katherine Kelly Fell
MILBANK LLP
55 Hudson Yards
New York, New York 10001
(212) 530-5207
kfell@milbank.com

Re:     *KalshiEX, LLC v. Hendrick, at al.*, Case No. 2:25-cv-00575-APG-BNW (D. Nev.)

Counsel:

On behalf of State Defendants, we write in further response to your letter of February 24, 2026 (February 24 Letter) and our related correspondence.

State Defendants have continuously endeavored to cooperate with Kalshi to progress discovery in this action, and to amicably resolve disputes without judicial intervention. Until recently, Kalshi served as a reasonable counterparty in those efforts. However, as of late, Kalshi has changed tacks in favor of an approach in which it has shirked prior commitments and attacked the character of State Defendants and their counsel. This letter reflects State Defendants' effort to return to the collaborative and collegial status quo that the parties had previously enjoyed and which Kalshi only recently abandoned.

This response is not intended to address Kalshi's voluminous February 24 Letter point by point, and any omission is not intended to, and does not, concede or waive any issue raised therein.

### I.    State Defendants' January 30 Discovery Requests Are Proper

Kalshi recognizes, as it must, that State Defendants' Third Set of Requests for Production, dated January 30, 2026 (the January 30 Requests), were timely served. February 24 Letter at 2. Given the then-operative deadline for the close of fact discovery, State Defendants served additional requests on or before January 30, 2026, and provided adequate time for Kalshi to respond under the applicable Federal Rules of Civil Procedure. State Defendants did not engage in "sandbagging" or "gamesmanship" by serving timely discovery requests before the deadline to do so had expired. Kalshi's suggestion to the contrary rings particularly hollow given that it served six third party subpoenas on January 23, 2026; a seventh on January 27, 2026; two more on January

Mayer Brown is a global services provider comprising an association of legal practices that are separate entities including
Mayer Brown LLP (Illinois, USA), Mayer Brown International LLP (England), Mayer Brown (a Hong Kong partnership)
and Tauil & Chequer Advogados (a Brazilian partnership).

Counsel for KalshiEX, LLC
March 4, 2026
Page 2

30, 2026; and yet another on February 3, 2026—after the then-operative substantial document production deadline. In addition, Kalshi served additional interrogatories upon both State Defendants and NRA on January 30, 2026.

Kalshi's further contention that State Defendants served the January 30 Requests in service of its enforcement action is baseless. To start, when State Defendants served the Requests, State Defendants had not even initiated the enforcement action. And in any event, the Confidentiality Order in this Action requires that State Defendants use "Confidential Information [from discovery] only in connection with the prosecution, defense, and appeal of [this] Proceeding." ECF 131 ¶ 9. State Defendants have complied and will continue to comply with that requirement. State Defendants have no reason to defy that limitation: As Kalshi itself acknowledges, "State Defendants will have an opportunity to seek discovery in their separate enforcement action." February 24 Letter at 5.

The January 30 Requests directly relate to relevant issues in this action, including, but not limited to, the extent to which Kalshi is engaged in a form of gaming, its ability to comply with Nevada law, the credibility of its witnesses and arguments, and the balance of relevant harms.

Several of the January 30 Requests seek information about issues that did not come to light until shortly before the Requests were served. For example, State Defendants' request for "[d]ocuments and [c]ommunications relating to Kalshi's relationship with Birches Health" (Request for Production No. 45) was made shortly after Kalshi began promoting that partnership on its website. Kalshi's recent decision to offer its patrons access to sports gambling addiction services is directly relevant to the issues in this action. State Defendants' request for documents and communications concerning changes made to the "Responsible Trading Hub" and "Responsible Risk Management" section of its website (Request for Production No. 46) are likewise relevant to this action, particularly since Kalshi cited to that webpage in interrogatory responses and then opted to alter its content. *See* Plaintiff's Response to Intervenor-Defendant NRA's Interrogatory No. 13.

Several other Requests relate to topics that Kalshi first broached in discovery requests it served on December 15, 2025. For example, in addition to being par for the course in litigation, State Defendants' requests relating to Kalshi's corporate structure correspond to Kalshi's own requests for the State Defendants' organizational structure. *Compare* State Defendants Request for Production Nos. 33 and 34 *with* Kalshi Request for Production No. 35. And State Defendants' requests relating to "instance[s] where Kalshi detected or identified a person as trading in violation of [] Kalshi trading prohibitions," and "instances in which a participant in an event that was the subject of an event contract alleged they were threatened or harmed by a person trading on Kalshi" likewise correspond to Kalshi's requests for "[a]ll [d]ocuments or [c]ommunications concerning or reflecting any harm suffered by consumers as a result of trading Event Contracts," and for "[a]ll [d]ocuments and [c]ommunications that reflect, contain, summarize, or refer to any analysis, data, study, model, or methodology concerning consumer harm or consumer risks purportedly associated with, or caused by, Prediction Markets or Event Contracts." *Compare* State Defendants Request for Production Nos. 47 and 49 *with* Kalshi Requests for Production Nos. 10 and 27.

Counsel for KalshiEX, LLC
March 4, 2026
Page 3

Finally, State Defendants' request for "[d]ocuments and [c]ommunications demonstrating any efforts undertaken by Kalshi to mimic the user interface of other apps, including but not limited to BetMGM, DraftKings, FanDuel, Caesars Sportsbook, theScore Bet, bet365, or Fanatics" is a narrower corollary to Kalshi's prior request for "[a]ll [d]ocuments and [c]ommunications discussing actual or potential differences or similarities between sportsbook operations and Prediction Markets." *Compare* State Defendants Request for Production No. 38 *with* Kalshi Request for Production No. 7.

Kalshi affirmatively concedes the relevance of other Requests, but objects that they are either cumulative or constitute a "re-trade" on prior commitments. February 24 Letter at 3 n.1. Not so. For starters, Kalshi argues that Request No. 42— which seeks information concerning Kalshi's current geolocation practices[1]—is cumulative of prior Requests 20 and 26, and Kalshi's Response to Interrogatory No. 8. *See id.* But Request 20 concerned "enforcement or potential enforcement of Nevada gaming laws," and Request 26 concerned Xavier Sottile's declarations that compliance with state law would force Kalshi to "expend enormous financial resources on geolocating" and that "the process of geofencing would be technically challenging, time consuming, and expensive." Interrogatory No. 8 likewise focuses on the harms that Kalshi contends it would incur as a result of enforcement, and Kalshi's response includes the same generic statements regarding the costs of geofencing found in Mr. Sottile's prior declarations. By contrast, Request No. 42 specifically asks about geolocation and geofencing that Kalshi already does, when it began, and what it is employed for. State Defendants did not learn until it received a production on December 15, 2025 that Kalshi employs any geolocation technology at all, *see* KALSHI_NVAG_0046290 at 46307 ("Kalshi maintains geolocation controls…"), and State Defendants are entitled to serve timely demands to further probe that admittedly relevant issue.

Moreover, Kalshi's accusation that State Defendants have "re-traded" on prior discovery agreements is wrong. As noted in our prior correspondence, the few examples of "re-trading" that you identify in your letter are extensions of prior requests that concern developments post-dating Kalshi's productions. As you know, Kalshi has a continuing obligation to produce documents responsive to State Defendants' Requests. Far from re-trading on prior agreements, Requests No. 50 and 51 simply seek to hold Kalshi to that obligation. More specifically, Request No. 50 merely seeks information concerning new bets that Kalshi has started to offer. And Request No. 51 merely seeks a complete version of a communication that Kalshi only produced a part of.

Kalshi's accusation of a supposed "re-trade" is also hypocritical given Kalshi's about-face regarding production of its advertisements. State Defendants requested "[a]ll [d]ocuments reflecting, referencing, or discussing Kalshi's advertising or marketing of any of its event contracts as either sports wagers or sports bets" in its First Set of Requests for Production on August 1, 2025. The parties negotiated in good faith and reached a compromise in October 2025, whereby Kalshi

---

[1] Request for Production No. 42 seeks: "Documents and Communications related to (i) any geolocation, geofencing, or other location monitoring tools or techniques used by Kalshi, (ii) the date on which Kalshi began using such tool or technique, and (iii) the purpose for which Kalshi uses such geolocation, geofencing, or location monitoring tool or technique."

Counsel for KalshiEX, LLC
March 4, 2026
Page 4

agreed to produce a limited set of advertisements from representative platforms during limited representative time periods and using targeted search terms. State Defendants accepted that arrangement on the assumption that Kalshi had confirmed that it could uphold its part of the bargain. State Defendants have requested further information regarding the status of Kalshi's collection of advertisements during nearly every meet and confer since October, and have been repeatedly reassured that a production of advertisements would be forthcoming once certain technical issues had been overcome. *See, e.g.*, November 7, 2025 Letter from A. Porter ("With respect to advertisements placed by Kalshi during the agreed-upon time periods, as we explained during the October 24, 2025 meet and confer, we are working with the same vendor to ensure that any production of these documents includes all required metadata. That process is ongoing, and we anticipate that a production will be forthcoming soon."); Jan. 2, 2026 Email from K. Cassidy-Ginsberg ("With respect to advertisements in particular, as explained on our most recent meet and confer, we are continuing to work with our client and vendor to collect advertisements and expect to provide an update in the coming days.").

Yet now, in a footnote to your February 24 Letter, Kalshi has gone back on its word after months of stringing State Defendants along by refusing to produce even the limited set of materials it agreed to produce months ago. February 24 Letter at 10 n.10.

Kalshi's conclusory explanation regarding the supposed burden on Kalshi to access its own advertisements in a mere footnote is insufficient. We expect to make a motion to compel absent further explanation regarding: (1) the identity of the third-party program used by Kalshi; (2) the identity of the individuals at Kalshi and/or third-party vendors responsible for placing Kalshi advertisements; (3) a specific description of the efforts undertaken to collect the agreed-upon advertisements and of the purported obstacles to collection and/or production; and (4) a description of when Kalshi first became aware of its inability to produce advertisements pursuant to the parties' October 2025 agreement.

### II.     State Defendants Are Willing To Narrow The January Requests

For the reasons stated above, State Defendants will not withdraw their timely, proper, and relevant January 30 Requests in their entirety. However, consistent with their efforts to find compromise throughout this process, State Defendants are willing to amend the Requests to avoid unnecessarily burdening the Court with motions practice as follows:

*First*, State Defendants are willing to withdraw Requests for Production Nos. 36, 38, 41, 44, 48, 49, 52, and 54.

*Second*, State Defendants are willing to narrow Request for Production Nos. 35 and 37 to request: (1) a KalshiEx organizational chart; (2) a corporate structure diagram for Kalshi and all related entities; and (3) documents sufficient to show whether any investors in any Kalshi entity also trades, either directly or through an affiliate, on Kalshi's exchange.

Counsel for KalshiEX, LLC
March 4, 2026
Page 5

*Third*, State Defendants are willing to narrow Request for Production No. 47 to request: "Documents sufficient to show (or an interrogatory response reflecting) the number and nature of violations identified and disciplinary proceedings instituted by Plaintiff since Kalshi began offering sports-related event contracts."

*Fourth*, State Defendants are willing to narrow Request for Production No. 50 to request: "Event Contracts certified by Kalshi from August 30, 2025 to the present, including any confidential appendices thereto."

*Finally*, State Defendants are willing to narrow Request for Production No. 55 to request: "Documents and Communications concerning Kalshi's participation in the Coalition for Prediction Markets."

For the avoidance of doubt, State Defendants will not agree to withdraw any of the remaining January 30 Requests, but remain available to meet and confer to discuss any objections that Kalshi may have to State Defendants' narrowed proposal, and will consider any reasonable counterproposal Kalshi wishes to make to further amend the Requests or to provide interrogatory responses in lieu of documents if Kalshi demonstrates that a Request imposes an actual undue burden.

### III. State Defendants' Document Productions Are Not Deficient

In stating its "concerns regarding the timing and quality of the State Defendants' productions of documents," Kalshi once again misrepresents the record and grasps at straws in an attempt to support the alleged "deficiencies." February 24 Letter at 9.

*First*, Kalshi incorrectly asserts that State Defendants will produce a "majority of probative documents well after the substantial completion deadline of February 2." February 24 Letter at 9. As has been explained multiple times, State Defendants ran heavily negotiated search terms across agreed-upon custodians' data, reviewed over 15,000 documents in response to Kalshi's document requests, and made two productions on January 20 and January 30, respectively. As you know, as of the substantial completion deadline on February 2, 2026, both parties were still negotiating certain search parameters and custodians. *See* Ex. 1 to State Defendants' February 12 Letter. The parties agreed, and Kalshi confirmed in writing, that the search proposals still being negotiated "would not be subject to the substantial completion deadline." *Id.* Once the parties came to an agreement on February 10 (*see id.*), State Defendants produced the documents that were subject to the agreement that same day.[2]

---

[2] Kalshi points to a single document in NRA's production that it contends is a "responsive communication with State Defendants" that does not appear in State Defendants' production (NRA001915). February 24 Letter at 11 n.12. State Defendants understand that this document likely escaped collection based on the parties' agreed-upon search terms, and in particular would have escaped collection of documents hitting on the term "predict* w/5 market*" because the only relevant "word" in the document is a URL string

Counsel for KalshiEX, LLC
March 4, 2026
Page 6

The only additional documents for State Defendants to produce are documents subject to privilege review—i.e., documents that will be redacted for privilege, documents that are in partially-privileged document families, or documents initially deemed privileged during a first-level review but which will be produced in full following further consideration. Kalshi cannot credibly allege it will be prejudiced by any purported "delay" in receiving these documents, as the parties have already agreed to a substantial extension of the schedule as a result of which depositions will not start for some time.

*Second*, Kalshi mistakenly takes issue with the number of documents produced from certain of State Defendants' document custodians. February 24 Letter at 11. As we've repeatedly said, and Kalshi does not dispute, State Defendants ran heavily negotiated search terms across agreed-upon custodians' data, reviewed over 15,000 documents in response to Kalshi's document requests, and produced the responsive and non-privileged documents.

State Defendants confirm that they have collected, reviewed, and produced all responsive, non-privileged materials from the personal email accounts of Jennifer Togliatti, Rosa Solis-Rainey, George Markantonis, and Abbi Silver. Those are the custodians whose State Defendants' diligence indicated may possess responsive documents in their personal email. For Brian Krolicki, there are only two documents, which are duplicates, in State Defendants' productions that include only Mr. Krolicki's personal email account (briankrolicki@msn.com), wherein Mr. Krolicki sends a Wall Street Journal article to his colleagues—another document that Kalshi would undoubtedly deem non-probative "filler" material (NGCB_KALSHI_00024885; NGCB_KALSHI_00024856). In the interest of compromise, we will investigate further whether Mr. Krolicki's personal email account contains any other responsive documents.

*Third*, Kalshi now states that State Defendants "have not produced materials responsive to at least 17 of Kalshi's requests." February 24 Letter at 12. When Kalshi made a similar accusation in its February 9, 2026 letter, it erroneously claimed that State Defendants did not produce documents responsive to "at least 26 of the 27 Requests." Once again, State Defendants ran (concededly) "heavily negotiated" (February 24 Letter at 13) search terms across the data of agreed-upon custodians and produced responsive, non-privileged results. State Defendants are not obligated to, and will not, catalog their production to tick and tie each document to one or more of Kalshi's requests. To the extent there aren't documents responsive to certain Requests, such communications may not exist.

*Fourth*, Kalshi doubles down on its request for a search term report "identifying the number of hits resulting from the application of the agreed-upon search terms to the files of State Defendant custodians." February 24 Letter at 13. But Kalshi has not pointed to any language in the ESI Protocol, Protective Order, or relevant rules or law to suggest that State Defendants must provide a custodian-by-custodian search term report above and beyond the information volunteered in

---

containing hyphens. In any event, were State Defendants to have produced this document, Kalshi would no doubt have deemed it "filler" material.

Mayer Brown LLP

Counsel for KalshiEX, LLC
March 4, 2026
Page 7

State Defendant's February 12 Letter and throughout the meet-and-confer process. Nor has Kalshi provided this information to State Defendants. Indeed, when State Defendants sought more information relating to the collection of Slack data (*see* Jan. 8, 2026 7:09 PM Email from A. Mendelson to K. Cassidy-Ginsberg *et al.*), Kalshi declined to provide the information, stating that it was improper "discovery-on-discovery" and citing a case that says "the manner in which [a party] maintains and searches for documents in litigation or otherwise [was] not relevant to the allegations in th[e] case" (*see* Jan. 15, 2026 6:32 PM Email from P. Farag to A. Mendelson *et al.* (citing *Fish v. Air & Liquid Systems Corp.*, 2017 WL 697663, at *6 (D. Md. Feb. 21, 2017))).

As its reason for requesting a custodian-by-custodian search term report, Kalshi—while conceding that the search terms were heavily negotiated—cites a "disadvantage in evaluating whether the search terms effectively captured relevant materials." *Id.* Yet State Defendants—and all litigants in federal litigation in the United States—operate under the same "disadvantage" in discovery. For the aforementioned reasons, State Defendants decline to produce a custodian-by-custodian search term report. Our offer to discuss a *mutual* exchange stands.

*Fifth*, Kalshi states that it has identified "technical issues" with certain documents in State Defendants' productions where email communications are missing attachments or attachments are not mapped to their parent. February 24 at 13. State Defendants have investigated and determined that the documents Kalshi cites in its letter (February 24 Letter at 13-14) are PDFs that were located in centralized files, rather than custodial email files. Unlike custodial email files, which require that "attachments and embedded files or links must be mapped to their parent by the Document or Production number," such mapping is neither required nor feasible with respect to PDFs. In certain cases, State Defendants have produced substantively identical copies from custodial files, which mapped attachments to their parent.[3] To the extent that PDF copies of email communications produced from centralized files were stored with copies of their attachments, the emails themselves provide sufficient information for Kalshi to find relevant attachments elsewhere in State Defendants' production. *See, e.g.*, NGCB_KALSHI_00022713.[4]

---

[3] *Compare* NGCB_KALSHI_00022669 (July 4, 2025 email from Claudia Rosolen to Mike Dreitzer) *with* NGCB_KALSHI_00022764 (same); *Compare* NGCB_KALSHI_00024879 (Feb. 21, 2025 email from Tres York re: AGA Raises Concerns on Federal Prediction Markets) *with* NGCB_KALSHI_00019126 (same).

[4] Listing the following attachments by file name: "3-4-25 Order to Cease and Desist Unlawful Activity in the State of Nevada - Kalshi.pdf" (produced at NGCB_KALSHI_00022656); "5-20-25 - Cease and Desist Letter - NADEX_dba_Crypto.com.pdf" (produced at NGCB_KALSHI_00022659); "2025-05-08 – Letter Regarding Nevada Activity - Robin Hood.pdf" (produced at NGCB_KALSHI_00022654); Vixio Ga...Compliance 10.2025.pdf; (produced at NGCB_KALSHI_00022709); Email Attachment - Regulatory-Reforms-Put-Nevada-In-Strong-Position,-Ex-Regulator Says-.pdf (produced at NGCB_KALSHI_00022702); Email Attachment - Enforcement-Action-Against-Prediction-Markets-Hinges-On-Key-Court-Case-.pdf (produced at NGCB_KALSHI_00022693); Email Attachment - Regulatory-Influencer_-Nevada-Enacts Further-Gaming-Reforms-During-2025-Legislative-Session.pdf

Counsel for KalshiEX, LLC
March 4, 2026
Page 8

### IV. State Defendants Have Not Made Any Misrepresentations

Finally, State Defendants have not made any misrepresentations, in the Ninth Circuit, in state court proceedings, in letters to Kalshi concerning discovery,[5] or otherwise. Kalshi's continuing attacks on the character of State Defendants and their attorneys are wholly inappropriate and unrelated to the parties' ongoing discovery disputes. Injecting these meritless accusations into discovery correspondence appears motivated solely by a desire to skew the correspondence that will be presented to the Court in connection with forthcoming discovery disputes Kalshi intends to raise.

*First*, Kalshi's allegations concerning misrepresentations are wholly unrelated to discovery issues. The argument that "the lack of threat of enforcement was a key basis on which [State Defendants] obtained an order from the Court permitting discovery in this case" is meritless. February 24 Letter at 5. As you well know, discovery is the default in a civil litigation. State Defendants did not "obtain an order permitting discovery"; rather Kalshi failed to obtain orders prohibiting discovery. State Defendants' voluntary forbearance from enforcement proceedings was never raised in connection with any discovery-related motions or correspondence. Kalshi's statement that it relied on such forbearance "when producing 6,000 documents to State Defendants, many of which State Defendants never would have received under any other circumstance," lacks foundation, as State Defendants' temporary agreement did not foreclose the possibility of state enforcement proceedings altogether. February 24 Letter at 5. And whether or not such agreement was made, Kalshi would have been required to produce documents to State Defendants in order to comply with its discovery obligations in this matter.

*Second*, as Kalshi has recognized, State Defendants were not prohibited from exercising their right and their obligation to bring an enforcement action against Kalshi in an appropriate forum at the appropriate time. *See, e.g.*, ECF No 262 (Kalshi's Reply Br. ISO Motion to Stay Discovery) at 9 ("Kalshi's request for a stay of enforcement has now been brought to the Ninth Circuit. . . . [I]f the Ninth Circuit denies Kalshi's request, there will be no order preventing State Defendants from taking whatever enforcement measures may be available to them (subject, of course, to Kalshi's defenses)."). State Defendants provided advance notice to both Kalshi and to the Ninth Circuit concerning their decision to seek relief in state court, and explained their reasons for doing so. *See KalshiEx, LLC v. Hendrick*, No. 25-7516 (9th Cir.), Dkt. 60.1. Kalshi has already raised the same alleged misrepresentations to the Ninth Circuit in its motion for an administrative stay, *see KalshiEx, LLC v. Hendrick*, No. 25-7516 (9th Cir.), Dkt. 62.1 at 17-18, and again in its

---

(produced at NGCB_KALSHI_00022698); gassad 4.22.25.pdf (produced at NGCB_KALSHI_00022707); notice-to-licensees-2025-77-10-15-25-.pdf (produced at NGCB_KALSHI_00000001).

[5] State Defendants do not see any significant benefit in engaging in further back and forth concerning alleged "misstatements in State Defendants' February 12 Letter." Simply put, we disagree that there were any misstatements in that Letter, which when read in context with Kalshi's February 9 Letter we believe speaks for itself.

Counsel for KalshiEX, LLC
March 4, 2026
Page 9

reply brief, *see KalshiEx, LLC v. Hendrick*, No. 25-7516 (9th Cir.), Dkt. 67.1 at 35. Kalshi's concern that alleged misrepresentations will cause "prejudice to Kalshi's legal position" (February 24 Letter at 7) is thus without merit.

State Defendants will not be filing any "correction" or withdrawing any statements it made in the Ninth Circuit.

\* \* \*

State Defendants reserve all rights, including the right to seek relief from the Court and the costs associated with seeking such relief.

We are available to meet and confer further as appropriate.

Sincerely,

*/s/ Rory K. Schneider*

Rory K. Schneider

cc:   Jessica E. Whelan
      Sabrena K. Clinton
      Abigail Pace
      Nicole A. Saharsky
      Minh Nguyen-Dang
      Adam Hosmer-Henner
      Jane Susskind
      Katrina Weil
      Andrew Porter
      Peter Farag